No. 18-10732

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

IN RE: JULIUS OMAR ROBINSON
MOVANT

_____

CONSOLIDATED WITH CASE NO. 18-70022

United States of America,
*Plaintiff-Appellee*
v.
Julius Omar Robinson,
*Defendant-Appellant*

_____

On Appeal from, and Motion for Authorization to File a Second or Successive § 2255 Motion in, the United States District Court for the Northern District of Texas, Fort Worth Division, Civ. Action No. 4:05-cv-756

_____

**MOTION FOR AN ORDER AUTHORIZING THE DISTRICT COURT TO CONSIDER A SECOND OR SUCCESSIVE § 2255 MOTION**

HILARY POTASHNER
FEDERAL PUBLIC DEFENDER
JONATHAN C. AMINOFF (California Bar No. 259290)
CELESTE BACCHI (California Bar No. 307119)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0310
E-mail: jonathan_aminoff@fd.org

Attorneys for Julius Omar Robinson

**THIS IS A CAPITAL CASE**

# CERTIFICATE OF INTERESTED PERSONS

In re Julius Omar Robinson

*Movant*

No. 18-10732

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  Movant:
    Julius Omar Robinson
    Reg. # 26190-177
    Terre Haute, IN

2.  Counsel for Movant:
    Hilary Potashner, Federal Public Defender
    Craig A. Harbaugh, Deputy Federal Public Defender
    Jonathan C. Aminoff, Deputy Federal Public Defender
    Celeste Bacchi, Deputy Federal Public Defender
    Office of the Federal Public Defender, Los Angeles, CA

3.  Opponent:
    United States of America

4.    Counsel for Opponent:
        Timothy Wayne Funnell, Assistant United States Attorney
        US Attorney's Office, Fort Worth, TX

/s/ Jonathan C. Aminoff
Jonathan C. Aminoff (California Bar No. 259290)
Craig A. Harbaugh (California Bar No. 194309)
Celeste Bacchi (California Bar No. 307119)
Deputy Federal Public Defenders
321 E. 2nd Street
Los Angeles, CA 90012
Telephone:  (213) 894-5374
Facsimile:  (213) 894-0310
Electronic Mail:  Jonathan_Aminoff@fd.org

*Attorneys for Julius Omar Robinson, Movant*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................1

II. JURISDICTION .............................................................................................1

III. PROCEDURAL HISTORY .............................................................................2

IV. THIS COURT SHOULD AUTHORIZE REVIEW OF ROBINSON'S
MOTION FOR RELIEF FROM JUDGMENT ................................................4

    A. The Law Governing Authorization of Second or
Successive § 2255 Motions ................................................................4

    B. Robinson Meets the Standard for Filing a Second or
Successive Motion on His Claim that He is Entitled to
Investigate Juror Bias ........................................................................5

        1. *Peña-Rodriguez* is a New Rule of Constitutional Law
that was Previously Unavailable ..............................................6

        2. Peña-Rodriguez is Retroactively Applicable to Cases
on Collateral Review ................................................................8

    C. The District Court Should be Authorized to Consider
Robinson's Claim ...............................................................................9

V. CONCLUSION ............................................................................................12

CERTIFICATE OF CONFERENCE ..................................................................13

CERTIFICATE OF SERVICE ...........................................................................14

# TABLE OF AUTHORITIES

**Page (s)**

**Federal Cases**

*Buck v. Davis*,
137 S. Ct. 759 (2017)................................................................................10

*In re Hearn*,
418 F. 3d 444 (5th Cir. 2005) ....................................................................5

*In re Johnson*,
334 F.3d 403 (5th Cir. 2003) .....................................................................4

*In re Swearingen*,
556 F.3d 344 (5th Cir. 2009) ..................................................................5, 6

*Martinez v. Ryan*,
566 U.S. 1 (2012)......................................................................................11

*Nevius v. McDaniel*,
104 F.3d 1120 (9th Cir. 1996) ...................................................................5

*Peña-Rodriguez v. Colorado*,
137 S. Ct. 855 (2017)...........................................................................*passim*

*Robinson v. United States*,
543 U.S. 1005 (2004)..................................................................................2

*Robinson v. United States*,
565 U.S. 827 (2011)....................................................................................2

*In re Morris*,
328 F.3d 739 (5th Cir. 2003) .....................................................................4

*Tharpe v. Sellers*,
138 S. Ct. 545 (2018)...............................................................................8, 9

*Tharpe v. Warden*,
2017 WL 4250413 (11th Cir. 2017) ...........................................................8

*United States v. MacDonald*,
641 F.3d 596 (4th Cir. 2011) .....................................................................5

*United States v. Robinson*,
2010 U.S. App. LEXIS 11675 (5th Cir. 2010) ..........................................2

# TABLE OF AUTHORITIES

**Page (s)**

*United States v. Robinson,*
   367 F.3d 278 (5th Cir. 2004) ...................................................................2

*Warger v. Shaurers,*
   135 S. Ct. 521 (2014)..........................................................................8, 9

*White v. Black,*
   190 F.3d 366 (5th Cir. 1999) ....................................................................9

**Federal Statutes**

28 U.S.C. § 2244 ....................................................................................4, 5

28 U.S.C. § 2255 .............................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 60(b)(6) .......................................1, 3, 8

Federal Rule of Evidence 606(b) ......................................................6, 7

Local Criminal Rule 24.1...............................................................9, 10, 11

## I. INTRODUCTION

Julius Robinson moved the district court to reopen his case, pursuant to Federal Rule of Civil Procedure 60(b)(6). In that motion, Robinson argued that recent Supreme Court precedent established that he was denied due process in his post-conviction proceedings. The District Court, however, concluded that Robinson's motion was, in fact, a disguised second or successive ("SOS") § 2255 motion, and transferred the motion to this Court. Although Robinson disagrees with, and is appealing, the District Court's assessment, for purposes of this motion Robinson accepts the District Court's findings. Accordingly, the onus is now on Robinson to make a prima facie showing that his new claims rely on new rules of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. Robinson's request to interview the jurors from his capital trial fits this bill. The Supreme Court has established that Robinson is entitled to investigate claims of potential racial bias among seated jurors, and the District Court unjustly barred Robinson from this avenue of investigation.

## II. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2255(h), 2244. Robinson is under a judgment and sentence of death entered in the Northern District of Texas.

### III. PROCEDURAL HISTORY

Robinson was convicted of multiple crimes and sentenced to death in the district court on June 5, 2002. ROA.3410-12. This Court affirmed Robinson's convictions and sentences, *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004), and the Supreme Court denied certiorari. *Robinson v. United States*, 543 U.S. 1005 (2004).

On November 29, 2005, Robinson moved the district court, pursuant to 28 U.S.C. § 2255, to vacate his convictions and sentences. ROA.3565-3677. In the course of litigating his Section 2255 motion, Robinson sought to interview the jurors from his capital trial, but the district court denied this request. ROA.4893-4905; ROA.4914-4917. Robinson then sought to amend his Section 2255 motion to include a claim raised on direct appeal regarding the adequacy of the indictment, but the district court also denied that request. ROA.5303-5307. Notwithstanding the government's concession that Robinson was entitled to an evidentiary hearing on his penalty-phase ineffective-assistance-of-counsel claim (ROA.4487; ROA.5669), the district court summarily denied Robinson's Section 2255 motion and denied his request for a COA. ROA.5712-5758; ROA.5938-5942. This Court affirmed, *United States v. Robinson*, 2010 U.S. App. LEXIS 11675 (5th Cir. 2010), and the Supreme Court denied certiorari, *Robinson v. United States*, 565 U.S. 827 (2011).

On February 28, 2018, Robinson filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) in the United States District Court for the Northern District of Texas. Ex. A, Motion for Relief From Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)(6), ROA.74-102. Robinson argued that the lack of due process in his post-conviction proceedings constituted an extraordinary circumstance which justified re-opening the judgment in his case pursuant to Rule 60. Specifically, Robinson asserted that new Supreme Court caselaw established that (1) he was unreasonably denied a COA; (2) he was unreasonably denied the right to amend his § 2255 motion to include his Indictment Claim; and, (3) he was unreasonably barred from interviewing the trial jurors, thus depriving him of a reasonable post-conviction investigation. *Id*. On April 30, 2018, the Government filed an opposition to Robinson's motion and Robinson filed a reply brief on June 13, 2018. Ex. B, Government's Response to Rule 60 Motion, ROA.109-137; Ex. C, Reply in Support of Defendant's Motion for Relief From Judgment, ROA.141-152. On June 20, 2018, the District Court concluded that Robinson's motion was a second or successive § 2255 motion but, rather than dismissing this action, the District Court transferred Robinson's motion to this Court. Ex. D, Memorandum Opinion and Order Transferring Rule 60(b) Motion, ROA.153-162.

On September 11, 2018, Robinson will be filing his opening appellate brief arguing that the District Court erroneously concluded that Robinson's Rule 60(b) motion was an SOS motion. Fifth Circuit, Dkt Entry 8/2/18. In the alternative, Robinson argues herein that this Court should authorize the district court to consider Robinson's claim that the district court's order barring him from interviewing the trial jurors unreasonably deprived him of the opportunity to conduct a post-conviction investigation.

## IV. THIS COURT SHOULD AUTHORIZE REVIEW OF ROBINSON'S MOTION FOR RELIEF FROM JUDGMENT

### A. The Law Governing Authorization of Second or Successive § 2255 Motions

Before filing an SOS motion in the district court, a movant must first seek an order from the circuit court authorizing the district court to consider the SOS motion. 28 U.S.C. §§ 2244(3)(A), 2255(h). A circuit court will issue an authorization order when, as relevant here, the movant makes a prima facie showing that his motion is based on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. 28 U.S.C. §§ 2244(3)(C), 2244(b)(3)(C).

A "prima facie" showing is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)); *see also In re Johnson*, 334 F.3d 403, 404 (5th Cir. 2003). "[P]ermission

4

[to file a subsequent application] will be granted when it 'appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition.'" *In re Swearingen*, 556 F.3d 344, 347 (5th Cir. 2009). This Court has found that standard satisfied when the movant "has put forth minimally sufficient evidence to make a prima facie case" and "there is sufficient, albeit slight, merit in [the] motion to warrant further exploration by the district court." *In re Hearn*, 418 F. 3d 444, 447-48 (5th Cir. 2005).

**B.    Robinson Meets the Standard for Filing a Second or Successive Motion on His Claim that He is Entitled to Investigate Juror Bias**

Robinson raised three issues to the district court: (1) the denial of a certificate of appealability; (2) the courts failure to let him amend his § 2255 motion with his indictment error claim; and, (3) the district court's refusal to let him interview the jurors who presided over his capital trial. Ex. A. Robinson cited to recent Supreme Court case law in support of each of these issues. Robinson acknowledges, however, that he can only meet the requirements of 28 U.S.C. §§ 2244, 2255(h) for his claim that he was deprived access to the jurors in his case, and he focuses solely on that issue.[1]

---

[1] In both the Ninth and Fourth Circuits, a movant need only establish that one claim in his SOS motion satisfies the Section 2244 standard at which point the Circuit Court authorizes the entire SOS motion for review by the District Court. *Nevius v. McDaniel*, 104 F.3d 1120, 1121-22 (9th Cir. 1996); *United States v. MacDonald*, 641 F.3d 596 (4th Cir. 2011). Because the controlling law differs in

### 1. *Peña-Rodriguez* is a New Rule of Constitutional Law that was Previously Unavailable

After filing his initial Section 2255 motion in 2005, Robinson moved the district court for permission to interview the jurors. ROA.4893-4905. The District Court denied Robinson's request, finding that Robinson had not provided any evidence that merited allowing Robinson to investigate possible juror misconduct. ROA.4914-4917. The District Court subsequently denied Robinson's Section 2255 Motion, and this Court affirmed.

Several years later, the Supreme Court issued *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), which supports Robinson's request to interview the jurors. In that case, Peña-Rodriguez's counsel was permitted to speak with the jurors after the conclusion of the trial, and two jurors informed counsel that another juror had expressed anti-Hispanic bias toward the defendant and his alibi witnesses. *Id.* at 861. Defense counsel ultimately submitted signed affidavits from those jurors, which memorialized the racist comments made by another juror. *Id.* at 862. Despite this evidence of juror misconduct, the trial court denied the defense motion for a new trial. The court held that the affidavits were not admissible to impeach the verdict under Colorado's equivalent to Federal Rule of Evidence 606(b), which

---

this Circuit, *see, e.g., Swearingen*, 556 F.3d at 349, Robinson moves for authorization of his juror claim only.

renders inadmissible virtually any post-verdict juror statement concerning the contents of the jury's deliberations. *Id.* at 862. The Colorado Supreme Court affirmed, and the Supreme Court granted certiorari to decide if racial bias should be an exception to the general, firmly rooted provisions behind Rule 606(b). *Id.* at 862-63.

The Supreme Court reversed, finding that the Sixth Amendment requires that the no-impeachment rule give way to permit a trial court to consider evidence that a juror relied on racial stereotypes or animus to convict a criminal defendant. *Id*. at 869. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Id.* at 871.

When Robinson raised this issue to the district court, the court found that it did not have jurisdiction to consider Robinson's request to interview the jurors because the only legitimate purpose for such a request would be for Robinson to present an impartial jury claim, which had not been raised in Robinson's initial § 2255 motion. Ex. D at 158.

This Court should authorize the district court to consider Robinson's yet-to-be-raised claim of juror impartiality. *Peña-Rodriguez* constitutes a new rule; indeed, it created a constitutional exception to the long-standing rule against not

allowing jurors to impeach their verdicts, at least when it comes to demonstrating racial animus. *Peña-Rodriguez,* 137 S. Ct. at 871. And this new rule was not previously available, as the ban on jurors impeaching verdicts was upheld by the Court most recently in *Warger v. Shaurers,* 135 S. Ct. 521 (2014).

### 2. Peña-Rodriguez is Retroactively Applicable to Cases on Collateral Review

The Supreme Court did not expressly address retroactivity in *Peña-Rodriguez,* but its subsequent decisions indicate that *Peña-Rodriguez* is indeed retroactively applicable. In *Tharpe v. Sellers,* 138 S. Ct. 545 (2018) (per curiam), Petitioner Tharpe was convicted of murder and sentenced to death. He petitioned the state court for habeas relief based, in part, on racial animus harbored by one of the trial jurors. Following an evidentiary hearing in which several jurors testified, including the biased juror, the state court denied Tharpe's claim, in part, because the jurors' testimony was inadmissible under the no-impeachment rule. *Tharpe v. Warden,* 2017 WL 4250413, at *2 (11th Cir. 2017) (not reported). Tharpe was similarly unsuccessful on federal habeas. *Id.* at *2. After the Supreme Court issued *Peña-Rodriguez,* Tharpe filed a Rule 60(b)(6) motion in district court to reopen his case. Tharpe argued that *Peña-Rodriguez* applied retroactively and, as such, the barred juror testimony was now admissible. *Id.* The district court denied relief and the Eleventh Circuit affirmed. *Id.* at *3.

The Supreme Court granted Tharpe's cert petition, vacated the Eleventh Circuit's judgment and remanded. Focusing entirely on the prejudice analysis and the racist juror's affidavit, the Court decided that jurists of reason could debate whether Tharpe had established prejudice. *Tharpe,*, 138 S. Ct. at 546. While the majority in *Tharpe* did not explicitly address *Peña-Rodriguez,* in that case actions speak louder than words. The *Tharpe* Court's reliance on the juror's affidavit to impeach the verdict—an action which the Court denounced prior to *Peña-Rodriguez, see Warger*, 135 S. Ct. 521——is a retroactive application of the *Peña-Rodriguez* holding, establishing that *Peña-Rodriguez* is indeed retroactive.

**C.     The District Court Should be Authorized to Consider Robinson's Claim**

The Supreme Court noted in *Peña-Rodriguez* that the "practical mechanics of acquiring and presenting [evidence of juror bias] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id*. at 869. In Texas, however, Local Criminal Rule 24.1 prevents any contact between the parties and a juror absent permission of the court.

