No. 18-10732

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

IN RE: JULIUS OMAR ROBINSON
MOVANT

_____

CONSOLIDATED WITH CASE NO. 18-70022

United States of America,
*Plaintiff-Appellee*
v.
Julius Omar Robinson, also known as Face, also known as Scar,
also known as Scarface,

*Defendant-Appellant*

_____

On Appeal from, and Motion for Authorization to File a Second or Successive
Section 2255 Motion in, the United States District Court for the Northern District
of Texas, Fort Worth Division, Civ. Action No. 4:05-cv-756

_____

**BRIEF OF MOVANT-APPELLANT ADDRESSING ISSUES NOT
REQUIRING A CERTIFICATE OF APPEALABILITY**

HILARY POTASHNER
FEDERAL PUBLIC DEFENDER
JONATHAN C. AMINOFF (California Bar No. 259290)
CELESTE BACCHI (California Bar No. 307119)
Deputy Federal Public Defenders
321 East 2nd Street, Los Angeles, California 90012-4202
Telephone: (213) 894-5374; Facsimile: (213) 894-0310
E-mail: jonathan_aminoff@fd.org
Attorneys for Julius Omar Robinson
September 11, 2018
**ORAL ARGUMENT REQUESTED
THIS IS A CAPITAL CASE**

# CERTIFICATE OF INTERESTED PERSONS

In re Julius Omar Robinson

*Movant*

No. 18-10732

CONSOLIDATED WITH CASE NO. 18-70022

United States of America,
*Plaintiff-Appellee*
     v.
Julius Omar Robinson,
*Defendant-Appellant*

    The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that

the judges of this Court may evaluate possible disqualification or recusal.

1.    Movant-Appellant:
        Julius Omar Robinson
        Reg. # 26190-177
        Terre Haute, IN

2.    Counsel for Movant:
        Hilary Potashner, Federal Public Defender
        Craig A. Harbaugh, Deputy Federal Public Defender
        Jonathan C. Aminoff, Deputy Federal Public Defender
        Celeste Bacchi, Deputy Federal Public Defender
        Office of the Federal Public Defender, Los Angeles, CA

3.    Respondent-Appellee:
        United States of America

4.  Counsel for Opponent:
    Timothy Wayne Funnell, Assistant United States Attorney
    US Attorney's Office, Fort Worth, TX
    Wes Hendrix, Assistant United States Attorney
    US Attorney's Office, Dallas, TX

*/s/ Jonathan C. Aminoff*
Jonathan C. Aminoff (California Bar No. 259290)
Celeste Bacchi (California Bar No. 307119)
Deputy Federal Public Defenders
321 E. 2nd Street
Los Angeles, CA 90012
Telephone:  (213) 894-5374
Facsimile:  (213) 894-0310
Electronic Mail:  Jonathan_Aminoff@fd.org

*Attorneys for Julius Omar Robinson, Movant-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a), Movant-Appellant Julius Omar Robinson respectfully submits that the issues presented by this appeal, along with those presented by his consolidated motion for authorization to file a second or successive petition filed in this Court on August 7, 2018, warrant oral argument. Robinson submits that the issues presented in this case are meritorious.

"[T]he Supreme Court has not adopted a bright-line rule for distinguishing between a bona fide Rule 60(b) motion and a disguised second or successive § 2255 motion[.]" *United States v. Hernandes*, 708 F.3d 680, 681 n. 1 (5th Cir. 2013) (quoting *United States v. Washington*, 653 F.3d 1057, 1060 (9th Cir. 2011). As such, this Court considers whether a Rule 60(b) motion is truly a Rule 60(b) motion on a case-by-case basis. *Id*.

This appeal presents three separate issues that have been erroneously deemed second or successive. Because each of these issues must be individually analyzed in the context of this case "the decisional process [of this Court] would be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C); 5th Cir. R. 34.2.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender


DATED: September 11, 2018     By */s/ Jonathan C. Aminoff*
                                          JONATHAN C. AMINOFF
                                          CELESTE BACCHI
                                          Deputy Federal Public Defenders

                                          Attorney for Movant-Appellant
                                          Julius Omar Robinson

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................2

I.     STATEMENT OF JURISDICTION ..............................................................1

II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...................1

III.   STATEMENT OF THE CASE ......................................................................2

IV.    SUMMARY OF THE ARGUMENT .............................................................3

V.     STANDARD OF REVIEW ...........................................................................6

VI.    ARGUMENT.................................................................................................6

      A.    Legal Standards ...................................................................................6

           1.    The Law Concerning Rule 60(b)(6) Motions ............................6

           2.    The Law Concerning Second or Successive Section 2255 Motions ......................................................................................7

      B.    Issue One: Robinson's Claim that the District Court and this Court Applied an Erroneously High Standard When Reviewing his Request for a Certificate of Appealability was Properly Brought in a Rule 60(b) Motion ..............................................................9

           1.    As the Supreme Court Recently Recognized, There has Long Been a "Troubling" Pattern in this Circuit of Holding Movants to an Erroneously High Standard for Obtaining Certificates of Appealability .....................................................9

           2.    The District Court and this Court Effectively—and Erroneously—Required Robinson to Prove he Would Succeed on Appeal Before Granting Him the Right to Appeal .....................................................................................12

i

3.  The District Court Erred in Finding that Robinson's Challenge to the COA Standards Applied by the Courts in his Case Amounted to a Second or Successive Section 2255 Motion ....................................................................15

C.  Issue Two: The District Court Erred in Finding That Robinson's Request to Interview His Trial Jurors was a Second or Successive Section 2255 Motion. ..................................................17

1.  Relevant Procedural History ......................................17

2.  A Discovery Denial is not a Denial of a Claim on the Merits..18

3.  A Discovery Denial is a Valid Exercise of the Court's Power Under Rule 60(b) ..............................................19

4.  The Potential Fruits of Discovery Does Not Deprive the Court of Jurisdiction to Consider Robinson's Rule 60(b) Motion ..................................................................20

D.  Issue Three: The District Court Erred in Finding that Robinson's Challenge to this Court's Denial of his Request to Amend his Section 2255 Motion was a "Substantive Claim" Properly Raised in a Second or Successive Section 2255 Motion ................................24

1.  Relevant Procedural History ......................................24

2.  The Supreme Court's Recent Cases on Structural Error Fundamentally Alter the Outcome of Robinson's Defective Indictment Claim..................................................28

3.  In Light of *Weaver*, *Williams*, and *McCoy*, the District Court's Denial of Robinson's Request to Amend his Section 2255 Motion to Include his Defective-Indictment Claim was Clearly Erroneous and Worked a Manifest Injustice in Robinson's Habeas Litigation..................................31

**TABLE OF CONTENTS**

Page

    4.    The District Court Erred in Finding that Robinson's Rule 60(b) Challenge to the Procedural Ruling Denying his Defective Indictment Claim is a Substantive Claim for Relief ...................................................................................32