There is an obvious tension between Rule 24.1 and *Peña-Rodriguez*; indeed, *Peña-Rodriguez* is rendered meaningless if Rule 24.1 is permitted to bar individuals, like Robinson, from speaking with jurors. Courts must read statutes, rules, and caselaw so as not to render any section meaningless. *See, e.g., White v.*

*Black,* 190 F.3d 366, 368 (5th Cir. 1999) ("The canons of statutory construction dictate that when construing a statute, the court should give words their ordinary meaning and should not render as meaningless the language of the statute.") As such, consistent with the reasoning of *Peña-Rodriguez,* Rule 24.1 must bend to allow Robinson access to his jurors.

It is uncontroverted that the death penalty has a long history of racial injustice. Indeed, just last term the Supreme Court reversed a Texas capital conviction in which a man's death sentence may have been based on his race. *Buck v. Davis,* 137 S. Ct. 759, 778 (2017). Similarly, Julius Robinson is a black man who was capitally prosecuted in Texas—a state which leads the nation in federal capital convictions. Of the 13 federal capital convictions from the state of Texas, 9 defendants are black, 2 are white, and 2 are Latino.[2] Robinson was tried before a jury of 11 white people and 1 black man, whom the defense had unsuccessfully moved to strike for cause. Additionally, the Government was permitted to strike 7 of the 8 black jurors questioned during voir dire. Given the severity of Robinson's sentence, and the racial undertones of this capital prosecution, Robinson should be permitted to conduct an investigation no more

---

[2] These numbers were taken from the Death Penalty Information Center's website, available at: https://deathpenaltyinfo.org/federal-death-row-prisoners#list. These numbers include Louis Jones and Juan Garza, both of whom have been executed.

intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences.

The Supreme Court has emphasized the importance of investigation in the post-conviction context. *See, e.g., Martinez v. Ryan*, 566 U.S. 1, 13 (2012) (explaining that post-conviction ineffective assistance of counsel claims can require extensive investigation such that an inmate's ability to file such a claim is significantly diminished absent the assistance of post-conviction counsel). On balance, *Peña-Rodriguez* establishes that rules such as Local Criminal Rule 24.1 must allow criminal defendants an ability to investigate issues such as racial bias, and Robinson was deprived of this right.

Because *Peña-Rodriguez* is a new rule made retroactive to cases on collateral review that was not previously available to Robinson, Robinson must be permitted to investigate the presence of juror bias in his case and those the fruits of that investigation to the district court.

## V. CONCLUSION

For the foregoing reasons, this Court should conclude that Robinson has made a prima facie showing that he satisfies the requirements for obtaining authorization to file a subsequent motion and grant such authorization.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender


Dated:  August 7, 2018        By */ s/ Jonathan C. Aminoff*
                                    JONATHAN C. AMINOFF
                                    CELESTE BACCHI
                                    Deputy Federal Public Defenders
                                    321 East Second Street
                                    Los Angeles, CA 90012

                                    Attorneys for Julius Omar Robinson

## **CERTIFICATE OF CONFERENCE**

I certify that, on August 7, 2018, I spoke with Counsel for the United States of America, Assistant United States Attorney Timothy Funnell, concerning this motion. Mr. Funnell indicates that the Government opposes this motion and that he will be filing an opposition.

*/s/ Jonathan C. Aminoff*
Jonathan C. Aminoff

## CERTIFICATE OF SERVICE

I certify that, on August 7, 2018, I electronically filed the foregoing document in the Fifth Circuit Court of Appeals using the Court's electronic case filing system.

*/s/ Jonathan C. Aminoff*
Jonathan C. Aminoff

<u>**Certificate Of Compliance With Type-Volume Limitation, Typeface**</u>
<u>**Requirements, And Type Style Requirements**</u>

I hereby certify that this brief complies with that type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 2,365 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman size 14 font.

DATED: August 7, 2018                    */s/ Jonathan C. Aminoff*
                                          JONATHAN C. AMINOFF

# EXHIBIT A

# Motion for Relief From Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)(6)

HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
CRAIG A. HARBAUGH (No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
JONATHAN C. AMINOFF (No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Petitioner
JULIUS OMAR ROBINSON

**FILED**

**February 28, 2018**

KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>　　　　Defendant/Petitioner,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff/Respondent. | Civil No. 4:05-CV-756-Y<br>(Criminal No. 4:00-CR-00260-2)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Terry R. Means<br>United States District Judge<br><br>**MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)** |

18-70022.74

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>　　　　Defendant/Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff/Respondent. | Civil No. 4:05-CV-756-Y<br>(Criminal No. 4:00-CR-00260-2)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Terry R. Means<br>United States District Judge<br><br>**MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)** |

Petitioner Julius Robinson moves pursuant to Federal Rule of Civil Procedure, Rule 60(b)(6) for relief from the judgment of this Court due to the extraordinary circumstances of this case. This motion is based on the attached memorandum of points and authorities and all the files and records of this case.

Respectfully submitted,

Dated: February 9, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
CRAIG A. HARBAUGH
Deputy Federal Public Defenders

18-70022.75

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES................................................ 1

I. BACKGROUND .................................................................................................... 1

II. ARGUMENT ........................................................................................................ 2

    A.    The Lack of Due Process Afforded to Robinson Constitutes Extraordinary Circumstances Justifying Relief ............................................ 4

        1.    Robinson Was Wrongly Denied His Ability to Appeal Because This Court and the Fifth Circuit Applied an Erroneously High Standard for Obtaining a Certificate of Appealability ...................... 4

        2.    This Court Erroneously Barred Robinson From Conducting a Reasonable Investigation ................................................................. 9

        3.    This Court's Denial of Robinson's Right to Amend his Section 2255 Motion to Include His Indictment Claim was Erroneous ....... 12

            a.    Procedural History of Robinson's Request to Amend .......... 12

            b.    The Impact of *Weaver v. Massachusetts* .............................. 15

            c.    *Weaver* Represents an Intervening Change of Law by the United States Supreme Court Which Permits Consideration of This Claim Despite the Fifth Circuit's Law of the Case Doctrine ....................................................... 18

    B.    This Motion is Timely.................................................................................. 19

III. CONCLUSION .................................................................................................. 21

CERTIFICATE OF CONFERENCE ...................................................................... 22

i

18-70022.76

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Apprendi v. New Jersey,*
530 U.S. 466 (2000).................................................................................... 12, 13

*Brady v. Maryland,*
373 U.S. 83 (1963)............................................................................................ 17

*Buck v. Davis,*
137 S. Ct. 759 (2017)..................................................................................*passim*

*Christeson v. Roper,*
135 S. Ct. 891 (2015)......................................................................................... 4

*Clarke v. Burke,*
570 F.2d 824 (8th Cir. 1978) ........................................................................... 20

*First Republic Bank Fort Worth v. Norglass, Inc.,*
958 F.2d 117 (5th Cir. 1992) ...................................................................... 19, 20

*Gonzalez v. Crosby,*
545 U.S. 524 (2005)................................................................................. 1, 3, 20

*Jones v. United States,*
526 U.S. 226 (1999)................................................................................... 12, 13

*Jordan v. Fisher,*
135 S. Ct. 2647 (2015)....................................................................................... 8

*Klapprott v. United States,*
335 U.S. 601 (1949)........................................................................................... 2

*Martinez v. Ryan,*
566 U.S. 1 (2012).......................................................................................11, 20

*McKay v. Novartis Pharmaceutical Corp.,*
751 F.3d 694 (5th Cir. 2014) ........................................................................... 19

*Miller-El v. Cockrell,*
537 U.S. 322 (2003)................................................................................4, 5, 7, 8

*Neder v. United States,*
527 U.S. 1 (1999).......................................................................................13, 14

ii

18-70022.77

## TABLE OF AUTHORITIES

Page(s)

*Peña-Rodriguez v. Colorado,*
 137 S. Ct 855 (2017)........................................................................................*passim*

*Phelps v. Alameida,*
 569 F.3d 1120 (9th Cir. 2009) .......................................................................4

*Pippin v. Dretke,*
 434 F.3d 782 (5th Cir. 2005) .........................................................................5

*Plaut v. Spendthrift Farm, Inc.,*
 514 U.S. 211 (1995).......................................................................................2

*Presley v. Georgia,*
 558 U.S. 209 (2010).....................................................................................15

*Ring v. Arizona,*
 536 U.S. 584 (2002)................................................................................12, 13

*Robinson v. United States,*
 543 U.S. 1005 (2004) ..............................................................................1, 19

*Robinson v. United States,*
 565 U.S. 827 (2011).......................................................................................1

*Ruiz v. Quarterman,*
 504 F.3d 523 (5th Cir. 2007) .........................................................................4

*Seven Elves, Inc. v. Eskenazi,*
 635 F.2d 396 (5th Cir. 1981) .........................................................................3

*Steverson v. GlobalSantaFe Corp.,*
 508 F.3d 300 (5th Cir. 2007) .........................................................................2

*Strickland v. Washington,*
 466 U.S. 668 (1984)...............................................................................7, 8, 16

*Travelers Ins. Co. v. Liljeberg Enters., Inc.,*
 38 F.3d 1404 (5th Cir. 1994) .......................................................................19

*Trevino v. Thaler,*
 569 U.S. 413 (2013).....................................................................................20

*United States v. Cervantes,*
 132 F.3d 1106 (5th Cir. 1998) .......................................................................7

18-70022.78

# TABLE OF AUTHORITIES

Page(s)

*United States v. Cotton*,
535 U.S. 625 (2002).................................................................................................. 13, 16

*United States v. Fernandez*,
797 F.3d 315 (5th Cir. 2015) ........................................................................................... 3

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006).................................................................................................. 14

*United States v. Jones*,
614 F.2d 80 (5th Cir. 1980) ......................................................................................... 18

*United States v. Kalish*,
780 F.2d 506 (5th Cir. 1986) ....................................................................................... 18

*United States v. Matthews*,
312 F.3d 652 (5th Cir. 2002) ....................................................................................... 18

*United States v. Resendiz-Ponce*,
549 U.S. 102 (2007).................................................................................................. 14

*United States v. Robinson*,
2010 U.S. App. LEXIS 11675 (5th Cir. 2010)..................................................... 1, 7, 8

*United States v. Robinson*,
367 F.3d 278 (5th Cir. 2004) ............................................................................ 1, 13, 14, 18

*Vasquez v. Hillery*,
474 U.S. 254 (1986).................................................................................................. 18

*Washington v. Davis*,
2017 U.S. App. LEXIS 25832 (5th Cir. 2017)........................................................... 9

*Weaver v. Massachusetts*,
137 S. Ct. 1899 (2017)...........................................................................................*passim*

*Williams v. Pennsylvania*,
136 S. Ct. 1899 (2016)......................................................................................... 16, 17

*Williams v. Thaler*,
602 F.3d 291 (5th Cir. 2010) ............................................................................. 2, 16, 18

iv

18-70022.79

# TABLE OF AUTHORITIES

Page(s)

**Federal Rules and Statutes**

28 U.S.C.§ 2253................................................................................................ 4, 5, 6

28 U.S.C.§ 2255..................................................................................................*passim*

Federal Rule of Civil Procedure 60 ........................................................*passim*

Federal Rule of Evidence 606 ........................................................................ 10

18-70022.80

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BACKGROUND

This Court sentenced Julius Robinson to death on June 5, 2002. *United States v. Robinson*, CR-260-2, Dkt. No. 1740.  The Fifth Circuit affirmed Robinson's convictions and sentences, *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004), and the Supreme Court denied certiorari. *Robinson v. United States*, 543 U.S. 1005 (2004).

Robinson then moved, pursuant to 28 U.S.C. Section 2255, to vacate his convictions and sentences in this Court on November 29, 2005.  CR-260-2, Dkt. No. 2279.  In the course of litigating his Section 2255 motion, Robinson sought to interview the jurors from his capital trial, but the Court denied this request.  Dkt. No. 2388. Robinson then sought to amend his Section 2255 motion to include a claim raised on direct appeal regarding the adequacy of the indictment, but the Court denied this request.  Dkt. No. 2430.  Notwithstanding the government's concession that Robinson was entitled to an evidentiary hearing on his penalty-phase ineffective assistance of counsel claim (dkt. nos. 2365 at 90, 2439 at 10), the Court summarily denied Robinson's Section 2255 motion and denied his request for a certificate of appealability.  Dkt. Nos. 2453, 2473.  The Fifth Circuit affirmed, *United States v. Robinson*, 2010 U.S. App. LEXIS 11675 (5th Cir. 2010), and the Supreme Court denied certiorari, *Robinson v. United States*, 565 U.S. 827 (2011).

For over 12 years, Robinson has fought the unconstitutional denial of his due process rights to full and fair litigation of his Section 2255 claims. In the past year, the Supreme Court has issued three decisions which provide further support for the arguments Robinson has been making and establish once again that prior rulings in this case which precluded a full merits determination resulted in a "defect in the integrity of [his] federal habeas proceeding." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Specifically, the Supreme Court's decision in *Buck v. Davis*, 137 S. Ct. 759 (2017), confirms that Robinson was erroneously denied a COA, which deprived him of a merits review of his appeal.  The Supreme Court's decision in *Peña-Rodriguez v. Colorado*,

1

18-70022.81

137 S. Ct 855 (2017), confirms that Robinson was erroneously denied the opportunity to interview the jurors in his case which prevented Robinson from presenting a fully investigated Section 2255 motion to this Court, and prevented the Court from reviewing the merits of this case in its entirety.  Finally, the Supreme Court's decision in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), confirms that this Court erroneously denied Robinson's request to amend his Section 2255 motion.  Robinson moves to re-open the Section 2255 litigation to correct the defects in the integrity of the post-conviction proceedings that deprived him of a resolution of his claims on their merits.

## II.   ARGUMENT

The central concern of Federal Rule of Civil Procedure 60(b)(6) is that justice is done.  *Klapprott v. United States*, 335 U.S. 601, 615 (1949).  Accordingly, Rule 60(b)(6) "vests power in courts . . . to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Id*. at 615.  Pursuant to Rule 60(b)(6), a party can seek relief "from a final judgment, order, or proceeding" and request reopening of his case, for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 244 (1944).

The Fifth Circuit has long identified Rule 60(b)(6) "as 'a grand reservoir of equitable power to do justice in a particular case. . . .'" *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010) (quoting *Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1458 (5th Cir. 1992)); *see also Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (Rule 60(b)(6) "is a means for accomplishing justice in exceptional circumstances.") (internal citations omitted). Specifically,

2

18-70022.82

> [t]he purpose of Rule 60(b) is to delineate the circumstances under which relief may be obtained from the operation of final judgments, whether they are entered by default, [] or otherwise. By its very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of *all* the facts.

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (internal citations and quotations omitted) (emphasis added).  While finality is important, "the justice-function of the courts demands that [finality] must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.*  Thus, Rule 60(b) is "liberally construed in order to achieve substantial justice." *Id*. at 402.

Rule 60(b), "like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings" and "has an unquestionably valid role to play in habeas cases." *Gonzalez*, 545 U.S. at 534; *see, e.g., United States v. Fernandez,* 797 F.3d 315 (5th Cir. 2015) (applying Rule 60(b) in the context of an action initiated under Section 2255). District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings when such motions "attack[ ] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez*, 545 U.S. at 532.  Thus, a district court can consider a Rule 60(b) motion when a petitioner "asserts that a previous ruling which precluded a merits determination was in error — for example, a denial for such reasons as failure to exhaust, procedural default or statute-of-limitations bar." *Id*. at 532 n.4.

Rule 60(b) is particularly important where federal review of the merits of a petitioner's claims has been limited.  Accordingly, the Fifth Circuit has held that the "'main application'" of Rule 60(b) "is to those cases in which the true merits of a case

3

might never be considered" and it has "reversed where denial of relief precludes examination of the full merits of the cause," because in such instances "even a slight abuse may justify reversal." *Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007) (internal citations and quotations omitted); *see also Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009) ("a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard.").

To avail himself of relief under Rule 60(b), a petitioner must "demonstrate both the motion's timeliness and … that 'extraordinary circumstances justif[y] the reopening of a final judgment.'" *Christeson v. Roper*, 135 S. Ct. 891, 895-96 (2015) (quoting *Gonzalez*, 545 U.S. at 535).

## A. The Lack of Due Process Afforded to Robinson Constitutes Extraordinary Circumstances Justifying Relief

In the course of litigating his Section 2255 motion, Robinson has been denied: the ability to interview the jurors in his case; discovery and an evidentiary hearing; the right to amend his Section 2255 motion; and a certificate of appealability.  Intervening Supreme Court caselaw reaffirms that these denials, which precluded a full and fair merits determination, were erroneous.