VII.  CONCLUSION..................................................................................35

CERTIFICATE OF COMPLIANCE.......................................................37

CERTIFICATE OF SERVICE ................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) ................................................................25

*Balentine v. Thaler*,
626 F.3d 842 (5th Cir. 2014) ...................................................23

*Batson v. Kentucky*,
476 U.S. 79 (1986) ..................................................................21

*Buck v. Davis*,
137 S. Ct. 759 (2017) ........................................................*passim*

*Buck v. Davis*,
865 F.3d 215 (5th Cir. 2017) ...............................................5, 16

*In re Coleman*,
768 F.3d 367 (5th Cir. 2014) .......................................19, 20, 22

*In re Edwards*,
865 F.3d 197 (5th Cir. 2017) ................................................8, 15

*Flores v. Stephens*,
794 F.3d 494 (5th Cir. 2015) ...................................................34

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) .........................................................*passim*

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) ................................................................15

*Jones v. United States*,
526 U.S. 226 (1999) ................................................................25

*Jordan v. Fisher*,
135 S. Ct. 2647 (2015) ............................................................11

iv

# TABLE OF AUTHORITIES

**Page(s)**

*Klapprott v. United States,*
335 U.S. 601 (1949)..............................................................................6

*Magwood v. Patterson,*
561 U.S. 320 (2010)..............................................................................7

*Mayle v. Felix,*
545 U.S. 644 (2005)............................................................................34

*McCoy v. Louisiana,*
138 S. Ct. 1500 (2018)..................................................................30, 31

*Miller-El v. Cockrell,*
537 U.S. 322 (2003)......................................................................*passim*

*Mitchell v. Rees,*
261 Fed. Appx. 825 (6th Cir. 2008)....................................................20

*Neder v. United States,*
527 U.S. 1 (1999)................................................................................26

*Peña-Rodriguez v. Colorado,*
137 S. Ct. 855 (2017)............................................................................4

*Pippin v. Dretke,*
434 F.3d 782 (5th Cir. 2005) ..............................................................10

*Plaut v. Spendthrift Farm, Inc.,*
514 U.S. 211 (1995)..............................................................................6

*Ring v. Arizona,*
536 U.S. 584 (2002)............................................................................25

*Robinson v. United States,*
543 U.S. 1005 (2004)............................................................................2

*Robinson v. United States,*
565 U.S. 827 (2011)..............................................................................2

*Ruiz v. Quarterman,*
504 F.3d 523 (5th Cir. 2007) ..............................................................23

# TABLE OF AUTHORITIES

Page(s)

*In re Sessions,*
    672 F.2d 565 (5th Cir. 1982) ................................................................. 18

*Strickland v. Washington,*
    466 U.S. 668 (1984) ............................................................... 13, 14, 28

*United States v. Becerra,*
    155 F.3d 740 (5th Cir. 1998) ................................................................. 31

*United States v. Cervantes,*
    132 F.3d 1106 (5th Cir. 1998) ............................................................. 13

*United States v. Cotton,*
    535 U.S. 625 (2002) ......................................................................... 26, 29

*United States v. Fernandez,*
    797 F.3d 315 (5th Cir. 2015) ................................................................... 7

*United States v. Fulton,*
    780 F.3d 683 (5th Cir. 2015) ................................................................... 1

*United States v. Gonzalez-Lopez,*
    548 U.S. 140 (2006) .............................................................................. 27

*United States v. Hernandes,*
    708 F.3d 680 (5th Cir. 2013) .............................................................. 4, 8

*United States v. Jones,*
    614 F.2d 80 (5th Cir. 1980) ................................................................. 31

*United States v. Kalish,*
    780 F.2d 506 (5th Cir. 1986) ............................................................... 31

*United States v. Matthews,*
    312 F.3d 652 (5th Cir. 2002) ............................................................... 31

*United States v. Orozco-Ramirez,*
    211 F.3d 862 (5th Cir. 2000) ................................................................. 6

*United States v. Resendiz-Ponce,*
    549 U.S. 102 (2007) .............................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Robinson,*
367 F.3d 278 (5th Cir. 2004) ......................................................................*passim*

*Weaver v. Massachusetts,*
137 S. Ct. 1899 (2017)..........................................................28, 29, 30, 31

*Wellons v. Hall,*
558 U.S. 220 (2010)........................................................................18

*Williams v. Pennsylvania,*
136 S. Ct. 1899 (2016)..................................................................30

*Williams v. Thaler,*
602 F.3d 291 (5th Cir. 2010) ......................................................6, 30, 31

**Federal Statutes**

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 2241 ........................................................................1

28 U.S.C. § 2253 ........................................................................9

28 U.S.C. § 2254 ......................................................................19

28 U.S.C. § 2255 ..............................................................*passim*

**Other Authorities**

Fed. R. Civ. Pro. 15........................................................................34

Fed. R. Civ. Pro. 81(a)(2) ..........................................................34

Fed. R. Civ. Pro. 60(b) ..............................................................*passim*

# I. STATEMENT OF JURISDICTION

Movant-Appellant Julius Robinson was convicted and sentenced to death in the Northern District of Texas. After Robinson's convictions and sentences became final, jurisdiction was invoked in the United States District Court pursuant to 28 U.S.C. Sections 2241 and 2255. After the conclusion of Robinson's Section 2255 proceedings, jurisdiction was later invoked by a post-judgment motion filed in the District Court under Federal Rule of Civil Procedure 60(b).

The District Court deemed Robinson's post-judgment motion as a second or successive ("SOS") Section 2255 motion and transferred it to this Court on June 20, 2018. An order transferring a motion to this Court as a SOS motion is a final, appealable order, the appeal of which requires no certificate of appealability. *United States v. Fulton*, 780 F.3d 683, 687-88 (5th Cir. 2015).

Robinson timely filed a notice of appeal on June 29, 2018. ROA.164-66. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. Sections 1291, 2255(d).

# II. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Did the District Court err when it concluded that it was without jurisdiction to consider Robinson's Rule 60(b) motion on the basis that the motion was actually a SOS Section 2255 motion?

1

### III. STATEMENT OF THE CASE

Robinson was convicted of multiple crimes and sentenced to death in the District Court on June 5, 2002. ROA.3410-12. This Court affirmed Robinson's convictions and sentences, *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004), and the Supreme Court denied certiorari. *Robinson v. United States*, 543 U.S. 1005 (2004).

On November 29, 2005, Robinson moved the District Court, pursuant to 28 U.S.C. Section 2255, to vacate his convictions and sentences. ROA.3565-3677. In the course of litigating his Section 2255 motion, Robinson sought to interview the jurors from his capital trial, but the District Court denied this request. ROA.4893-4905; ROA.4914-4917. Robinson then sought to amend his Section 2255 motion to include a claim raised on direct appeal regarding the adequacy of the indictment, but the District Court also denied that request. ROA.5303-5307. Notwithstanding the Government's concession that Robinson was entitled to an evidentiary hearing on his penalty-phase ineffective-assistance-of-counsel claim (ROA.4487; ROA.5669), the District Court summarily denied Robinson's Section 2255 motion and denied his request for a Certificate of Appealability ("COA"). ROA.5712-5758; ROA.5938-5942. This Court denied Robinson's motion for a COA. ROA.5945-55, and the Supreme Court denied certiorari, *Robinson v. United States*, 565 U.S. 827 (2011).