### 1. Robinson Was Wrongly Denied His Ability to Appeal Because This Court and the Fifth Circuit Applied an Erroneously High Standard for Obtaining a Certificate of Appealability

To obtain a certificate of appealability ("COA"), a petitioner is required to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to meet that burden, the only issue is whether an applicant can show that "jurists of reason could disagree with the district court's resolution of his constitutional claims, or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As the Supreme Court has repeatedly held, the "established rule" for granting a COA

4

requires a court of appeals to "limit its examination to a threshold inquiry into the underlying merit of the claims,' and ask 'only if the District Court's decision was debatable.'" *Buck v. Davis*, 137 S. Ct. at 774 (citing *Miller-El*, 537 U.S. at 348). Section 2253(c)(2) sets forth a clear, "two-step process:  an initial determination whether a claim is reasonably debatable, and then — if it is — an appeal in the normal course." *Id.*  Obtaining a COA "does not require a showing that the appeal will succeed," and "a court of appeals should not decline the application . . . merely because it believes the applicant will not demonstrate an entitlement to relief." *Miller–El*, 537 U.S. at 337.  Moreover, in death penalty cases, "any doubt as to whether a COA should issue . . . must be resolved in favor of the petitioner." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

In *Buck v. Davis*, the Supreme Court's most recent case on the COA standard, the petitioner requested a COA following the denial of a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). *Buck*, 137 S. Ct. at 773.  However, rather than asking "only if the District Court's decision was debatable," *Miller-El*, 537 U.S. at 348, the Fifth Circuit "essentially decided the case on the merits" by finding that Buck had not shown the "extraordinary circumstances that would permit relief" under Rule 60(b)(6). *Id.* at 773-74.  The Supreme Court found that the Fifth Circuit's COA denial in *Buck* was based upon "ultimate merits determinations [that] the panel should not have reached." *Id.*  The Court explained that the Fifth Circuit's approach, which determined the merits of the appeal before and as part of its ultimate COA judgment, was an improper application of COA procedure:

> [T]he question for the Fifth Circuit was not whether Buck had "shown extraordinary circumstances" or "shown why [the State's actions] would justify relief from the judgment." Those are ultimately merits determinations the panel should not have reached.
>
> [. . .]

5

18-70022.85

Of course when a court of appeals properly applies the COA standard and determines that a prisoner's claim is not even debatable, that necessarily means the prisoner has failed to show that his claim is meritorious. But the converse is not true. That a prisoner has failed to make the ultimate showing that his claim is meritorious does not logically mean that he failed to make a preliminary showing that his claim was debatable. Thus, when a reviewing court (like the Fifth Circuit here) inverts the statutory order of operations and "first decid[es] the merits of an appeal, . . . then justif[ies] its denial of a COA based on its adjudication of the actual merits," it has placed too heavy a burden on the prisoner *at the COA stage. Miller-El*, 537 U.S. at 336-37. *Miller-El* flatly prohibits such a departure from the procedure described by § 2253.

*Id.* (italics in original).

As Robinson argued to this court, the Fifth Circuit, and the United States Supreme Court, these standards were not followed in Robinson's case. After summarily denying Robinson's Section 2255 motion (dkt. no. 2453), this Court, and later the Fifth Circuit, denied Robinson's request for a COA on his penalty-phase ineffective assistance of counsel claim. *See* Dkt. No. 2473; *United States v. Robinson*, No. 09-70020 (5th Cir. June 8, 2010). In response, Robinson argued that the District Court and the Fifth Circuit had effectively required Robinson to prove he would succeed on appeal before granting him the right to appeal — an approach which imposed an erroneously high standard on Robinson's COA requests, and failed to abide by the COA guidelines set forth by the Supreme Court. *Robinson v. United States*, Supreme Court Case No. 10-8146, Cert Petition filed December 22, 2010. The COA denials issued by this Court and by the Fifth Circuit in this case were improper because they were contrary to the requirements of Section 2253 and "placed too heavy a burden

18-70022.86

on [Robinson] *at the COA stage*." *Buck*, 137 S. Ct. at 774 (italics in original) (internal citations omitted).

In order to be entitled to a COA, Robinson had to establish that it was at least debatable that he was deprived of the effective assistance of counsel at the penalty phase of his trial.  This Court denied Robinson's request for a COA, finding that Robinson had failed to establish either *Strickland* prong.  Dkt. No. 2473.  Much of the Court's Order was a defense of the Court's merits denial.  *Id*. at 3-4.  The Court concluded that because "Robinson has not produced independent indicia of the likely merit of either prong… it does not appear that reasonable jurists would disagree with the denial of this claim."  *Id*. at 4.  The "independent indicia" standard is a Fifth Circuit construct that holds that a Section 2255 movant is entitled to an evidentiary hearing only if he "produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties."  *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).  In support of his Section 2255 motion, Robinson filed over 40 declarations from third parties, but the Court found that some of Robinson's declarants were not reliable.  *See, e.g.,* Dkt. No. 2453 at 26 (finding witness's "credibility is questionable").  By definition, questionable credibility is at least debatable, and thus a COA should have issued.  *Miller-El*, 537 U.S. at 336-37.

On review of Robinson's request for a COA, the Fifth Circuit skipped an analysis of the deficient performance prong, and instead decided that even if Robinson could establish deficient performance, he could not establish prejudice.  *United States v. Robinson*, 2010 U.S. App. LEXIS 11675 (5th Cir. 2010).  Yet in so doing, the Fifth Circuit engaged in the same improper pattern that the Supreme Court has repeatedly condemned.  For example, the Fifth Circuit decided that despite Robinson's specifically named deficiencies in the trial attorneys' representation, "no reasonable jurist would find that Robinson was prejudiced by the [] alleged deficiencies."  *Id*. at *11.  Similarly, the Fifth Circuit found that trial counsel was not ineffective for failing to

7

18-70022.87

challenge the future dangerousness evidence because "no jurist of reason would believe that a dent in that evidence, which Robinson alleges, would have created a reasonable probability of a different verdict." *Id* at \*11-12. And these are not isolated examples. *See id.* at \*14 ("Robinson's case for a difficult childhood's mitigating his culpability is far less compelling than the showing in recent cases in which the Supreme Court found the omission of mitigation evidence prejudicial. … No reasonable jurist would find [the mitigation evidence's] omission prejudicial.").

Thus, the Fifth Circuit's sole reason for denying a COA is its belief that Robinson failed to establish prejudice — i.e., that he failed to win his *Strickland* claim on the merits. Yet as the *Buck* Court makes clear, it was error for the Fifth Circuit to make such merits determinations and *then* deny Robinson a COA. Whether a reasonable jurist would find prejudice is the ultimate issue to be decided. At the COA stage, the only relevant inquiry is whether reasonable jurists would debate whether Robinson could establish prejudice. "Indeed, a claim can be debated even though every jurist of reason might agree, after the COA has been granted and the case received full consideration, that the petitioner will not prevail." *Miller-El*, 537 U.S. at 338.

The improper standard applied by the Fifth Circuit in *Buck* and in this case has been repeated in other cases. Since the Fifth Circuit's erroneous denial of Robinson's COA motion, the Supreme Court has continued to overturn Fifth Circuit COA denials, and recently referenced the Fifth Circuit's "troubling" pattern of misapplying Supreme Court precedent in denying COA's. *See, e.g., Jordan v. Fisher*, 135 S. Ct. 2647, 2652 n.2 (2015) (Sotomayor, J., dissenting from the denial of certiorari). The Fifth Circuit's practice has been to conduct "a detailed evaluation of the merits and then conclude[] that because [the petitioner] had "fail[ed] to prove" his constitutional claim, a COA was not warranted." *Fisher*, 135 S. Ct. at 2652 (Sotomayor, J., dissenting); *see e.g. Miller-El*, 537 U.S. 322. The Supreme Court in *Buck v. Davis* once again noted this pattern. *See* 137 S. Ct. at 773 ("The court below phrased its determination in proper terms — that jurists of reason would not debate that Buck should be denied relief, but it reached

8

18-70022.88

that conclusion only after essentially deciding the case on the merits.") (citation to Fifth Circuit opinion omitted).

However, since *Buck v. Davis*, the Fifth Circuit appears to be making efforts to correct its approach. *See, e.g., Washington v. Davis*, 2017 U.S. App. LEXIS 25832, at *6-7 (5th Cir. 2017). In *Washington*, the panel granted a COA on several procedurally defaulted claims of ineffective assistance of counsel. *Id.* at *8-10. The panel acknowledged that the recent *Buck* decision made clear that "[w]hen a court of appeals sidesteps [the COA] process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication on the actual merits, it is . . . deciding an appeal without jurisdiction." *Id.* at *6 (citing *Buck*, 137 S. Ct. at 773). The panel also found that even though "[t]he State argues — with persuasive force — that the foregoing claims are unlikely to succeed on the merits," such disagreement between the State and defense "proves that Washington's claims are 'debatable' and thus warrant a COA." *Id.* at *11.

The analysis applied by the Fifth Circuit in *Washington* is in accordance with the standards set forth in *Buck*, and is the standard that the Court should have applied in Robinson's case. The Supreme Court's rejection of the Fifth Circuit's long-standing pattern of misapplying the COA standards is an "extraordinary circumstance" justifying re-opening this case under Rule 60(b)(6) and allowing Robinson to move for a COA.

**2.     This Court Erroneously Barred Robinson From Conducting a Reasonable Investigation**

After filing his initial Section 2255 motion, Robinson moved for permission to interview the jurors. Dkt. No. 2385. This Court denied Robinson's request, finding that Robinson had not provided any evidence that merited allowing Robinson to investigate possible juror misconduct. Dkt. No. 2388 at 2.

However, the Supreme Court's recent decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), supports Robinson's case for interviewing the jurors and demonstrates the error of this Court's decision. In that case, Peña-Rodriguez's counsel

9

18-70022.89

was permitted to speak with the jurors, and two jurors informed counsel that another juror had expressed anti-Hispanic bias toward the defendant and his alibi witnesses. *Id.* at 861.  Defense counsel ultimately submitted signed affidavits from those jurors, which memorialized the racist comments made by another juror. *Id.* at 862.  Despite this evidence of juror misconduct the trial court denied the defense motion for a new trial, finding that the affidavits were not admissible to impeach the verdict under Colorado's equivalent to Federal Rule of Evidence 606(b), which renders inadmissible virtually any post-verdict juror statement concerning the contents of the jury's deliberations. *Id.* at 862.  The Colorado Supreme Court affirmed, and the Supreme Court granted certiorari to decide if racial bias should be an exception to the general, firmly rooted provisions behind Rule 606(b). *Id.* at 862-63.  The Supreme Court reversed, finding that the Sixth Amendment requires that the no-impeachment rule give way in order to permit a trial court to consider evidence that a juror relied on racial stereotypes or animus to convict a criminal defendant. *Id.* at 869.  The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Id.* at 871.

It is uncontroverted that the death penalty has a long history of racial injustice. Indeed, just last term the Supreme Court reversed a Texas capital conviction in which a man's death sentence may have been based on his race. *Buck*, 137 S. Ct. at 778. Similarly, Julius Robinson is a black man who was capitally prosecuted in Texas — a state which leads the nation in federal capital convictions.  Of the 13 federal capital convictions from the state of Texas, 9 defendants are black, 2 are white, and 2 are Latino.[1]  Robinson was tried before a jury of 11 white people and 1 black man, whom

---

[1] These numbers were taken from the Death Penalty Information Center's website.  Available at: https://deathpenaltyinfo.org/federal-death-row-prisoners#list. These numbers include Louis Jones and Juan Garza, both of whom have been executed.

10

18-70022.90

the defense had unsuccessfully moved to strike for cause.  Additionally, the Government was permitted to strike 7 of the 8 black jurors questioned during voir dire.  Given the severity of Robinson's sentence, and the racial undertones of this capital prosecution, Robinson should be permitted to conduct an investigation no more intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences.

The Supreme Court noted in *Peña-Rodriguez* that the "practical mechanics of acquiring and presenting [evidence of juror bias] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id.* at 869.  In Texas, however, Local Criminal Rule 24.1 prevents any contact between the parties and a juror absent permission of the court.  This leaves Robinson entirely at the whim of the jurors and without a mechanism, practical or otherwise, for even investigating the type of misconduct at issue in *Peña-Rodriguez.*

Ultimately the *Peña-Rodriguez* case emphasizes that the specter of racial bias is an issue so repulsive that exceptions should be made to general rules to ensure that racism has not influenced criminal convictions or sentences.  The Supreme Court has also emphasized the importance of investigation in the post-conviction context.  *See, e.g., Martinez v. Ryan*, 566 U.S. 1, 13 (2012) (explaining that post-conviction ineffective assistance of counsel claims can require extensive investigation such that an inmate's ability to file such a claim is significantly diminished absent the assistance of post-conviction counsel).  On balance, *Peña-Rodriguez* establishes that rules such as Local Criminal Rule 24.1 must allow criminal defendants an ability to investigate issues such as racial bias, and Robinson was deprived of this right.  Robinson's inability to adequately investigate his case prevented a full and fair merits determination, which warrants re-opening the proceedings under Rule 60(b) and permitting Robinson to move the Court for an order growing Robinson access to the jurors from his trial.

11

18-70022.91

**3. This Court's Denial of Robinson's Right to Amend his Section 2255 Motion to Include His Indictment Claim was Erroneous**

**a. Procedural History of Robinson's Request to Amend**

Prior to Robinson's trial, the Supreme Court held in *Jones v. United States*, 526 U.S. 226 (1999), that with respect to federal criminal prosecutions, the Fifth Amendment's Due Process Clause and the Sixth Amendment's notice and jury trial guarantees require that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt. The Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) extended the *Jones* holding, with the exception of the indictment requirement, to state prosecutions under the Fourteenth Amendment.

When Robinson was tried, the Federal Death Penalty Act required that the Government present its aggravating factors to the petit jury, but did not require that they be charged by a grand jury in an indictment. As a result, the statutory aggravating factors that made Robinson eligible for death were not charged via indictment, and the grand jury returned an indictment charging only non-capital offenses. Regardless, the Government pursued the death penalty and presented statutory aggravating factors to the petit jury that were not subject to the Fifth Amendment's indictment clause.

Robinson filed a pretrial motion to disqualify the death penalty because the aggravating factors had not been presented to the Grand Jury. Dkt. No. 1443. This Court denied the defense motion, finding that the aggravating factors did not need to be presented to the jury because they "are merely sentencing factors, rather than facts that would enhance his punishment beyond that contemplated by the grand jury." Dkt. No. 1575 at 2 (citing *Apprendi*, 530 U.S. at 494 and n. 19).

Shortly after Robinson was sentenced to death, the Supreme Court issued *Ring v. Arizona*, 536 U.S. 584 (2002), which extended *Jones* and *Apprendi* and held that where an aggravating factor renders a defendant eligible for death, it is "the functional equivalent of an element of a greater offense" and therefore must be proven to a jury

12

18-70022.92

beyond a reasonable doubt. *Id.* at 609. And as an element of a greater offense, the aggravating factor must be charged in an indictment. *Jones*, 526 U.S. at 243 n. 6; *Apprendi*, 530 U.S. at 476.

On appeal, Robinson re-raised this issue, arguing that *Ring* established what Robinson had contended all along — that the Fifth Amendment required statutory aggravating factors to be presented to the grand jury and charged in the indictment. The Government conceded that Robinson's Fifth Amendment rights had been violated. The controversial issue, however, was whether the constitutional violation was a structural error, as Robinson argued[2], or was subject to harmless error review, as the Government claimed. The Fifth Circuit agreed with Robinson's argument that "the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty, and its failure to do so in this case is constitutional error." *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004). Nevertheless, the court deemed this "constitutional error" non-structural, and ruled that the harmless-error analysis applied. *Id.* at 285.

In finding that the Government's failure to include statutory aggravating factors in the indictment was not structural error, the Fifth Circuit relied on *Neder v. United States*, 527 U.S. 1, 8 (1999), wherein the Supreme Court explained that structural errors tend to involve a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Robinson*, 367 U.S. at 285 (quoting *Neder*, 527 U.S. at 8). The court then examined *United States v. Cotton*, 535 U.S. 625 (2002), where the Supreme Court applied the plain error test to a forfeited claim that the government had failed to allege a fact that increased the statutory maximum

---

[2] Robinson has continually maintained that the indictment error that occurred in his case is a structural error. *See, e.g., United States v. Robinson*, Fifth Circuit Case No. 02-10717, Reply Brief filed 12/11/2003.