On February 28, 2018, Robinson filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) in the United States District Court for the Northern District of Texas. ROA.74-102. Robinson argued that the lack of due process in his post-conviction proceedings constituted an extraordinary circumstance that justified re-opening the judgment in his case pursuant to Rule 60(b). Specifically, Robinson asserted that new Supreme Court case law established that: (1) he was unreasonably denied a COA; (2) he was unreasonably denied the right to amend his Section 2255 motion to include his indictment claim; and, (3) he was unreasonably barred from interviewing the trial jurors, thus depriving him of a reasonable post-conviction investigation. *Id*.

On April 30, 2018, the Government filed an opposition to Robinson's motion, ROA.109-137, and Robinson filed a reply brief on June 13, 2018. ROA.141-152. On June 20, 2018, the District Court concluded that Robinson's motion was a second or successive Section 2255 motion but, rather than dismissing this action, the District Court transferred Robinson's motion to this Court. ROA.153-162.

## IV. SUMMARY OF THE ARGUMENT

Notwithstanding the Government's concessions that Robinson was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel at the penalty portion of his trial, the District Court summarily denied Robinson's

Section 2255 motion.  The District Court, and this Court, then erroneously denied

Robinson a COA on any claim.  Relying on the Supreme Court's recent decision in

*Buck v. Davis*, 137 S. Ct. 759 (2017) (reversing the denial of Buck's Rule 60(b)

motion and motion for COA), and what one Supreme Court justice termed the

Fifth Circuit's "troubling pattern" of denying COAs after essentially reviewing the

merits of an appeal, Robinson sought to re-open his case under Rule 60(b) and

established that the denial of a COA in his case was erroneous.  This issue was

appropriately raised in a Rule 60(b) motion as a COA denial is purely procedural,

the denial of which deprived Robinson of a merits determination of his appeal.

Robinson was erroneously denied the ability to conduct a reasonable post-

conviction investigation when the District Court barred him from interviewing the

jurors from his trial.  Relying on the Supreme Court's recent decision in *Peña-

Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017) (holding that the Sixth

Amendment requires that courts be permitted to consider post-verdict statements

by jurors establishing that racism infected the jurors' deliberations), Robinson

established that the District Court's discovery denial was erroneous.  Robinson's

request to interview the jurors was not a "claim" on which he sought habeas relief;

it was a procedural ruling appropriately revisited in a Rule 60(b) motion.

Robinson was erroneously denied the ability to amend his Section 2255

motion to include his indictment claim, which this Court determined on direct

4

appeal constituted harmless constitutional error.  Relying on multiple recent decisions by the Supreme Court, Robinson established that this Court's prior characterization of this claim as non-structural was erroneous and Robinson should have been given the opportunity to amend.  Because Robinson's Rule 60(b) motion targeted only the District Court's prior procedural ruling barring Robinson from amending his Section 2255 motion, this issue was validly raised via a Rule 60(b) motion.

With respect to all three issues, the District Court appears to be operating under the unsupported assumption that if re-opening a procedural denial could ultimately lead to consideration of a substantive issue, then the Rule 60(b) motion is actually a SOS Section 2255 motion.  The District Court is wrong.  The purpose of Rule 60(b) is to revisit procedural denials that deprived a movant of a merits-based decision on a substantive question.  If a court re-opens a case on a Rule 60(b) motion and the movant is successful on the merits of his Rule 60(b) motion, the court will commonly be confronted with the merits of whatever issue was not considered due to the now-corrected procedural denial.  *See, e.g., Buck v. Davis*, 865 F.3d 215, 216 (5th Cir. 2017) (per curiam) (on remand from the Supreme Court which granted Buck's Rule 60(b) motion, remanding the case to the District Court with instructions to grant Petitioner Buck's writ of habeas corpus).

## V. STANDARD OF REVIEW

Whether a petition is "second or successive" is a legal determination that this Court reviews *de novo*. *See United States v. Orozco-Ramirez*, 211 F.3d 862, 865 (5th Cir. 2000).

## VI. ARGUMENT

### A. Legal Standards

#### 1. The Law Concerning Rule 60(b)(6) Motions

The central concern of Federal Rule of Civil Procedure 60(b)(6) is that justice is done. *Klapprott v. United States*, 335 U.S. 601, 615 (1949). Accordingly, Rule 60(b)(6) "vests power in courts . . . to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Id*. at 615; *see Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010) (describing Rule 60(b)(6) "as 'a grand reservoir of equitable power to do justice in a particular case. . . .'") (quoting *Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1458 (5th Cir. 1992)). Pursuant to Rule 60(b)(6), a party can seek relief "from a final judgment, order, or proceeding" and request reopening of his case, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm,*

*Inc.*, 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).

Rule 60(b), "like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings" and "has an unquestionably valid role to play in habeas cases." *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *see, e.g., United States v. Fernandez*, 797 F.3d 315 (5th Cir. 2015) (applying Rule 60(b) in the context of an action initiated under Section 2255). District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings when such motions "attack[] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez*, 545 U.S. at 532. Examples of Rule 60(b) motions that properly raise a defect in the integrity of the habeas proceedings include a claim of fraud on the court or challenges to a procedural ruling that precluded a merits determination, such as failure to exhaust, procedural default, or time bar. *Id*. at 532 n. 4, 5.

**2. The Law Concerning Second or Successive Section 2255 Motions**

The term "second or successive" is a term of art and must be interpreted with respect to the judgment challenged. *Magwood v. Patterson*, 561 U.S. 320, 332-33 (2010). Movants are limited to one Section 2255 motion. A movant may not file a SOS Section 2255 motion raising a new claim unless he first receives leave to do so from the Court of Appeals. 28 U.S.C. §§ 2255(h); 2244. Because of

7

the comparative lenience of Rule 60(b), there is a concern amongst reviewing courts that movants will "sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017).

There is no bright-line rule for determining that a Rule 60(b) motion is actually a SOS Section 2255 motion. *United States v. Hernandes*, 708 F.3d 680, 681 n. 1 (5th Cir. 2013). However in *Gonzalez v. Crosby*, the leading case on the issue, the Supreme Court provided much guidance. Generally, a Rule 60(b) motion that (1) presents a new habeas claim, (2) attacks the federal court's previous resolution of a claim on the merits, or (3) presents new evidence or new law in support of a claim already litigated, should be treated as a SOS Section 2255 motion. *Gonzalez*, 545 U.S. at 531-32. Indeed, the *Gonzalez* Court was explicit:

> When no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application. If neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules.

*Id*. at 533.