13

18-70022.93

sentence in the indictment and found that the error did not affect the "fairness, integrity, or public reputation" of the proceedings. *Robinson*, 367 F.3d at 286 (quoting *Cotton*, 535 U.S. at 632-33). Reconciling the two cases, the Fifth Circuit held that if Cotton's indictment claim did not affect the fairness of the proceedings, then it could not be the type of structural error that the *Neder* Court described as "one that necessarily 'deprive[s] defendants of basic protections without which … no criminal punishment may be regarded as fundamentally fair.'" *Robinson*, 367 F.3d at 286 (quoting *Neder*, 527 U.S. at 8-9) (alterations in original). Applying the harmless error standard, the Fifth Circuit found that Robinson received adequate notice of the aggravating factors via the Government's "notice of intent to seek the death penalty," and although the court recognized its limitation in correcting this error on appeal, it found that any rational grand jury would have charged Robinson with the aggravating factors. *Id.* at 287-88.

After his conviction became final, Robinson moved to vacate his convictions and sentences under 28 U.S.C. Section 2255. Undersigned appointed counsel, however, had only four months to investigate the case and file the motion before the one-year statute of limitations would expire. After timely filing the Section 2255 motion, appointed counsel moved to amend the motion to include Robinson's indictment claim, arguing that intervening Supreme Court case law cast doubt over the Fifth Circuit's prior denial of the claim. Robinson's argument was that the Supreme Court's decisions in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), and *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), further clarified what constitutes a structural error, and they demonstrate that the Fifth Circuit's decision was erroneous. Dkt. No. 2422. The Court denied Robinson's request to amend, finding that because the new case law did not squarely address the issue, the cases were irrelevant. Additionally, the Court held that because the cases were not retroactive, they could not impact Robinson's case, which became final on direct review. *Id.* at 3. The Court subsequently denied Robinson's Section 2255 motion. Dkt. Nos. 2453, 2454.

14

**b.      The Impact of *Weaver v. Massachusetts***

On June 22, 2017, the Supreme Court issued *Weaver v. Massachusetts*, 582 U.S. ___, 137 S. Ct. 1899 (2017), in which the defendant claimed his trial attorney had been ineffective for failing to object when the trial court barred the public from portions of the jury selection process, in violation of his right to a public trial under *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam).  There was no dispute that Weaver's right to a public trial had been violated and that such error is structural.  At issue, however, was whether in the context of trial counsel's failure to object to the closure of the courtroom, Weaver needed to show prejudice to establish his ineffective assistance of counsel claim, or if prejudice would simply be presumed because the error that counsel failed to object to was structural.  *Id*. at 1907.

The Court began with its most expansive definition of structural errors to date, explaining that structural errors tend to arise in three circumstances.  "First, an error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest."  *Id*. at 1908.  The Court provided a defendant's right to self-representation as an example of this type of structural error.  "Second, an error has been deemed structural if the effects of the error are simply too hard to measure."  *Id*.  The denial of a defendant's right to select her own attorney is an example of this type of structural error.  *Id*.  And "[t]hird, an error has been deemed structural if the error always results in fundamental unfairness."  *Id*.  The denial of an indigent defendant's right to counsel is one such example.  *Id*.  Notwithstanding these three rationales, the Court cautioned that these categories are not rigid and explained: "one point is critical: An error can count as structural even if the error does not lead to fundamental unfairness in every case."  *Id*.  After reaffirming that the error there was structural, and the reasons therefore, the Court set out to decide the remedy for a structural error not objected to at trial and raised on appeal via an ineffective assistance of counsel claim.  The Court ultimately held that this error, when raised via an ineffective assistance claim, required a showing of

15

prejudice under *Strickland v. Washington,* 466 U.S. 668 (1984). Part of the Court's reasoning was based on the value of preserving a claim and raising it on direct review versus forfeiting the claim and raising it in a collateral proceeding. The Court explained that the former allows the trial court to correct its error or explain its reasoning, while the latter deprives the trial court of any ability to cure the error and generally comes to light years after the fact. *Id.* at 1912.

*Weaver* casts serious doubt on the Fifth Circuit's decision in this case in two significant ways. First, *Weaver* reiterated yet again the value of not waiving a valid claim for appeal. Had Weaver's counsel simply preserved a claim challenging the structural error present in his case, Weaver would have been entitled to a new trial. Yet contrary to the approach in *Weaver*, the Fifth Circuit's decision in *Robinson* equated waived claims with non-waived claims. In relying on *Cotton*, a case about a defective indictment claim which was not preserved for appeal, the Supreme Court applied plain error review. The Fifth Circuit expanded that logic to Robinson's non-waived indictment error claim, overlooking the significance of Robinson's preservation of his claim. In essence, the Fifth Circuit treated Robinson's claim as if it were not preserved for appeal, and *Weaver* affirms that this was erroneous. There is no logical basis for treating Robinson as if his claim was waived; Robinson gave the Court the opportunity to correct the Government's error, and the Government had the ability to supersede its indictment. Yet, this did not occur, and the result should not affect Robinson's ability to defend his rights. Second, *Weaver* establishes that structural errors do not always implicate fairness. But the Fifth Circuit's analysis of whether Robinson's claim was structural depended almost entirely on "fundamental fairness."

In addition to *Weaver*, the Supreme Court's recent decision in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), reinforces the veracity of Robinson's argument. In *Williams*, the issue was whether a claim of judicial bias qualified as a structural

16

18-70022.96

error.  There, Williams had won post-conviction relief on a *Brady*[3] claim in the state trial court.  The state appealed to the Pennsylvania Supreme Court, whose chief justice had previously been the District Attorney at the time of Williams' trial and authorized seeking capital punishment against Williams.  *Id*. at 1903-05.  Williams responded to the state's pleadings in the state supreme court and filed a motion asking the chief judge to recuse himself, or if he declined to have the full court consider the recusal motion.  The chief judge denied the motion and the full court, including the chief judge, reversed the lower court's grant of post-conviction relief and reinstated the death penalty against Williams.  *Id*. at 1905.  On review to the Supreme Court, the Court held that the chief justice's failure to recuse himself violated Williams' Fourteenth Amendment due process rights.  The Court held that because the judge had a significant, personal involvement as a prosecutor in the defendant's case, there was an impermissible risk of actual bias.  *Id*. at 1905.  The Court then had to decide if this due process violation amounted to structural error.  The novel issue in this case was the fact that the Court was looking at one possibly biased jurist on a multi-judge panel and the biased jurist's vote was not outcome determinative.  *Id*. at 1909.  While it might seem obvious that a prejudice analysis could simply examine whether the biased judge's vote was outcome determinative, the Court rejected this explaining that the deliberations of an appellate panel are generally confidential and thus "it is neither possible nor productive to inquire whether the jurist in question might have influenced the views of his or her colleagues during the decision making process."  *Id*.  The Court continued that even if the disqualified judge's vote was totally unnecessary to the outcome of the case, "[t]hat outcome does not lessen the unfairness to the affected party" of having a biased jurist decide his case.  *Id*.

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

18-70022.97

The Supreme Court's ruling that it is neither possible nor productive to inquire into the interworkings of proceedings that are confidential runs contrary to the Fifth Circuit's inquiry into the confidential grand jury proceedings in Robinson's case and how they might have voted had a statutory aggravating factor been presented to them. *See Robinson*, 367 F.3d at 288 ("any rational grand jury would find probable cause to charge Robinson with at least one of the statutory aggravating factors omitted from his indictment."); *see also Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (finding racial discrimination in the selection of grand jurors to be a structural error because "even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come."). Indeed, the Court's analysis in *Williams* establishes that the indictment error at issue in Robinson is structural because it falls under *Weaver's* rubric of an error whose effects are "simply too hard to measure." *Weaver,* 137 S. Ct. at 1908.

      **c.**    ***Weaver* Represents an Intervening Change of Law by the United States Supreme Court Which Permits Consideration of This Claim Despite the Fifth Circuit's Law of the Case Doctrine**

The Fifth Circuit has created a rule that bars Section 2255 litigants from raising claims that were previously denied on appeal. *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980); *United States v. Kalish*, 780 F.2d 506 (5th Cir. 1986). This Court cited that rule, which is akin to the law of the case doctrine, in response to Robinson's motion to amend, and that rule will surely be in play when considering this motion. However, the law of the case doctrine is subject to three exceptions: (1) the evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *United States v. Matthews*, 312 F.3d 652, 657 (5th

18

18-70022.98

Cir. 2002). *Weaver* satisfies the second exception and establishes that the earlier decision is clearly erroneous, and would manifest injustice especially considering that this is a death-penalty case. As such, the denial of amendment should be reconsidered in light of these recent cases.

### B.      This Motion is Timely

Robinson has diligently pursued his rights. He timely appealed his convictions and sentences in this Court and timely filed his Section 2255 motion and related appeals. When those actions were all denied, Robinson timely filed a petition in the Inter-American Commission on Human Rights. *Robinson v. United States*, P-561-12.

Robinson has filed this motion under Federal Rule of Civil Procedure, Rule 60(b)(6). A motion brought pursuant to Rule 60(b)(6) must be filed within a reasonable time to be considered timely. Rule 60(c)(1). "The timeliness of the motion is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *First Republic Bank Fort Worth v. Norglass, Inc.,* 958 F.2d 117, 120 (5th Cir. 1992). Once a party has grounds to make a Rule 60(b) motion, however, they must bring the motion reasonably promptly, though "the determination of reasonableness is less than a scientific exercise." *Id.* at 121.

The Fifth Circuit has held that "[a] district court is provided wide discretion in determining whether a Rule 60(b) motion is filed within a reasonable time." *McKay v. Novartis Pharmaceutical Corp.,* 751 F.3d 694, 701 n. 5 (5th Cir. 2014) (citations omitted). In this inquiry, the "particular facts of the case in question" determine whether a motion has been timely filed. *Id.* Further, in determining whether a motion has been filed within a reasonable time, the Fifth Circuit instructs that district courts should consider: (1) "the interest in finality;" (2) "the reason for delay;" (3) "the practical ability of the litigant to learn earlier of the grounds relied upon;" and (4) "prejudice to other parties." *Travelers Ins. Co. v. Liljeberg Enters., Inc.,* 38 F.3d 1404, 1410 (5th Cir. 1994) (internal citations and quotation marks omitted).

19

The interest in finality has been minimized by the Supreme Court in the context of a Rule 60(b) motion because the purpose of Rule 60(b) is to create an exception to finality. *Gonzalez*, 545 U.S. at 520 ("[Finality], standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality."). Setting aside the first factor, Robinson has good reason for any delay, as this motion is largely based upon three recent Supreme Court decisions —*Buck*, *Peña-Rodriguez, Weaver* — which were issued less than a year from the date of filing this motion. The third factor also weighs in Robinson's favor because he obviously could not have known how these decisions would impact his case before the Supreme Court issued their opinions. Indeed, the Fifth Circuit has legitimized waiting for subsequent decisions to be issued before filing a Rule 60(b) motion. *See First Republic Bank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120-21 (5th Cir. 1992) (citing, with approval, *Clarke v. Burke*, 570 F.2d 824, 831-32 (8th Cir. 1978) (where the "movants acted reasonably in waiting for the district court's decision in a later, but related, case before filing the Rule 60(b) motion because it was the unfavorable ruling in the later case that precipitated the need for the Rule 60(b) motion."). Finally, the government will not suffer prejudice if the Court grants this motion. While the Supreme Court opinions upon which this motion is based are new, the underlying issues have been previously argued in this case. As a result, the government should be familiar with these issues and not prejudiced by the timing of this motion.

Returning to *Buck v Davis,* the Supreme Court overturned the Fifth Circuit's denial of a COA and found that Buck had demonstrated entitlement to relief under Rule 60(b)(6). 137 S. Ct. 759 (2017). The Supreme Court reached this decision notwithstanding that Buck's motion primarily relied on the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), but was filed almost two years after *Martinez* was decided and 8 months after *Trevino* was decided. *Id.* at 767, 771. Robinson's motion is being filed less than one year after *Buck* was decided and approximately seven months after *Weaver* was decided. *Buck*

18-70022.100

establishes that Robinson has filed his motion within a reasonable time, and the Court should exercise its discretion and find Robinson's motion timely.

### III.   CONCLUSION

For all of the foregoing reasons, Robinson respectfully requests that the Court grant this motion.

Respectfully submitted,

Dated:  February 9, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
CRAIG A. HARBAUGH
Deputy Federal Public Defenders

21

18-70022.101

## CERTIFICATE OF CONFERENCE

Counsel for Julius Robinson, Celeste Bacchi and Jonathan Aminoff, and counsel for the government, Alex Lewis, conferred on February 9, 2018.  Counsel for Robinson had e-mailed counsel for the government a brief summary of the contents of this motion on February 8 such that the parties could more meaningfully discuss the issues.  An agreement could not be reached, however, due to disagreement over the issues in question and the government opposes this motion.

Dated:  February 9, 2018                          */s/ Jonathan C. Aminoff*
                                                  JONATHAN C. AMINOFF

18-70022.102

# EXHIBIT B

# Government's Response to Rule 60 Motion

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JULIUS OMAR ROBINSON,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

No.    4:05-CV-756-Y
       (4:00-CR-260-Y-2)

## <u>GOVERNMENT'S RESPONSE TO RULE 60 MOTION</u>

Respectfully submitted,

Erin Nealy Cox
United States Attorney

<u>s/ Timothy W. Funnell</u>
Timothy W. Funnell
Assistant United States Attorney
Wisconsin State Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102-6897
Phone 817-252-5252
tim.funnell@usdoj.gov

18-70022.109

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

GOVERNMENT'S RESPONSE TO RULE 60 MOTION .................................................. 1

STATEMENT OF THE CASE ................................................................................ 1

STATEMENT OF THE ISSUES ............................................................................. 5

ARGUMENT AND AUTHORITES .......................................................................... 5

STANDARD OF REVIEW .................................................................................... 5

DISCUSSION ................................................................................................... 8

    1.    Robinson's resort to Rule 60(b)(6) is unavailing ......................................... 8

        A.    Robinson's circumstances are not remotely similar to those that the Supreme Court in *Buck* found extraordinary under Rule 60(b)(6) ............................................................... 9

        B.    Because the exception recognized in *Peña-Rodriguez* does not apply here, it cannot support Robinson's claim under Rule 60(b)(6) .......................................................... 15

        C.    Robinson cannot demonstrate extraordinary circumstances arising from *Weaver* to justify relief under Rule 60(b)(6) ............... 20

        D.    Robinson's motion is untimely ....................................................... 23

CONCLUSION ................................................................................................. 24

CERTIFICATE OF SERVICE ................................................................................ 25

18-70022.110

## TABLE OF AUTHORITIES

**Federal Cases**                                                                        **Page(s)**

*Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010) ............................................................... 7

*Buck v. Davis*, 137 S. Ct. 759 (2017) ........................................................8, 9, 10, 11

*Davis v. Kelley*, 855 F.3d 833 (8th Cir. 2017)............................................................... 12

*Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013) ............................................................... 21

*Dillingham v. Jenkins*, No. 17-3813, 2017 WL 5438882 (6th Cir. 2017).......................... 15

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ............................................................5, 6, 7, 20

*Haynes v. Quarterman*, 526 F.3d 189 (5th Cir. 2008) ....................................................... 4

*In re Coleman*, 768 F.3d 367 (5th Cir. 2014)...............................................................7, 14

*In re Edwards*, 865 F.3d 197 (5th Cir. 2017) .............................................................*passim*

*Lambrix v. Sec'y Dep't of Corr.*, 851 F.3d 1158 (11th Cir. 2017) ..................................... 12

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) .............................. 11

*Miller v. Mays*, 879 F.3d 691 (6th Cir. 2018)................................................................... 11

*Miller-El v. Cockrell*, 537 U.S. 322 (2003)...............................................................4, 10

*Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017); .......................................8, 16, 17, 18

*Ruiz v. Davis*, 850 F.3d 225 (5th Cir. 2017)................................................................... 13

*United States v. Fleming*, 2017 WL 3411920 (S.D. Tex. June 21, 2017)......................... 10

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) .............................................20, 21

*United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002) .........................................15, 23

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ................................................... 20

*United States v. Robinson*, 367 F.3d 278, *cert. denied*, 543 U.S. 1005 (2004)................... 1

18-70022.111

**Federal Cases (cont.)** **Page(s)**

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) ..............................................8, 20, 21, 22

*Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) ......................................................20, 22

**Federal /State Statutes and Rules**

28 U.S.C. § 2244 ........................................................................................................ 6

28 U.S.C. § 2255(h) .................................................................................................... 6

Fed. R. Civ. P. 60(b)(6) ............................................................................................. 5

Colorado Rule of Evidence 606(b) ........................................................................... 17

18-70022.112

### GOVERNMENT'S RESPONSE TO RULE 60 MOTION

Robinson's motion should be denied because it fails to meet the restrictive standards for relief under Rule 60(b)(6). To the extent that it raises new claims, it should be transferred to the Fifth Circuit as a second or successive motion under Section 2255.