**B.** **Issue One: Robinson's Claim that the District Court and this Court Applied an Erroneously High Standard When Reviewing his Request for a Certificate of Appealability was Properly Brought in a Rule 60(b) Motion**

    **1.** **As the Supreme Court Recently Recognized, There has Long Been a "Troubling" Pattern in this Circuit of Holding Movants to an Erroneously High Standard for Obtaining Certificates of Appealability**

To obtain a COA, a movant is required to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to meet that burden, the only issue is whether an applicant can show that "jurists of reason could disagree with the district court's resolution of his constitutional claims, or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As the Supreme Court has repeatedly held, the "established rule" for granting a COA requires a court of appeals to "limit its examination to a threshold inquiry into the underlying merit of the claims,' and ask 'only if the district court's decision was debatable.'" *Buck v. Davis*, 137 S. Ct. at 744 (citing *Miller-El*, 537 U.S. at 348). Section 2253(c)(2) sets forth a clear, "two-step process: an initial determination whether a claim is reasonably debatable, and then—if it is—an appeal in the normal course." *Id.* Obtaining a COA "does not require a showing that the appeal will succeed," and "a court of appeals should not decline the application . . . merely because it believes the applicant will not demonstrate an

entitlement to relief." *Miller-El*, 537 U.S. at 337.  Moreover, in death penalty cases, "any doubt as to whether a COA should issue . . . must be resolved in favor of the petitioner." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

In *Buck v. Davis,* the Supreme Court's most recent case on the COA standard, the Supreme Court condemned this Circuit's erroneous COA analysis, finding that it improperly made "ultimate merits determinations [that] the panel should not have reached." *Buck*, 137 S. Ct. at 773.  Buck requested a COA following the denial of a motion for relief from judgment pursuant to Rule 60(b)(6).  *Id.*  However, rather than asking "only if the District Court's decision was debatable," *Miller-El*, 537 U.S. at 348, this Court "essentially decided the case on the merits" by finding that Buck had not shown the "extraordinary circumstances that would permit relief" under Rule 60(b)(6).  *Buck*, 137 S. Ct. at 773-74.  The Court explained that this Circuit's approach, which determined the merits of the appeal before and as part of its ultimate COA judgment, was an improper application of COA procedure.  The Court stressed that there is a crucial difference between a claim being "meritorious" and a claim being "debatable" in the COA analysis:

> Of course when a court of appeals properly applies the COA standard and determines that a prisoner's claim is not even debatable, that necessarily means the prisoner has failed to show that his claim is meritorious.  But the converse is not true.  That a prisoner has failed to make the ultimate showing that his claim is meritorious does

10

not logically mean that he failed to make a preliminary showing that his claim was debatable. Thus, when a reviewing court (like the Fifth Circuit here) inverts the statutory order of operations and "first decid[es] the merits of an appeal, . . . then justif[ies] its denial of a COA based on its adjudication of the actual merits," it has placed too heavy a burden on the prisoner *at the COA stage*. *Miller-El*, 537 U.S. at 336-37. *Miller-El* flatly prohibits such a departure from the procedure described by § 2253.

*Id.* (italics in original).

The improper standard applied by this Circuit in *Buck* and in this case has been repeated in other cases. Since this Court's erroneous denial of Robinson's COA request, the Supreme Court has continued to overturn Fifth Circuit COA denials, and recently referenced this Circuit's "troubling" pattern of misapplying Supreme Court precedent in denying COAs. *See, e.g., Jordan v. Fisher*, 135 S. Ct. 2647, 2652 n.2 (2015) (Sotomayor, J., dissenting from the denial of certiorari). This Circuit's routine practice has been to conduct "a detailed evaluation of the merits and then conclude[] that because [the petitioner] had "fail[ed] to prove" his constitutional claim, a COA was not warranted." *Fisher*, 135 S. Ct. at 2652 (Sotomayor, J., dissenting); *see, e.g., Miller-El*, 537 U.S. 322. The *Buck* Court once again noted this pattern. *See* 137 S. Ct. at 773 ("The court below phrased its determination in proper terms—that jurists of reason would not debate that Buck should be denied relief, but it reached that conclusion only after essentially deciding the case on the merits.") (citation to Fifth Circuit opinion omitted).

11

**2.** **The District Court and this Court Effectively—and Erroneously—Required Robinson to Prove he Would Succeed on Appeal Before Granting Him the Right to Appeal**

As Robinson argued to the District Court, this Circuit, and the United States Supreme Court, the same "troubling" pattern later condemned by *Buck* was followed in Robinson's case. After summarily denying Robinson's Section 2255 motion (ROA.5712-57), the District Court, and later this Circuit, denied Robinson's request for a COA on his penalty-phase ineffective-assistance-of-counsel claim. ROA.5938-42 (District Court denial); ROA.5945-55 (Fifth Circuit denial). In response, Robinson argued that the District Court and this Circuit had effectively required him to prove he would succeed on appeal before granting him the right to appeal—an approach which imposed an erroneously high standard on Robinson's COA requests, and failed to abide by the COA guidelines set forth by the Supreme Court. *Robinson v. United States*, Supreme Court Case No. 10-8146, Cert Petition filed December 22, 2010. The COA denials issued by the District Court and the Circuit in this case are improper because they are contrary to the requirements of Section 2253 and "placed too heavy a burden on [Robinson] *at the COA stage*." *Buck*, 137 S. Ct. at 774 (italics in original) (internal citations omitted).

In order to be entitled to a COA, Robinson had to establish that it was at least debatable that he was deprived of the effective assistance of counsel at the

penalty phase of his trial.  The District Court denied Robinson's request for a COA, finding that he had failed to establish either *Strickland* prong.  (ROA.5938-42)  Rather than conducting "a threshold inquiry into the merits of the claims," *Miller-El*, 537 U.S. at 336, much of the District Court's COA order was a defense of merits denial.  ROA.5940-41.  The District Court concluded that because "Robinson has not produced independent indicia of the likely merit of either prong . . . it does not appear that reasonable jurists would disagree with the denial of this claim."[1]  ROA.5941.  In support of his Section 2255 motion, Robinson filed over 40 declarations from third parties, but the Court found that some of Robinson's declarants were not reliable.  *See, e.g.,* ROA.5733 (finding witness's "credibility is questionable").  Yet by definition, *questionable* credibility is at least debatable, and thus a COA should have issued.  *Miller-El*, 537 U.S. at 336-37.