### STATEMENT OF THE CASE

In March 2002, a jury found Robinson guilty of the murders of Johnny Lee Shelton and Juan Reyes and of complicity in a criminal enterprise resulting in the death of Rudolfo Resendez. (CR No. 1641.)[1] In June 2002, the Court accepted the jury's recommendation and sentenced Robinson to death for the murders of Shelton and Reyes and life in prison for the death of Resendez. (CR No. 1740.) In 2004, the Fifth Circuit affirmed the judgment and the Supreme Court denied review. *See United States v. Robinson*, 367 F.3d 278 (5th Cir.), *cert. denied*, 543 U.S. 1005 (2004).

In November 2005, Robinson filed his first motion for post-conviction relief under Section 2255. (CR No. 2279.) He claimed that he received ineffective assistance of trial counsel, was denied equal protection and due process, and was entitled to a new trial. (CR Nos. 2279; 2422; 2432.) Over the ensuing months and years, he supplemented his post-conviction claims with additional arguments and evidence, and ultimately, the Section 2255 filings before the Court included his initial motion, the government's response, his reply, his amendment to the motion, his supplemental pleading, the

---

[1] "CR No. __" refers to the docket of the criminal proceeding and "CV No. __" refers to the docket of this Section 2255 action.

1

18-70022.113

government's response to the supplemental pleading, and his reply in support of his supplemental pleading.  (CR Nos. 2279; 2365; 2380; 2422; 2432; 2439; 2443.)

In January 2008, the Court denied Robinson's request to amend his Section 2255 motion by adding a defective-indictment claim.  (CR No. 2430.)  The Court determined that the issue was barred because it was decided adversely on direct appeal; the recent Supreme Court cases that Robinson cited were inapplicable; and even if the cases did apply, they demonstrated procedural error that was not retroactively applicable on collateral review to a final judgment like Robinson's.  (*Id.* at 2-4.)

In November 2008, the Court issued a 46-page memorandum opinion and written order denying Robinson's Section 2255 motion.  (CR No. 2453.)  It concluded that an evidentiary hearing was unnecessary because "the record . . . , including the exhibits submitted by Robinson with his motion, [did] not create any contested fact issues that [were required to] be resolved in order to decide Robinson's claims."  (*Id.* at 45.)  It further explained that an evidentiary hearing was not required for the following reasons:

> With regard to the claims for which Robinson has submitted additional evidence, the Court has decided these claims either by assuming that everything Robinson alleges is true or based on legal, not factual, bases.  Accordingly, because the record before this Court shows conclusively that Robinson is not entitled to relief, his request for an evidentiary hearing is denied.

(*Id.* at 45-46.)  Having assumed the truth of Robinson's factual allegations, the Court concluded that each of his claims lacked merit.  (*See generally id.* at 14-45.)

Robinson moved for reconsideration, claiming that the Court's denial of an evidentiary hearing was a "manifest error of law."  (CR No. 2456 at 3.)  The government

2

18-70022.114

opposed the motion, (CR No. 2464), and on February 17, 2009, the Court issued an order denying reconsideration, (CR No. 2465).  First, it observed that because the cases cited by Robinson were inapplicable, its decision to deny relief was not manifestly wrong.  (*Id.* at 2-4.)  Next, it rejected each of Robinson's points of error, repeating its earlier determination that an evidentiary hearing was unnecessary because the claims were conclusively resolved based on (i) legal questions and (ii) facts that were undisputed or assumed be true as Robinson had alleged.  (*Id.* at 4-7.)  The Court made clear that an evidentiary hearing was pointless because its analysis did not suffer from factual gaps or disputes:

> As the Court held in its memorandum opinion and order denying Robinson's motion to vacate (Doc. #2453), the record before this Court, including the exhibits submitted by Robinson with his motions, do not create any contested fact issues with regard to Robinson's insufficiency-of-counsel claims that must be resolved in order to decide his case.  To the contrary, many of Robinson's claims are based on the record from the trial. And, with regard to the claims for which Robinson has submitted additional evidence, the Court has decided these claims based on uncontested allegations of fact and, where facts are contested, by assuming that what Robinson alleges is true, or based on legal, not factual, bases. Accordingly, because the record before this Court shows conclusively that Robinson is not entitled to relief, his motion to reconsider the Court's denial of his request for an evidentiary hearing on his remaining claims for relief is DENIED.

(*Id.* at 7.)

In conjunction with Robinson's Section 2255 motion—and of relevance here—he moved for permission to interview jurors during the post-conviction proceedings.  (CR No. 2385.)  The government opposed the motion, (CR No. 2387), and in a written order,

3

18-70022.115

the Court denied the request without a hearing, (CR No. 2388).  It explained that Robinson did "not state that he ha[d] any reason to suspect that his jury was actually partial, but merely point[ed] to the importance of his right to an impartial jury under the Sixth Amendment and argue[d] that he ha[d] no other way of discovering whether this right has been violated than to interview his trial jurors." (*Id.* at 1.)  It also rejected his alternative request to interview a prospective-but-excused juror regarding a potential *Batson* violation.  (*Id.* at 1, 4.)  It determined that Robinson's hypothetical *Batson* challenge was unrelated to the prosecutor's state of mind in exercising the peremptory strike, and thus, "the requested permission for a post-trial interview of this prospective juror would appear neither useful to a *Batson* analysis nor necessary to protect any of [Robinson]'s rights." (*Id.* at 4.)

In April 2009, Robinson moved for a certificate of appealability ("COA") from the denial of Section 2255 relief.  (CR No. 2467.)  The Court issued a written order denying Robinson's request for a COA.  (CR No. 2473.)  In it, the Court applied Supreme Court and Fifth Circuit precedent governing the COA determination, including *Miller-El v. Cockrell*, 537 U.S. 322 (2003), and *Haynes v. Quarterman*, 526 F.3d 189 (5th Cir. 2008). (*See generally id.*)

Having been denied post-conviction relief and a COA by this Court, Robinson moved the Fifth Circuit for authorization to appeal.  In June 2010, the Fifth Circuit denied Robinson's request for a COA, and in August 2010, it denied his petition for panel rehearing and rehearing en banc.  (*See* CV Nos. 5-6.)  Robinson then sought relief before the Supreme Court, which denied certiorari review on October 3, 2011.  (*See* CV No. 7.)

4

18-70022.116

On February 9, 2018, more than six years and four months after the denial of certiorari, Robinson filed the Rule 60(b)(6) motion at issue here.  (CV No. 10.)

## STATEMENT OF THE ISSUES

Rule 60(b)(6) authorizes relief from final judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Robinson contends that this provision permits him to raise the following challenges to the denial of Section 2255 relief:

- First, that this Court and the Fifth Circuit applied an "erroneously high standard" in denying his "request for a COA on his penalty-phase ineffective assistance of counsel claim."  (CV No. 10 at 4-9.)

- Second, that this Court "erroneously barred [him] from conducting a reasonable investigation" when it denied his motion to interview jurors.  (*Id.* at 9-11.)

- Third, that the indictment suffered from "structural error" because it did not include "aggravating factors," so this Court's "denial of [his] right to amend his Section 2255 motion to include his [defective] indictment claim was erroneous." (*Id.* at 12-19.)

## ARGUMENT AND AUTHORITIES

### Standard of Review

Robinson's instant motion relies exclusively on Rule 60(b)(6), which "is a catchall provision that allows a court to grant relief 'from a final judgment, order, or proceeding' for 'any other reason that justifies relief.'"  *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (quoting Fed. R. Civ. P. 60(b)(6)).  To succeed, movants under Rule 60(b)(6) "must show: (1) that the motion [was] made within a reasonable time; and (2) extraordinary circumstances exist that justify the reopening of a final judgment."  *Id.* (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

5

In addition, "[b]ecause of the comparative leniency of Rule 60(b), petitioners sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *Id.* (citing as exemplary *Gonzalez*, 545 U.S. at 531-32).  In that regard, the determinative inquiry is whether "the Rule 60(b) motion seeks to advance new claims or seeks instead to show a non-merits-based defect in the district court's earlier decision on the federal habeas petition." *Id.*  Thus, a district court "examining a Rule 60(b) motion should determine whether [the motion] either: (1) presents a new habeas *claim* . . . , or (2) 'attacks the federal court's previous resolution of a claim *on the merits*.'" *Id.* (quoting *Gonzalez*, 545 U.S. at 530) (emphasis in original).  A purported Rule 60(b) motion that does either of these "should be treated as a successive habeas petition and subjected to AEDPA's limitation on such petitions." *Id.*; *see also* 28 U.S.C. §§ 2244 & 2255(h).[2]

"A federal court resolves a [habeas] claim on the merits when it determines that there are or are not 'grounds entitling a petitioner to habeas corpus relief . . . ,' as opposed to when a petitioner alleges 'that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.'" *Id.* at 204 (quoting *Gonzalez*, 545 U.S. at 3).  Again, "to bring a proper Rule 60(b) claim, a movant must show 'a non-merits-

---

[2] In particular, "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h).

18-70022.118

based defect in the district court's earlier decision on the federal habeas petition.'" *Id.*

(quoting *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)).  "Accordingly, if the

Rule 60(b) motion attacks 'some defect in the integrity of the federal habeas

proceedings,' rather than the resolution on the merits, then the motion is not treated as a

second-or-successive petition." *Id.* (quoting *Gonzalez*, 545 U.S. at 532).

The Fifth Circuit has emphasized that "it is extraordinarily difficult to bring a

claim of procedural defect rather than a successive habeas claim." *Id.* at 205.  Indeed, in

evaluating the nature of a motion brought under Rule 60,

> [p]rocedural defects are narrowly construed.  They include
> fraud on the habeas court, as well as erroneous previous rulings
> which precluded a merits determination—for example, a denial
> for such reasons as failure to exhaust, procedural default, or
> statute-of limitations bar.  They generally do not include an
> attack based on the movant's own conduct, or his habeas
> counsel's omissions, which do not go to the integrity of the
> proceedings, but in effect ask for a second chance to have the
> merits determined favorably.

*Id.* (quoting *In re Coleman*, 768 F.3d 367, 371-72 (5th Cir. 2014) (holding that arguments

regarding counsel's neglect of specific arguments sounded in substance, not in

procedure)).

7

**Discussion**

**1.      Robinson's resort to Rule 60(b)(6) is unavailing.**

Robinson's motion challenges three "erroneous" post-conviction rulings by this Court and the Fifth Circuit under Section 2255.  (*See generally* CV No. 10.)  He contends that each ruling evinces a "defect in the integrity" of the Section 2255 proceedings that satisfies Rule 60(b)(6)'s standard of "any other reason that justifies relief."  (CV No. 10 at 1-2, 4.)  To that end, Robinson tethers his motion to three Supreme Court decisions: *Buck v. Davis*, 137 S. Ct. 759 (2017); *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017); and *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017).  He posits that these decisions "provide further support for the arguments [he] has been making and establish once again that prior rulings in this case . . . precluded a full merits determination[.]" (*See id.*)

Robinson fails to demonstrate that he is entitled to relief under Rule 60(b)(6).  The rule is limited to correcting procedural errors that occurred during the post-conviction proceedings, which explains Robinson's repeated reference to procedural-defect allegations throughout his current motion.  His arguments, however, reveal that he is seeking a second chance to have the same issues determined in his favor.  But absent extraordinary circumstances, which Robinson cannot demonstrate, Rule 60(b) does not serve that purpose.  Procedural defects are "narrowly construed" under Rule 60(b) and reviewing courts are cautioned to be wary of second or successive Section 2255 motions brought under the "guise" of the rule.  *See Edwards*, 865 F.3d at 203, 205.  Robinson's motion does not satisfy these narrow standards, and to the extent that it asserts new

8

18-70022.120

claims, he must obtain circuit-court authorization to file it as a second or successive motion under Section 2255(h).

### A. Robinson's circumstances are not remotely similar to those that the Supreme Court in *Buck* found extraordinary under Rule 60(b)(6).

Robinson contends that this Court and the Fifth Circuit applied an "erroneously high standard" in denying his "request for a COA on his penalty-phase ineffective assistance of counsel claim." (CV No. 10 at 4-9.) In support, he cites *Buck v. Davis*, 137 S. Ct. 759 (2017), as "the Supreme Court's most recent case on the COA standard[.]" (CV No. 10 at 5.) Because *Buck*'s holding is inapposite to Robinson's circumstances, its recency is likewise immaterial.

*Buck* involved a death-penalty defendant whose ineffective-assistance-of-counsel ("IAC") claim had "never been heard on the merits in any court[.]" 137 S. Ct. at 767. The IAC claim arose from sentencing-phase testimony by the defense's expert, who opined that Buck's race was relevant to future dangerousness and rendered him "statistically more likely to act violently because he is black." *Id*. The prosecutor cited the expert's testimony during closing argument, and after two days of deliberations, the jury returned a sentence of death. *Id.* at 769. Buck's post-conviction counsel failed to raise the IAC claim in state court, and on federal habeas review, the district and circuit courts determined under then-existing law that the claim was unreviewable on the merits based on procedural default. *Id.* at 767, 770-73.

Buck then moved for relief from judgment under Rule 60(b)(6). He argued that several factors amounted to extraordinary circumstances under the rule, including: two

9

18-70022.121

recent Supreme Court cases that "changed the law in a way that provided an excuse for his procedural default"; his trial attorney's introduction of expert testimony linking his race to increased propensity for violence; the prosecutor's questioning and arguments on the topic; and the state's confession of error in other cases involving the same expert but no concession of error in Buck's case. *Id.* at 767, 772. The district court denied relief, concluding that Buck failed to demonstrate extraordinary circumstances and that "even if the circumstances *were* extraordinary," the IAC claim "would fail on the merits." *Id.* at 772 (emphasis in original). In denying Buck's request for a COA, the circuit court agreed with the district court that the circumstances were "not extraordinary at all in the habeas context." *Id.* at 773. The panel reasoned that two factors—the changes in procedural-default law and the state's inconsistent positions regarding confessed error— were not significant, and that "most of the other factors" were "variations on the merits" of Buck's IAC claim. *Id.*

On certiorari review, the Supreme Court repeated without modification the well-established COA standards from its prior decision in *Miller-El*, which permitted a threshold inquiry into the merits of the district court's decision and required only that the decision was debatable among jurists of reason. *Id.* at 773-74, 777-78 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).[3] The issue, therefore, was whether it was debatable

---

[3] *See also United States v. Fleming*, Case No. H-07-513-01, 2017 WL 3411920, *1 (S.D. Tex. June 21, 2017) (unpublished) ("According to Defendant, *Buck* sets forth new standards for granting a certificate of appealability that, had this Court utilized them, would have resulted in the granting of habeas relief or a COA. Defendant is incorrect. *Buck* did not set forth new standards regarding a COA; to the contrary, the Supreme Court in *Buck* confirmed and enforced existing Supreme Court standards which this Court followed in denying Defendant a COA.")

18-70022.122

that Buck failed to show extraordinary circumstances under Rule 60(b)(6).  *Id.* at 777-78.  "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors[, which] may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"  *Id.* at 778 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)).  Considering those factors, the Court had no difficulty concluding that reversal was required by the strong evidence of racial bias offered at Buck's sentencing that may have impacted the jury's recommendation to impose a death sentence.  *Id.* at 777-78.  In fact, the "extraordinary nature of [Buck's case was] confirmed by what the State [of Texas] itself did in response to [the defense expert's] testimony"—taking the "remarkable steps" of confessing error in other cases where the same expert testified but not confessing error in Buck's case.  *Id.* at 778-79.