Similarly, on review of Robinson's request for a COA, this Court engaged in a merits analysis of *Strickland*'s prejudice prong, using the "no reasonable jurist" merits standard rather than discussing whether Robinson's penalty-phase ineffectiveness claim was "debatable."  ROA.5945-55.  For example, this Court

---

[1] The "independent indicia" standard is a Fifth Circuit construct that holds that a Section 2255 movant is entitled to an evidentiary hearing only if he "produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties."  *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

decided that despite Robinson's specifically named deficiencies in the trial attorneys' representation, "no reasonable jurist would find that Robinson was prejudiced by the [] alleged deficiencies." ROA.5951. Similarly, this Court found that trial counsel was not ineffective for failing to challenge the future dangerousness evidence because "no jurist of reason would believe that a dent in that evidence, which Robinson alleges, would have created a reasonable probability of a different verdict." *Id*. And these are not isolated examples. *See* ROA.5953 ("Robinson's case for a difficult childhood's mitigating his culpability is far less compelling than the showing in recent cases in which the Supreme Court found the omission of mitigation evidence prejudicial. . . . No reasonable jurist would find [the mitigation evidence's] omission prejudicial.").

Thus, the Fifth Circuit's sole reason for denying a COA is its belief that Robinson failed to establish prejudice—i.e., that he failed to win his *Strickland* claim on the merits. Yet as the *Buck* Court makes clear, it was error for this Court to make such merits determinations and then deny Robinson a COA. Whether a reasonable jurist would find prejudice is the ultimate issue to be decided. At the COA stage, the only relevant inquiry is whether reasonable jurists would debate whether Robinson could establish prejudice. "Indeed, a claim can be debated even though every jurist of reason might agree, after the COA has been granted and the

14

case received full consideration, that the petitioner will not prevail." *Miller-El*, 537 U.S. at 338.

### 3. The District Court Erred in Finding that Robinson's Challenge to the COA Standards Applied by the Courts in his Case Amounted to a Second or Successive Section 2255 Motion

In denying Rule 60(b) relief on this claim, the District Court made the following observations:

> *Gonzalez* allows the reopening of procedural decisions that precluded a merits determination. *Gonzalez*, 545 U.S. at 532, n. 4. The denial of a COA did not preclude a merits determination; it followed this Court's merits-based ruling on the [IAC] claim. Robinson simply seeks vindication of the claim through a second round of appellate review. It is, "if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute" governing successive petitions. The Court has no jurisdiction to consider it.

ROA.157.

There are several problems with the District Court's analysis. First, there is no question that a COA determination is strictly procedural, and therefore cannot be an attempt to revisit the substantive rulings on his habeas claims. *Gonzalez v. Thaler*, 565 U.S. 134 (2012); *In re Edwards*, 865 F.3d 197, 205 (5th Cir. 2017).

Second, the District Court was simply wrong to find that "[t]he denial of a COA did not preclude a merits determination." ROA.157. Such reasoning implies that merits review by an appellate court is not its own independent proceeding that

an appellant has a right to access. Such an implication is directly contrary to Supreme Court jurisprudence on this subject, as well as plain common sense. "[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule *on the merits* of appeals from habeas petitioners." *Miller-El*, 537 U.S. at 336 (emphasis added). Thus, appellate merits review is a separate entity, and an erroneous procedural decision that precludes appellate merits review is entitled to reconsideration under Rule 60(b). *See, e.g., Gonzalez*, 545 U.S. at 532 n.4 (a procedural ruling that precludes a "merits determination" on appeal is properly challenged under Rule 60(b)); *Buck*, 137 S. Ct. at 773-74 (reopening the case under Rule 60(b) because the lower courts applied the wrong COA standard, thereby precluding a "merits determination" on appeal).

Moreover, whether granting Robinson's Rule 60(b) motion challenging this procedural ruling ultimately leads to an opportunity for Robinson to litigate his substantive claims for relief is not part of the analysis at this stage. Indeed, in the habeas context, any time a court grants a Rule 60(b) motion in the habeas petitioner's favor, the substance of the habeas petition may ultimately be litigated. *See, e.g., Buck v. Davis*, 865 F.3d 215, 216 (5th Cir. 2017) (remanding with instructions to grant the writ following remand from the Supreme Court granting the petitioner's Rule 60(b) motion and motion for a COA). This includes those instances where a procedural ruling precluded merits review of a claim. If granted,

16

such rulings would obviously allow the habeas petitioner to litigate his underlying

substantive claims for relief—but the Supreme Court has found such opportunities

for relitigation permissible. *Gonzalez*, 545 U.S. at 532 n.4. Thus whether

Robinson is ultimately trying to reach the merits of claims that were never decided

on their merits is irrelevant to the Rule 60(b) standards that this Court must follow.

**C.     Issue Two: The District Court Erred in Finding That Robinson's Request to Interview His Trial Jurors was a Second or Successive Section 2255 Motion.**

### 1.     Relevant Procedural History

After filing his initial Section 2255 motion, Robinson moved for permission

to interview the jurors. ROA.4893-4905. The district court denied Robinson's

request, finding that Robinson had not provided any evidence that merited

allowing him to investigate possible juror misconduct. ROA.4914-17. The district

court subsequently denied Robinson's Section 2255 motion.

In his February 28, 2018, motion for relief from judgment, ROA.74-102,

Robinson argued that he was unreasonably barred from interviewing the trial

jurors, thus depriving him of a reasonable post-conviction investigation. *Id*. In its

June 20, 2018, Order, the District Court found that Robinson's request could not be

adjudicated via a Rule 60 motion. ROA.157-158. Specifically the Court first

found that although Robinson argued that a discovery denial is not a decision on

the merits, Robinson had not cited a case specifically so holding in the Rule 60

context. Second, the court found that because discovery in habeas cases must be tied to a showing that, if the facts are more fully developed, the movant may be entitled to relief, the only legitimate purpose for granting Robinson's request for discovery would be for Robinson to present a new claim for relief, and the court does not have jurisdiction under Rule 60 to consider a new claim for relief.

### 2. A Discovery Denial is not a Denial of a Claim on the Merits

The Supreme Court held in *Gonzalez* that a Rule 60(b) motion "that seeks to revisit the federal court's denial *on the merits* of a claim for relief should be treated as a successive habeas petition." 545 U.S. at 534 (emphasis added). Robinson does not ask the court to revisit a denial on the merits of a claim, he asks the Court to revisit a denial of discovery. The district court rejected Robinson's citation to *In re Sessions*, 672 F.2d 565, 566 (5th Cir. 1982) for the proposition that a denial of discovery is not a decision on the merits of a claim because *Sessions* does not concern Rule 60(b) motions. Regardless of the context, it is well-settled law that a denial of discovery is not akin to a denial on the merits of a claim for relief. *See, e.g., Wellons v. Hall*, 558 U.S. 220, 223 (2010) (per curiam) (distinguishing a denial of habeas relief from the denial of discovery or an evidentiary hearing).

Indeed, in *Gonzalez*, the Supreme Court explained that, in the context of Rule 60 motions, when referring to a denial of a claim on the merits, they refer to "a determination that there exist or do not exist grounds entitling a petitioner to

habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d). When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim." 545 U.S. at 532 n.4.

Robinson's request to interview jurors is not a habeas claim because the denial of access to jurors would obviously not entitle him to habeas relief. Robinson has made no claim that the denial of access to the jurors, in and of itself, entitles him to relief.