*Buck*'s limited holding is unavailing to Robinson.  As the Supreme Court emphasized, Rule 60(b)(6) relief was justified in *Buck* based on extraordinary evidence of racial bias that was unduly minimized on federal habeas review and never considered on the merits by any reviewing court.  In contrast, Robinson's trial and sentencing involved no evidence of racial bias or other circumstances remotely equivalent to those in *Buck*, and Robinson's post-hoc request to interview jurors was—as this Court correctly observed—wholly unsupported by evidence of bias.  (*See* CR No. 2388.)  Circuit courts have rejected similar attempts by death-row inmates under Rule 60(b)(6) to ignore and distort *Buck*'s central holding.  *See Miller v. Mays*, 879 F.3d 691, 702 (6th Cir. 2018) (emphasizing that *Buck* did not turn on changes in the law regarding ineffective

11

18-70022.123

representation but instead "focused on" the extraordinary circumstances presented by "the injection of race into the sentencing determination, the state's actions [of confessing error] in similar cases, and notions of finality"); *Davis v. Kelley*, 855 F.3d 833, 836 (8th Cir. 2017) (holding that Davis "failed to present extraordinary circumstances mirroring those presented in *Buck*"; "*Buck* focused on the race-based nature of the case and its far reaching impact on the community by the prospect of a defendant having been sentenced to death because of his race"; the "extraordinary facts [presented in *Buck*] have no application to the present case"); *Lambrix v. Sec'y Dep't of Corr.*, 851 F.3d 1158, 1172-73 (11th Cir. 2017) ("Lambrix's underlying ineffective-trial-counsel claims do not present allegations that his trial counsel presented race-based evidence of future dangerousness, the underlying issue that the Supreme Court found so 'odious' and poisonous in *Buck*.").

In addition, unlike in *Buck* where the ineffective-assistance claim had never been decided on the merits by any court, Robinson had the benefit of an on-the-merits ruling from this Court. Although no evidentiary hearing was held, Robinson had ample opportunity to advance his claims and develop the record during three-plus years of Section 2255 litigation. Indeed, the voluminous post-conviction filings considered by the Court included Robinson's initial motion, the government's response, his reply, his amendment to the motion, his supplemental pleading, the government's response to the supplemental pleading, and his reply in support of his supplemental pleading. (CR Nos. 2279; 2365; 2380; 2422; 2432; 2439; 2443.) The Court's written orders made clear that it was able to conclusively resolve the claims by assuming the truth of Robinson's

12

allegations and making legal determinations—thereby obviating the need for a hearing. (CR Nos. 2453 at 45-46; 2465 at 7.)

In sum, the circumstances presented here are not the least bit similar to those that the Supreme Court found extraordinary in *Buck*. Unable to rely on *Buck*'s reasoning and holding, Robinson can only cite it as the high court's most recent COA-related decision. But again, *Buck* is not remarkable in that regard.[4] It reaffirmed settled law governing COAs from its prior decision in *Miller-El*, and even Robinson acknowledges that he already "argued to this [C]ourt, the Fifth Circuit, and the United States Supreme Court [that] these standards were not followed in [his] case." (CV No. 10 at 6.) Thus, Robinson implicitly concedes that the COA argument he makes here under the pretense of Rule 60(b)(6) is the same one that he exhausted in the normal course of post-conviction litigation where each reviewing court—including the Supreme Court—considered the issue and universally denied relief.

Against this unbroken history of COA denials based on the application of settled law, Robinson's extraordinary-circumstances argument falls flat. Again, (i) *Buck* did not change the Supreme Court's COA jurisprudence in *Miller-El*; (ii) Robinson is reprising the same argument here that he previously made before this Court, the Fifth Circuit, and the Supreme Court; and (iii) his current argument, therefore, is functionally equivalent to "ask[ing] for a second chance to have the merits determined favorably" and would

---

[4] *Cf. Ruiz v. Davis*, 850 F.3d 225, 230 (5th Cir. 2017) (denying death-penalty defendant's request for a COA based on a cruel-and-unusual-punishment claim, observing: "We are keenly aware of the admonitions of *Buck v. Davis*. Properly applied, they do not reset the balance of federalism struck by Congress and the settled constitutional commands attending capital punishment.").

13

18-70022.125

require this Court to disregard the narrow construction afforded to Rule 60(b) motions. *See Edwards*, 865 F.3d at 205; *Coleman*, 768 F.3d at 371-72. This Court should reject Robinson's unsanctioned resort to Rule 60(b)(6).

Moreover, this Court and the Fifth Circuit correctly applied the controlling standards in denying Robinson's request for a COA. (*See* CR No. 2473 at 2; CV No. 5 at 5.) Both courts followed *Miller-El*'s holding—and therefore *Buck*'s holding as well—by conducting a threshold inquiry into the merits of Robinson's claims. This Court denied a COA after it determined that the Section 2255 motion lacked merit, but its written order supports that the COA denial was not pre-ordained by its denial on the merits; instead, its COA analysis was properly framed under the objective standards of *Miller-El*, *Haynes*, and other cases. (*See* CR No. 2473 at 2-3.)[5] Likewise, the Fifth Circuit's denial of a COA correctly applied the *Miller-El* standards by limiting its consideration of the merits to a "threshold inquiry." (*See* CV No. 5 at 4-5.) Robinson's ongoing dissatisfaction with the COA denials does not permit their relitigation—under Rule 60(b)(6) or otherwise— simply because the Supreme Court has issued a new decision applying the same unchanged standards. Put simply, *Buck*'s reiteration of well-established principles governing COAs does not show extraordinary circumstances that support a procedural-defect argument under Rule 60(b)(6).

---

[5] It is axiomatic that this Court acted in full accord with its obligations under Section 2255 when it addressed the COA issue *after* it ruled on the merits of Robinson's motion. *See* Rule 11(a) Governing Section 2255 Proceedings ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). Thus, the Court's issuance of an on-the-merits decision does not suggest that it pre-judged the COA determination.

18-70022.126

Even assuming for the sake of argument that this Court and the Fifth Circuit misapplied the COA standards, Rule 60(b)(6) affords Robinson no relief in this Court. In that scenario, this Court's COA denial became moot when the Fifth Circuit affirmed the ruling, thereby making the circuit court's determination the law of the case. *See Dillingham v. Jenkins*, No. 17-3813, 2017 WL 5438882, *1 (6th Cir. 2017) (unpublished) (affirming denial of Rule 60 motion because "[r]easonable jurists would also not find debatable or wrong the district court's assessment that this Court's denial of a [COA] became the law of the case, binding in subsequent stages of the litigation"). As to the Fifth Circuit's ruling, this Court cannot overturn it absent intervening authority that changed the law or a determination that it was clearly erroneous and would work a manifest injustice. *See United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). *Buck* provides no such authority because it produced no such change, and there is no indication that the Fifth Circuit's decision was clearly wrong considering its adherence to *Miller-El*'s standards and the fact that the Supreme Court left it undisturbed on certiorari review.

For these reasons, *Buck* fails to provide Robinson with extraordinary circumstances that present "any other reason that justifies relief" under Rule 60(b)(6).

**B.   Because the exception recognized in *Peña-Rodriguez* does not apply here, it cannot support Robinson's claim under Rule 60(b)(6).**

Robinson's Rule 60(b) motion also claims that during the Section 2255 proceedings, this Court "erroneously barred [him] from conducting a reasonable investigation" into the possibility of a racially biased jury because "Criminal Local Rule

15

18-70022.127

24.1 prevents any contact between the parties and a juror absent permission of the court." (CV No. 10 at 9-11.)  Robinson relies on a recent Supreme Court case—*Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017)—to contend that "[o]n balance, *Peña-Rodriguez* establishes that rules such as Local Criminal Rule 24.1 must allow criminal defendants an ability to investigate issues such as racial bias, and [he] was deprived of this right."  (*Id.* at 11.)  According to Robinson, this alleged deprivation constitutes a procedural defect under Rule 60(b)(6) because it "prevented a full and fair merits determination" of the prospect of juror bias.  (*Id.*)

*Peña-Rodriguez*'s narrow holding, however, does not require or authorize a suspicionless investigation into the possibility of racial bias.  In fact, it preserves rules that prohibit post-verdict contact with jurors, including "no-impeachment" rules that forbid using jurors' post-trial statements to undermine the verdict.  Although the Court in *Peña-Rodriguez* crafted a limited constitutional exception to such rules, the exception has no applicability here because Robinson has not produced clear and admissible evidence of juror bias.

After Pena-Rodriguez was found guilty of unlawful sexual contact and harassment, the trial court instructed the jurors—as mandated by Colorado law—that it was "entirely [their] own decision" to "discuss this case with the lawyers, defendant, or other persons" and they should notify the court "[i]f any person persists in discussing the case over [their] objection[.]"  137 S. Ct. at 861.  Following the jury's discharge, defense counsel entered the jury room to discuss the trial with jurors and two of them privately told counsel that "another juror had expressed anti-Hispanic bias toward [Pena-

16

18-70022.128

Rodriguez] and [his] alibi witnesses." *Id.* Counsel reported this to the court, and with the court's supervision, obtained sworn affidavits from the two jurors that "described a number of biased statements made by . . . Juror H.C." *Id.* at 861-62. Based on the affidavits, the court "acknowledged H.C.'s apparent bias" but denied a motion for a new trial because the deliberations could not be impeached under Colorado Rule of Evidence 606(b). *Id.* at 862.

On review, the Supreme Court framed the question as "whether there is an exception to the no-impeachment rule when, after the jury is discharged, *a juror comes forward with compelling evidence* that another juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict." *Id.* at 861 (emphasis added). It recognized the respective governmental roles involved, observing: "The duty to confront racial animus in the justice system is not the legislature's alone. Time and again, this Court has been called upon to enforce the Constitution's guarantee against state-sponsored racial discrimination in the jury system." *Id.* at 867. Ultimately, it determined that the Constitution required a narrow exception to no-impeachment rules, reasoning: "This case lies at the intersection of the Court's decisions endorsing the no-impeachment rule and its decisions seeking to eliminate racial bias in the jury system. The two lines of precedent, however, need not conflict." *Id.* Having expressed its intention to reconcile rather than void no-impeachment rules, the Court held:

> [W]here a juror *makes a clear statement* that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-

17

> impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

*Id.* at 869 (emphasis added).

In addition to requiring "a clear statement" of a juror's racial bias rather than an "offhand comment," the Court addressed the permissible manner of obtaining such evidence. *Id.* In that regard, the *Peña-Rodriguez* Court reaffirmed the viability of no-contact and no-impeachment rules, stating: "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id.* It recognized that "[t]hese limits seek to provide jurors some protection when they return to their daily affairs after the verdict has been entered. But while a juror can always tell counsel they do not wish to discuss the case, *jurors in some instances may come forward of their own accord. That is what happened here*." *Id.* (emphasis added).

Unlike in *Peña-Rodriguez*, Robinson's post-conviction allegations of juror bias were—and still are—purely hypothetical. Jurors in Robinson's trial did not "come forward of their own accord" with a "clear statement" of bias; indeed, they did not allege racial bias at all. Nor did Robinson discover evidence of racial bias in another fashion. Accordingly, in denying Robinson's post-conviction motion to interview jurors, this Court's written order highlighted that Robinson's motion did "not state that he ha[d] any reason to suspect that his jury was actually partial, but merely point[ed] to the importance of his right to an impartial jury under the Sixth Amendment and argue[d] that he ha[d] no

18

18-70022.130

other way of discovering whether this right has been violated than to interview his trial jurors." (CR No. 2388 at 1.)  It also determined that because his theoretical *Batson* challenge was unrelated to the prosecutor's state of mind in striking a particular juror, "the requested permission for a post-trial interview of this prospective juror would appear neither useful to a *Batson* analysis nor necessary to protect any of [Robinson]'s rights." (*Id.* at 4.)  Even now, Robinson's circumstances are not remotely similar to those in *Peña-Rodriguez* because he does not support his suppositions of bias with evidence. Instead, he resorts to alleging "the specter of racial bias" and superficially cites 13 federal death-penalty cases from Texas without providing necessary context and analysis to prove their relevance here.  (CV No. 10 at 10.)

In sum, Robinson cannot avoid the undeniable reality that his post-conviction motion to interview jurors was a fishing expedition into the possibility of juror bias.  This Court's denial of that request in no way violated *Peña-Rodriguez*'s limited holding, and therefore, its ruling evinces no procedural defect and no extraordinary circumstances justifying relief under Rule 60(b)(6).  In fact, to adopt Robinson's juror-bias argument and grant post-conviction relief would require this Court to extend *Peña-Rodriguez* in a manner that the Supreme Court did not sanction and carefully avoided—judicially voiding no-contact and no-impeachment rules rather than harmonizing them with the Constitution.  For these reasons, Robinson's claim of jury bias lacks a jurisdictional basis under Rule 60(b)(6) and must be dismissed.  To the extent that he argues for the extension of *Peña-Rodriguez* to conduct post-conviction discovery into the possibility of

19

18-70022.131

a racially biased jury, the claim must be transferred to the Fifth Circuit for authorization

to proceed under Section 2255(h).

### C.   Robinson cannot demonstrate extraordinary circumstances arising from *Weaver* to justify relief under Rule 60(b)(6).

Lastly, Robinson's Rule 60(b) motion asserts that the indictment's failure to

include "aggravating factors" violated the Fifth Amendment and therefore, this Court's

"denial of [his] right to amend his Section 2255 motion to include his [defective]

indictment claim was erroneous." (CV No. 10 at 12-19.)  In support, he cites *Weaver v.*

*Massachusetts*, 137 S. Ct. 1899 (2017), which, according to Robinson, "represents an

intervening change of law" on the issue of "structural error." (*Id.*)  He further contends

that "[i]in addition to *Weaver*, the Supreme Court's recent decision [regarding judicial

bias] in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), reinforces the veracity of [his]

argument." (*Id.* at 16-17.)  Once again, Robinson fails to demonstrate extraordinary

circumstances under Rule 60(b)(6).

On January 7, 2008, this Court entered its written order denying Robinson's

request to add the defective-indictment claim to his Section 2255 motion.  (CR No. 2430

at 2-4.)  At the time, Robinson asserted that "two recent United Supreme Court decisions

cast serious doubt" on the Fifth Circuit's direct-appeal ruling, which held Robinson was

not harmed by the error.  (*See id.* (citing CR No. 2422).)[6]  This Court denied the proposed

amendment because the issue was already decided on direct appeal; the cases cited by

---

[6] Robinson cited *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), and *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

18-70022.132

Robinson were inapplicable; and even if the cases did apply, they demonstrated procedural error that was not retroactively applicable on collateral review to a final judgment like Robinson's. (*Id.*) The Fifth Circuit affirmed this Court's ruling when it denied his request for a COA and his request for rehearing. (*See* CV Nos. 5-6.) Now, for the second time, Robinson cites two recent Supreme Court cases—*Weaver* and *Williams*—as "cast[ing] serious doubt" over the Fifth Circuit's decision. (CV No. 10 at 15-17.)

Robinson's contention that *Weaver* marks a change in the Supreme Court's structural-error jurisprudence may be construed as a new habeas claim that must be transferred to the circuit court under Section 2255(h). *See Edwards*, 865 F.3d at 203. Alternatively, if Robinson alleges that the prior rulings of this Court and the Fifth Circuit were procedurally wrong based on *Weaver*, it is clear that "a change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment under Rule 60(b)(6)." *Diaz v. Stephens*, 731 F.3d 370, 375-76 (5th Cir. 2013) (citations and quotation marks omitted). That principle applies with full force here because *Weaver*, and for that matter *Williams*, have no direct applicability to Robinson's defective-indictment claim and extending them beyond their holdings is not authorized under Rule 60(b)(6).

In *Weaver*, the issue was whether—in the context of collateral review—courtroom closure was structural error that obviated the need to demonstrate prejudice or "if the prejudice inquiry is altered when structural error is raised in the context of an ineffective-assistance-of-counsel claim." 137 S. Ct. at 1905. The Supreme Court ultimately

21

18-70022.133

determined that the public-trial right was structural and "generally" requires "automatic reversal" on direct appeal, but the right was "subject to exceptions" and therefore Weaver must demonstrate prejudice under *Strickland*. *Id.* at 1908-10. In reaching this somewhat-meandering result, the Court was required to engage in a comprehensive review of structural error, the public-trial right, and the right to effective counsel. *See generally id.* Illustrative of the complexity of the Court's analysis, it recognized that classifying errors as structural "varies in a significant way from error to error"; "[t]here appear to be at least three broad rationales" to address the issue; the three "categories are not rigid"; and "although the public-trial right is structural, it is subject to exceptions." *Id.* at 1907-08.