### 3. A Discovery Denial is a Valid Exercise of the Court's Power Under Rule 60(b)

This Court in *In re Coleman*, 768 F.3d 367 (5th Cir. 2014), detailed extensively when a Rule 60 motion is properly considered, versus when it is actually a second or successive petition. Relying on *Gonzalez*, the Court explained that a Rule 60 motion must be procedural, as opposed to substantive. "A motion is substantive—and thus a successive habeas petition—if it 'seeks to add a new ground for relief,' or if it 'attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief.'" *Coleman*, 768 F.3d at 371. But if the motion challenges "not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," then a Rule 60(b) motion is proper." *Id*. The *Coleman* court

explained that "procedural defects are narrowly constructed" and include "erroneous 'previous ruling[s] which precluded a merits determination. . . ." *Id.*

Other circuits have found that Rule 60(b)(6) is properly invoked when a movant is seeking to re-open the case based on the district court's wrongful denial of discovery. In *Mitchell v. Rees*, 261 Fed. Appx. 825 (6th Cir. 2008), cited by this court in *Coleman*, 768 F.3d at 372 n.18, the Sixth Circuit found that a challenge to the district court's failure to grant an evidentiary hearing was a proper use of a Rule 60(b) motion. If re-opening a case for purposes of holding an evidentiary hearing is a valid use of Rule 60(b), then re-opening to conduct juror interviews must certainly be valid.

This Court cited to *Mitchell* in support of a larger point that Rule 60(b) motions are appropriate where the court's, or the government's, actions hindered the movant's ability to present evidence in his case. *Coleman*, 768 F.3d at 372 and 372 n.18. Indeed, the District Court's refusal to let Robinson carry out an adequate post-conviction investigation unquestionably hindered Robinson's ability to present evidence.

### 4. The Potential Fruits of Discovery Does Not Deprive the Court of Jurisdiction to Consider Robinson's Rule 60(b) Motion

Ultimately, it seems that the District Court agrees that Robinson is not seeking to revisit a claim on the merits because, the court found, Robinson's discovery request does not support any particular claim raised in the Section 2255

motion.  Opinion at 6 (referring to a claim that may be supported by Robinson's discovery request as "hypothetical").  This is not entirely accurate.  In Robinson's initial request to interview his trial jurors, he requested access to a particular venireperson in support of his *Batson* claim.  ROA.4903-04.  Specifically, this venireperson was one of the seven African-American jurors, of a total of eight, who the Government was permitted to strike from the venire.  In his Section 2255 motion, Robinson raised a *Batson*[2] claim, ROA.3658-67, and the Government responded with an affidavit from the trial prosecutor which stated his reasons for the strike.[3]  ROA.4519-24.  Those stated reasons, however, clash with the reasons provided by the prosecutor at the time of trial and created factual issues that could only be resolved with testimony from the venireperson.  When the District Court denied Robinson's motion, the court specifically denied his request to interview this venireperson.  ROA.4914-17.

In addition, Robinson alerted the District Court to the need to interview his jurors for his ineffective assistance of counsel claim.  Specifically, Robinson had alleged that trial counsel was ineffective for many reasons including counsel's failure to rebut the Government's aggravating factors.  In response, the

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] Robinson has never been afforded the opportunity to cross-examine the prosecutor.

Government alleged that the jury chose death based on the capital crimes, not the penalty-phase evidence. Robinson re-raised his assertion that he should be permitted to interview the jurors to put the government's assertion to the test. ROA.5107 n. 27.

Regardless, the reason that a juror misconduct claim was not raised to the District Court in Robinson's amended Section 2255 motion was because the court prevented Robinson from conducting discovery. To now use the fact that Robinson did not raise a juror misconduct issue to deny his Rule 60 motion would be inequitable. Moreover, Robinson's inability to raise a juror misconduct claim is a prime example of a defect in the integrity of the habeas proceedings, thus validating Robinson's Rule 60 motion. And finally, it is the apotheosis of the court's actions hindering a movant's ability to present his case as discussed in *Coleman*, 768 F.3d 367.

But the primary thrust of the District Court's Order is whether the lower court has jurisdiction to consider a discovery request that could produce information that would lead to a claim for relief. The District Court's view is that it does not have jurisdiction to hear this motion. ROA.158 ("It follows that the only legitimate purpose for which the Court could grant the requested discovery is for Robinson to present a claim for relief. This Court has no jurisdiction to consider it in a Rule 60(b) Motion."). The District Court's analysis is erroneous.

22

This Court has previously acknowledged that Rule 60 motions are appropriate even when they will result in claims for relief being presented to the court. In both *Balentine v. Thaler*, 626 F.3d 842, 847-48 (5th Cir. 2014), and *Ruiz v. Quarterman*, 504 F.3d 523, 525-26 (5th Cir. 2007), this Court found that Rule 60(b) motions were neither second nor successive petitions when the movants argued that the district court had improperly denied the movant's request to stay and abey their unexhausted federal habeas claims for relief. Specifically, in *Ruiz*, the habeas petitioner presented claims for relief to the district court that had not been presented in his initial state habeas petition. The district court refused the petitioner's request for stay and abeyance finding that the claims would be procedurally defaulted if the petitioner brought a second habeas petition in state court to exhaust the claims. After the denial was affirmed by this Court, the petitioner filed a state habeas petition which was denied on the merits. The petitioner then filed a Rule 60(b) motion in the district court arguing that the district court had mistakenly found that his claims would be defaulted. When the district court found the Rule 60(b) motion to actually be a second habeas petition, this Court reversed, finding that the motion challenged only the procedural finding regarding procedural default, *id*. at 526, and remanded with instructions to consider the petitioner's claims for relief on their merits, *id*. at 532.

In the same way, Robinson challenges a procedural ruling—the denial of discovery—and should that discovery ultimately lead to a claim for relief, there is no jurisdictional impediment to the District Court's consideration of any future claim.

Indeed, the purpose of Rule 60(b) motions is to remove an impediment such that the court can consider a claim on its merits that was previously denied for procedural reasons. The prime examples of appropriate Rule 60(b) motions are those concerning an erroneous finding of failure to exhaust, procedural default, or statute-of-limitations bars. *Gonzalez*, 545 U.S. at 532 n.4. Rule 60(b) motions allow a court to correct the erroneous procedural finding such that the district court can reach the merits of claim. The District Court's decision here that it does not have jurisdiction to reach the merits of a claim after correcting its erroneous discovery denial is contrary to *Gonzalez*.