Like *Weaver*, *Williams* was unrelated to a defective-indictment claim. In that case, the Court held that where a state supreme court justice—while previously serving as a district attorney—officially approved seeking the death penalty against Williams, due process required the judge to recuse himself from post-conviction review of the death sentence. 136 S. Ct. at 1903.

Thus distilled, *Weaver* and *Williams* cannot support Robinson's request for relief under Rule 60(b)(6). *Weaver* focused on the right to a public trial vis-à-vis an ineffective-assistance claim, which required a searching analysis by the Supreme Court into the hard-to-define topic of structural error. *Williams* dealt exclusively with the issue of judicial bias under the rubric of due process. Both cases were completely silent on the unrelated issue of the Fifth Amendment's indictment clause. Their holdings, therefore, provide Robinson no basis to assert that the prior rulings of this Court and the Fifth Circuit on the defective-indictment claim were "clearly erroneous." (CV No. 10 at 18.)

22

Nothing in *Weaver* or *Williams* would change this Court's prior determination that the issue was already decided on direct appeal; the cases cited by Robinson were inapplicable; and even if the cases did apply, they demonstrated procedural error that was not retroactively applicable on collateral review to a final judgment like Robinson's. (*See* CR No. 2430.)  Likewise, neither case would undermine the Fifth Circuit's denial of a COA on the defective-indictment claim, (*see* CV No. 5), which represents the law of the case that this Court cannot overturn. *See Matthews*, 312 F.3d at 657.  Because Robinson's cavalier conclusions to the contrary are unsupportable, he fails to demonstrate extraordinary circumstances under Rule 60(b)(6).

### D.     Robinson's motion is untimely.

Motions under Rule 60(b)(6) must be made within a reasonable time unless good cause can be shown for the delay. *Edwards*, 865 F.3d at 203 (citations omitted).  Good cause is "evaluated on a case-by-case basis" and timeliness "is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *Id.* (citations omitted).  A party with grounds to make a Rule 60(b) motion must bring it "reasonably promptly, though the determination of reasonableness is less than a scientific exercise," and the rule "may not be used as an end run to effect an appeal outside the specified time limits, otherwise those limits become essentially meaningless." *Id.* (citations omitted).

By these standards, Robinson's motion should be dismissed as untimely.  His reference to diligently pursuing his rights by the timely pursuit of his prior appeals is irrelevant to his instant motion, which was filed on February 9, 2018—more than six

23

years and four months after the Supreme Court denied review of his Section 2255 judgment.  (*Compare* CV No. 10, *with* CV No. 7.)  His instant motion asserts no newly discovered evidence, claiming instead that he "has good reason for any delay, as [the] motion is largely based upon three Supreme Court decisions—*Buck*, *Peña-Rodriguez*, *Weaver*—which were issued less than a year from the date of filing this motion."  (CV No. 10 at 20.)  But for reasons previously discussed, none of those cases assists Robinson in meeting his burden of showing extraordinary circumstances under Rule 60(b)(6).  Accordingly, they are equally meaningless as a basis for timeliness.

## CONCLUSION

Robinson's motion should be dismissed.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*s/ Timothy W. Funnell*
Timothy W. Funnell
Assistant United States Attorney
Wisconsin State Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102-6897
Phone 817-252-5252
tim.funnell@usdoj.gov

18-70022.136

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 30, 2018, I filed this response with the clerk of court for the

U.S. District Court, Northern District of Texas through the electronic filing system which

will generate service to Robinson's counsel, Jonathan Charles Aminoff.


*s/ Timothy W. Funnell*
Timothy W. Funnell
Assistant United States Attorney

25

18-70022.137

# EXHIBIT C

# Reply in Support of Defendant's Motion for Relief from Judgment

HILARY POTASHNER (No. 167060)
Federal Public Defender
CRAIG A. HARBAUGH (No. 194309)
(E-Mail:  Craig_Harbaugh@fd.org)
JONATHAN C. AMINOFF (No. 259290)
(E-Mail:  Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail:  Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-5374
Facsimile:  (213) 894-0310

Attorneys for Petitioner
JULIUS OMAR ROBINSON

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>        Defendant/Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>        Plaintiff/Respondent. | Civil No. 4:05-CV-756-Y<br>(Criminal No. 4:00-CR-00260-2)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Terry R. Means<br>United States District Judge<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT** |

18-70022.141

# I.  ARGUMENT

## A.  Robinson's Motion is Appropriately Considered Under Rule 60(b)

### 1.  Robinson's Rule 60 Motion is not a Second or Successive Habeas Petition

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court held that Federal Rule of Civil Procedure Rule 60 is applicable to habeas corpus proceedings, but cautioned that courts should be wary of second or successive habeas petitions disguised as Rule 60 motions.  The Court explained that a Rule 60(b) motion "that seeks to revisit the federal court's denial *on the merits* of a claim for relief should be treated as a successive habeas petition."  *Id*. at 534 (emphasis added).  But where the motion "confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding," that motion is not a second or successive petition, but rather is a valid exercise of Rule 60(b).  *Id.*  Indeed a motion that "challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court without precertification by the Court of Appeals pursuant to § 2244(b)(3)."  *Id.* at 538.

Here, Robinson's motion raises three issues.  First, Robinson challenges the denial of a certificate of appealability ("COA").  A COA denial is, by definition, a non-merits based decision.  *Gonzalez v. Thaler*, 565 U.S. 134 (2012); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (explaining that until a COA is granted, a reviewing appellate court may not rule on the merits of the case).  Second, Robinson challenges a discovery denial, specifically the Court's rejection of his request to interview his trial jurors.  The denial of discovery is not a decision on the merits of a claim.  *See, e.g., In re Sessions*, 672 F.2d 564, 566 (5th Cir. 1982) (differentiating orders denying discovery from final orders dispensing of cases on the merits).  And third, Robinson challenges the Court's denial of his request for leave to amend his section 2255 motion which, again, is a procedural denial, not a denial of a claim on its merits.  *Flores v. Stephens*, 794 F.3d 494, 502 (5th Cir. 2015).  Each of these issues address "erroneous previous rulings

1

18-70022.142

which precluded a merits determination," and thus are appropriate for review under Rule 60(b). *In re Edwards*, 865 F.3d 197, 205 (5th Cir. 2017).

The Government's assertion that Robinson is actually "seeking a second chance to have the same issues determined in his favor" is flawed. Dkt. No. 14 ("Opposition") at 8. The Government cannot honestly claim that the rulings Robinson challenges are anything but procedural. Moreover, whether granting Robinson's Rule 60(b) motion ultimately leads to an opportunity for Robinson to litigate his substantive claims for relief is not part of the analysis at this stage. Indeed, in the habeas context, any time a court grants a Rule 60(b) motion in the habeas petitioner's favor, the substance of the habeas petition will ultimately be litigated. In fact, in *Gonzalez*, 545 U.S. 524 (2005), the Supreme Court found that challenging a timeliness denial via a Rule 60(b) motion was a proper function of a Rule 60(b) motion, which, if granted, would obviously allow the habeas petitioner to litigate his underlying substantive claims for relief. Thus whether Robinson is ultimately trying to reach the merits of claims that were never decided on their merits is irrelevant to the Rule 60(b) standards that this Court must follow.

### 2.   Robinson has Established Extraordinary Circumstances

Relief under Rule 60(b)(6) is available only in "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535. Determining whether such circumstances are present may include consideration of a wide range of factors, including "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-864 (1988).

The Fifth Circuit has described "a lack of fundamental fairness essential to due process" as an extraordinary circumstance, albeit not in the Rule 60(b) context. *Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir. 1972). Robinson has been sentenced to death without the procedural due process afforded to most death-sentenced inmates that has deprived him of a full and fair merits determination of his case in post-conviction review. The lack of due process is inconsistent with the Supreme Court's

18-70022.143

Eighth Amendment jurisprudence that requires "heightened reliability" in the context of death-penalty proceedings. *Woodson v. North Carolina*, 428 U.S. 280 (1976).

Generally a change in decisional law, standing alone, is not enough to amount to an extraordinary circumstance. *Diaz v. Stephens*, 731 F.3d 370, 375-76 (5th Cir. 2013); *but see Adams v. Merill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 702 (10th Cir. 1989) ("In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under [Rule] 60(b)(6)."). But the Fifth Circuit has kept open the possibility that a change in law, in the appropriate case, can constitute an extraordinary circumstance. *Batts v. Tow Motor Forklift*, 66 F.3d 743, 748 n.6 (1995) ("We do not hold that a change in decisional law can never be an extraordinary circumstance."). Courts have noted that Rule 60(b)(6) relief is especially appropriate in cases where the interest in finality is somehow abrogated. *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund.*, 249 F.3d 519, 528 (6th Cir. 2001) (collecting cases). The Fifth Circuit has recognized that habeas cases fit the bill of cases with a diminished interest in finality. *Batts*, 66 F.3d at 748 n.6 ("Courts may find a special circumstance warranting [Rule 60(b)(6)] relief where a change in the law affects a petition for habeas corpus, where notions of finality have no place."). Moreover, in a case where the decisional law in question affects issues of fundamental fairness and due process, this Court should follow the approach taken in *Diaz,* 731 F.3d at 376-77, and consider additional equitable factors when deciding whether extraordinary circumstances exist to warrant Rule 60(b)(6) relief. In *Diaz*, the Fifth Circuit evaluated a number of equitable factors which apply to Rule 60(b) motions generally, including:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether[,] if the judgment was a default or a dismissal in which there was no

3

18-70022.144

> consideration of the merits[,] the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether[,] if the judgment was rendered after a trial on the merits[,] the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Id.* at 377.  An evaluation of these equitable considerations weighs heavily in Robinson's favor.  As described in his motion and *supra*, he is not using his motion as a substitute for appeal.  While habeas courts have some interest in finality, that interest may not outweigh a petitioner's right to a full and fair consideration of the merits of his claims, especially in a case like this one, where procedural rules foreclosed merits consideration of his Rule 60(b) issues in their entirety.  There are no intervening equities that would make it inequitable to grant relief, as the Government has not alleged that they will be prejudiced in any way by re-opening this case and allowing Robinson to interview the trial jurors, brief the availability of a COA, and amend his section 2255 motion to include his indictment error claim which, the parties and the Fifth Circuit agree, resulted in a deprivation of Robinson's constitutional rights. Finally, as the Supreme Court and this Circuit have ruled time and again, the Rule should be liberally construed in cases like this one, where the denial of the motion would result in a fundamental injustice.  *See, e.g.*, *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) ("[Rule 60] should be liberally construed in order to do substantial justice.  What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in

18-70022.145

order that the judgment might reflect the true merits of the cause.") (Internal citations omitted).

**B.     The Supreme Court's Prior Denials of Robinson's Petitions for Writ of Certiorari Have No Bearing on the Issues Before the Court**

In its Opposition, the Government continually makes reference to the fact that the United States Supreme Court has twice denied certiorari in this case:  once on direct review and once following the Fifth Circuit's denial of a COA after this Court denied Robinson's section 2255 motion.  The Government argues that because the Supreme Court left the Fifth Circuit's decision "undisturbed," this Court may assume that the Fifth Circuit's decision was not "clearly wrong."  Opposition at 15.  The Government's argument has been rejected by both the Supreme Court and the Fifth Circuit, and it should be absolutely clear that: "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *Atlantic Coast Line R. Co. v. Powe*, 283 U.S. 401, 404 (1931) (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923)); *Darr v. Burford,* 339 U.S. 200, 227 (1950) (Frankfurter, J., dissenting) ("Nothing is more basic to the functioning of this Court than an understanding that denial of certiorari is occasioned by a variety of reasons which precludes the implication that were the case here the merits would go against the petitioner"); *Eastburn v. Ford Motor Co.*, 438 F.2d 125, 126 (5th Cir. 1971) (same).

**C.     *Buck* Establishes a "Troubling" Pattern of Holding Petitioners to an Erroneously High Standard for Obtaining Certificates of Appealability**

Robinson relies on the Supreme Court's recent decision in *Buck v. Davis*, 137 S. Ct. 759 (2017), to establish that this Court and the Fifth Circuit erroneously denied him a COA, thus depriving him of the right to a merits-based determination of his case on appeal.  In its Opposition, the Government resorts to a lengthy summation of the *Buck* case and explains how Buck's substantive claims for relief differ from Robinson's claims.  This is, however, a red herring and the Government's Opposition misses the point.  Robinson does not argue that *Buck* is a similar factual case to his.  Instead,

18-70022.146

Robinson relies on *Buck* to establish the Fifth Circuit's "troubling" "pattern" of denying COAs "after engaging in extensive review of the merits of a habeas petitioner's claims." *Jordan v. Fisher*, 135 S. Ct 2647, 2652 n.2 (2015) (Sotomayor, J., dissenting from the denial of certiorari and collecting cases). And to establish that his case fits into this troubling pattern, Robinson cites to multiple instances in both this Court's and the Fifth Circuit's denials wherein the Courts conducted a merits-based analysis to deny Robinson's COA application. *See* Motion at 7-8. The Government, however, fails to respond to the specifics of Robinson's argument, instead opting to make blanket statements that because this Court and the Fifth Circuit cited to cases articulating the appropriate COA standard, the Court must have denied Robinson's COA request based on a correct application of those standards. Not surprisingly, the Fifth Circuit also cited to the appropriate COA standard in *Buck*, but nevertheless applied those standards incorrectly. *Buck v. Stephens*, 623 Fed. Appx. 668, 671-72 (5th Cir. 2015) *overruled by Buck v. Davis*, 137 S. Ct. 759 (2017).

**D.      Robinson was Barred from Conducting a Reasonable Investigation Which Prevented a Full and Fair Post-Conviction Review Process**

This Court's procedural rulings have placed Robinson in a catch-22: to establish racial bias, he must investigate; to be permitted to investigate, he must establish racial bias. The Government endorses this catch-22, arguing that Robinson "has not produced clear and admissible evidence of juror bias" while also arguing that Robinson has been correctly denied the right to interview the jurors that recommended a death judgment in his case. Opposition at 16.

Both Robinson and the Government cite to the Supreme Court's language in *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), where the Court states "[t]he practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." 137 S. Ct. at 859-60. As Robinson argued in his Motion, however, Local Criminal Rule 24.1 does not set forth "practical

6

mechanics" guiding counsel's post-trial contact with jurors; rather, it constitutes an all-out ban on counsel's ability to investigate the possibility of juror misconduct.  Motion at 11:7-14.  The Government's only response is that because the jurors did not approach Robinson's counsel of their own accord and Robinson could not otherwise find evidence of juror misconduct, Opposition at 18, Robinson is simply out of luck.

The Government's arguments do not comport with *Pena-Rodriguez*.  Federal Rule of Evidence 606(b) prohibits jurors from testifying about the substance of their deliberations.  In *Pena-Rodriguez*, however, the Supreme Court held that the Sixth Amendment required that Rule 606(b), and its state equivalent, cannot bar evidence of racial animus.  137 S. Ct. 855 (2017).  Allowing a petitioner to advance evidence of a juror's racial bias is inconsistent with barring a petitioner from investigating racial bias amongst jurors.  Indeed, the Supreme Court discusses at length rules that "limit" attorneys contact with jurors and provide the jurors "some protection" when their juror obligations are complete.  *Id*. at 869.  Rules like Rule 24.1, that go beyond *limiting* contact and instead create total bans on juror interviews, render the rights articulated in *Pena-Rodriguez* meaningless.

Constitutional rights implicitly protect those closely related acts necessary to their exercise.  *Luis v. United States*, 136 S.Ct. 1083, 1097 (2016) (Thomas, J. dissenting).  Inevitably, "[t]here comes a point ... at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting).  The Supreme Court has applied this principle in a number of cases.  For example, because criminal defendants have a right to an initial appeal, the Court has determined that defendants must also have the right to counsel for that appeal, or else the appellate right is diminished.  *Douglas v. California*, 372 U.S. 353 (1963).  And later, continuing this trend, the Court held that if defendants on appeal have a right to counsel, then that right must encompass the effective assistance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  The same logic applies here:  If criminal defendants have the

7

18-70022.148

constitutional right to present evidence of juror bias, then they must be given the tools to investigate that evidence, and Local Rule 24.1 bars the ability to do so.