**D.   Issue Three: The District Court Erred in Finding that Robinson's Challenge to this Court's Denial of his Request to Amend his Section 2255 Motion was a "Substantive Claim" Properly Raised in a Second or Successive Section 2255 Motion**

**1.   Relevant Procedural History**

Robinson's Fifth Amendment rights were violated when the Government failed to present the statutory aggravating factors that made Robinson eligible for the death penalty to the grand jury. *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004). Robinson filed a pretrial motion to disqualify the death penalty on

24

this ground. The District Court denied the defense motion, finding that aggravating factors need not be presented to the grand jury because they "are merely sentencing factors, rather than facts that would enhance his punishment beyond that contemplated by the grand jury." ROA.3357 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 494 and n.19 (2000).) Shortly after Robinson was sentenced to death, the Supreme Court issued *Ring v. Arizona*, 536 U.S. 584 (2002), which established what Robinson had been arguing all along: Where an aggravating factor renders a defendant eligible for death, it is "the functional equivalent of an element of a greater offense" and therefore must be proven to a jury beyond a reasonable doubt. *Id.* at 609. And as an element of a greater offense, the aggravating factor must be charged in an indictment. *Jones v. United States*, 526 U.S. 226, 243 n. 6 (1999); *Apprendi*, 530 U.S. at 476.

Robinson re-raised this issue on direct appeal, arguing that the Fifth Amendment required statutory aggravating factors to be presented to the grand jury and charged in the indictment, and the Government's failure to do so was a structural error that demanded reversal. *See* 2003-08-04 Appellant's Original Brief at 1-11, *United States v. Robinson*, Fifth Circuit Case No. 02-10717. This Court agreed with Robinson's argument that "the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty, and its failure to do so in this case is

25

constitutional error." *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004). Nevertheless, this Court deemed this "constitutional error" nonstructural, and ruled that the harmless-error analysis applied. *Id.* at 285. This Court came to that conclusion by relying on a pair of cases (*Neder v. United States*, 527 U.S. 1 (1999) and *United States v. Cotton*, 535 U.S. 625 (2002)) which focused on just *one* type of fundamental error—that which affects the "fundamental fair[ness]" of the proceedings. *Neder*, 527 U.S. at 8-9; *see also Cotton*, 535 U.S. at 632-33 (holding that a *forfeited* claim of indictment error was not the type of structural error that impacts the "fairness, integrity, or public reputation" of the proceedings and denying the appellate challenge on plain error review). Reconciling the two cases, this Court held that if the indictment claim in *Cotton* did not affect the fairness of the proceedings, then it could not be the type of structural error that the *Neder* Court described as "one that necessarily 'deprive[s] defendants of basic protections without which … no criminal punishment may be regarded as fundamentally fair.'" *Robinson*, 367 F.3d at 286 (quoting *Neder*, 527 U.S. at 8-9) (alterations in original). As the error was not structural, Robinson's claim was controlled by the harmless error standard. And because Robinson was ultimately convicted by the petit jury beyond a reasonable doubt, this Court held, a grand jury would have found the statutory aggravating factors present, and therefore any error was harmless. *Id.* at 285.

After his conviction became final, Robinson moved to vacate his convictions and sentences under 28 U.S.C. Section 2255. Undersigned appointed counsel, however, had only four months to investigate the case and file the motion before the one-year statute of limitations would expire. After timely filing the Section 2255 motion, appointed counsel moved to amend the motion to include Robinson's indictment claim, arguing that intervening Supreme Court case law cast doubt over this Court's prior denial of the claim. Robinson's argument was that the Supreme Court's decisions in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), and *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), further clarified what constitutes a structural error and demonstrated that this Court's decision on appeal was erroneous. ROA.4981-83. The district court denied Robinson's request to amend his Section 2255 motion, finding that because the new case law did not squarely address defective indictments, the cases were irrelevant. ROA.5303-07. Additionally, the court held that because the cases were not retroactive, they could not impact Robinson's case, which became final on direct review. ROA.5305. The District Court subsequently denied Robinson's Section 2255 motion; that denial was affirmed by this Court on appeal. ROA.5712-5758; 5945-55.

**2.    The Supreme Court's Recent Cases on Structural Error Fundamentally Alter the Outcome of Robinson's Defective Indictment Claim**

In his Rule 60(b) Motion, Robinson explained how recent Supreme Court case law establishes yet again that this Court's denial of Robinson's defective indictment claim was wrong.  ROA.92-101.  For example, in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), the Supreme Court provided its most expansive definition to date for what constitutes structural error, holding that it typically arises in three circumstances:  If "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest"; "if the effects of the error are simply too hard to measure"; and "if the error always results in fundamental unfairness." *Id.* at 1908.  Notwithstanding these three rationales, the Court cautioned that these categories are not rigid and explained, "[O]ne point is critical:  An error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.*  In addition to clarifying the categories of structural error, *Weaver* also held that when a structural error is not objected to at trial, and instead is raised via an ineffective assistance of counsel claim, a defendant must show prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984) in order to be granted relief.  In contrast, a preserved (or non-waived) claim of structural error carries no such prejudice (or harmless error) requirement. *Id.* at 1911-12.

*Weaver* casts serious doubt on this Court's denial of Robinson's defective indictment claim in two significant ways. First, the *Weaver* Court's description of the three general categories of structural error make clear that this Court's requirement that his defective indictment claim affect the "fundamental fairness" of his trial in order to be structural was misguided. *Compare, Robinson*, 367 F.3d at 286 (no structural error because the error did not deprive Robinson "of basic protections without which . . . no criminal punishment may be regarded as fundamentally fair") and *Weaver*, 137 S. Ct. at 1907 ("[O]ne point is critical: An error can count as structural even if the error does not lead to fundamental unfairness in every case."). Second, *Weaver* left no doubt that this Court's application of the harmless error standard to Robinson's *preserved* defective indictment claim—a claim of structural error—was improper. Robinson filed a pretrial motion seeking to dismiss the indictment and objected to the denial of that motion at trial, thereby preserving the claim for direct appeal. Yet contrary to the approach in *Weaver*, this Court's decision in *Robinson* equated waived claims with non-waived claims. 367 F.3d 285-86. This Court improperly relied on *Cotton*, 535 U.S. 625 (2002), which applied plain error review to a waived indictment claim. By expanding that logic to Robinson's non-waived indictment error claim, this Court treated Robinson's claim as if it were not preserved for appeal, and *Weaver* affirms that this was erroneous. There is no logical basis for treating

29

Robinson as if his claim was waived; Robinson gave the Court the opportunity to correct the Government's error, and the Government had the ability to supersede its indictment. Yet, this did not occur, and the result should not affect Robinson's ability to defend his rights.

In addition to *Weaver*, the Supreme Court's recent decisions in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) and *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), further support Robinson's claim for relief under Rule 60(b). In *Williams*, the Supreme Court ruled that in an analysis of whether an error is structural, "it is neither possible nor productive" to inquire into the interworkings of proceedings that are confidential. *Williams*, 136 S. Ct. at 1905. Thus, this Court's inquiry into the confidential grand jury proceedings to determine how the jurors might have voted had a statutory aggravating factor been presented to them runs afoul of the *Williams* principle. Moreover, the Court's analysis in *Williams* establishes that the indictment error at issue in Robinson is structural because it falls under *Weaver*'s rubric of an error whose effects are "simply too hard to measure." *Weaver*, 137 S. Ct. at 1908. And in *McCoy*, the Supreme Court elaborated once again on the need to distinguish between preserved and unpreserved errors in the structural error analysis. *McCoy*, 138 S. Ct. at 1509 (holding that an objected-to concession of guilt is structural error). Because Robinson preserved his defective indictment claim, the *McCoy* ruling further undermines this Court's treatment of his claim as

if it were unpreserved (and therefore subject to harmless error analysis).  *See*

*Robinson*, 367 F.3d at 285-86.