This past term, the Supreme Court emphasized that "[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." *Buck*, 137 S. Ct. at 778 (quoting *Rose v. Mitchell,* 443 U.S. 545, 555 (1979)); *Pena-Rodriguez*, 137 S. Ct. at 868 (same).  The *Buck* court continued that:

> Relying on race to impose a criminal sanction "poisons public confidence" in the judicial process.  *Davis v. Ayala,* 135 S. Ct. 2187, 2208 (2015).  It thus injures not just the defendant, but "the law as an institution, … the community at large, and ... the democratic ideal reflected in the processes of our courts."  *Rose,* 443 U.S. at 556 (internal quotation marks omitted).  Such concerns are precisely among those we have identified as supporting relief under Rule 60(b)(6).

137 S. Ct. at 778.

Those same concerns are at issue here.  Robinson has already highlighted the racial issues at play in his case and in death-penalty prosecutions at large.  These issues warrant relief under Rule 60(b).

## E.      Robinson's Defective Indictment Claim

Robinson's Fifth Amendment rights were violated when the Government failed to present the statutory aggravating factors that made Robinson eligible for the death penalty to the grand jury.  *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004).  However, the Fifth Circuit found that Robinson's defective indictment claim was subject to harmless error review and concluded that because Robinson was ultimately convicted beyond a reasonable doubt, a grand jury would have found the statutory aggravating factors present.  *Id*. at 285.

In his Motion, Robinson has explained how *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), justifies re-opening this case under Rule 60(b).  Motion at 12-19.  One of

8

18-70022.149

the issues *Weaver* helps to clarify is the significance of a non-waived versus a waived claim, and how the Fifth Circuit equated the two in affirming Robinson's convictions and sentences. Motion at 16:7-21. Since Robinson filed his Rule 60(b) motion, the Supreme Court issued *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), which further supports Robinson's argument. In *McCoy*, the Supreme Court found that the defendant's Sixth Amendment rights were violated when his trial counsel conceded the defendant's guilt of the capital crimes over his client's in-court objection, and the Court found that this violation was structural. The Court reconciled *McCoy* with *Florida v. Nixon*, 543 U.S. 175 (2004), where the Court found that an attorney's concession of the defendant's guilt was subject to the ineffective-assistance-of-counsel analysis, including its prejudice requirement, where the defendant fails to object to the attorney's concessions. *McCoy*, 138 S. Ct at 1509. The Supreme Court's continuing emphasis on preserved errors, and their significance in the structural error analysis, further undermines the Fifth Circuit's ruling in *Robinson,* 367 F.3d 278 (5th Cir. 2004).

As Robinson predicted, Motion at 18-19, the Government raises a law-of-the-case argument to assert that the Court may not re-visit the defective indictment issue. The Government, however, does not respond to Robinson's explanation of how the law of the case doctrine does not bar this Court from reconsidering the denial of amendment. Indeed, the law of the case doctrine does not bar relief because of an intervening change of law by the Supreme Court and because the earlier decision was clearly erroneous and would work a manifest injustice. *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002).

9

18-70022.150

## II.  CONCLUSION

For the foregoing reasons, Robinson respectfully requests that the Court grant his motion and allow him to: (1) brief his entitlement to a COA; (2) move to interview his trial jurors; and, (3) move to amend his section 2255 motion to include his defective indictment claim.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  June 13, 2018          By */s/ Jonathan C. Aminoff*

JONATHAN C. AMINOFF
Deputy Federal Public Defender

10

18-70022.151

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on June 13, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of Texas using the Court's electronic case filing system which will generate service to Assistant United States Attorney Timothy Funnel, counsel for the United States of America.

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

11

18-70022.152

# EXHIBIT D

# Memorandum Opinion and Order Transferring 60(b) Motion

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON (02), | § | |
| Petitioner, | § | |
| | § | Civil No. 4:05-CV-756-Y |
| V. | § | (Criminal No. 4:00-CR-0260-Y) |
| | § | |
| UNITED STATES OF AMERICA | § | |
| Respondent. | § | (death-penalty case) |

## <u>MEMORANDUM OPINION AND ORDER TRANSFERRING 60(b) MOTION</u>

Before the Court is Julius Omar Robinson's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6), filed on February 28, 2018.  ("Motion," CV doc. 10).[1]  Robinson moves to reopen the Court's judgment in a proceeding under 28 U.S.C. § 2255.  The Motion challenges the validity of Robinson's conviction by attacking various procedural rulings with new case law.  Because the Motion is in actuality a second or successive petition for habeas relief, the Court **TRANSFERS** the Motion to the United States Court of Appeals for the Fifth Circuit.

### Background

This Court sentenced Robinson to death in 2002 after a jury convicted him of murdering Johnny Lee Shelton and Juan Reyes. Robinson was also sentenced to life imprisonment for complicity in a criminal enterprise resulting in the death of Rudolfo Resendez.

---

[1] When Robinson filed his § 2255 motion, it was the Court's practice to file documents related to § 2255 motions in the criminal case.  The practice ended and such documents are now filed in the civil case. Because relevant documents are filed under both cause numbers, "CR doc." refers to the criminal docket number 4:00-CR-260-Y, and "CV doc." refers to the civil docket number 4:05-CV-756-Y.

18-70022.153

The Court assessed a second sentence of life imprisonment and a consecutive 300-month sentence on two other counts. (CR doc. 1740.) In 2004, the Fifth Circuit affirmed Robinson's convictions and sentences. *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004), *cert. denied*, 543 U.S. 1005 (2004).

In 2005, Robinson moved to vacate the judgment pursuant to 28 U.S.C. § 2255. (CR doc. 2279.) Following three years of litigation, the Court denied the motion. *Robinson v. United States*, No. 4:05-CV-756-Y, No. 4:00-CR-260-Y(2), 2008 WL 4906272 (N.D. Tex. Nov. 7, 2008) (CR doc. 2453.) Robinson moved for reconsideration, which this Court denied. (CR doc. 2456, 2465.) The Court by separate order denied a certificate of appealability ("COA"). (CR doc. 2473.) In 2010, the Fifth Circuit denied Robinson's request for a COA and denied rehearing. (CR doc. 2477, 2482). The Supreme Court denied Robinson's petition for certiorari. (CV doc. 7.)

Robinson moves to reopen the § 2255 proceedings based on Supreme Court cases that have been decided since this Court denied relief. Respondent contends the Motion fails to meet the standards for relief under Rule 60(b) and, to the extent it raises new claims, it should be transferred to the Court of Appeals as a second or successive petition.

## Applicable Law

Federal Rule of Civil Procedure 60(b)(6) allows a district court to grant relief from a final judgment, order, or proceeding

2

18-70022.154

for any reason that justifies relief. *See* Fed. R. Civ. P. 60(b)(6). The purpose of Rule 60(b) is to "balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts." *Hernandez v. Thaler*, 630 F.3d 420, 429-30 (5th Cir. 2011). To succeed under Rule 60(b)(6), the movant must show that extraordinary circumstances exist that justify the reopening of a final judgment. *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

District courts have jurisdiction to consider Rule 60(b) motions in 28 U.S.C. § 2254 habeas proceedings so long as the motion attacks not the substance of the court's resolution of the claim on the merits, but some defect in the integrity of the habeas proceedings. *See Gonzalez*, 545 U.S. at 532. Because 28 U.S.C. § 2254 and § 2255 are nearly identical in substance, this Circuit applies *Gonzalez* to Rule 60(b) motions to reopen § 2255 proceedings. *See Williams v. Thaler*, 602 F.3d 291, 302 n.5 (5th Cir. 2010); *Davis v. United States*, 417 U.S. 333, 343 (1974) (section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"). Examples of Rule 60(b) motions that properly raise a defect in the integrity of the habeas proceedings include a claim of fraud on the court or challenges to a procedural ruling that precluded a merits determination, such as failure to exhaust, procedural default, or time bar. *Gonzalez*, 545 U.S. at 532 nn. 4, 5.

3

18-70022.155

The law limits the defendant to one § 2255 motion unless he obtains certification for a successive motion from the Court of Appeals. *See* 28 U.S.C. §§ 2244, 2255(e), (h); *Gonzalez*, 545 U.S. at 528 (addressing § 2254). Because of the comparative lenience of Rule 60(b), petitioners "sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *In re Edwards*, 865 F.3d 197, 203 (5th Cir.), *cert. denied sub nom. Edwards v. Davis*, 137 S. Ct. 909 (2017) (citing *Gonzalez*, 545 U.S. at 531-32). A Rule 60(b) motion that (1) presents a new habeas claim, (2) attacks the federal court's previous resolution of a claim on the merits, or (3) presents new evidence or new law in support of a claim already litigated, should be treated as a second or successive habeas petition. *See Gonzalez*, 545 U.S. at 531-32. The rationale is that such motions could circumvent the strict successive-petition requirements in § 2255(h). *See id.* (addressing similarly worded provision in § 2244(b)(2)(A)).

### Denial of COA

Robinson first contends that an erroneously high standard was used in denying a COA on his ineffective-assistance-of-counsel claim. He cites *Buck v. Davis*, 137 S. Ct. 759 (2017) as "the Supreme Court's most recent case on the COA standard" and argues that this Court and the Court of Appeals erred under *Buck* by making a COA determination on the merits rather than simply asking whether

18-70022.156

the district court ruling was debatable.  Motion, p. 5-9.  Robinson argues that the COA is a valid subject for Rule 60(b) relief because it is by definition a "non-merits based decision."  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see* Reply, p. 1.

To the extent Robinson seeks to reopen this Court's order denying a COA, it is not a proper Rule 60(b) motion.  *Gonzalez* allows the reopening of procedural decisions that precluded a merits determination.  *Gonzalez*, 545 U.S. at 532, n. 4.  The denial of COA did not preclude a merits determination; it followed this Court's merits-based ruling on the ineffective-trial-counsel claim.  Robinson simply seeks vindication of the claim through a second round of appellate review.  It is, "if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute" governing successive petitions.  *See id.* at 531; § 2255(h).  The Court has no jurisdiction to consider it.

### Inability to Question Jurors

Next, Robinson reasserts a request to interview jurors that this Court had denied during the § 2255 litigation.  He argues that he should be permitted to "conduct an investigation no more intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences."  Motion, p. 11.  This request relies on *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017), which held that the "no impeachment" evidence rule for

5

18-70022.157

jurors must yield to the Sixth Amendment when a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict.  *See* Fed. R. Evid. 606(b); *see also* L. Cr. R. 24.1 (N.D. Tex.); Motion, p. 9-11.

Robinson made a similar request during the § 2255 litigation "to vindicate his Sixth Amendment right to an impartial jury," but Robinson's § 2255 motion did not contain an impartial-jury claim under the Sixth Amendment. (CR doc. 2279.)  Robinson conceded he had no evidence of a Sixth Amendment violation.  (CR doc. 2385, p. 1-5.)  This Court denied the request as an improper fishing expedition in support of a hypothetical claim.  (CR doc. 2388, p. 2-3.)

Robinson's present request again seeks to develop evidence in support of an impartial-jury claim under the Sixth Amendment. Although Robinson argues in his reply that a discovery denial is not a decision on the merits, the case he relies upon is not a Rule 60(b) case.  *In re Sessions*, 672 F.2d 564 (5th Cir. 1982). Moreover, discovery in habeas cases must be tied to a showing that, if the facts are more fully developed, the petitioner may be entitled to relief.  *Bracy v. Gramley,*  520 U.S. 899, 908-09 (1997).  It follows that the only legitimate purpose for which the Court could grant the requested discovery is for Robinson to present a claim for relief.  This Court has no jurisdiction to consider it in a Rule 60(b) Motion.  *See Gonzalez*, 545 U.S. at 531.

18-70022.158

## Indictment Error

Robinson's final argument challenges a ruling by the Court of Appeals in the direct appeal.  The Court of Appeals held that the government's failure to charge by indictment the aggravating factors used to justify a death sentence constituted harmless error.  *See Robinson*, 367 F.3d at 287-88.  During the initial § 2255 litigation, Robinson moved to amend the motion to include this indictment-error claim.  (CR doc. 2422.)  The Court denied the motion because the claim had already been decided on appeal and because the new Supreme Court cases he relied upon were not applicable to the indictment issue and were not retroactive.  (CR doc. 2430, p. 2-3).  Robinson now argues that the Supreme Court opinions in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) and *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) provide new support for his argument that the indictment error should not have been subjected to a harmless error analysis.  Motion, p. 15-19; *see Robinson*, 367 F.3d at 286-89.

Robinson's argument is based solely on a purported change in substantive law regarding the definition of structural error which, he asserts, would alter the outcome of his appellate claim.  It is prohibited by *Gonzalez,* 545 U.S. at 531, because it potentially circumvents the successive-petition requirements in § 2255.  To avoid this conclusion, Robinson argues that the denial of leave to amend is merely a procedural denial, not a merits-based denial.

18-70022.159

But the procedural ruling is inextricably tied to the indictment-error claim offered as a ground for challenging his conviction. Because Robinson seeks vindication of a substantive claim previously denied on appeal, it is a second or successive petition.

Robinson asserts in his reply that, because the *rulings* he challenges are procedural rather than merits-based, they are all subject to being reopened under Rule 60(b), irrespective of his ultimate intent to litigate the underlying substantive claims for relief.  This argument, which necessarily characterizes any allegation of procedural error as "extraordinary circumstances" under Rule 60(b)(6), would potentially swallow the general rule. At a minimum, it conflicts with the holding in *Gonzalez* that extraordinary circumstances "will rarely occur in the habeas context."  *Id.* at 535.  Nevertheless, Robinson cites *Gonzalez* for support, because it held that challenging a timeliness denial was a proper use of Rule 60(b), even as it would have allowed the petitioner to litigate the underlying substantive claims for relief.

Robinson's argument badly misreads *Gonzalez*.  The difference between the limitations ruling challenged in *Gonzalez* and the procedural rulings challenged by Robinson is that the limitations ruling *precluded* a merits determination.  Here, Robinson challenges a ruling that did not prevent any merits determination (the COA) or leverages "procedural" errors to present new claims challenging his

8

18-70022.160

conviction (the impartial-jury claim and indictment error).  Even though couched in terms of procedural error, these issues are, at bottom, merits-based challenges to his conviction.

*Gonzalez* defines "on the merits" as a determination that there exist or do not exist "grounds" entitling a petitioner to relief. *Id.* at 532 n.4.  The Supreme Court clarified that a Rule 60(b) movant is making a habeas-corpus claim when he asserts one of those "grounds" *or* asserts that "a previous ruling regarding one of those grounds" was in error.  *Id.*  Robinson is doing the latter.  He asserts grounds for relief by challenging procedural rulings using new Supreme Court law which may or may not satisfy the requirements in § 2255 that such laws be retroactive rules of constitutional law.  This is the type of end-run around the successive petition rules that *Gonzalez* prohibits.

### Transfer

Because the Motion raises new claims or seeks to relitigate claims decided on the merits, it is a second or successive petition under 28 U.S.C. § 2255(h).  Before this Court may accept a second or successive petition for filing, it must be certified by the court of appeals to contain either newly discovered evidence showing a high probability of actual innocence or a new and retroactive rule of constitutional law.  *See* § 2255(h); *see also* § 2244(b)(2); *Gonzalez*, 545 U.S. at 529-30.

18-70022.161

This Court may either dismiss the motion for lack of juris-diction or transfer it to the Court of Appeals for a determination under § 2255(h).  *See In re Hartzog*, 444 F. App'x 63, 65 (5th Cir. 2011) (citing *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000)).  The Court finds that it is in the interest of justice to transfer the motion to the Court of Appeals rather than dismiss. *See United States v. Fulton*, 780 F.3d 683, 688 (5th Cir. 2015) (stating that a COA requirement, necessitated by dismissal, presents a judicially inefficient procedural mechanism that would have little practical benefit as compared to transfer).

* * * * *

The Clerk of Court is directed to **TRANSFER** Robinson's Motion (CV doc. 10) to the United States Court of Appeals for the Fifth Circuit.

SIGNED June 20, 2018.

_Terry R. Means_

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

18-70022.162