    **3.**        **In Light of *Weaver*, *Williams*, and *McCoy*, the District Court's Denial of Robinson's Request to Amend his Section 2255 Motion to Include his Defective-Indictment Claim was Clearly Erroneous and Worked a Manifest Injustice in Robinson's Habeas Litigation**

The District Court denied Robinson's request to amend his Section 2255

motion based in large part on a Fifth Circuit rule that bars Section 2255 litigants

from raising claims that were previously denied on appeal.  ROA.5304-05; *see also*

*United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) and *United States v. Kalish*,

780 F.2d 506 (5th Cir. 1986) (discussing the rule).  The rule is akin to the law of

the case doctrine, which holds that "an issue of law or fact decided on appeal may

not be reexamined either by the District Court on remand or by the appellate court

on a subsequent appeal."  *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir.

1998).  However, the law of the case doctrine is subject to three exceptions: (1) the

evidence at a subsequent trial is substantially different; (2) there has been an

intervening change of law by a controlling authority; and (3) the earlier decision is

clearly erroneous and would work a manifest injustice.  *United States v. Matthews*,

312 F.3d 652, 657 (5th Cir. 2002).  The issuance of *Weaver*, *Williams*, and *McCoy*

satisfy the second and third exceptions described in *Matthews*.  As discussed

above, these opinions demonstrate that the earlier denial of Robinson's motion to

amend is clearly erroneous; and the courts' continued denial of Robinson's right to litigate the impact of the structural error inherent in his defective-indictment claim would work a manifest injustice, especially since this is a death-penalty case.

### 4. The District Court Erred in Finding that Robinson's Rule 60(b) Challenge to the Procedural Ruling Denying his Defective Indictment Claim is a Substantive Claim for Relief

In its Opinion and Order transferring Robinson's 60(b) Motion to this Court, the District Court did not address any of Robinson's substantive arguments in support of Rule 60(b) relief on this claim. Rather, the court focused on whether Robinson was actually seeking review of a claim on the merits, which is prohibited in the Rule 60(b) context. *See Gonzalez*, 545 U.S. at 531-32. In finding that Robinson's challenge to the resolution of his defective-indictment claim "is a second or successive petition," the court reasoned:

> Robinson's argument is based solely on a purported change in substantive law regarding the definition of structural error which, he asserts, would alter the outcome of his appellate claim. It is prohibited by *Gonzalez*, 545 U.S. at 531, because it potentially circumvents the successive-petition requirements in § 2255. To avoid this conclusion, Robinson argues that the denial of leave to amend is merely a procedural denial, not a merits-based denial. But the procedural ruling is inextricably tied to the indictment error claim offered as a ground for challenging his conviction. . . . Here, Robinson . . . leverages "procedural" errors to present new claims challenging his conviction (the impartial-jury claim and indictment error). Even though couched in

> terms of procedural error, these issues are, at bottom, merits-based challenges to his conviction.

ROA.160-61.

The District Court's reasoning is directly contrary to the holding of *Gonzalez*, which holds that a 60(b) motion can be said to bring an improper substantive claim rather than a permissible procedural challenge "if it attacks the federal court's previous resolution of a claim *on the merits*." *Gonzalez*, 545 U.S. at 531. However, "[w]hen no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application. If neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Id.* at 533. In contrast, when a petitioner "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings"— like a procedural denial that precludes a merits determination—*Gonzalez* permits the reopening of the case via Rule 60(b). *Id.* at 532 n.4.

The District Court was wrong to dismiss Robinson's argument as one that "necessarily characterizes any allegation of procedural error as 'extraordinary circumstances' under Rule 60(b)(6) [and therefore] would potentially swallow the general rule." ROA.160. Robinson has never claimed that "any allegation of

procedural error" would satisfy *Gonzalez*. Rather, he adheres to the rule set forth in *Gonzalez* that only those procedural decisions that preclude a merits determination are properly raised in a Rule 60(b) motion. *Gonzalez*, 545 U.S. at 532 and n.4. The District Court's erroneous denial of Robinson's motion to amend did just that: It was a strictly procedural ruling that denied Robinson the right to have a habeas court review the merits of his defective-indictment claim. The District Court cites to no authority for the proposition that the denial of a motion for leave to amend is anything but a procedural ruling. And it cannot, in light of established rules of civil procedure and this Court's precedent on the question. *See Flores v. Stephens*, 794 F.3d 494, 502 (5th Cir. 2015) (finding that the district court's denial of leave to amend the habeas petition is a procedural denial, and applying the procedural COA standard to the petitioner's request for a COA). Motions for leave to amend are rooted in procedural questions and governed by procedural rules. *See, e.g., Mayle v. Felix*, 545 U.S. 644, 655 (2005); Fed. R. Civ. Pro. 15; Fed. R. Civ. Pro. 81(a)(2); Habeas Corpus Rule 12. When a Section 2255 movant is denied leave to amend his petition with a new claim, that claim does not receive merits review by the federal courts. As a result, the denial of a motion to amend necessarily "precludes a merits determination" of the substantive claim. *Gonzalez,* 545 U.S. at 532 n.4. There is no basis for treating a motion for leave to amend any differently from other procedural rulings, like "failure to exhaust,

34

procedural default, or statute-of-limitations bar," *id.*, which may be challenged in the Rule 60(b) context.

## VII. CONCLUSION

Robinson's Rule 60(b) motion is not second or successive. As a result, the District Court's conclusion that it was without jurisdiction to consider the motion was error. This Court should reverse the District Court's order to transfer and remand Robinson's motion for further proceedings.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: September 11, 2018      By */s/ Jonathan C. Aminoff*
                                   JONATHAN C. AMINOFF
                                   CELESTE BACCHI
                                   Deputy Federal Public Defenders
                                   Attorneys for Julius Omar Robinson

## CERTIFICATE OF SERVICE

I certify that on September 14, 2018, I electronically filed the foregoing document in the Fifth Circuit Court of Appeals using the Court's electronic case filing system.

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF

## CERTIFICATE OF COMPLIANCE

I hereby certify that: (1) this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 8,492 words; and (2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman size 14 font.


DATED: September 11, 2018             */s/ Jonathan C. Aminoff*
                                       JONATHAN C. AMINOFF

# CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, I electronically filed the foregoing **BRIEF OF MOVANT-APPELLANT ADDRESSING ISSUES NOT REQUIRING A CERTIFICATE OF APPEALABILITY** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: September 14, 2018        */s/ Jonathan C. Aminoff*
                                                   JONATHAN C. AMINOFF