No. 18-10732

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

IN RE: JULIUS OMAR ROBINSON
MOVANT

---

CONSOLIDATED WITH CASE NO. 18-70022

United States of America,
*Plaintiff-Appellee*
v.
Julius Omar Robinson, also known as Face, also known as Scar,
also known as Scarface,

*Defendant-Appellant*

---

On Appeal from, and Motion for Authorization to File a Second or Successive
Section 2255 Motion in, the United States District Court for the Northern District
of Texas, Fort Worth Division, Civ. Action No. 4:05-cv-756

---

**RECORD EXCERPTS**

HILARY POTASHNER
FEDERAL PUBLIC DEFENDER
JONATHAN C. AMINOFF (California Bar No. 259290)
CELESTE BACCHI (CALIFORNIA BAR No. 307119)
Deputy Federal Public Defenders
321 East 2nd Street, Los Angeles, California 90012-4202
Telephone: (213) 894-5374; Facsimile: (213) 894-0310
E-mail: jonathan_aminoff@fd.org
Attorneys for Julius Omar Robinson
September 11, 2018
**ORAL ARGUMENT REQUESTED**
**THIS IS A CAPITAL CASE**

# INDEX OF MOVANT-APPELLANT'S RECORD EXCERPTS

1. District Court Criminal Docket - *United States of America v. Robinson*, U.S. District Court, Northern District of Texas, Fort Worth Division, Case No. 4:000-cr-00260-Y-2 (ROA.3122-3172)

2. District Court Civil Docket - *Robinson v. United States of America*, U.S. District Court, Northern District of Texas, Fort Worth Division, Case No. 4:05-cv-00756-Y (ROA.1-5)

3. Notice of Appeal, filed June 29, 2018 (ROA.164-65)

4. Second Superseding Indictment, filed June 19, 2001 (ROA.3234-3271)

5. Jury's Special Verdict Form, March 18, 2002 (ROA.4716-4772)

6. Order Appealed: Memorandum Opinion and Order Transferring 60(b) Motion, filed June 20, 2018 (ROA.153-162)

7. Other Order: Fifth Circuit Denial of Motion for Certificate of Appealability (Section 2255), filed June 15, 2010 (ROA.5945-55)

8. Other Order: District Court Order Denying Certificate of Appealability, filed July 10, 2009 (ROA.5938-42)

9. Other Order: District Court Order Denying Section 2255 Motion, filed November 7, 2008 (ROA.5712-58)

10. Other Order: District Court Order Granting in Part and Denying in Part Motion to Amend, filed January 7, 2008 (ROA.5303-07)

11. Other Order: District Court Order Denying Juror Interviews, filed November 28, 2006 (ROA.4914-17)

12. Other Order: District Court Order Entering Judgment, filed June 5, 2002 (ROA.3410-12)

13. Other Order: Excerpt from District Court Order Denying Pretrial Motion re Aggravating Factors, filed February 19, 2002 (ROA.3357)

14.    Certificate of Service

**1.**

**District Court Criminal Docket - *United States of America v. Robinson*, U.S. District Court, Northern District of Texas, Fort Worth Division, Case No. 4:000-cr-00260-Y-2 (ROA.3122-3172)**

# U.S. District Court
## Northern District of Texas (Fort Worth)
## CRIMINAL DOCKET FOR CASE #: 4:00-cr-00260-Y-2

Case title: USA v. Henderson et al

Date Filed: 11/08/2000
Date Terminated: 06/05/2002

Assigned to: Judge Terry R Means

Appeals court case numbers:
'09-70020' 'USCA5', 02-10717

## Defendant (2)

**Julius Omar Robinson**
*DP law clerk 2 is monitoring*
*TERMINATED: 06/05/2002*
*also known as*
Face
*also known as*
Scar
*also known as*
Scarface

represented by **Michael B Charlton**
Law Office of Michael B Charlton
PO Box 51075
Eugene, OR 97405
541/636-2793
Fax: 541/833-5013
Email: charltonlegal@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Public Defender Appointment*
*Bar Status: Admitted/In Good Standing*

**Alex R Tandy**
Law Office of Alex R Tandy
777 Lonesome Dove Trail, Suite A
Hurst, TX 76054
817/281-1600
Fax: 817/485-7588
Email: contact@alextandy.com
*TERMINATED: 07/13/2001*
*Designation: Retained*
*Bar Status: Admitted/In Good Standing*

**Celeste Bacchi-FPD**
Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012-4202
213-894-5374
Fax: 213-894-0310
*Designation: Federal Public Defender Appointment*
*Bar Status: Not Admitted*

**Craig A Harbaugh**
Federal Public Defender's Office
321 E 2nd St
Los Angeles, CA 90012-4202

213/894-2854
Fax: 213/894-0081
Email: craig_harbaugh@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Federal Public Defender Appointment*
*Bar Status: Not Admitted*

**Gary A Taylor**
Federal Public Defender's Office
411 E Bonneville
Suite 250
Las Vegas, NV 89101
702-388-6577
Fax: 702-388-5819
Email: gary_taylor@fd.org
*TERMINATED: 07/20/2005*
*Designation: CJA Appointment*
*Bar Status: Admitted/In Good Standing*

**Hilary Potashner-FPD**
Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012-4202
213-894-5374
Fax: 213-894-0310
*Designation: Federal Public Defender Appointment*
*Bar Status: Not Admitted*

**Jack V Strickland**
Law Offices of Jack V Strickland
2041 Huntington Lane
Fort Worth, TX 76110
817/884-1612
Email: jvs1943@aol.com
*TERMINATED: 06/05/2002*
*Designation: CJA Appointment*
*Bar Status: Admitted/In Good Standing*

**Jonathan Charles Aminoff**
Office of the Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012
213-894-5374
Fax: 213-894-0310
Email: Jonathan_Aminoff@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Federal Public Defender Appointment*
*Bar Status: Not Admitted*

**Sean Kennedy**
Federal Public Defender's Office
321 E 2nd St
Los Angeles, CA 90012-4202

213/894-5063
Fax: 213/894-0081
Email: sean_kennedy@fd.org
*Designation: Federal Public Defender Appointment*
*Bar Status: Not Admitted*

**Wes Ball**
Law Office of Wes Ball
4025 Woodland Park Blvd, Suite 100
Arlington, TX 76013
817/860-5000
Fax: 817/860-6645
Email: wes@ballhase.com
*TERMINATED: 06/05/2002*
*Designation: CJA Appointment*
*Bar Status: Admitted/In Good Standing*

| **Pending Counts** | **Disposition** |
|---|---|
| 21:846 - CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE MARIJUANA AND COCAINE (1) | Dismissed on govt motion |
| 21:846 - CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE MARIJUANA AND COCAINE (1s) | Dismissed on govt motion |
| 21:846 & 841(b)(1)(B) - POSSESS WITH INTENT TO DISTRIBUTE MARIJUANA (1ss) | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding indictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 21:846 & 841(b)(1)(A) - POSSESS WITH INTENT TO DISTRIBUTE COCAINE (2ss) | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding indictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 21:848 - CONTINUING CRIMINAL ENTERPRISE (3s) | Dismissed on govt motion |
| 21:848 - ENGAGING IN A CONTINUING CRIMINAL ENTERPRISE | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, |

| | |
|---|---|
| (3ss) | deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 18:924(c)(1)(A)(i) - POSSESSION OF FIREARMS IN FURTHERANCE OF A DRUG TRAFFICKING CRIME (4ss) | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 18:924(c)(1)(A)(ii) - USED, CARRIED, AND BRANDISHED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME (5ss) | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 18:924(c)(1)(A)(iii) - CARRIED, USED AND DISCHARGED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME (6ss) | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 18:924(j) - CARRIED, USED AND DISCHARGED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME CAUSING DEATH (7ss) | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 18:924(c)(1)(A)(i) - POSSESSED FIREARMS IN FUTHERANCE OF A DRUG TRAFFICKING CRIME (8ss) | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |
| 18:924(c)(1)(A)(ii) - CARRIED, USED AND BRANDISHED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME | found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i |

(9ss)

18:924(c)(1)(A)(iii) - CARRIED, USED AND DISCHARGED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME
(10ss)

18:924(j) - CARRIED, USED AND DISCHARGED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME CAUSING DEATH
(11ss)

21:841(a)(1) & 848(e)(1)(A) - POSSESS WITH INTENT TO DISTRIBUTE COCAINE AND KILLING A PERSON WHILE ENGAGING IN SUCH OFFENSE
(12ss)

18:924(c)(1)(A) & 924(c)(1)(A)(i) & 924(c)(1)(C) - POSSESSION OF FIREARMS IN FURTHERANCE OF A DRUG TRAFFICKING CRIME
(13ss)

18:924(c)(1)(A) & 924(c)(1)(A)(iii) & 924(c)(1)(C) - CARRIED, USED AND DISCHARGED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME
(14ss)

18:924(j) - CARRIED, USED AND DISCHARGED FIREARMS DURING AND IN RELATION TO A DRUG TRAFFICKING CRIME CAUSING DEATH
(15ss)

ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15

found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15

found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15

found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15

found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15

found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15

found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding

18-70022.3126

| | |
|---|---|
| 18:924(c)(1)(A) & 924(c)(1)(A)(i) & 924(c)(1)(C) - POSSESSION OF FIREARMS IN FURTHERANCE OF A DRUG TRAFFICKING CRIME (17ss) | indictment-consecutive to counts 12 and 15<br><br>found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding i ndictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| | | |
|---|---|---|
| USA | represented by | **Alex C Lewis-DOJ**<br>US Attorney's Office<br>801 Cherry Street<br>Suite 1700<br>Fort Worth, TX 76102-6882<br>817-252-5200<br>Fax: 817-252-5455<br>Email: alex.lewis@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Assistant US Attorney*<br>*Bar Status: Admitted/In Good Standing*<br><br>**Susan Beth Cowger-DOJ**<br>US Attorney's Office<br>1100 Commerce St<br>3rd Floor<br>Dallas, TX 75242-1699<br>214-659-8600<br>Fax: 214-767-2846 FAX<br>Email: usatxn.ecfbounceback@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

18-70022.3127

*Designation: Assistant US Attorney*
*Bar Status: Admitted/In Good Standing*

**Angie L Henson-DOJ**
US Attorney's Office
1100 Commerce St
Suite 300
Dallas, TX 75242-1027
214-659-8600
Fax: 214-659-8807
Email: usatxn.ecfbounceback@usdoj.gov
*TERMINATED: 02/13/2008*
*Designation: Assistant US Attorney*
*Bar Status: Admitted/In Good Standing*

**Douglas A Allen-DOJ**
US Attorney's Office
Burnett Plaza
801 Cherry St Suite 1700
Fort Worth, TX 76102-6882
817-252-5200
Fax: 817-252-5455
Email: douglas.allen@usdoj.gov
*TERMINATED: 11/29/2007*
*Designation: Assistant US Attorney*
*Bar Status: Not Admitted*

**Frederick Martin Schattman-DOJ**
US Attorney's Office
Burnett Plaza
801 Cherry St
Suite 1700
Fort Worth, TX 76102-6882
817/252-5228
Fax: 817/978-6381
Email: usatxn.ecfbounceback@usdoj.gov
*Designation: Assistant US Attorney*
*Bar Status: Admitted/In Good Standing*

**Marc W Barta-DOJ**
US Attorney's Office
1100 Commerce St
Third Floor
Dallas, TX 75242
214/659-8645
Fax: 214/767-2846
Email: usatxn.ecfbounceback@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*
*Bar Status: Admitted/In Good Standing*

**Stephen P Fahey-DOJ**
US Attorney's Office

1100 Commerce
3rd Floor
Dallas, TX 75242
214-659-8600
Fax: 214-767-4104
Email: steve.p.fahey@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/02/2000 | 1 | UNSEALED PER 11/8/00 ORDER... INDICTMENT as to Nathan Deshawn Henderson (1) count(s) 1, Julius Omar Robinson (2) count(s) 1, Jason Gehring (3) count(s) 1, Iris Wade (4) count(s) 1, Victor Jimenez (5) count(s) 1, Javier Guadalupe Aguilar (6) count(s) 1, Marcus Jwain Robinson (7) count(s) 1, John Turner (8) count(s) 1, Jamila Marie Camp (9) count(s) 1, Fanisha Hill (10) count(s) 1, Leteshia Lenore Barnett (11) count(s) 1, Jewell Ewing (12) count(s) 1, Cantral Huggins (13) count(s) 1, Terrence Holimon (14) count(s) 1, L J Britt (15) count(s) 1, Richard Smart (16) count(s) 1, Troy Lee Simpson (17) count(s) 1, Brandi Scales (18) count(s) 1, Jeanne Denice Wilkins (19) count(s) 1, Misty Grounds (20) count(s) 1, Travis Dixon (21) count(s) 1, Steven Toston (22) count(s) 1, Angelo Harris (23) count(s) 1, Kimberly Johnson (24) count(s) 1, Santana Minor (25) count(s) 1, Tamieka Sibley (26) count(s) 1, Timothy Dewayne Caldwell (27) count(s) 1, Howard Edward Ringer (28) count(s) 1, Cody Elliott (29) count(s) 1, Derrick Simon (30) count(s) 1, Lashandra Lynette Adams (31) count(s) 1, Stephen Williams (32) count(s) 1, Reginald Kinchen (33) count(s) 1, Carmen Nicole Byrd (34) count(s) 1, Angela Leach (35) count(s) 1, Edward Jenkins (36) count(s) 1, Dorothy Hodges (37) count(s) 1(32pgs) (geb) (Entered: 11/03/2000) |
| 11/02/2000 | 3 | Arrest WARRANT issued as to Julius Omar Robinson (1) (geb) (Entered: 11/03/2000) |
| 11/08/2000 | 39 | MOTION by USA as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Fanisha Hill, Leteshia Lenore Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges to Unseal Indictment (2pgs) (fba) (Entered: 11/08/2000) |
| 11/08/2000 | 40 (p.3173) | ORDER as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Fanisha Hill, Leteshia Lenore Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges GRANTING [39-1] motion to Unseal Indictment as to Nathan Deshawn Henderson (1), Julius Omar Robinson |

18-70022.3129

| | | |
|---|---|---|
| | | (2), Jason Gehring (3), Iris Wade (4), Victor Jimenez (5), Javier Guadalupe Aguilar (6), Marcus Jwain Robinson (7), John Turner (8), Jamila Marie Camp (9), Fanisha Hill (10), Leteshia Lenore Barnett (11), Jewell Ewing (12), Cantral Huggins (13), Terrence Holimon (14), L J Britt (15), Richard Smart (16), Troy Lee Simpson (17), Brandi Scales (18), Jeanne Denice Wilkins (19), Misty Grounds (20), Travis Dixon (21), Steven Toston (22), Angelo Harris (23), Kimberly Johnson (24), Santana Minor (25), Tamieka Sibley (26), Timothy Dewayne Caldwell (27), Howard Edward Ringer (28), Cody Elliott (29), Derrick Simon (30), Lashandra Lynette Adams (31), Stephen Williams (32), Reginald Kinchen (33), Carmen Nicole Byrd (34), Angela Leach (35), Edward Jenkins (36), Dorothy Hodges (37)....the Indictment returned in this cause on November 2, 2000 is hereby UNSEALED... cc: 11/08/00 Page(s): 2 ( Signed by Magistrate Judge Charles Bleil ) (fba) (Entered: 11/08/2000) |
| 11/08/2000 | | Indictment unsealed as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Fanisha Hill, Leteshia Lenore Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges (fba) (Entered: 11/08/2000) |
| 11/08/2000 | 47 | Minute entry as to Julius Omar Robinson : ; Held before Magistrate Judge Charles Bleil Court Reporter: Tape 4814 INITIAL APPEARANCE; AUSA Schattman and retained atty Alex Tandy present; deft arrested 11/8/00; deft first appearnce w/cnsl; arraignment set 11/15/00 9am; dtn hrg set 11/13/00 9am; order of temp detn entd; deft remanded. (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | | ARREST of Julius Omar Robinson (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | | Initial appearance as to Julius Omar Robinson held Arraignment set for 9:00 11/15/00 for Julius Omar Robinson ; Detention Hearing set for 9:00 11/13/00 for Julius Omar Robinson (Defendant informed of rights.) (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | | APPEARANCE Through Counsel by Julius Omar Robinson (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | | Arraignment as to Julius Omar Robinson set for 9:00 11/15/00 for Julius Omar Robinson (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | | Detention hearing as to Julius Omar Robinson set for 9:00 11/13/00 for Julius Omar Robinson (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | 48 | MOTION by USA as to Julius Omar Robinson for pretrial detention (1pg) (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | 49 | Entry of Appearance for Julius Omar Robinson by Attorney Alex R Tandy (1pg) (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | 50 | CJA 23 FINANCIAL AFFIDAVIT by Julius Omar Robinson (1pg) (wrb) (Entered: 11/09/2000) |
| 11/08/2000 | 51 (p.3175) | ORDER fixing dates as to Julius Omar Robinson ; Arraignment set for 9:00 11/15/00 for Julius Omar Robinson ; Detention Hearing set for 9:00 11/13/00 for Julius Omar Robinson cc: all Page(s): 1 ( Signed by Magistrate Judge Charles Bleil ) |

| | | (wrb) (Entered: 11/09/2000) |
|---|---|---|
| 11/08/2000 | 52 (p.3176) | ORDER OF Temporary DETENTION as to Julius Omar Robinson cc: all Page(s): 1 ( Signed by Magistrate Judge Charles Bleil ) (wrb) (Entered: 11/09/2000) |
| 11/09/2000 | 165 (p.3177) | ORDER as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, John Turner, Jamila Marie Camp, Fanisha Hill, Leteshia Lenore Barnett, Richard Smart, Troy Lee Simpson, Brandi Scales, Kimberly Johnson, Santana Minor, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges reset Arraignment for 9:00 11/15/00 BEFORE Magistrate Judge Charles Bleil...for Nathan Deshawn Henderson, for Julius Omar Robinson, for Jason Gehring, for Iris Wade, for Victor Jimenez, for John Turner, for Jamila Marie Camp, for Fanisha Hill, for Leteshia Lenore Barnett, for Richard Smart, for Troy Lee Simpson, for Brandi Scales, for Kimberly Johnson, for Santana Minor, for Cody Elliott, for Derrick Simon, for Lashandra Lynette Adams, for Reginald Kinchen, for Carmen Nicole Byrd, for Angela Leach, for Edward Jenkins, for Dorothy Hodges .....Defense counsel to immediately notify the Court's coordinator, Judy Smalling if an interepreter will be needed at the arraignment. cc: 11/13/00 Page(s): 1 ( Signed by Judge Terry Means ) (fba) (Entered: 11/13/2000) |
| 11/13/2000 | | Detention hearing as to Julius Omar Robinson held (pdm) (Entered: 11/14/2000) |
| 11/13/2000 | 171 | Minute entry as to Julius Omar Robinson : Detention hearing Held before Magistrate Judge Charles Bleil Court Reporter: Tape 4814/4815 ; AUSA Schattman, Atty. Mike Gregory for retd. atty. Alex Tandy present; Deft. remanded to custody; govt's witness DEA Agent Tim Maculoff sowrn & testified; deft's witness John Holloman sworn & testified (1) (pdm) (Entered: 11/14/2000) |
| 11/13/2000 | 172 (p.3178) | ORDER as to Julius Omar Robinson granting [48-1] motion for pretrial detention as to Julius Omar Robinson (2) cc: all Page(s): 1 ( Signed by Magistrate Judge Charles Bleil ) (pdm) (Entered: 11/14/2000) |
| 11/15/2000 | 213 | Minute entry as to Julius Omar Robinson : ; Held before Magistrate Judge Charles Bleil Court Reporter: Ana Warren ARRAIGNMENT; AUSA Schattman present; held on ct 1; deft enters plea of NOT GUILTY; trial set Mar 19 2001 1:30; atty did not appear; reset for 11.22.00 9am (wrb) (Entered: 11/16/2000) |
| 11/15/2000 | | Arraignment as to Julius Omar Robinson reset for 9:00 11/22/00 for Julius Omar Robinson because atty did not appear (wrb) (Entered: 11/16/2000) |
| 11/16/2000 | 238 (p.3179) | ORDER as to Julius Omar Robinson set Arraignment for 9:00 11/22/00 for Julius Omar Robinson cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 11/17/2000) |
| 11/16/2000 | 267 | Arrest WARRANT Returned Executed as to Julius Omar Robinson on 11/8/00 signed by SA DEA McAuliffe (wrb) (Entered: 11/17/2000) |
| 11/22/2000 | 307 | Minute entry as to Julius Omar Robinson : ; Held before Magistrate Judge Charles Bleil Court Reporter: Ana Warren ARRAIGNMENT; HEld on ct 1; AUSA Schattman and retained atty Alex Tandy present; held on c t 1; deft enters plea of NOT GUILTY; trial set for Mar 19 2001 1:30; deft contd. in custody. (wrb) (Entered: 11/22/2000) |
| 11/22/2000 | | Arraignment as to Julius Omar Robinson held (wrb) (Entered: 11/22/2000) |

| | | |
|---|---|---|
| 11/22/2000 | | Jury trial as to Julius Omar Robinson set at 1:30 3/19/01 for Julius Omar Robinson (wrb) (Entered: 11/22/2000) |
| 11/22/2000 | | PLEA of Not Guilty by Julius Omar Robinson (2) count(s) 1 ; Court accepts plea. (wrb) (Entered: 11/22/2000) |
| 11/22/2000 | | Jury trial as to Julius Omar Robinson set at 1:30 3/19/01 for Julius Omar Robinson (wrb) (Entered: 11/22/2000) |
| 11/22/2000 | 308 (p.3180) | SCHEDULING ORDER FOR CRIMINAL TRIAL AND PRETRIAL ORDER.......as to Julius Omar Robinson, Misty Grounds setting Jury Trial for 1:30 3/19/01 for Julius Omar Robinson, for Misty Grounds ; Pretrial Motion Filing deadline on 4:30 1/12/01....SEE ORDER FOR FURTHER SPECIFICS... cc: 11/22/00 Page(s): 11 ( Signed by Judge R. Means ) (fba) (Entered: 11/22/2000) |
| 11/30/2000 | 333 | NOTICE of David Bays, Attorney....Stating he was released by the Magistrate in Open Court; Mr. Wurst has filed a written appearance; he no longer wants to receive correspondence from this office (1pg) (fba) (Entered: 12/01/2000) |
| 12/27/2000 | 390 | Designation of Expert Witnesses by plaintiff USA (3pgs) (fba) (Entered: 12/27/2000) |
| 12/29/2000 | 395 | Second Designation of Expert Witness by plaintiff USA (2pgs) (fba) (Entered: 12/29/2000) |
| 01/11/2001 | 437 | Designation of Expert Witness by defendant Julius Omar Robinson (3 pg) (dld) (Entered: 01/12/2001) |
| 01/11/2001 | 438 | MOTION by Julius Omar Robinson to suppress evidence , and Request for Evidentiary Hearing (4 pg) (dld) (Entered: 01/12/2001) |
| 01/11/2001 | 439 | BRIEF by Julius Omar Robinson in support of [438-1] motion to suppress evidence, [438-2] motion for Evidentiary Hearing (7 pg) (dld) (Entered: 01/12/2001) |
| 01/11/2001 | 440 | OBJECTION by Julius Omar Robinson to [395-1] designation and request for evidentiary hearing outside presence of jury, [390-1] designation (4 pg) (dld) (Entered: 01/12/2001) |
| 01/11/2001 | 441 | BRIEF by Julius Omar Robinson in support of [440-1] Daubert Motion (3 pg) (dld) (Entered: 01/12/2001) |
| 01/19/2001 | 473 | UNOPPOSED MOTION by USA as to Nathan Deshawn Henderson, Julius Omar Robinson, John Turner, Leteshia Lenore Barnett, Steven Toston for enlargement of time to file responses to the pretrial motions (3pgs) (fba) (Entered: 01/19/2001) |
| 01/22/2001 | 475 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/01/2001) |
| 01/23/2001 | 484 (p.3191) | ORDER as to Nathan Deshawn Henderson, Julius Omar Robinson, John Turner, Leteshia Lenore Barnett, Steven Toston granting [473-1] motion for enlargement of time to file responses to the pretrial motions as to Nathan Deshawn Henderson (1), Julius Omar Robinson (2), John Turner (8), Leteshia Lenore Barnett (11), Steven Toston (22) Response to motion reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [453-1] motion for severance, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [452-1] motion to suppression of evidence, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for |

18-70022.3132

| | | Leteshia Lenore Barnett, for Steven Toston for [445-1] motion to suppress, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [445-2] motion for Evidentiary Hearing, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [444-1] motion for severance, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [438-1] motion to suppress evidence, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [438-2] motion for Evidentiary Hearing, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [435-1] motion for suppression of evidence, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [434-1] motion for severance, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [434-2] motion contingent motion for severance, reset to 1/24/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for John Turner, for Leteshia Lenore Barnett, for Steven Toston for [433-1] motion to suppress the fruits of an unlawful search and seizure cc: 01/23/01 Page(s): 2 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/23/2001) |
|---|---|---|
| 01/23/2001 | 486 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 01/23/2001) |
| 01/23/2001 | 485 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/01/2001) |
| 01/23/2001 | 487 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/01/2001) |
| 01/24/2001 | 492 | RESPONSE by USA as to Julius Omar Robinson in opposition to deft's objections to govt's designations of expert witnesses [440-1] opposition response (3pgs) (fba) (Entered: 01/25/2001) |
| 01/25/2001 | 504 (p.3193) | ORDER OVERRULING DEFENDANT'S OBJECTIONS as to Julius Omar Robinson denying [440-1] opposition response as to Julius Omar Robinson (2); and his request for a hearing is Denied. cc: 01/25/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/25/2001) |
| 01/25/2001 | 507 | UNOPPOSED MOTION by USA as to Nathan Deshawn Henderson, Julius Omar Robinson, John Turner, Leteshia Lenore Barnett, Steven Toston for leave to file Certain Responses Out of Time (3pgs) (fba) (Entered: 01/26/2001) |
| 01/26/2001 | 509 (p.3194) | ORDER as to Nathan Deshawn Henderson, Julius Omar Robinson, John Turner, Leteshia Lenore Barnett, Steven Toston granting [507-1] motion for leave to file Certain Responses Out of Time as to Nathan Deshawn Henderson (1), Julius Omar Robinson (2), John Turner (8), Leteshia Lenore Barnett (11), Steven Toston (22)....SEE ORDER FOR SPECIFICS... cc: 01/26/01 Page(s): 2 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/26/2001) |
| 01/26/2001 | 512 | RESPONSE by USA as to Julius Omar Robinson re [438-1] motion to suppress evidence (2pgs) (fba) (Entered: 01/26/2001) |
| 01/26/2001 | 516 | RESPONSE by USA as to Julius Omar Robinson to [437-1] designation (2pgs) (fba) (Entered: 01/26/2001) |
| 01/29/2001 | 520 (p.3196) | ORDER as to Julius Omar Robinson Motion hearing set for 3:00 2/15/01 for Julius Omar Robinson for [438-1] motion to suppress evidence, set for 3:00 2/15/01 for |

18-70022.3133

| | | |
|---|---|---|
| | | Julius Omar Robinson for [438-2] motion for Evidentiary Hearing cc: 01/29/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/29/2001) |
| 01/30/2001 | 524 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 01/30/2001) |
| 01/31/2001 | 531 | SEALED DOCUMENT placed in sealed area. (fba) Modified on 02/01/2001 (Entered: 02/01/2001) |
| 01/31/2001 | 532 | SEALED DOCUMENT placed in sealed area. (fba) Modified on 02/01/2001 (Entered: 02/01/2001) |
| 02/01/2001 | 544 | MOTION by Julius Omar Robinson for continuance of suppression hearing (3pgs) (fba) (Entered: 02/02/2001) |
| 02/06/2001 | 571 (p.3197) | ORDER as to Julius Omar Robinson granting [544-1] motion for continuance of suppression hearing as to Julius Omar Robinson (2) Motion hearing set for 1:30 2/23/01 for Julius Omar Robinson for [438-1] motion to suppress evidence, set for 1:30 2/23/01 for Julius Omar Robinson for [438-2] motion for Evidentiary Hearing cc: 02/06/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 02/06/2001) |
| 02/14/2001 | 592 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/14/2001 | 593 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/15/2001 | 594 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/15/2001 | 595 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/15/2001 | 596 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/15/2001 | 597 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/15/2001 | 598 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/15/2001 | 599 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/15/2001) |
| 02/23/2001 | | Motion hearing held as to Julius Omar Robinson re: [438-1] motion to suppress evidence (fba) (Entered: 02/26/2001) |
| 02/26/2001 | 617 | Minute entry as to Julius Omar Robinson : ;Motion Hearing Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-Atty for Govt; Alex Tandy-Ret Atty for Deft; Def'ts motion to suppress is Denied; Written Order to Follow; Deft's Custody/Detention continued; Deft Remanded to custody (1pg) (fba) (Entered: 02/26/2001) |
| 02/26/2001 | 620 | ****UNFILED PER ORDER OF 2/27/01****MOTION by Julius Omar Robinson of Continuance of trial in Interests of Justice (5pgs) (fba) Modified on 02/27/2001 (Entered: 02/26/2001) |
| 02/26/2001 | 621 | *****UNFILED PER ORDER OF 2/27/01****MEMORANDUM by Julius Omar Robinson in support of [620-1] motion of Continuance of trial in Interests of Justice (7pgs) (fba) Modified on 02/27/2001 (Entered: 02/26/2001) |
| 02/26/2001 | 622 (p.3198) | ORDER as to Julius Omar Robinson denying [438-1] motion to suppress evidence as to Julius Omar Robinson (2)...SEE ORDER FOR SPECIFICS... cc: 02/26/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 02/26/2001) |
| 02/27/2001 | | |

18-70022.3134

| | | |
|---|---|---|
| | 624 (p.3199) | ORDER as to Julius Omar Robinson unfiling [620-1] motion of Continuance of trial in Interests of Justice as to Julius Omar Robinson (2), unfiling [621-1] support memorandum as to Julius Omar Robinson (2) due to the following deficiency: Motion does not comply Paragraph 10 of Scheduling Order. Copies to counsel: 02/27/01 Page(s) 3 ( Signed by Judge Terry R. Means ) (fba) (Entered: 02/27/2001) |
| 03/02/2001 | 653 | FIRST AMENDED MOTION by Julius Omar Robinson to continuance (5pgs) (fba) (Entered: 03/05/2001) |
| 03/02/2001 | 654 | MEMORANDUM by Julius Omar Robinson in support of [653-1] motion to continuance (7pgs) (fba) (Entered: 03/05/2001) |
| 03/06/2001 | 664 (p.3202) | ORDER as to Julius Omar Robinson granting [653-1] motion to continuance as to Julius Omar Robinson (2) reset Jury trial for 1:30 7/23/01 for Nathan Deshawn Henderson, for Julius Omar Robinson, for Jason Gehring, for Iris Wade, for Victor Jimenez, for Javier Guadalupe Aguilar, for Marcus Jwain Robinson, for John Turner, for Jamila Marie Camp, for Fanisha Hill, for Leteshia Lenora Barnett, for Jewell Ewing, for Cantral Huggins, for Terrence Holimon, for L J Britt, for Richard Smart, for Troy Lee Simpson, for Brandi Scales, for Jeanne Denice Wilkins, for Misty Grounds, for Travis Dixon, for Steven Toston, for Angelo Harris, for Kimberly Johnson, for Santana Minor, for Tamieka Sibley, for Timothy Dewayne Caldwell, for Howard Edward Ringer, for Cody Elliott, for Derrick Simon, for Lashandra Lynette Adams, for Stephen Williams, for Reginald Kinchen, for Carmen Nicole Byrd, for Angela Leach, for Edward Jenkins, for Dorothy Hodges cc: 3/6/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (dld) (Entered: 03/06/2001) |
| 03/06/2001 | | Deadline updated as to Julius Omar Robinson, to Continue in Interests of Justice Time Excluded from 3/20/01 to 7/23/01 (dld) (Entered: 03/29/2001) |
| 03/07/2001 | 670 | Supplemental Certificate of Conference in Compliance With Rule 10 of the Scheduling Order by Julius Omar Robinson (4pgs) (fba) (Entered: 03/07/2001) |
| 03/20/2001 | 717 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 03/21/2001) |
| 03/23/2001 | 727 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 03/23/2001) |
| 03/23/2001 | 728 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 03/23/2001) |
| 03/29/2001 | 745 | Designation of Expert Witnesses by plaintiff USA (4pgs) (fba) (Entered: 03/30/2001) |
| 04/18/2001 | 30 | SEALED DOCUMENT placed in sealed area. [ 4:01-m -62 ] (wrb) (Entered: 04/19/2001) |
| 04/18/2001 | 31 | SEALED DOCUMENT placed in sealed area. [ 4:01-m -62 ] (wrb) (Entered: 04/19/2001) |
| 04/18/2001 | 32 | SEALED DOCUMENT placed in sealed area. [ 4:01-m -62 ] (wrb) (Entered: 04/19/2001) |
| 04/19/2001 | 766 (p.3203) | SUPERSEDING INDICTMENT as to Nathan Deshawn Henderson (1) count(s) 1s, 2s, Julius Omar Robinson (2) count(s) 1s, 3s, Jason Gehring (3) count(s) 1s, Victor Jimenez (5) count(s) 1s, Javier Guadalupe Aguilar (6) count(s) 1s, Marcus Jwain Robinson (7) count(s) 1s, John Turner (8) count(s) 1s, Fanisha Hill (10) count(s) 1s,Jewell Ewing (12) count(s) 1s, Cantral Huggins (13) count(s) 1s, Terrence Holimon (14) count(s) 1s, L J Britt (15) count(s) 1s, Richard Smart (16) count(s) 1s, Brandi Scales (18) count(s) 1s, Jeanne Denice Wilkins (19) count(s) 1s, Travis |

| Date | Doc # | Entry |
|---|---|---|
| | | Dixon (21) count(s) 1s, Steven Toston (22) count(s) 1s, Angelo Harris (23) count(s) 1s, Kimberly Johnson (24) count(s) 1s, Tamieka Sibley (26) count(s) 1s, Howard Edward Ringer (28) count(s) 1s, Derrick Simon (30) count(s) 1s, Stephen Williams (32) count(s) 1s, Carmen Nicole Byrd (34) count(s) 1s, Dorothy Hodges (37) count(s) 1s, Hendrick Ezell Tunstall (38) count(s) 1, Tyrone Bryant (39) count(s) 1, Christhian Morales (40) count(s) 1, Edy Sonia Zamudio (41) count(s) 1, Crystal Mancilla (42) count(s) 4s , Dakari Warner (43) count(s) 1, Leon Jenkins (44) count(s) 1 supersedes indictment filed on 11/2/00 (30pgs) (geb) Modified on 05/24/2001 (Entered: 04/20/2001) |
| 04/25/2001 | 777 (p.3233) | ORDER SETTING ARRAIGNMENT ON SUPERSEDING INDICTMENT as to Julius Omar Robinson, Javier Guadalupe Aguilar, Marcus Jwain Robinson, Jewell Ewing, Cantral Huggins, Steven Toston set Arraignment for 9:00 5/8/01 for Julius Omar Robinson, for Javier Guadalupe Aguilar, for Marcus Jwain Robinson, for Jewell Ewing, for Cantral Huggins, for Steven Toston before Magistrate Judge Charles Bleil; defense counsel to notifiy Kim McGlothin if an interpreter will be needed at the arraignment. cc: 04/26/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 04/26/2001) |
| 05/08/2001 | 805 | Minute entry as to Julius Omar Robinson : ; Held before Magistrate Judge Charles Bleil Court Reporter: Ana Warren ARRAIGNMENT; AUSA Schattman and retained atty Alex Tandy present; held on cts 1s,3s; deft enters plea of NOT GUILTY; trial set for Jul 23 2001 1:30; deft contd. in custody. (wrb) (Entered: 05/09/2001) |
| 05/08/2001 | | Arraignment as to Julius Omar Robinson held (wrb) (Entered: 05/09/2001) |
| 05/08/2001 | | PLEA of Not Guilty by Julius Omar Robinson (2) count(s) 1s, 3s ; Court accepts plea. (wrb) (Entered: 05/09/2001) |
| 05/08/2001 | | Jury trial as to Julius Omar Robinson set at 1:30 7/23/01 for Julius Omar Robinson (wrb) (Entered: 05/09/2001) |
| 05/10/2001 | 823 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 05/10/2001) |
| 05/10/2001 | 824 | SEALED EX PARTE DOCUMENT placed in sealed area. (fba) (Entered: 05/10/2001) |
| 05/10/2001 | 825 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 05/10/2001) |
| 05/10/2001 | 826 | SEALED EX PARTE DOCUMENT placed in sealed area. (fba) Modified on 05/10/2001 (Entered: 05/10/2001) |
| 05/10/2001 | 827 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 05/10/2001) |
| 05/10/2001 | 828 | SEALED EXPARTE DOCUMENT placed in sealed area. (fba) (Entered: 05/10/2001) |
| 05/23/2001 | 866 | FIRST AMENDED Designation of Expert Witness by defendant Julius Omar Robinson (3pgs) (fba) (Entered: 05/23/2001) |
| 06/14/2001 | 932 | MOTION by Julius Omar Robinson for Alex R. Tandy to withdraw as attorney (8pgs) (fba) (Entered: 06/15/2001) |
| 06/15/2001 | 933 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 06/15/2001) |
| 06/19/2001 | 938 | SUPERSEDING INDICTMENT as to Nathan Deshawn Henderson (1) count(s) 1ss, |

18-70022.3136

| | | |
|---|---|---|
| | (p.3234) | 16ss, Julius Omar Robinson (2) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 12ss, 13ss, 14ss, 15ss, 17ss, Jason Gehring (3) count(s) 1ss, Victor Jimenez (5) count(s) 1ss, 2ss, Javier Guadalupe Aguilar (6) count(s) 1ss, Marcus Jwain Robinson (7) count(s) 1ss, John Turner (8) count(s) 1ss, 2ss, Fanisha Hill (10) count(s) 1ss, Jewell Ewing (12) count(s) 1ss, Cantral Huggins (13) count(s) 1ss, Terrence Holimon (14) count(s) 1ss, L J Britt (15) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 6ss, 7ss, 12ss, 13ss, 14ss, 15ss, Richard Smart (16) count(s) 1ss, Travis Dixon (21) count(s) 1ss, Steven Toston (22) count(s) 1ss, Angelo Harris (23) count(s) 1ss, 2ss, 3ss, 8ss, 9ss, 10ss, 11ss, Kimberly Johnson (24) count(s) 1ss, Tamieka Sibley (26) count(s) 1ss, Hendrick Ezell Tunstall (38) count(s) 2s, 3s, 12s, 13s, 14s, 15s, Tyrone Bryant (39) count(s) 2s, 3s, 12s, 13s, 14s, 15s, Christhian Morales (40) count(s) 2s, 3s, 12s, 13s, 14s, 15s, Edy Sonia Zamudio (41) count(s) 2s, 3s, 12s, 13s, 14s, 15s, Dakari Warner (43) count(s) 2s, Leon Jenkins (44) count(s) 2s ; supersedes indictment filed on 11/2/00 (geb) (Entered: 06/20/2001) |
| 06/22/2001 | 944 (p.3273) | ORDER SETTING ARRAIGNMENT as to Julius Omar Robinson, Javier Guadalupe Aguilar, Marcus Jwain Robinson, Jewell Ewing, Cantral Huggins, Steven Toston set Arraignment for 9:00 6/27/01 for Julius Omar Robinson, for Javier Guadalupe Aguilar, for Marcus Jwain Robinson, for Jewell Ewing, for Cantral Huggins, for Steven Toston before Magistrate Judge Charles Bleil; defense cousel to notify Kim McGlothin if an interpreter will be needed at the arraignment. cc: 06/22/01 Page(s): 1 ( Signed by Judge Terry Means ) (fba) (Entered: 06/22/2001) |
| 06/25/2001 | 962 | ****UNFILED PER ORDER OF 6/26/01****MOTION with Memorandum in Support by Julius Omar Robinson for severance (9pgs) (fba) Modified on 06/26/2001 (Entered: 06/26/2001) |
| 06/25/2001 | 963 | *****UNFILED PER ORDER OF 6/26/01****FIRST AMENDED Certificate of Conference RE: Julius Omar Robinson's Motion To Sever by Julius Omar Robinson as to Julius Omar Robinson (3pgs) (fba) Modified on 06/26/2001 (Entered: 06/26/2001) |
| 06/26/2001 | 964 (p.3274) | ORDER as to Julius Omar Robinson unfiling [962-1] motion for severance as to Julius Omar Robinson (2), unfiling [963-1] remark (First Amended Certificate of Conference) as to Julius Omar Robinson (2) due to the following deficiency: A completed certificate of service (no signature); the motion must include: proposed order. Copies to counsel: 06/26/01 Page(s) 3 ( Signed by Judge Terry R. Means ) (fba) (Entered: 06/26/2001) |
| 06/27/2001 | 965 | MOTION with Memorandum in Support by Julius Omar Robinson for severance (10pgs) (fba) (Entered: 06/27/2001) |
| 06/27/2001 | 967 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 06/27/2001) |
| 06/27/2001 | 970 | Minute entry as to Julius Omar Robinson : ; Held before Magistrate Judge Charles Bleil Court Reporter: Ana Warren ARRAIGNMENT; AUSA Schattman and retained atty Alex Tandy present; held on ct 1s; deft enters plea of NOT GUILTY; trial set for Jul 23 2001 1:30; deft remanded. (wrb) (Entered: 06/28/2001) |
| 06/27/2001 | | Arraignment as to Julius Omar Robinson held (wrb) (Entered: 06/28/2001) |
| 06/27/2001 | | PLEA of Not Guilty by Julius Omar Robinson (2) count(s) 1ss ; Court accepts plea. (wrb) Modified on 06/28/2001 (Entered: 06/28/2001) |
| 06/29/2001 | 998 (p.3277) | ORDER Granting SEVERANCE of CAPITAL DEFENDANTS, Setting Deadline for Notice of Intent to Seek Death Penalty, and Continuing Trial of Capital |

| | | |
|---|---|---|
| | | Defendants....as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Fanisha Hill, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Tamieka Sibley, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio, Dakari Warner, Leon Jenkins... On June 19, 2001, a superseding indictment was filed in this cause that charges capital offenses against the following defendants: Julius Omar Robinson, L.J.Britt, Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio....Severed ....Ordered that the trial of the above-listed capital defendants is hereby SEVERED from the July 23 trial of the non-capital defendants; further Ordered that the government shall have until no later than August 10, 2001 to file a notice indicating the capital defendants against whom it intends to seek the death penalty; to Continue in Interests of Justice Time Excluded from 7/24/01 to 9/17/01 , further Ordered the the trial of the capital defendants is CONTINUED until Jury trial for 1:30 9/17/01 for Julius Omar Robinson, for L J Britt, for Angelo Harris, for Hendrick Ezell Tunstall, for Tyrone Bryant, for Christhian Morales, for Edy Sonia Zamudio ; An amended scheduling order will issue as to the September 17 trial of the capital defendants this same day.....SEE ORDER FOR FURTHER SPECIFICS.... cc: 06/29/01 Page(s): 3 ( Signed by Judge Terry R. Means ) (fba) (Entered: 06/29/2001) |
| 06/29/2001 | 999 (p.3280) | AMENDED SCHEDULING ORDER FOR CRIMINAL TRIAL AND PRETRIAL ORDER AS TO CAPITAL DEFENDANTS ONLY as to Julius Omar Robinson, L J Britt, Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio setting Jury Trial for 1:30 9/17/01 for Julius Omar Robinson, for L J Britt, for Angelo Harris, for Hendrick Ezell Tunstall, for Tyrone Bryant, for Christhian Morales, for Edy Sonia Zamudio ; Discovery cutoff 8/22/01 ; Pretrial Motion Filing deadline on 4:30 8/27/01....SEE ORDER FOR FURTHER SPECIFICS.... cc: 06/29/01 Page(s): 10 ( Signed by Judge R. Means ) (fba) Modified on 06/29/2001 (Entered: 06/29/2001) |
| 07/13/2001 | 1058 (p.3290) | ORDER Granting Motion to Withdraw, Withdrawing Current Counsel of Record, and Appointing Counsel of Record with Capital Experience as to Julius Omar Robinson granting [932-1] motion for Alex R. Tandy to withdraw as attorney (Terminated attorney Alex R Tandy for Julius Omar Robinson as to Julius Omar Robinson (2)....Ordered that attorney Wes Ball is Appointed as counsel of record for Defendant; the clerk of the Court is hereby Directed to transmit a copy of this order and the appropriate appointment papers to attorney Ball and note his address and telephone number on the Court's docket; in addition to normal distribution, the clerk of the Court shall transmit a copy of this order to defendant, Mr. Julius Omar Robinson. cc: 07/13/01 Page(s): 2 ( Signed by Judge Terry R. Means ) (fba) (Entered: 07/13/2001) |
| 07/13/2001 | 1119 | CJA 30 as to Julius Omar Robinson : Appointment of Attorney Wes Ball ; Attorney notified and Appointment Packet mailed. cc: Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 07/18/2001) |
| 07/16/2001 | 1109 | EXPARTE SEALED DOCUMENT placed in sealed area. (fba) (Entered: 07/16/2001) |
| 07/17/2001 | 1123 | MOTION by Julius Omar Robinson to appoint additional counsel with capital experience (2pgs) (fba) (Entered: 07/18/2001) |
| 07/18/2001 | 1124 (p.3292) | ORDER as to Julius Omar Robinson granting [1123-1] motion to appoint additional counsel with capital experience as to Julius Omar Robinson (2).....Attorney Jack V. |

18-70022.3138

| | | |
|---|---|---|
| | | Strickland is hereby Appointed as co-counsel for defendant; the clerk of the Court is hereby Directed to transmit a copy of this order and the necessary appointment papers to Strickland and note his address and telephone number on the Court's docket. cc: 07/18/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 07/18/2001) |
| 07/18/2001 | 1128 | CJA 30 as to Julius Omar Robinson : Appointment of Attorney Jack V.Strickland; Attorney notified and Appointment Packet mailed. cc: Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 07/19/2001) |
| 07/30/2001 | 1171 | JOINT MOTION by Julius Omar Robinson, L J Britt, Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio of Continuance in Interests of Justice , and to extend other deadlines related to trial (6pgs) (fba) (Entered: 07/30/2001) |
| 08/02/2001 | 1174 (p.3293) | ORDER Granting Joint Motion For Continuance of Trial and Setting Deadline for Notice of Intent to Seek Death Penalty as to Julius Omar Robinson, L J Britt, Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio granting [1171-1] joint motion of Continuance in Interests of Justice Time Excluded from 9/18/01 to 12/10/01 as to Julius Omar Robinson (2), L J Britt (15), Angelo Harris (23), Hendrick Ezell Tunstall (38), Tyrone Bryant (39), Christhian Morales (40), Edy Sonia Zamudio (41), granting [1171-2] joint motion to extend other deadlines related to trial as to Julius Omar Robinson (2), L J Britt (15), Angelo Harris (23), Hendrick Ezell Tunstall (38), Tyrone Bryant (39), Christhian Morales (40), Edy Sonia Zamudio (41) reset Jury trial for 12/10/01 for Julius Omar Robinson, for L J Britt, for Angelo Harris, for Hendrick Ezell Tunstall, for Tyrone Bryant, for Christhian Morales, for Edy Sonia Zamudio ; A trial scheduling order setting forth the deadlines associated with the new trial date will issue;Further Ordered that the government shall have until no later than September 24, 2001 to file any notice indicating the defendant(s) against whom it intends to seek the death penalty....SEE ORDER FOR FURTHER SPECIFICS.... cc: 08/02/01 Page(s): 2 ( Signed by Judge Terry R. Means ) (fba) (Entered: 08/02/2001) |
| 08/10/2001 | 1176 (p.3295) | SECOND AMENDED SCHEDULING ORDER FOR CRIMINAL TRIAL AND PRETRIAL ORDER AS TO CAPITAL DEFENDANTS ONLY as to Julius Omar Robinson, L J Britt, Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio set Jury trial for 1:30 12/10/01 for Julius Omar Robinson, for L J Britt, for Angelo Harris, for Hendrick Ezell Tunstall, for Tyrone Bryant, for Christhian Morales, for Edy Sonia Zamudio , set discovery due for 11/9/01 for Julius Omar Robinson, for L J Britt, for Angelo Harris, for Hendrick Ezell Tunstall, for Tyrone Bryant, for Christhian Morales, for Edy Sonia Zamudio , set pretrial motion filing deadline for 4:30 11/15/01 ....SEE ORDER FOR FURTHER SPECIFICS.... cc: 08/10/01 Page(s): 10 ( Signed by Judge Terry R. Means ) (fba) (Entered: 08/10/2001) |
| 09/14/2001 | 1206 | MOTION by USA as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Leteshia Lenora Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges, Hendrick Ezell Tunstall, |

18-70022.3139

| | | |
|---|---|---|
| | | Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio, Crystal Mancilla, Dakari Warner, Leon Jenkins to extend deadline concerning notice of intent to seek the death penalty (3pgs) (fba) (Entered: 09/14/2001) |
| 09/17/2001 | 1208 (p.3305) | ORDER as to Julius Omar Robinson, L J Britt, Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio....Ordered that the Government file its Notice of Intent to Seek the Death Penalty no later than 4:30 p.m. on October 19, 2001...... granting [1206-1] motion to extend deadline concerning notice of intent to seek the death penalty as to Nathan Deshawn Henderson (1), Julius Omar Robinson (2), Jason Gehring (3), Iris Wade (4), Victor Jimenez (5), Javier Guadalupe Aguilar (6), Marcus Jwain Robinson (7), John Turner (8), Jamila Marie Camp (9), Leteshia Lenora Barnett (11), Jewell Ewing (12), Cantral Huggins (13), Terrence Holimon (14), L J Britt (15), Smart (16), Troy Lee Simpson (17), Brandi Scales (18), Jeanne Denice Wilkins (19), Misty Grounds (20), Travis Dixon (21), Steven Toston (22), Angelo Harris (23), Kimberly Johnson (24), Santana Minor (25), Tamieka Sibley (26), Timothy Dewayne Caldwell (27), Howard Edward Ringer (28), Cody Elliott (29), Derrick Simon (30), Lashandra Lynette Adams (31), Stephen Williams (32), Reginald Kinchen (33), Carmen Nicole Byrd (34), Angela Leach (35), Edward Jenkins (36), Dorothy Hodges (37), Hendrick Ezell Tunstall (38), Tyrone Bryant (39), Christhian Morales (40), Edy Sonia Zamudio (41), Crystal Mancilla (42), Dakari Warner (43), Leon Jenkins (44) cc: 09/17/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 09/17/2001) |
| 09/21/2001 | 1211 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 09/21/2001) |
| 10/17/2001 | 1217 | Designation of Experts Witness by plaintiff USA (4pgs) (fba) (Entered: 10/17/2001) |
| 10/19/2001 | 1222 | NOTICE of Intent To Seek The Death Penalty by USA as to Julius Omar Robinson (11pgs) (fba) (Entered: 10/22/2001) |
| 10/30/2001 | 1226 (p.3306) | ORDER Rendering Motion For Severance Moot as to Julius Omar Robinson mooting [965-1] motion for severance as to Julius Omar Robinson (2) cc: 10/31/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 10/31/2001) |
| 10/30/2001 | 1227 (p.3307) | ORDER GRANTING SEVERANCE FOR TRIAL AS TO CAPITAL DEFENDANTS as to Julius Omar Robinson, L J Britt, Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio.....Ordered that defendants Julius Omar Robinson and L.J. Britt are hereby SEVERED from the remaining defendants for trial; Defendants Angelo Harris, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, and Edy Sonia Zamudio remain set for trial on December 10, 2001, as previously scheduled. cc: 10/31/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 10/31/2001) |
| 10/30/2001 | 1228 (p.3308) | AMENDED SCHEDULING ORDER FOR CRIMINAL TRIAL AND PRETRIAL ORDER as to Julius Omar Robinson setting Jury Trial for 2:00 2/4/02 for Julius Omar Robinson ; Discovery cutoff 12/14/01 ; Pretrial Conference for 1:30 1/28/02 for Julius Omar Robinson....SEE ORDER FOR FURTHER SPECIFICS..... cc: 10/31/01 Page(s): 9 ( Signed by Judge Terry R. Means ) (fba) (Entered: 10/31/2001) |
| 11/05/2001 | 1235 (p.3317) | Application and ORDER as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Leteshia Lenora Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy |

18-70022.3140

| | | Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio, Crystal Mancilla, Dakari Warner, Leon Jenkins for writ of habeas corpus Ad Testificandum ....The above application is granted and the above-named custodian, as well as the USM for this district, is hereby Ordered to produce the named detainee, on the date, at the time recited above, and any further proceedings to be had in this cause, and at the conclusion of said proceedings to return said detainee to the above-named custodian. cc: 11/06/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 11/06/2001) |
|---|---|---|
| 11/05/2001 | 1235 (p.3317) | WRIT of Habeas Corpus ad Testificandum issued for Edvette Dwayne Russell for 12/10/01;02/04/02;03/11/02 in case as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Leteshia Lenora Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio, Crystal Mancilla, Dakari Warner, Leon Jenkins (fba) (Entered: 11/06/2001) |
| 11/07/2001 | 1236 (p.3319) | Application and ORDER as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Leteshia Lenora Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio, Crystal Mancilla, Dakari Warner, Leon Jenkins for writ of habeas corpus Ad Testificandum ....The above applcation is granted and the above-named custodian, as well as the USM for this district, is hereby ORDERED to produce the named detainee, on the date, at the time recited above....SEE ORDER FOR FURTHER SPECIFICS.... cc: 11/08/01 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 11/08/2001) |
| 11/07/2001 | 1236 (p.3319) | WRIT of Habeas Corpus Ad Testificandum issued for Isaac Rodriguez for 12/10/01 and 2/4/02 in case as to Nathan Deshawn Henderson, Julius Omar Robinson, Jason Gehring, Iris Wade, Victor Jimenez, Javier Guadalupe Aguilar, Marcus Jwain Robinson, John Turner, Jamila Marie Camp, Leteshia Lenora Barnett, Jewell Ewing, Cantral Huggins, Terrence Holimon, L J Britt, Richard Smart, Troy Lee Simpson, Brandi Scales, Jeanne Denice Wilkins, Misty Grounds, Travis Dixon, Steven Toston, Angelo Harris, Kimberly Johnson, Santana Minor, Tamieka Sibley, Timothy Dewayne Caldwell, Howard Edward Ringer, Cody Elliott, Derrick Simon, Lashandra Lynette Adams, Stephen Williams, Reginald Kinchen, Carmen Nicole Byrd, Angela Leach, Edward Jenkins, Dorothy Hodges, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales, Edy Sonia Zamudio, Crystal Mancilla, Dakari Warner, Leon Jenkins (fba) (Entered: 11/08/2001) |

18-70022.3141

| | | |
|---|---|---|
| 11/27/2001 | 1280 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 11/27/2001) |
| 11/27/2001 | 1281 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 11/27/2001) |
| 12/03/2001 | 1310 | Witness list by USA as to Julius Omar Robinson, L J Britt, Angelo Harris (15+pgs) (fba) (Entered: 12/04/2001) |
| 12/03/2001 | 1311 | Exhibit list by USA as to Julius Omar Robinson, L J Britt, Angelo Harris (15+pgs) (fba) (Entered: 12/04/2001) |
| 12/03/2001 | 1312 | Designation of Expert Witnesses by defendant Julius Omar Robinson, defendant L J Britt (4pgs) (fba) (Entered: 12/04/2001) |
| 12/04/2001 | 1316 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 12/04/2001) |
| 12/04/2001 | 1317 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 12/04/2001) |
| 12/11/2001 | 1376 | SUPPLEMENTAL CERTIFICATE OF CONFERENCE as to defendants Nathan Henderson(1) and Victor Jimenez(5) re: [1368-1] motion for extension of time filed by Government. (1pg) (mjw) Modified on 01/07/2002 (Entered: 12/12/2001) |
| 12/21/2001 | 1400 | EX PARTE DOCUMENT as to defendant Julius Omar Robinson (3pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1401 | MOTION with Memorandum in Support by Julius Omar Robinson to disclose and suppress any attempted in-court identification by any "eye-witness" (7pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1402 | MOTION with Authorities in Support by Julius Omar Robinson To Prohibit consideration of misconduct not resulting in conviction during the aggravation/mitigation phase of the sentencine hearing (3pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1403 | MOTION by Julius Omar Robinson to preclude the prosecution from "Death Qualifying" the potential jury (4pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1404 | MOTION by Julius Omar Robinson to dismiss the government's request for the death penalty because of racial discrimination in capital charging by the government and request for discovery of information pertaining to the government's capital charging for purposes of an evidentiary hearing (5pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1405 | MOTION with Memorandum in Support by Julius Omar Robinson To Require The Government to Comply with Rule 106, Federal Rules of Evidence (3pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1406 | MOTION by Julius Omar Robinson in limine co-defendant's and co-conspirators statements (3pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1407 | MOTION with Memorandum in Support by Julius Omar Robinson in limine regarding Rule 404(b),F.R.E. (3pgs) (fba) Modified on 01/02/2002 (Entered: 12/21/2001) |
| 12/21/2001 | 1408 | MOTION by Julius Omar Robinson Requesting Use of Juror Questionnaire and Request To Extend Deadline For Filing Requested Questionnaire (4pgs) (fba) (Entered: 12/21/2001) |
| 12/21/2001 | 1409 | MOTION with Authorities in Support by Julius Omar Robinson for individual voir dire (5pgs) (fba) (Entered: 12/21/2001) |

| 12/21/2001 | 1411 | FIRST MOTION by Julius Omar Robinson to extend time to file pre-trial motions (4pgs) (fba) (Entered: 12/21/2001) |
|---|---|---|
| 12/21/2001 | 1412 | Government's Suggested Juror Questionnaire as to Julius Omar Robinson (15+pgs) (fba) (Entered: 12/21/2001) |
| 12/27/2001 | 1414 (p.3321) | Application and ORDER as to Julius Omar Robinson for writ of habeas corpus Ad Testificandum The above application is granted and the above-named custodian, as well as the United States Marshal for this district, is hereby Ordered to produce the named detainee, on the date, at the time recited above....See Order For Further Specifics.... cc: 12/28/01 Page(s): 1 ( Signed by Magistrate Judge Charles Bleil ) (fba) (Entered: 12/28/2001) |
| 12/27/2001 | 1414 (p.3321) | WRIT of Habeas Corpus ad Testificandum issued for Sarah M. Tucker for 02/04/02 10:00 a.m. in case as to Julius Omar Robinson (fba) (Entered: 12/28/2001) |
| 12/28/2001 | 1415 | RESPONSE by USA as to Julius Omar Robinson re [1406-1] motion in limine co-defendant's and co-conspirators statements (2pgs) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1416 | RESPONSE by USA as to Julius Omar Robinson re [1407-1] motion in limine Regarding 404(b),F.R.E. (2pgs) (fba) Modified on 01/04/2002 (Entered: 01/02/2002) |
| 12/28/2001 | 1417 | RESPONSE by USA as to Julius Omar Robinson re [1408-1] motion Requesting Use of Juror Questionnaire and Request To Extend Deadline For Filing Requested Questionnaire (2pgs) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1418 | RESPONSE by USA as to Julius Omar Robinson re [1409-1] motion for individual voir dire (2pgs) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1419 | RESPONSE by USA as to Julius Omar Robinson re [1403-1] motion to preclude the prosecution from "Death Qualifying" the potential jury (2pgs) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1420 | RESPONSE by USA as to Julius Omar Robinson re [1405-1] motion To Require The Government to Comply with Rule 106, Federal Rules of Evidence (1pg) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1421 | RESPONSE by USA as to Julius Omar Robinson re [1411-1] first motion to extend time to file pre-trial motions (1pg) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1422 | RESPONSE by USA as to Julius Omar Robinson re [1404-1] motion to dismiss the government's request for the death penalty because of racial discrimination in capital charging by the government and request for discovery of information pertaining to the government's capital charging for purposes of an evidentiary hearing (3pgs) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1423 | RESPONSE by USA as to Julius Omar Robinson re [1402-1] motion To Prohibit consideration of misconduct not resulting in conviction during the aggravation/mitigation phase of the sentencine hearing (2pgs) (fba) (Entered: 01/02/2002) |
| 12/28/2001 | 1424 | RESPONSE by USA as to Julius Omar Robinson re [1401-1] motion to disclose and suppress any attempted in-court identification by any "eye-witness" (2pgs) (fba) (Entered: 01/02/2002) |
| 01/04/2002 | 1427 (p.3323) | ORDER as to Julius Omar Robinson granting [1411-1] motion to extend time to file pre-trial motions as to Julius Omar Robinson (2)....Ordered that the Defendant's |

18-70022.3143

| | | |
|---|---|---|
| | | pre-trial motions be submitted not later than 4:30 p.m., January 7, 2002; further Ordered that all other deadlines set out in the Court's scheduling order shall remain in effect unless otherwise modified by the Court. cc: 01/04/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/04/2002) |
| 01/07/2002 | 1430 | MOTION by Julius Omar Robinson to suppress evidence produced by wiretap orders (6pgs) (fba) (Entered: 01/08/2002) |
| 01/07/2002 | 1431 | MOTION with Memorandum in Support by Julius Omar Robinson for statement of facts (3pgs) (fba) (Entered: 01/08/2002) |
| 01/07/2002 | 1432 | MOTION by Julius Omar Robinson for leave to file Trial Brief in Excess of 25 pages (3pgs) (fba) (Entered: 01/08/2002) |
| 01/08/2002 | 1433 (p.3324) | ORDER as to Julius Omar Robinson granting [1408-1] motion Requesting Use of Juror Questionnaire and Request To Extend Deadline For Filing Requested Questionnaire as to Julius Omar Robinson (2)....The parties shall work to compile a joint proposed questionnaire, an original and one copy of which shall be filed with the clerk of the court no later than 12:00 noon on Friday, January 18, 2002....SEE ORDER FOR FURTHER SPECIFICS.... cc: 01/08/02 Page(s): 2 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/08/2002) |
| 01/08/2002 | 1435 (p.3326) | ORDER Accelerating Deadline For Filing Witness Lists as to Julius Omar Robinson....Ordered that paragraph seventeen of the October 30 Amended Scheduling Order for Criminal Trial and Pretrial Order is hereby MODIFIED to reflect that the deadline for filing witness lists is ACCELERATED to 12:00 noon on Friday, January 18, 2002.....SEE ORDER FOR FURTHER SPECIFICS.... cc: 01/08/02 Page(s): 1 Signed by Judge Terry R. Means ) (fba) (Entered: 01/08/2002) |
| 01/08/2002 | 1437 (p.3327) | AMENDED ORDER Granting Motion For Use Of Juror Questionnaire and To Extend Deadline For Filing Requested Questionnaire as to Julius Omar Robinson...SEE ORDER FOR FURTHER SPECIFICS... cc: 01/08/02 Page(s): 2 Signed by Judge Terry R. Means ) (fba) (Entered: 01/08/2002) |
| 01/09/2002 | 1439 | SEALED DOCUMENT placed in sealed area. (geb) (Entered: 01/09/2002) |
| 01/09/2002 | 1440 (p.3329) | ORDER as to Julius Omar Robinson denying [1400-1] Ex Parte Motion for Authorization of Funds for Defense Investigator as to Julius Omar Robinson (2) cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (geb) (Entered: 01/09/2002) |
| 01/10/2002 | 1441 (p.3330) | ORDER as to Julius Omar Robinson denying [1404-1] motion to dismiss the government's request for the death penalty because of racial discrimination in capital charging by the government and request for discovery of information pertaining to the government's capital charging for purposes of an evidentiary hearing as to Julius Omar Robinson (2) ....SEE ORDER FOR FURTHER SPECIFICS....cc: 01/10/02 Page(s): 3 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/10/2002) |
| 01/10/2002 | 1442 (p.3333) | ORDER as to Julius Omar Robinson granting [1432-1] motion for leave to file Motion and Trial Brief in Excess of 25 pages as to Julius Omar Robinson (2)...The clerk of the Court is DIRECTED to file Defendant's motion and brief, an original and copy of which were submitted with his motion for leave, this same day. cc: 01/10/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/10/2002) |
| 01/10/2002 | 1443 | MOTION with Memorandum in Support by Julius Omar Robinson Regarding Government's Intent To Seek The Death Penalty (15+pgs) (fba) (Entered: 01/10/2002) |

| | | |
|---|---|---|
| 01/10/2002 | 1444 | Special Appendix by Julius Omar Robinson (15+pgs) (fba) (Entered: 01/10/2002) |
| 01/11/2002 | 1447 | OBJECTION by defendant Julius Omar Robinson to [1435-1] order accelerating deadline for filing witness lists. (4pgs) (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1448 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1449 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1450 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1451 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1452 (p.3334) | ORDER as to Julius Omar Robinson....Order: The Objection is Partially sustained; The new deadline for the filing of witness lists is Ordered to occur at 12:00 noon on the 22nd day of January, 2002. cc: 01/11/02 Page(s): 1 Signed by Judge Terry R. Means ) (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1455 | SEALED EX PARTE DOCUMENT placed in sealed area. (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1456 | SEALED EX PARTE DOCUMENT placed in sealed area. (fba) (Entered: 01/11/2002) |
| 01/11/2002 | 1457 (p.3335) | ORDER RULING ON CERTAIN PENDING MOTIONS as to Julius Omar Robinson granting [1409-1] motion for individual voir dire as to Julius Omar Robinson (2), denying [1403-1] motion to preclude the prosecution from "Death Qualifying" the potential jury as to Julius Omar Robinson (2), granting [1405-1] motion To Require The Government to Comply with Rule 106, Federal Rules of Evidence as to Julius Omar Robinson (2), denying [1401-1] motion to disclose and suppress any attempted in-court identification by any "eye-witness" as to Julius Omar Robinson (2), granting [1407-1] motion in limine regarding Rule 404(b),F.R.E. as to Julius Omar Robinson (2), mooting [1406-1] motion in limine co-defendant's and co-conspirators statements as to Julius Omar Robinson (2), denying [1402-1] motion To Prohibit consideration of misconduct not resulting in conviction during the aggravation/mitigation phase of the sentencine hearing as to Julius Omar Robinson (2)....SEE ORDER FOR FURTHER SPECIFICS.... cc: 01/14/02 Page(s): 6 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/14/2002) |
| 01/14/2002 | 1461 | MOTION by USA as to Julius Omar Robinson for leave to file a response in excess of page limitations (15+) (dld) (Entered: 01/14/2002) |
| 01/15/2002 | 1462 | Second MOTION by Julius Omar Robinson for authorization of funds for defense investigator (7pgs) (fba) (Entered: 01/16/2002) |
| 01/15/2002 | 1463 | RESPONSE by USA as to Julius Omar Robinson re [1430-1] motion to suppress evidence produced by wiretap orders (7pgs) (fba) (Entered: 01/16/2002) |
| 01/16/2002 | 1469 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 01/16/2002) |
| 01/16/2002 | 1470 (p.3341) | ORDER as to Julius Omar Robinson granting [1461-1] motion for leave to file a response in excess of page limitations as to Julius Omar Robinson (2)....Ordered that leave is granted to the Government to file its 58 page Response to the Defendant's Motion Regarding Government's Intent to Seek Death Penalty; The Clerk of the Court is Directed to file, this same day, the Government's Response, an original and copy of which were submitted with the Government's Motion for Leave. cc: 01/16/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/16/2002) |

18-70022.3145

| | | |
|---|---|---|
| 01/16/2002 | 1471 | RESPONSE by USA as to Julius Omar Robinson re [1443-1] motion Regarding Government's Intent To Seek The Death Penalty (15+pgs) (fba) (Entered: 01/16/2002) |
| 01/17/2002 | 1472 (p.3342) | ORDER as to Julius Omar Robinson granting second [1462-1] motion for authorization of funds for defense investigator as to Julius Omar Robinson (2)....Ordered that funds are authorized for defense investigative expenses up to the amount of $4,000. Further authorization for investigative funds must be authorized by further order of the Court and will require the approval of the Chief Judge of this Circuit. cc: 01/17/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/17/2002) |
| 01/17/2002 | 1473 | CJA 31 Authorization to Pay Michael L.Ware $ 969.18 Voucher # 020117000005 cc: 01/18/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/18/2002) |
| 01/18/2002 | 1474 | Agreed Juror Questionnaire by Julius Omar Robinson, USA (15+pgs) (fba) (Entered: 01/18/2002) |
| 01/22/2002 | 1478 | Witness list by USA as to Julius Omar Robinson (15+pgs) (fba) (Entered: 01/22/2002) |
| 01/22/2002 | 1484 | Witness list by Julius Omar Robinson (8pgs) (fba) (Entered: 01/22/2002) |
| 01/23/2002 | 1485 | MOTION by Julius Omar Robinson for authorization of funds for defense expert in excess of $7,500 (8pgs) (fba) (Entered: 01/24/2002) |
| 01/23/2002 | 1487 | MOTION by Julius Omar Robinson for leave to file Untimely Designate Expert (4pgs) (fba) (Entered: 01/24/2002) |
| 01/24/2002 | 1490 (p.3343) | ORDER as to Julius Omar Robinson granting [1431-1] motion for statement of facts as to Julius Omar Robinson (2)....See Order For Specifics.... cc: 01/24/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/24/2002) |
| 01/25/2002 | 1491 (p.3344) | INSTRUCTIONS TO VENIRE PANEL REGARDING COMPLETION OF QUESTIONNAIRES as to Julius Omar Robinson....See Order For Further Specifics.... cc: 01/25/02 Page(s): 5 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/25/2002) |
| 01/25/2002 | 1492 | MOTION by USA as to Julius Omar Robinson to extend time (5pgs) (fba) (Entered: 01/25/2002) |
| 01/25/2002 | 1501 | Minute entry as to Julius Omar Robinson : ;Explanation and Completion Of Jury Questionnaire In Death Penalty Case Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland and Wes Ball-Apt atty for deft; Jury Questionnaires marked & omitted as court exhibit #1, court orders questionnaires to be copied and returned to CRD no later than 9:00 a.m. 2/28/02 for distribution. (1pg) (fba) (Entered: 01/28/2002) |
| 01/28/2002 | 1502 | Proposed Charge Of The Court by USA as to Julius Omar Robinson (15+pgs) (fba) (Entered: 01/28/2002) |
| 01/28/2002 | 1503 | Proposed Form Of Verdict by USA as to Julius Omar Robinson (5pgs) (fba) (Entered: 01/28/2002) |
| 01/28/2002 | 1504 | Exhibit list by USA as to Julius Omar Robinson (15+pgs) (fba) (Entered: 01/28/2002) |

| | | |
|---|---|---|
| 01/29/2002 | 1510 (p.3349) | ORDER PARTIALLY GRANTING MOTION TO EXTEND TIME as to Julius Omar Robinson partially granting [1492-1] motion to extend time as to Julius Omar Robinson (2)....SEE ORDER FOR FURTHER SPECIFICS...cc: 01/29/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/29/2002) |
| 01/29/2002 | 1511 (p.3350) | ORDER as to Julius Omar Robinson granting [1487-1] motion for leave to file Untimely Designate Expert as to Julius Omar Robinson (2)...The clerk of the Court shall file Defendant's Designation, an original and copy of which were submitted with the motion for leave, this same day. cc: 01/29/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/29/2002) |
| 01/29/2002 | 1512 | Designation of Expert Witness by defendant Julius Omar Robinson (3pgs) (fba) (Entered: 01/29/2002) |
| 01/30/2002 | | Pre-trial conference as to Julius Omar Robinson held prior to trial. (fba) (Entered: 01/30/2002) |
| 01/30/2002 | 1513 | Minute entry as to Julius Omar Robinson : ; Pretrial Conference held prior to trial 1/28/02 before Judge Terry R. Means; Cheryl Raper-law clerk; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Pretrial conference held prior to trial. (1pg) (fba) (Entered: 01/30/2002) |
| 01/31/2002 | 1514 (p.3351) | ORDER as to Julius Omar Robinson granting [1485-1] motion for authorization of funds for defense expert in excess of $7,500 as to Julius Omar Robinson (2).....SEE ORDER FOR FURTHER SPECIFICS....cc: 01/31/02 Page(s): 2 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/31/2002) |
| 01/31/2002 | 1515 (p.3353) | ORDER as to Julius Omar Robinson denying [1430-1] motion to suppress evidence produced by wiretap orders as to Julius Omar Robinson (2)....SEE ORDER FOR FURTHER SPECIFICS.... cc: 01/31/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 01/31/2002) |
| 02/04/2002 | 1523 | MOTION by Julius Omar Robinson to enlarge trial time (3pgs) (not imaged) (fba) (Entered: 02/04/2002) |
| 02/04/2002 | 1524 | Statement Regarding Exhibits by Julius Omar Robinson (2pgs) (not imaged) (fba) (Entered: 02/04/2002) |
| 02/04/2002 | 1525 | MOTION by Julius Omar Robinson to extend time to file jury instruction objections/requests (4pgs) (not imaged) (fba) (Entered: 02/04/2002) |
| 02/04/2002 | | Voir dire begun as to Julius Omar Robinson (2) count(s) 1, 1s, 1ss, 2ss, 3s, 3ss, 4ss, 5ss, 6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 12ss, 13ss, 14ss, 15ss, 17ss Terminated motions: (fba) (Entered: 02/04/2002) |
| 02/04/2002 | 1530 | Minute entry as to Julius Omar Robinson : ;Day 1 Voir dire Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt atty for deft; Voir dire began; deft's custody/detention continued; Voir Dire continued until 2/5/01 9:00 a.m.; Four (4) jurors not present - crt proceeded with voir dire and held in abeyance his decision as to what to do with these four. (1pg) (not imaged) (fba) (Entered: 02/04/2002) |
| 02/04/2002 | 1531 | Proposed Penalty Phase Jury Instructions by USA as to Julius Omar Robinson (15+pgs) (fba) (Entered: 02/05/2002) |
| 02/05/2002 | 1534 (p.3354) | ORDER as to Julius Omar Robinson granting [1525-1] motion to extend time to file jury instruction objections/requests as to Julius Omar Robinson (2)....Ordered that |

18-70022.3147

| | | |
|---|---|---|
| | | the defendant's objections, proposed additions, or proposed substitutions to the government's jury charge be filed on or before February 12, 2002. cc: 02/05/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 02/05/2002) |
| 02/05/2002 | 1536 (p.3355) | ORDER as to Julius Omar Robinson granting [1523-1] motion to enlarge trial time as to Julius Omar Robinson (2)....Ordered that the time allotted the defendant for the presentation of its case on guilt/innocence is enlarged to 20 hours. cc: 02/05/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 02/05/2002) |
| 02/05/2002 | 1537 | Minute entry as to Julius Omar Robinson : ;Day 2 Voir dire continued Held before Judge Terry R. Means Court Reporter: Eileen Brewer; Fred Schattman-atty for govt; Jack Strickland & West Ball-apt attys for deft; Voir dire continued until 9:00 a.m. 2/6/01. (1pg) (fba) Modified on 02/06/2002 (Entered: 02/06/2002) |
| 02/06/2002 | 1540 | Minute entry as to Julius Omar Robinson : ;Day 3 Voir dire Continues Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt atty for deft; Voir dire continues; Deft custody/detention continued; deft remanded to custody; continued until 2/7/02 9:00 a.m. (1pg) (fba) (Entered: 02/06/2002) |
| 02/07/2002 | 1544 | Minute entry as to Julius Omar Robinson : ;Day 4 Voir dire Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Voir dire continues; deft's custody/detention continued; Voir dire continues 2/8/02 9:00 a.m.; Court's Exhibit #2 admitted. (1pg) (fba) (Entered: 02/08/2002) |
| 02/08/2002 | 1547 | Minute entry as to Julius Omar Robinson : ;Day 5 Voir dire continues before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Voir dire continued until at least Wed. 2/13/02 - 9:00 a.m. (1pg) w (fba) (Entered: 02/11/2002) |
| 02/13/2002 | 1548 | OBJECTIONS and Requested Jury Instructions Concerning The Guilt/Innocence Phase Of Trial and The Government's Proposed Instructions by Julius Omar Robinson (9pgs) (fba) (Entered: 02/13/2002) |
| 02/13/2002 | 1549 | OBJECTIONS and REQUESTED JURY CHARGES ON PUNISHMENT by Julius Omar Robinson (15+pgs) (fba) (Entered: 02/13/2002) |
| 02/13/2002 | 1550 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/13/2002) |
| 02/13/2002 | 1551 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/13/2002) |
| 02/13/2002 | 1560 | Minute entry as to Julius Omar Robinson : ;Day 6 Voir dire Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Voir dire continued 2/14/02 9:00. (1pg) (fba) (Entered: 02/14/2002) |
| 02/13/2002 | 1563 | SEALED DOCUMENT placed in sealed area. (geb) (Entered: 02/15/2002) |
| 02/14/2002 | 1557 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/14/2002) |
| 02/14/2002 | 1558 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/14/2002) |
| 02/14/2002 | 1559 | SEALED DOCUMENT placed in sealed area. (fba) (Entered: 02/14/2002) |
| 02/14/2002 | 1561 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren Deft, AUSA Schattman, Appt Atty Strickland & Appt |

18-70022.3148

| | | Atty Ball present for continuation of Voir Dire...Voir Dire continued until 9:00 a.m. 2/15/02. (1) (geb) (Entered: 02/15/2002) |
|---|---|---|
| 02/14/2002 | | Voir dire continued as to Julius Omar Robinson (geb) (Entered: 02/15/2002) |
| 02/14/2002 | 1562 | RESPONSE by USA as to Julius Omar Robinson in opposition to Motion for Continuance (2) (geb) (Entered: 02/15/2002) |
| 02/15/2002 | 1564 | SEALED DOCUMENT placed in sealed area. (geb) (Entered: 02/15/2002) |
| 02/15/2002 | 1570 | NOTICE to parties of intent to use business record affidavits by USA as to Julius Omar Robinson (15+) (dld) (Entered: 02/19/2002) |
| 02/15/2002 | 1573 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren VOIR DIRE CONCLUDED...trial begins 2/19/02 9am. (wrb) (Entered: 02/20/2002) |
| 02/19/2002 | 1574 | Jury roll as to Julius Omar Robinson . (8pg) (wrb) (Entered: 02/20/2002) |
| 02/19/2002 | 1575 (p.3356) | ORDER as to Julius Omar Robinson denying [1443-1] motion Regarding Government's Intent To Seek The Death Penalty as to Julius Omar Robinson (2) cc: all Page(s): 4 ( Signed by Judge Terry R. Means ) (geb) (Entered: 02/20/2002) |
| 02/19/2002 | 1578 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren VOIR DIRE, Jury Instructions, opening remarks, pltf's evidence presented; deft contd. in custody, trial contd. until 2/20/02 9am. (wrb) (Entered: 02/20/2002) |
| 02/20/2002 | 1587 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren Deft, AUSA Schattman, Appt Atty Strickland & Appt. Atty Ball present for trial...Plaintiff's evidence presented...Trial continued until 2/21/02 @ 9:00 a.m. (1) (geb) (Entered: 02/21/2002) |
| 02/20/2002 | | Jury trial as to Julius Omar Robinson held (geb) (Entered: 02/21/2002) |
| 02/21/2002 | 1598 | Government's Second NOTICE To Parties of Intent to Use Business Record Affidavits by USA as to Julius Omar Robinson (6pg) (wrb) (Entered: 02/22/2002) |
| 02/21/2002 | 1599 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren JURY TRIAL; AUAS Schattman and Strickland and Ball present; pltf's evidence presented; trial cont. tomorrow 2/22/02 9am. (wrb) (Entered: 02/22/2002) |
| 02/22/2002 | 1602 | Minute entry as to Julius Omar Robinson : ;Day 12 Trial Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt atty for deft; pltf's evidence presented; deft's custody/detention continued; Trial continued until 2/26/02 9:00 a.m. (1pg) (fba) (Entered: 02/25/2002) |
| 02/25/2002 | 1603 | RESPONSE by USA to Defendant's Oral Motion/Request For an Order authorizing Access to Juvenile Witness as to Julius Omar Robinson (3pgs) (fba) (Entered: 02/25/2002) |
| 02/26/2002 | 1604 (p.3360) | Application and ORDER as to Julius Omar Robinson for writ of habeas corpus Ad Testificandum ...The above application is granted and the above names custodian, as well as the U.S.Marshal for this district, is hereby Ordered to produce the named detainee, on the date, at the time recited above....See Order For Further Specifics... cc: 02/26/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: |

| | | 02/26/2002) |
|---|---|---|
| 02/26/2002 | 1610 | CJA 24 as to Julius Omar Robinson Authorization to Pay Ana P. Warren $ 762.20 for Transcript Voucher # 020226000001 cc: 02/27/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (fba) (Entered: 02/27/2002) |
| 02/27/2002 | 1614 | MOTION by Julius Omar Robinson for leave to issue notice of oral deposition pursuant to rule 15(a), FRCP (3pgs) (fba) (Entered: 02/28/2002) |
| 02/27/2002 | 1616 (p.3361) | ORDER as to Julius Omar Robinson Denying Oral Motion for Access to Juvenile Witness cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (geb) (Entered: 02/28/2002) |
| 02/27/2002 | 1617 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ama Warren - Trial continued...Pltf's evidence presented...Crt Exhibit #3 admitted...Trial continued until 2/28/092 @9:00 a.m. (1) (geb) (Entered: 02/28/2002) |
| 02/27/2002 | | Jury trial as to Julius Omar Robinson held (geb) (Entered: 02/28/2002) |
| 02/28/2002 | 1618 | Minute entry as to Julius Omar Robinson : ;Day 14 Trial Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Pltf's evidence presented; Deft's custody/detention continued; Trial continued until 3/5/02 9:00 a.m. (1pg) (fba) (Entered: 03/01/2002) |
| 03/04/2002 | 1622 (p.3362) | ORDER as to Julius Omar Robinson denying [1614-1] motion for leave to issue notice of oral deposition pursuant to rule 15(a), FRCP as to Julius Omar Robinson (2) cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (pdm) (Entered: 03/04/2002) |
| 03/05/2002 | 1626 | Minute entry as to Julius Omar Robinson : ;Day 15 Trial Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Pltf's evidence presented; Exhibits marked/admitted; Deft's custody/detention continued; deft remanded to custody; Trial continued until 3/6/02 9:00 a.m. (1pg) (fba) (Entered: 03/06/2002) |
| 03/05/2002 | 1627 | SUPPLEMENTAL Exhibit list by USA as to Julius Omar Robinson (2pgs) (fba) (Entered: 03/06/2002) |
| 03/06/2002 | 1629 | Minute entry as to Julius Omar Robinson : Day 16 Trial Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; pltf's evidence presented; Deft's custody/detention continued; Deft Remanded to custody; Trial continued until 3/7/02 9:00 a.m. (1pg) (fba) (Entered: 03/07/2002) |
| 03/07/2002 | 1631 | MOTION by Julius Omar Robinson for authorization of additional funds for defense investigator (4pgs) (fba) (Entered: 03/07/2002) |
| 03/07/2002 | 1633 | Minute entry as to Julius Omar Robinson : ;Day 17 Trial Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Pltf's evidence presented; Exhibits marked/admitted; Deft's custody/detention continued; Trial continued until 3/8/02 9:00 a.m. (1pg) (fba) (Entered: 03/08/2002) |
| 03/08/2002 | 1634 | Minute entry as to Julius Omar Robinson : Jury Trial continued before Judge Terry R. Means Court Reporter: Ana Warren; AUSA Schattman for Govt. and Jack Strickland & Wes Ball for deft. present; Pltf's & Deft's evidence presented; |

18-70022.3150

| | | |
|---|---|---|
| | | testimony concluded; charge of court read; pltf's & deft's closing arguments; jury deliberations began; deft. remanded to custody; trial cont. to 3/11/02 at 9 am; certain exhibits (firearms, ammunition, recovered cartridges, projectiles, etc.) released to govt's custody (1) (pdm) (Entered: 03/11/2002) |
| 03/08/2002 | 1635 | Court's charge to jury signed by Judge Terry R. Means (15+) (pdm) Modified on 11/12/2002 (Entered: 03/11/2002) |
| 03/08/2002 | 1642 | Conformed Proposed Charge of the Court by Julius Omar Robinson, USA (15+) (pdm) (Entered: 03/12/2002) |
| 03/11/2002 | 1636 | Minute entry as to Julius Omar Robinson : ;Day 19 Trial Held before Judge Terry R. Means Court Reporter: Ana Warren; Fred Schattman-atty for govt; Jack Strickland & Wes Ball-apt attys for deft; Jury Deliberations began: 9:00; Jury Questions filed; Jury Verdict 3:15 p.m.; Trial continued until 3/12/02 9:00 a.m.; Guilty as to all counts; Punishment phase to begin 3/12/02. (1pg) (fba) (Entered: 03/12/2002) |
| 03/11/2002 | 1637 | Jury notes filed as to Julius Omar Robinson (fba) (Entered: 03/12/2002) |
| 03/11/2002 | 1638 | Answer to First Jury Note filed as to Julius Omar Robinson (1pg) (fba) (Entered: 03/12/2002) |
| 03/11/2002 | 1639 | Jury notes filed as to Julius Omar Robinson (1pg) (fba) (Entered: 03/12/2002) |
| 03/11/2002 | 1640 | Answer To Second Jury Note filed as to Julius Omar Robinson (1pg) (fba) (Entered: 03/12/2002) |
| 03/11/2002 | 1641 | JURY VERDICT of Guilty on Julius Omar Robinson (2) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 12ss, 13ss, 14ss, 15ss, 17ss (4pgs) (fba) (Entered: 03/12/2002) |
| 03/12/2002 | 1643 | Minute entry as to Julius Omar Robinson : Jury Trial Continued before Judge Terry R. Means Court Reporter: Ana Warren ; AUSA Schattman for govt., Jack Strickland and Wes Ball for deft. present; deft's evidence presented; deft. remanded to custody; trial cont. til 3/13/02 at 9 am (1) (pdm) (Entered: 03/12/2002) |
| 03/13/2002 | 1647 (p.3363) | ORDER GRANTING MOTION FOR AUTHORIZATION OF ADDITIONAL FUNDS... as to Julius Omar Robinson granting [1631-1] motion for authorization of additional funds for defense investigator in that Defendant is authorized to expend additional funds in the amount of $9,000.00 (for a total of $13,000.00), should such expenditure prove to be reasonably necessary, for the services of his investigator, Bruce Cummings; this court has obtained authorization from 5th Circuit Chief Judge Designate, judge Carl E Stewart as reflected in the attached memorandum; cc: 3/14/02 Page(s): 2 ( Signed by Judge Terry R. Means ) (dld) (Entered: 03/14/2002) |
| 03/13/2002 | 1649 | Minute entry as to Julius Omar Robinson: Jury trial continued before Judge Terry R. Means Court Reporter: Ana Warren ; AUSA Schattman for govt. and attys. Strickland & Ball for deft. present; Deft's evidence presented; exhibits marked, admitted; deft. remanded to custody; trial cont. to 3/14/02 at 9 am (1) (pdm) (Entered: 03/14/2002) |
| 03/14/2002 | 1651 | Minute entry as to Julius Omar Robinson: Jury trial continued before Judge Terry R. Means Court Reporter: Ana Warren ; AUSA Schattman for govt. and Jack Strickland & Wes Ball for deft. present; Deft's evidence presented; Testimony concluded; deft. remanded to custody; trial cont. to 3/15/02 at 9 am (1) (pdm) (Entered: 03/15/2002) |

18-70022.3151

| | | |
|---|---|---|
| 03/15/2002 | 1652 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren JURY DELIBERATIONS BEGIN 2:30pm; closing arguments, charge, jury questions filed; deft remanded; trial contd. to 3/18/02 9am (wrb) (Entered: 03/18/2002) |
| 03/15/2002 | 1653 | Jury note filed as to Julius Omar Robinson-first penalty phase note (1pg) (wrb) (Entered: 03/18/2002) |
| 03/15/2002 | 1654 | ANSWER TO FIRST PENALTY PHASE NOTE FROM THE JURY as to Julius Omar Robinson (1pg) (wrb) Modified on 03/18/2002 (Entered: 03/18/2002) |
| 03/15/2002 | 1655 | Jury note filed as to Julius Omar Robinson re: charge - second penalty phase note (3PG) (wrb) (Entered: 03/18/2002) |
| 03/15/2002 | 1656 | ANSWER TO SECOND PENALTY PHASE NOTE FROM THE JURY as to Julius Omar Robinson (1pg) (wrb) (Entered: 03/18/2002) |
| 03/15/2002 | 1657 | Jury note filed as to Julius Omar Robinson re: verdict term (1pg) (wrb) (Entered: 03/18/2002) |
| 03/15/2002 | 1658 | ANSWER TO JURY NOTE re verdict term as to Julius Omar Robinson (1pg) (wrb) (Entered: 03/18/2002) |
| 03/15/2002 | 1659 (p.3365) | PUNISHMENT PHASE CHARGE OF THE COURT as to Juius Omar Robinson (15+pgs) (wrb) (Entered: 03/18/2002) |
| 03/18/2002 | 1662 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren JURY DELIBERATIONS CONT'D; jury verdict 11:30am; sentencing set Jun 17 2002 9:30am; deft contd. in custody. (wrb) (Entered: 03/18/2002) |
| 03/18/2002 | | SPECIAL VERDICT FORM (15+pgs) (wrb) (Entered: 03/18/2002) |
| 03/18/2002 | 1663 | TIME SHEETS as to Julius Omar Robinson (5pg) (wrb) (Entered: 03/18/2002) |
| 03/18/2002 | 1664 | Receipt For Exhibits Returned to Parties as to Julius Omar Robinson (2pg) (wrb) (Entered: 03/18/2002) |
| 03/18/2002 | | Sentencing set for 9:30 6/17/02 for Julius Omar Robinson Julius Omar Robinson (2) count(s) 17ss, 15ss, 14ss, 13ss, 12ss, 11ss, 10ss, 9ss, 8ss, 7ss, 6ss, 5ss, 4ss, 3ss, 2ss, 1ss (wrb) (Entered: 03/18/2002) |
| 03/19/2002 | 1665 (p.3399) | SCHEDULING ORDER FOR SENTENCING (GUIDELINES SENTENCING) as to Julius Omar Robinson PSI due by noon on 4:30 4/23/02 for Julius Omar Robinson ; Objections to PSI due by noon on 4:30 5/7/02 for Julius Omar Robinson ; PSI Addendum due by 4:30 5/21/02 for Julius Omar Robinson ; Objections to PSI Addendum due by ; Sentencing set for 9:30 6/17/02 for Julius Omar Robinson ; cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 03/19/2002) |
| 03/21/2002 | 1669 | TRANSCRIPT filed in case as to Julius Omar Robinson Volume 11 Transcript of Trial (Excerpt of the Trial-Testimony of Brandi Scales) for dates of 02/21/02. Court reporter-Ana Warren. (29 pgs) (csw) (Entered: 03/22/2002) |
| 03/27/2002 | 1672 | CJA 24 as to Julius Omar Robinson Authorization to Pay Ana Warren $ 116.00 for Transcript Voucher # 020327000019 cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 03/27/2002) |
| 04/03/2002 | 1679 | |

| | | VOL II TRANSCRIPT (Individual Voir Dire) filed as to Julius Omar Robinson Re: [1399-1] appeal for dates of Feb 5 2002 (wrb) (Entered: 04/04/2002) |
|---|---|---|
| 04/03/2002 | 1680 | (VOL III) TRANSCRIPT (Individual Voir Dire) filed as to Julius Omar Robinson Re: [1399-1] appeal for dates of Feb 6 2002 (wrb) (Entered: 04/04/2002) |
| 05/02/2002 | 1710 | CJA 21 as to Julius Omar Robinson Authorization to Pay Max Courtney $ 607.50 for Expert Services Voucher # 020502000010 cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (geb) (Entered: 05/03/2002) |
| 05/10/2002 | 1715 | TRANSCRIPT filed as to Nathan Deshawn Henderson, Jason Gehring, Iris Wade, John Turner, Jamila Marie Camp, Fanisha Hill Re: [1399-1] appeal Arraignment Hearing for dates of 11/15/00. Court reporter Ana Warren. (13 pgs) Appeal record due on 5/28/02 for Nathan Deshawn Henderson, for Julius Omar Robinson, for Jason Gehring, for Iris Wade, for John Turner, for Jamila Marie Camp, for Fanisha Hill (csw) Modified on 11/15/2002 (Entered: 05/10/2002) |
| 05/24/2002 | 1728 | SEALED DOCUMENT placed in sealed area. (geb) (Entered: 05/24/2002) |
| 05/24/2002 | 1730 | JOINT MOTION by Julius Omar Robinson to proceed to sentencing (6pg) (wrb) (Entered: 05/28/2002) |
| 05/29/2002 | 1732 (p.3404) | ORDER as to Julius Omar Robinson granting [1730-1] motion to proceed to sentencing as to Julius Omar Robinson (2) reset Sentencing for 9:00 6/5/02 for Julius Omar Robinson cc: all Page(s): 4 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 05/29/2002) |
| 06/03/2002 | 1733 | MOTION by Julius Omar Robinson to Declare Federal Death Penalty Unconstitutional and Impose Alternative Sentence (9pg) (wrb) (Entered: 06/03/2002) |
| 06/03/2002 | 1734 (p.3408) | ORDER as to Julius Omar Robinson reset Sentencing for 10:00 6/5/02 for Julius Omar Robinson cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 06/03/2002) |
| 06/04/2002 | 1735 | Government's RESPONSE as to Julius Omar Robinson re [1733-1] motion to Declare Federal Death Penalty Unconstitutional Impose Alternative Sentence (4pg) (wrb) (Entered: 06/04/2002) |
| 06/05/2002 | 1736 | Minute entry as to Julius Omar Robinson : ; Held before Judge Terry R. Means Court Reporter: Ana Warren SENTENCING; AUSA Schattman and retained attys Wes Ball and Jack Strickland present; deft was found guilty on ea of cts 1-15 and 17 of the second superseding indictment; deft sentenced to Death-see J&C for details; if the deft is ever released, he shall comply with the US Secn Cmsn conditions; deft contd. in custody; advised of right to appeal. (wrb) (Entered: 06/05/2002) |
| 06/05/2002 | 1737 | NOTICE of Right to Appeal Conviction After Sentence Has Been Imposed in a Case Which has Gone to Trial on a Plea of Not Guilty by Julius Omar Robinson (1pg) (wrb) (Entered: 06/05/2002) |
| 06/05/2002 | 1738 | Government's MOTION as to Julius Omar Robinson to dismiss original indictment and first superseding indictment (1pg) (wrb) (Entered: 06/05/2002) |
| 06/05/2002 | 1739 (p.3409) | ORDER as to Julius Omar Robinson granting [1738-1] motion to dismiss original indictment and first superseding indictment as to Julius Omar Robinson (2) cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 06/05/2002) |

18-70022.3153

| | | |
|---|---|---|
| 06/05/2002 | | DISMISSAL of Count(s) on Government Motion as to Julius Omar Robinson Terminated motions: Counts Dismissed: Julius Omar Robinson (2) count(s) 1, 1s, 3s (wrb) (Entered: 06/05/2002) |
| 06/05/2002 | | Sentencing held Julius Omar Robinson (2) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 12ss, 13ss, 14ss, 15ss, 17ss (wrb) (Entered: 06/05/2002) |
| 06/05/2002 | 1740 (p.3410) | JUDGMENT Julius Omar Robinson (2) count(s) 1ss, 2ss , 3ss , 4ss , 5ss , 6ss , 7ss , 8ss , 9ss . found guilty-sentenced to DEATH on 3,7,and 11 of the second superseding indictment-sentence shall be executed by a USM by injection, pending execution, deft cmtd to custody of AG; committed to BOP for LIFE on cts 12 and 15 of the second superseding indictment; each to run concurrently; cmtd to BOP 300 months on ct 167 of the second superseding indictment-consecutive to counts 12 and 15...the Court does not imposed sentence on cts 1 and 2 because they are lesser included offenses of ct 3; court does not impose sentence in cts 4,5 and 6 because they are lesser included offenses of count 7; court does not impose sentence on cts 8,9,10 because they are lesser included offenses of count 11; court does not impose sentence on cts 13 and 14 because they are lesser included offenses of count 15; no fine; restitution in amt of $22,768. Of that sum, $22,220 shall be made jointly and severally with Angelo Harris. The remaining $548 in restitution shall be made jointly and severally with Nathan Deshawn Henderson, Jason Gehring and L J Britt. All restitution paid to US Clerk for disbursement to Maria Reyes in amt of $11,220; to Isaac Rodriguez in amt of $11,000; and to Sheila Shelton in amt of $548...no restitution ordered in relation to the death of Rudolfo Resendez because after reasonable effort no family membrs could be located; supervised release: if deft ever released, he shall be placed on supervised release for term of 5 yrs on each of cts 12,15 and 17 of the second superseding indictment, which terms shall run concurrently w/ea other. ( Signed by Judge Terry R. Means ) (wrb) (Entered: 06/05/2002) |
| 06/05/2002 | 1741 (p.3414) | ORDER as to Julius Omar Robinson denying [1733-1] motion to Declare Federal Death Penalty Unconstitutional and Impose Alternative Sentence as to Julius Omar Robinson (2) cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 06/05/2002) |
| 06/12/2002 | 1747 | Transcript requested in appeal as to Julius Omar Robinson [1399-1] appeal...11/8/00 Initial Appearance, 11/13/00 Detention Hearing Tape #4814/4815, 11/15/00 Arraignment, 11/22/00 Arraignment, 6/27/01 Arraignment, 2/23/01 Suppression Hearing. Court reporter-Eileen Brewer. (1 pg) Transcript due 7/12/02 for Julius Omar Robinson (csw) (Entered: 06/14/2002) |
| 06/12/2002 | 1748 | Transcript requested in appeal as to Julius Omar Robinson [1399-1] appeal...3 days of Voir Dire. Court reporter-Eileen Brewer. (1 pg) Transcript due 7/12/02 for Julius Omar Robinson (csw) (Entered: 06/14/2002) |
| 06/14/2002 | 1750 | CJA 31 Authorization to Pay Mark D Cunningham $ 7,195.79 Voucher # 020614000001 cc: 6/17/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (dld) (Entered: 06/17/2002) |
| 06/14/2002 | 1759 (p.3415) | NOTICE OF APPEAL by Julius Omar Robinson (2) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 12ss, 13ss, 14ss, 15ss, 17ss, from the judgment & sentence, No fee due, filed by CJA West Ball, TO given, Hrg/trl held. Court reporter Ana Warren. Copy to Judge, AUSA, USM, PT, Prob. (1 pg) Julius Omar Robinson (csw) (Entered: 06/18/2002) |

**18-70022.3154**

| | | |
|---|---|---|
| 06/18/2002 | | Notice of appeal and certified copy of docket as to Julius Omar Robinson to USCA: [1759-1] appeal along with a transmittal letter. (csw) (Entered: 06/18/2002) |
| 06/24/2002 | | USCA Case Number as to Julius Omar Robinson Re: [1759-1] appeal USCA NUMBER: 02-10717 (csw) (Entered: 06/24/2002) |
| 08/07/2002 | 1774 | CJA 30 as to Julius Omar Robinson Authorization to Pay Wesley T Ball $ 97,529.50 Voucher # 020807000011 cc: 8/8/02 Page(s): 1 ( Signed by Judge Terry R. Means ) (dld) (Entered: 08/08/2002) |
| 08/09/2002 | 1780 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Volume 4 Individual Voir Dire for dates of 02/07/02. Court reporter-Eileen Brewer. (170 Pgs) Appeal record due on 8/24/02 for Julius Omar Robinson (csw) (Entered: 08/12/2002) |
| 08/09/2002 | 1781 | Receipt Into Custody of Clerk of Exhibits as to USA -Fred Schattman retrieved exhibits as to deft Steven Toston (Deft 22) (wrb) (Entered: 08/12/2002) |
| 08/12/2002 | 1784 | CJA 31 PAY...amt $3000 to Wes Ball by Julius Omar Robinson (1pg) Voucher No. 0208120000005 (wrb) Modified on 08/13/2002 (Entered: 08/13/2002) |
| 08/14/2002 | 1786 | CJA 30 as to Julius Omar Robinson Authorization to Pay Jack Strickland $ 88,991.45 Voucher # 020814000015 cc: Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 08/15/2002) |
| 09/03/2002 | 1801 | CJA 24 as to Julius Omar Robinson Authorization to Pay Eileen Brewer $ 510.00 for Transcript Voucher # 020903000019 cc: Page(s): 1 ( Signed by Judge Terry R. Means ) (geb) Modified on 09/05/2002 (Entered: 09/03/2002) |
| 10/01/2002 | 1849 | SEALED DOCUMENT placed in sealed area. (wrb) (Entered: 10/03/2002) |
| 10/07/2002 | | Received letter from USCA #02-10717 Re: Ana Warren re: Request for extension of time until October 25, 2002, for filing the transcript has been granted. (csw) (Entered: 10/08/2002) |
| 10/10/2002 | 1855 | SEALED ORDER placed in sealed area. (wrb) (Entered: 10/10/2002) |
| 10/10/2002 | 1857 | SEALED DOCUMENT placed in sealed area. (wrb) (Entered: 10/10/2002) |
| 11/04/2002 | 1896 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Initial Appearance for dates of 11/8/00. Court reporter; Eileen Brewer (14 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1897 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Dentenciont Hearing for dates of 11/13/00. Court reporter; Eileen Brewer (68 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1898 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Suppression Hearing for dates of 02/23/01. Court reporter; Ana Warren (32 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1899 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Sentencing Hearing for dates of 06/05/02. Court reporter; Ana Warren (8 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1900 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 1 for dates of 02/04/02. Court reporter; Ana Warren (54 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |

| | | |
|---|---|---|
| 11/04/2002 | 1901 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 5 for dates of 02/08/02. Court reporter-Ana Warren (149 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1902 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 9 for dates of 02/19/02. Court reporter Ana Warren (237 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1903 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 10 for dates of 02/20/02. Court reporter; Ana Warren (150 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1904 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 11 for dates of 02/21/02. Court reporter-Ana Warren (154 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1905 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 12 for dates of 02/22/02. Court reporter-Ana Warren (236 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1906 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 13 for dates of 02/27/02. Court reporter-Ana Warren (223 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1907 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 14 for dates of 02/28/02. Court reporter-Ana Warren (196 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1908 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 15 for dates of 03/05/02. Court reporter-Ana Warren (291 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1909 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 16 for dates of 03/06/02. Court reporter-Ana Warren (216 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1910 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 17 for dates of 03/07/02. Court reporter-Ana Warren (260 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1911 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial for dates of 03/08/02. Court reporter-Ana Warren (152 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1912 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 19 for dates of 03/11/02. Court reporter-Ana Warren (4 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1913 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 20 for dates of 03/12/02. Court reporter-Ana Warren (173 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1914 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 21 for dates of 03/13/02. Court reporter-Ana Warren (176 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |

| | | |
|---|---|---|
| 11/04/2002 | 1915 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial for dates of 03/14/02. Court reporter-Ana Warren. (135 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1916 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 23 for dates of 03/15/02. Court reporter-Ana Warren (110 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/04/2002 | 1917 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 24 for dates of 03/18/02. Court reporter-Ana Warren (10 pgs) Appeal record due on 11/19/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/05/2002 | 1919 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 6 for dates of 02/13/02. Court reporter-Ana Warren. (200 pgs) Appeal record due on 11/21/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/05/2002 | 1920 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 8 for dates of 02/15/02 Court reporter-Ana Warren (93 pgs)Appeal record due on 11/21/02 for Julius Omar Robinson (csw) (Entered: 11/05/2002) |
| 11/06/2002 | 1923 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Arraignment Hearing for dates of 05/08/01. Court reporter; Ana Warren (11 pgs) Appeal record due on 11/21/02 for Julius Omar Robinson (csw) (Entered: 11/06/2002) |
| 11/06/2002 | 1924 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Arraignment Hearing for dates of 06/27/01. Court reporter; Ana Warren. (16 pgs) Appeal record due on 11/21/02 for Julius Omar Robinson (csw) (Entered: 11/06/2002) |
| 11/06/2002 | 1925 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Arraignment Hearing for dates of 11/15/00. Court reporter; Ana Warren. (13 pgs) Appeal record due on 11/21/02 for Julius Omar Robinson (csw) (Entered: 11/06/2002) |
| 11/06/2002 | 1926 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Arraignment Hearing for dates of 11/22/00. Court reporter; Ana Warren. (15 pgs) Appeal record due on 11/21/02 for Julius Omar Robinson (csw) (Entered: 11/06/2002) |
| 11/06/2002 | 1927 | TRANSCRIPT filed as to Julius Omar Robinson Re: [1759-1] appeal Transcript of Trial-Volume 7 for dates of 02/14/02 Court reporter; Ana Warren (194 pgs) Appeal record due on 11/21/02 for Julius Omar Robinson (csw) (Entered: 11/06/2002) |
| 11/06/2002 | | Deadline updated as to Julius Omar Robinson, appeal record due set for 11/21/02 for Julius Omar Robinson for [1759-1] appeal (csw) (Entered: 11/06/2002) |
| 11/15/2002 | | Certified and transmitted record on appeal to U.S. Court of Appeals as to Julius Omar Robinson : [1759-1] appeal re: USCA #02-10717 consisting of 6 volumes case papers which includes a cert cy of docket entries, 1 folder exhibit containing special appendix #1444, 2 boxes containing 33 transcripts #1669, #1679, #1680, #1780, #1896-#1917, #1919-#1920, #1923-#1927, 1 copy PSI under seal, 11 sealed pleadings #1448, #1455-#1456, #1469, #1550-#1551, #1557-#1559, #1563-#1564, 3 boxes exhibits; along with a transmittal letter. (csw) (Entered: 11/15/2002) |
| 11/20/2002 | 1955 | Charge Of The Court (15+pgs) (wrb) (Entered: 11/21/2002) |
| 12/04/2002 | 1979 (p.3417) | Punishment Phase Charge of the Court (15+pgs) (wrb) (Entered: 12/05/2002) |
| 12/04/2002 | 1980 | |

18-70022.3157

| | | CJA 24 as to Julius Omar Robinson Authorization to Pay Ana Warren $ 8817.25 for Transcript Voucher # 021204000003 cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 12/05/2002) |
|---|---|---|
| 12/04/2002 | 1981 | CJA 24 as to Julius Omar Robinson Authorization to Pay Ana Warren $ 3309.25 for Transcript Voucher # 021204000002 cc: all Page(s): 1 ( Signed by Judge Terry R. Means ) (wrb) (Entered: 12/05/2002) |
| 10/07/2003 | 2113 (p.3447) | ORDER of USCA (certified copy) #02-10717 as to Julius Omar Robinson re 1759 (p.3415) Notice of Appeal - Final Judgment...Robinson moves the court to dismiss his court-appointed attorney and to appoint substitute counsel to represent him on appeal. Robinson has failed to demonstrate a level of incompatibility which would warrant the appointment of substitute counsel. Fifth Circuit Plan under the Criminal Justice Act 2, 5. Motion Denied. (csw, ) (Entered: 10/08/2003) |
| 06/01/2004 | 2186 (p.3448) | JUDGMENT of USCA (certified copy) USCA #02-10717 as to Julius Omar Robinson re 1759 (p.3415) Notice of Appeal - Final Judgment...ordered and adjudged that the sentence and conviction of the DC are affirmed. Issued as mandate 5/26/04. (csw, ) (Entered: 06/03/2004) |
| 06/01/2004 | 2187 (p.3449) | Opinion of USCA (certified copy) USCA #02-10717 in accordance with USCA judgment as to Juelius Omar Robinson re 1759 (p.3415) Notice of Appeal - Final Judgment, filed by Julius Omar Robinson...conviction and sentence are Affirmed. The government's motion to supplement the record on appeal is Denied. (csw, ) (Entered: 06/03/2004) |
| 06/01/2004 | | Received letter from USCA 5 #02-10717 as to Julius Omar Robinson...record on appeal to be returned. (csw, ) (Entered: 06/03/2004) |
| 06/14/2004 | | Appeal Record Returned as to Julius Omar Robinson : 1759 (p.3415) Notice of Appeal - Final Judgment, USCA #02-10717 consisting of 6 volumes case papers, 33 transcripts labeled #1669,#1679,#1680,#1780,#1896-1917,#1919-1920,#1923-1927,11 sealed documents #1448,#1455,#1456,#1469,#1550,#1551,#1557,#1558,#1559,#1563,#1564,1 appendix Doc #1444, 1 copy PSR under seal (destroyed), 3 boxes exhibits (placed in sealed room). (csw, ) (Entered: 06/15/2004) |
| 12/06/2004 | 2215 (p.3463) | Received letter from US Supreme Court #04-5930; USCA #02-10717..petition for a writ of certiorari is denied as to Julius Omar Robinson (csw, ) (Entered: 12/07/2004) |
| 12/23/2004 | 2216 (p.3464) | Defendant's Motion to Allow Counsel to Withdraw and Appoint Substitute Counsel to Pursue Post-Conviction Relief Pursuant to 28 USC 2255 by Julius Omar Robinson (wrb, ) (Entered: 12/27/2004) |
| 12/27/2004 | 2217 (p.3469) | ORDER granting 2216 (p.3464) Motion to Substitute Attorney as to Julius Omar Robinson (2); granting 2216 (p.3464) Motion to Withdraw as Attorney. as to Julius Omar Robinson (2)...Wes Ball and Jack V. Strickland, the lawyers previously appointed by the court to represent deft are allowed to withdraw from further representation; the court will by separate order appoint substitute counsel to pursue Deft's application for post conviction relief. (Signed by Judge Terry R Means on 12/27/04) (wrb, ) (Entered: 12/28/2004) |
| 01/10/2005 | 2218 (p.3470) | ORDER APPOINTING COUNSEL as to Julius Omar Robinson: Mile Charlton is hereby appointed as lead counsel to represent defendant; Gary Taylor is hereby appointed as co-counsel to assist lead counsel (Signed by Judge Terry R Means on |

| | | |
|---|---|---|
| | | 1/10/05) (dld, ) (Entered: 01/12/2005) |
| 01/10/2005 | | Attorney update in case as to Julius Omar Robinson. Added Lead CJA Attorney Michael B Charlton and Notice only CJA Attorney Gary A Taylor for Julius Omar Robinson (Deft 2) (dld, ) (Entered: 01/12/2005) |
| 01/10/2005 | 2219 (p.3473) | CJA 30: Appointment of Attorney Michael B Charlton for Julius Omar Robinson in Death Penalty Proceedings as to Julius Omar Robinson. Attorney notified and Appointment Packet mailed. (Signed by Judge Terry R Means on 1/10/*05) (djd, ) (Entered: 01/14/2005) |
| 01/10/2005 | 2220 (p.3477) | CJA 30: Appointment of Attorney Gary A Taylor for Julius Omar Robinson in Death Penalty Proceedings as to Julius Omar Robinson. Attorney notified and Appointment Packet mailed. (Signed by Judge Terry R Means on 1/10/05) (djd, ) (Entered: 01/14/2005) |
| 01/21/2005 | 2221 (p.3481) | MOTION to designate and add the Federal Public Defender's Office as Co-Counsel in this case by Julius Omar Robinson (wrb, ) (Entered: 01/24/2005) |
| 02/08/2005 | 2222 (p.3484) | ORDER denying 2221 (p.3481) Motion for additional co-counsel as to Julius Omar Robinson (2) (Signed by Judge Terry R Means on 2/8/05) (wrb, ) (Entered: 02/09/2005) |
| 02/14/2005 | 2223 (p.3485) | MOTION to Compel Production of Trial Counsel's Files by Julius Omar Robinson (mjw, ) (Entered: 02/15/2005) |
| 02/23/2005 | 2224 (p.3494) | ORDER GRANTING LEAVE OF COURT TO SUBPOENA FILEgranting 2223 (p.3485) Motion to Compel as to Julius Omar Robinson (2) (Signed by Judge Terry R Means on 2/23/05) (wrb, ) (Entered: 02/24/2005) |
| 03/07/2005 | 2227 (p.3495) | MOTION for authorization for funds for travel expenses by Julius Omar Robinson (wrb, ) (Entered: 03/08/2005) |
| 03/11/2005 | 2228 (p.3498) | MOTION to Modify Subpoena by Julius Omar Robinson (wrb, ) (Entered: 03/14/2005) |
| 03/14/2005 | 2229 (p.3512) | RESPONSE by Julius Omar Robinson to 2228 (p.3498) MOTION to Modify Subpoena and Motion to Order Mr Strickland to Show Cause why he should not be held in contempt (wrb, ) (Entered: 03/14/2005) |
| 03/29/2005 | 2233 (p.3539) | ORDER APPROVING TRAVEL AUTHORIZATIONSgranting 2227 (p.3495) Motion as to Julius Omar Robinson (2) (Signed by Judge Terry R Means on 3/29/05) (wrb, ) (Entered: 03/29/2005) |
| 03/29/2005 | 2234 (p.3540) | TRAVEL AUTHORIZATION ORDER as to Julius Omar Robinson: for Michael Charlton (Signed by Judge Terry R Means on 3/29/05) (wrb, ) (Entered: 03/30/2005) |
| 03/29/2005 | 2235 (p.3542) | TRAVEL AUTHORIZATION AND ORDER as to Julius Omar Robinson: For Gary Taylor (Signed by Judge Terry R Means on 3/29/05) (wrb, ) (Entered: 03/30/2005) |
| 03/30/2005 | 2237 (p.3544) | ORDER DISMISSING MOTIONS AS MOOTfinding as moot 2228 (p.3498) Motion to Amend/Correct as to Julius Omar Robinson (2) (Signed by Judge Terry R Means on 3/30/05) (wrb, ) (Entered: 04/01/2005) |
| 07/08/2005 | 2264 (p.3545) | UNFILED PER 2265 (p.3550) ORDER... Motion to Permit Withdrawal of Counsel and to Appoint Second Counsel in this Cause(wrb, ) Modified on 7/13/2005 (dld, ). (Entered: 07/12/2005) |

| | | |
|---|---|---|
| 07/12/2005 | 2265 (p.3550) | ORDER Unfiling Pleading as to as to Julius Omar Robinson re 2264 (p.3545) MOTION to Appoint Counsel MOTION to Withdraw as Attorney by Gary Taylor due to the following deficiency: Certificate of conferece is required. (Signed by Judge Terry R Means on 7/8/05) (dld, ) (Entered: 07/13/2005) |
| 07/14/2005 | 2266 (p.3551) | MOTION to Withdraw as Attorney by Gary Taylor by Julius Omar Robinson (wrb, ) (Entered: 07/19/2005) |
| 07/14/2005 | 2272 | CJA 30: Authorization to Pay Gary Taylor in Death Penalty Proceedings as to Julius Omar Robinson. Amount: $ 12098.59, Voucher # 050713000013. (Signed by Judge Terry R Means on 6/14/05) (djd, ) (Entered: 07/28/2005) |
| 07/20/2005 | 2267 (p.3554) | Order Designating Case for ECF - see order for specifics. (Signed by Judge Terry R Means on 7/20/05) (wrb, ) (Entered: 07/21/2005) |
| 07/20/2005 | 2268 (p.3557) | MOTION to Withdraw Attorney Gary Taylor and MOTION to Appoint 2nd Counsel Sean Kennedy by Julius Omar Robinson (pdm, ) (Entered: 07/21/2005) |
| 07/20/2005 | 2270 (p.3562) | ORDER ALLOWING COUNSEL TO WITHDRAW AND APPOINTING COUNSEL; granting 2266 (p.3551) Motion to Withdraw as Attorney. Gary A Taylor withdrawn from case as to Julius Omar Robinson (2); granting 2268 (p.3557) Motion to Appoint Counsel as to Julius Omar Robinson (2); granting 2268 (p.3557) Motion to Withdraw as Attorney. Gary A Taylor withdrawn from case as to Julius Omar Robinson (2) (Signed by Judge Terry R Means on 7/20/05) (wrb, ) (Entered: 07/22/2005) |
| 07/21/2005 | 2271 (p.3563) | ORDER as to Julius Omar Robinson:...clerk shall notice in this court's records that Sean Kennedy of the Federal Public Defender's Office for the Central District of California be designated as co cnsl in this case and that all documents, notices, etc shall be mailed to him at the Federal Public Defender, 321 East 2nd Street, Los Angeles, CA 90012-4202. (Signed by Judge Terry R Means on 7/21/05) (wrb, ) (Entered: 07/22/2005) |
| 07/21/2005 | 2273 | CJA 30: Authorization to Pay Michael B. Charlton, P.C. in Death Penalty Proceedings as to Julius Omar Robinson. Amount: $ 17280.81, Voucher # 050718000018. (Signed by Judge Terry R Means on 5/26/05) (djd, ) (Entered: 08/02/2005) |
| 09/20/2005 | 2274 (p.3564) | ORDER TO INCLUDE NOTATION ON ALL FUTURE PLEADINGS as to Julius Omar Robinson: (Signed by Judge Terry R Means on 09/20/05) (wrb, ) (Entered: 09/21/2005) |
| 11/29/2005 | 2279 (p.3565) | First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Julius Omar Robinson (Attachments: # 1 Exhibit Index of Exhibits)(Charlton, Michael) Modified on 11/30/2005 (pdm, ). Modified on 11/30/2005 (pdm, ). Modified on 11/30/2005 (pdm, ). (Entered: 11/29/2005) |
| 11/30/2005 | 2280 (p.3682) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2281 (p.3714) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |

| | | |
|---|---|---|
| 11/30/2005 | 2282 (p.3746) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2283 (p.3778) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2284 (p.3810) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2285 (p.3814) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2286 (p.3817) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2287 (p.3820) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2288 (p.3825) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) Modified on 11/30/2005 (pdm, ). (Entered: 11/30/2005) |
| 11/30/2005 | 2289 (p.3828) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2290 (p.3831) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2291 (p.3840) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2292 (p.3843) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2293 (p.3845) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2294 (p.3848) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2295 (p.3851) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | | |

18-70022.3161

| | | |
|---|---|---|
| | 2296 (p.3855) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2297 (p.3859) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2298 (p.3864) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2299 (p.3870) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2300 (p.3875) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2301 (p.3886) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2302 (p.3891) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2303 (p.3894) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2304 (p.3896) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2305 (p.3900) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2306 (p.3903) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2307 (p.3906) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2308 (p.3909) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2309 (p.3912) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | | |

18-70022.3162

| | | |
|---|---|---|
| | 2310 (p.3915) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2311 (p.3918) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2312 (p.3923) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2313 (p.3943) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2314 (p.3952) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2315 (p.3954) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2316 (p.3957) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2317 (p.3965) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2318 (p.3968) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2319 (p.3972) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2320 (p.3976) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2321 (p.4004) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2322 (p.4032) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2323 (p.4047) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | | |

18-70022.3163

| | | |
|---|---|---|
| | 2324 (p.4061) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2325 (p.4089) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2326 (p.4117) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2327 (p.4128) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2328 (p.4139) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2329 (p.4150) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2330 (p.4165) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2331 (p.4201) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2332 (p.4237) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2333 (p.4272) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2334 (p.4304) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2335 (p.4336) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2336 (p.4368) | ADDITIONAL ATTACHMENTS to 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) by Defendant Julius Omar Robinson (Charlton, Michael) (Entered: 11/30/2005) |
| 11/30/2005 | 2337 (p.4371) | Certificate of Service by Julius Omar Robinson re 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) *Exhibits 1-43* (Charlton, Michael) (Entered: 11/30/2005) |
| 12/13/2005 | | |

18-70022.3164

| | | |
|---|---|---|
| | 2339 (p.4374) | Order Designating Case for ECF - see order for specifics. (Civil No. 4:05-cv-756-Y) (Signed by Judge Terry R Means on 12/13/05) (wrb, ) (Entered: 12/14/2005) |
| 12/13/2005 | 2340 (p.4378) | ORDER TO INCLUDE NOTATION ON ALL FUTURE PLEADINGS as to Julius Omar Robinson: (CIVIL No. 4:05-cv-756-Y). Cnsl for the parties are ordered to include the notation "death penalty case" underneath the case number on all documents filed or submitted in this case. Any document filed with the clerk that does not include the notation req. by this order may be unfiled. (Signed by Judge Terry R Means on 12/13/05) (wrb, ) (Entered: 12/14/2005) |
| 12/19/2005 | 2341 (p.4379) | MOTION to obtain trial counsel's CJA Payment Request Forms and Accompanying Worksheets (Civil No. 4:05-cv-756-Y) by Julius Omar Robinson Note:cy of this pleading forwarded by email to death penalty law clerk (wrb, ) (Entered: 12/27/2005) |
| 01/03/2006 | 2342 (p.4382) | ORDER REQUIRING RESPONSE as to Julius Omar Robinson: The government Response to Deft's M/Vacate Conviction and Sentence and for New Trial due by 2/27/2006 (Signed by Judge Terry R Means on 1/3/06) (wrb, ) (Entered: 01/03/2006) |
| 01/03/2006 | 2343 (p.4383) | ORDER granting 2341 (p.4379) Defendant Access to His Attorney's Records as to Julius Omar Robinson (2)..Clerk make available to his current attorneys all CJA payment req. forms and accompanying worksheets submitted by any cnsl or investigator for Robinson for any work done on his behalf in this case. (Signed by Judge Terry R Means on 1/3/06) (wrb, ) (Entered: 01/03/2006) |
| 02/03/2006 | 2346 (p.4384) | MOTION for Extension of Time *TO RESPOND TO 28 u.s.c. 2255 MOTION (WITH PROPOSED ORDER)* by USA as to Julius Omar Robinson (Cowger, Susan) (Entered: 02/03/2006) |
| 02/07/2006 | 2347 (p.4388) | ORDER GRANTING EXTENSION OF TIME; granting 2346 (p.4384) Motion for Extension of Time as to Julius Omar Robinson (2) Responses due by 3/31/2006 (Signed by Judge Terry R Means on 2/7/06) (wrb, ) Modified on 2/7/2006 (wrb, ). (Civil No. 4:05-cv-756-Y Death Penalty Case) (Entered: 02/07/2006) |
| 02/10/2006 | 2348 (p.4389) | ORDER REFERRING CJA 30 CLAIM FOR SERVICES AND EXPENSES TO THE US MAGISTRATE JUDGE FOR FINDINGS AND RECOMMENDATIONS as to Julius Omar Robinson: Referred to Magistrate Judge Paul Stickney in the Dallas division. (Signed by Judge Terry R Means on 2/10/06) (wrb, ) (Entered: 02/10/2006) |
| 03/23/2006 | 2359 (p.4390) | Second MOTION for Extension of Time by USA as to Julius Omar Robinson (Cowger, Susan) (Entered: 03/23/2006) |
| 03/30/2006 | 2360 (p.4394) | ORDER granting 2359 (p.4390) Motion for Extension of Time as to Julius Omar Robinson (2) Response due by 4/30/2006 (Signed by Judge Terry R Means on 3/30/06) (jmb, ) (4-05-cv-756-Y) (Entered: 03/30/2006) |
| 04/26/2006 | 2363 (p.4395) | MOTION to Seal Document *(Exhibits to Response to 28 U.S.C. ? 2255 Motion)* by USA as to Julius Omar Robinson (Cowger, Susan) (Entered: 04/26/2006) |
| 04/28/2006 | 2364 | ORDER granting 2363 (p.4395) Motion to Seal Document as to Julius Omar Robinson (2)...IT IS THEREFORE ORDERED that the United States may file under seal Exhibits G through N submitted with the motion to seal. (Signed by Judge Terry R Means on 4/28/06) (jmb, )(4-05-cv-756-Y) (Entered: 04/28/2006) |
| 04/28/2006 | 2365 | RESPONSE in Opposition by USA as to Julius Omar Robinson re 2279 (p.3565) |

| | | |
|---|---|---|
| | (p.4398) | First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) (Attachments: # 1 Exhibit Exhibit A - Affidavit of Wessley Ball# 2 Exhibit Exhibit B - Affidavit of Jack Strickland# 3 Exhibit Exhibit C - Affidavit of Bruce Cummings# 4 Exhibit Exhibit D - Affidavit of Fred Schattman# 5 Exhibit Exhibit E - Robinson's Brief on Appeal# 6 Exhibit Exhibit F - Statement of Facts from Britt Appeal)(Cowger, Susan) (Entered: 04/28/2006) |
| 04/28/2006 | 2366 | Sealed Document (dld, ) Modified on 4/28/2006 (dld, ). (Entered: 04/28/2006) |
| 05/18/2006 | 2371 (p.4590) | Unopposed MOTION for Extension of Time by Julius Omar Robinson (4-05-cv-756-Y) (Charlton, Michael) Modified on 5/18/2006 (jmb, ). (Entered: 05/18/2006) |
| 05/18/2006 | 2372 (p.4593) | Unopposed MOTION for Discovery by Julius Omar Robinson (4-05-cv-756-Y) (Charlton, Michael) Modified on 5/18/2006 (jmb, ). (Entered: 05/18/2006) |
| 06/01/2006 | 2373 (p.4596) | ORDER granting in part 2371 (p.4590) Motion for Extension of Time as to Julius Omar Robinson (2) Robinson's Response to Govt's Answer due by 7/28/2006 (Signed by Judge Terry R Means on 6/1/06) (pdm, ) Modified on 6/1/2006 (pdm, ). (Entered: 06/01/2006) |
| 06/01/2006 | 2374 (p.4597) | ORDER denying 2372 (p.4593) Motion for Discovery as to Julius Omar Robinson (2)...see order for specifics (Signed by Judge Terry R Means on 6/1/06) (pdm, ) (Entered: 06/01/2006) |
| 06/07/2006 | 2375 | ***CJA 30: Authorization to Pay Michael B. Charlton in Death Penalty Proceedings as to Julius Omar Robinson. Amount: $ 37288.97, Voucher # 060605000002. (Signed by Judge Terry R Means on 6/2/06) (djd, ) (Entered: 06/08/2006) |
| 07/20/2006 | 2376 (p.4599) | Unopposed (Second) MOTION for Extension of Time *to Respond to the Government's Answer to Section 2255 Motion* by Julius Omar Robinson with Brief in Support. (Charlton, Michael) Modified on 7/20/2006 (pdm, ). (Entered: 07/20/2006) |
| 07/20/2006 | 2377 (p.4603) | Unopposed MOTION to *Redesignate the Order of Appointment* by Julius Omar Robinson (Charlton, Michael) (Entered: 07/20/2006) |
| 07/25/2006 | 2378 (p.4607) | ORDER granting 2376 (p.4599) Second Motion for Extension of Time as to Julius Omar Robinson (2) Petitioner's Response to Govt's Answer due by 8/28/2006; no further extensions will be granted (Signed by Judge Terry R Means on 7/25/06) (pdm, ) (Entered: 07/25/2006) |
| 07/26/2006 | 2379 (p.4608) | ORDER granting 2377 (p.4603) Motion to Redesignate Order of Appointment as to Julius Omar Robinson (2)...Federal Public Defender's Ofc. for District of Nevada in general, and Michael B. Charlton in particular, apptd. as lead cnsl to represent Robinson (Signed by Judge Terry R Means on 7/26/06) (pdm, ) (Entered: 07/26/2006) |
| 08/28/2006 | 2380 (p.4610) | REPLY by Julius Omar Robinson re 2279 (p.3565) First MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 4-O5-CV-756-Y) (Attachments: # 1 Exhibit 44# 2 Exhibit 45# 3 Exhibit 46# 4 Exhibit 47# 5 Exhibit 48# 6 Exhibit 49# 7 Exhibit 50# 8 Exhibit 51# 9 Exhibit 52# 10 Exhibit 53# 11 Exhibit 54# 12 Exhibit 55# 13 Exhibit 56# 14 Exhibit 57# 15 Exhibit 58# 16 Exhibit 59# 17 Exhibit 60# 18 Exhibit 61# 19 Exhibit 62# 20 Exhibit 63# 21 Exhibit 64# 22 Exhibit 65# 23 Exhibit 66# 24 Exhibit 67# 25 Exhibit 68# 26 Exhibit 69# 27 Exhibit 70# 28 Exhibit 71# 29 Exhibit List)(Kennedy, Sean) (Entered: 08/28/2006) |

| | | |
|---|---|---|
| 11/01/2006 | 2385 (p.4893) | MOTION Seeking Permission to Interview Jurors by Julius Omar Robinson with Brief in Support. (Charlton, Michael) (Entered: 11/01/2006) |
| 11/09/2006 | 2387 (p.4906) | RESPONSE by USA as to Julius Omar Robinson re 2385 (p.4893) MOTION Seeking Permission to Interview Jurors (Cowger, Susan) (Entered: 11/09/2006) |
| 11/28/2006 | 2388 (p.4914) | ORDER denying 2385 (p.4893) Motion Seeking Permission to Interview Jurors as to Julius Omar Robinson (2) (Signed by Judge Terry R Means on 11/28/06)(4-05-cv-756-Y) (jmb, ) (Entered: 11/28/2006) |
| 04/19/2007 | 2399 (p.4918) | MOTION for Reconsideration of 2374 (p.4597) Order Denying Motion for Issuance of a Subpoena to Obtain Jail Records by Julius Omar Robinson with Brief in Support. (Attachments: # 1 Brief in Support) (Kennedy, Sean) (Entered: 04/19/2007) |
| 04/24/2007 | 2401 (p.4928) | ORDER granting 2399 (p.4918) MOTION for Reconsideration of 2374 (p.4597) Order Denying Motion for Issuance of a Subpoena to Obtain Jail Records as to Julius Omar Robinson (2). Robinson is authorized to use the procedures set forth in Rule 45 of the FRCP to obtain the jail visitation logs during the time of his incarceration while awaiting trial through the conclusion of his trial. (Signed by Judge Terry R Means on 4/24/07) (jmb) (Entered: 04/24/2007) |
| 05/16/2007 | 2405 (p.4930) | NOTICE *OF SERVICE OF SUBPOENA DUCES TECUM* as to Julius Omar Robinson (Kennedy, Sean) (Entered: 05/16/2007) |
| 06/15/2007 | 2416 (p.4933) | MOTION for Leave to File Amended Motion to Vacate Conviction and Sentence and for New Trial Pursuant to 28 U.S.C. § 2255 by Julius Omar Robinson with Brief in Support. (Kennedy, Sean) (Entered: 06/15/2007) |
| 06/15/2007 | 2417 | ***UNFILED***Amended MOTION to Vacate under 28 U.S.C. 2255 by Julius Omar Robinson with Brief in Support. (Attachments: # 1 Exhibit List# 2 Exhibit 72# 3 Exhibit 73# 4 Exhibit 74# 5 Exhibit 75# 6 Exhibit 76# 7 Exhibit 77# 8 Exhibit 78 (Part 1 of 2)# 9 Exhibit 78 (Part 2 of 2)# 10 Exhibit 79 (Part 1 of 2)# 11 Exhibit 79 (Part 2 of 2)# 12 Exhibit 80# 13 Exhibit 81# 14 Exhibit 82) (Kennedy, Sean) Modified on 6/25/2007 (jmb). (Entered: 06/15/2007) |
| 06/21/2007 | 2418 | ***UNFILED***RESPONSE by USA as to Julius Omar Robinson re 2416 (p.4933) MOTION for Leave to File Amended Motion to Vacate Conviction and Sentence and for New Trial Pursuant to 28 U.S.C. § 2255 *and Request for Extension of Response Period* (Cowger, Susan) Modified on 6/21/2007 (jmb). (Entered: 06/21/2007) |
| 06/21/2007 | 2419 (p.4956) | ORDER Unfiling Pleading as to as to Julius Omar Robinson re 2418 Response to Motion due to the following deficiency: Signature of Attorney required on certificate of service and certificate of conference. (Signed by Judge Terry R Means on 6/21/07) (jmb) (Entered: 06/21/2007) |
| 06/21/2007 | 2420 (p.4957) | RESPONSE by USA as to Julius Omar Robinson re 2416 (p.4933) MOTION for Leave to File Amended Motion to Vacate Conviction and Sentence and for New Trial Pursuant to 28 U.S.C. § 2255 *and Request for Extension of Response Period* (Cowger, Susan) (Entered: 06/21/2007) |
| 06/25/2007 | 2421 (p.4961) | ORDER Unfiling Pleading as to as to Julius Omar Robinson re 2417 Amended MOTION to Vacate under 28 U.S.C. 2255 due to the following deficiency: Motion for leave has not been granted at time of filing. (Signed by Judge Terry R Means on 6/25/07) (jmb) (Entered: 06/25/2007) |

| | | |
|---|---|---|
| 07/02/2007 | 2422 (p.4962) | Amended MOTION to Amend/Correct 2416 (p.4933) MOTION for Leave to File Amended Motion to Vacate Conviction and Sentence and for New Trial Pursuant to 28 U.S.C. § 2255 filed by Julius Omar Robinson by Julius Omar Robinson with Brief in Support. (Attachments: # 1 Exhibit A# 2 Exhibit List to Exhibit A# 3 Exhibit 72 to Exhibit A# 4 Exhibit 73 to Exhibit A# 5 Exhibit 74 to Exhibit A# 6 Exhibit 75 to Exhibit A# 7 Exhibit 76 to Exhibit A# 8 Exhibit 77 to Exhibit A# 9 Exhibit 78 to Exhibit A (Part 1 of 2)# 10 Exhibit 78 to Exhibit A (Part 2 of 2)# 11 Exhibit 79 to Exhibit A (Part 1 of 2)# 12 Exhibit 79 to Exhibit A (Part 2 of 2)# 13 Exhibit 80 to Exhibit A# 14 Exhibit 81 to Exhibit A# 15 Exhibit 82 to Exhibit A) (Kennedy, Sean) (Entered: 07/02/2007) |
| 01/07/2008 | 2430 (p.5303) | ORDER granting in part and denying in part 2422 (p.4962) Motion to Amend/Correct as to Julius Omar Robinson (2). See Order for specifics. (Signed by Judge Terry R Means on 01/07/2008) (krg) (Entered: 01/07/2008) |
| 01/14/2008 | 2431 (p.5308) | Mail Returned as Undeliverable. 2430 (p.5303) Order on Motion to Amend/Correct received back from Javier Guadalupe Aguilar as Return to Sender Not Deliverable as Addressed. (krg) (Entered: 01/14/2008) |
| 01/17/2008 | 2432 (p.5313) | Brief/Memorandum in Support by Julius Omar Robinson re 2430 (p.5303) Order on Motion to Amend/Correct (Attachments: # 1 Exhibit 44-49# 2 Exhibit 50-73# 3 Exhibit 74-78# 4 Exhibit 79-82) (Kennedy, Sean) (Entered: 01/17/2008) |
| 01/22/2008 | 2433 (p.5634) | Mail Returned as Undeliverable. 2430 (p.5303) Order on Motion to Amend/Correct received back from Glen W. Wood as Return to Sender Attempted Not Known. (krg) (Entered: 01/22/2008) |
| 01/30/2008 | 2434 (p.5644) | Mail Returned as Undeliverable. 2430 (p.5303) Order on Motion to Amend/Correct received back from Jerome D. Wurst as Return to Sender Not Deliverable as Addressed. (krg) (Entered: 01/30/2008) |
| 02/13/2008 | | ***Attorney Marc W Barta for United States of America added. Attorney Angie L Henson terminated, per notification from US Attorney's Ofc. that AUSA Barta is now Criminal Section Habeas Atty. (pdm) (Entered: 02/14/2008) |
| 02/22/2008 | 2436 (p.5654) | MOTION for Extension of Time, MOTION for Leave to File late responseby USA as to Julius Omar Robinson (Cowger, Susan) (Entered: 02/22/2008) |
| 02/26/2008 | 2437 (p.5657) | ORDER granting 2436 (p.5654) Motion for Extension of Time and for Leave to File a Late Response as to Julius Omar Robinson (2). Response of the US to Robinson's supplement to his motion shall be filed on or before March 7, 2008. (4:05-CV-756Y) (Signed by Judge Terry R Means on 2/26/2008) (csw) (Entered: 02/26/2008) |
| 03/06/2008 | 2439 (p.5658) | RESPONSE in Opposition by USA as to Julius Omar Robinson re 2432 (p.5313) Brief/Memorandum in Support of Motion (Cowger, Susan) (Entered: 03/06/2008) |
| 03/19/2008 | 2440 (p.5671) | MOTION for Extension of Time *for Replying to the Government's Response to Petitioner's Supplement Pleading to 28 U.S.C. §2255 Motion* by Julius Omar Robinson (Attachments: # 1 Text of Proposed Order) (Kennedy, Sean) (Entered: 03/19/2008) |
| 03/26/2008 | 2442 (p.5675) | ORDER GRANTING MOTION TO EXTENDgranting 2440 (p.5671) as to Julius Omar Robinson (2) Petitioner's reply in support of his supplemental pleading shall be filed on or before 3/28/2008. (Signed by Judge Terry R Means on 03/26/2008) (krg) (Entered: 03/26/2008) |

| | | |
|---|---|---|
| 03/26/2008 | 2443 (p.5676) | Reply to Government's 2439 (p.5658) Opposition by Julius Omar Robinson to Petitioner's 2432 (p.5313) Brief/Memorandum (Supplemental Pleading/Exhibits) in Support of Motion (Kennedy, Sean) (Entered: 03/26/2008) |
| 03/27/2008 | 2444 (p.5698) | Certificate of Service by Julius Omar Robinson re 2443 (p.5676) Response in Opposition *and Exhibit 83* (Kennedy, Sean) (Entered: 03/27/2008) |
| 04/01/2008 | 2445 (p.5700) | Mail Returned as Undeliverable. 2442 (p.5675) Order on Motion for Extension of Time received back from Jill Davis as Not at this Address. (krg) (Entered: 04/01/2008) |
| 04/07/2008 | 2446 (p.5706) | Mail Returned as Undeliverable. 2442 (p.5675) Order on Motion for Extension of Time received back from Glen W. Wood as Attempted, not known, unable to forward. (pdm) (Entered: 04/07/2008) |
| 11/07/2008 | 2453 (p.5712) | Memorandum Opinion and Order as to Julius Omar Robinson (2) denying 2279 (p.3565) Motion to Vacate (2255). The clerk of the Court shall transmit a copy of this order to Robinson by certified mail, return receipt requested. [see order for specifics] (Ordered by Judge Terry R Means on 11/7/08) (cxb) (Entered: 11/07/2008) |
| 11/07/2008 | 2454 (p.5758) | FINAL JUDGMENT as to Julius Omar Robinson (2): The Court having entered its Memorandum Opinion and Order to deny relief in this case, all of the relief requested is hereby DENIED. The Clerk shall transmit a true copy of this judgment, together with a true copy of the Memorandum Opinion and Order, to the parties. (Ordered by Judge Terry R Means on 11/7/08) (cxb) (Entered: 11/07/2008) |
| 11/13/2008 | 2455 (p.5759) | Certified Mail #7002 3150 0005 3616 3370 Executed on 11/10/08, signed by Jim Allen re: 2454 (p.5758) Judgment, 2453 (p.5712) Memorandum Opinion and Order addressed to Julius Omar Robinson (dld) (Entered: 11/13/2008) |
| 11/24/2008 | 2456 (p.5760) | MOTION for Reconsideration re 2454 (p.5758) Judgment, 2453 (p.5712) Memorandum Opinion and Order, *of Order Denying Motion to Vacate Sentence without an Evidentiary Hearing* filed by Julius Omar Robinson with Brief/Memorandum in Support. (Attachments: # 1 Exhibit Nos. 84-86) (Kennedy, Sean) Modified on 11/25/2008 (krg). Modified on 12/3/2008 (krg). (Entered: 11/24/2008) |
| 11/25/2008 | 2457 | ***VACATED PER ORDER 2461 (p.5837) *** ORDER STRIKING/UNFILING PLEADING unfiling 2456 (p.5760) MOTION for Reconsideration due to the following deficiency: The signature of the attorney of record or the party proceeding pro se is required on each document filed; Filed in the wrong case. Should be filed in 4:05-CV-756-Y. (Ordered by Judge Terry R Means on 11/25/2008) (krg) Modified on 12/3/2008 (krg). (Entered: 11/25/2008) |
| 12/01/2008 | 2458 (p.5832) | MOTION for Extension of Time *to respond to motion for reconsideration of order denying relief under 28 U.S.C. § 2255* filed by USA as to Julius Omar Robinson (Cowger, Susan) (Entered: 12/01/2008) |
| 12/01/2008 | 2459 (p.5835) | Notice of Correction of Signature Omission, correcting signature omission in 2458 (p.5832) Motion for Extension of Time by USA as to Julius Omar Robinson. (Cowger, Susan) (Entered: 12/01/2008) |
| 12/03/2008 | 2460 (p.5836) | ORDER GRANTING MOTION FOR EXTENSION granting 2458 (p.5832) Motion for Extension of Time as to Julius Omar Robinson (2): Response due 12/23/2008. See Order for specifics. (Ordered by Judge Terry R Means on 12/03/2008) (krg) |

| | | |
|---|---|---|
| | | (Entered: 12/03/2008) |
| 12/03/2008 | 2461 (p.5837) | ORDER VACATING DOCUMENT NUMBER 2457 and reinstating doc. 2456 as to Julius Omar Robinson: See Order for specifics. (Ordered by Judge Terry R Means on 12/03/2008) (krg) (Entered: 12/03/2008) |
| 12/03/2008 | 2462 (p.5838) | AMENDED ORDER VACATING DOCUMENT NUMBER 2457 as to Julius Omar Robinson: See Order for specifics. (Ordered by Judge Terry R Means on 12/03/2008) (krg) (Entered: 12/03/2008) |
| 12/05/2008 | 2463 (p.5839) | NOTICE OF ATTORNEY APPEARANCE by Susan Beth Cowger appearing for USA (Cowger, Susan) (Entered: 12/05/2008) |
| 12/22/2008 | 2464 (p.5841) | RESPONSE by USA as to Julius Omar Robinson re 2456 (p.5760) MOTION for Reconsideration re 2454 (p.5758) Judgment, 2453 (p.5712) Memorandum Opinion and Order, *of Order Denying Motion to Vacate Sentence without an Evidentiary Hearing* MOTION for Reconsideration re 2454 (p.5758) Judgment, 2453 (p.5712) Memorandum Opinion and Order, *of Order Denying Motion to Vacate Sentence without an Evidentiary Hearing* (Cowger, Susan) (Entered: 12/22/2008) |
| 02/17/2009 | 2465 (p.5850) | ORDER denying 2456 (p.5760) Motion for Reconsideration as to Julius Omar Robinson (2). [see order for specifics] (Ordered by Judge Terry R Means on 2/17/09) (cxb) (Entered: 02/17/2009) |
| 04/17/2009 | 2466 (p.5857) | NOTICE OF APPEAL to the Fifth Circuit as to 2465 (p.5850) Order on Motion for Reconsideration, 2454 (p.5758) Judgment, 2453 (p.5712) Memorandum Opinion and Order, by Julius Omar Robinson , Filed by Attorney Sean Kennedy - FPD Appointed, No hearings held , T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed , Copy of NOA transmitted to M Washington DP Clerk U S Court of Appeal 5th Circuit. (Kennedy, Sean) Modified on 4/17/2009 (tle). (tle). (Entered: 04/17/2009) |
| 04/17/2009 | 2467 (p.5860) | MOTION for Certificate of Appealability filed by Julius Omar Robinson with Brief/Memorandum in Support. (Attachments: # 1 Text of Proposed Order) (Kennedy, Sean) (Entered: 04/17/2009) |
| 05/05/2009 | 2469 (p.5914) | USCA Case Number as to Julius Omar Robinson 09-70020 for 2466 (p.5857) Notice of Appeal,, filed by Julius Omar Robinson. (tle) (Entered: 05/05/2009) |
| 05/18/2009 | 2470 (p.5915) | Order and Notice of Deficiency that plaintiff(s) has 30 days to cure the following deficiency: The request to proceed in forma pauperis on appeal does not include a certification of the balance and deposits in Movant's inmate trust account for the prior six months. Movant must submit a new request to proceed in forma pauperis on appeal which includes a certification of the balance and deposits in his inmate trust account for the prior six months. This can be obtained from an official at the law library. A copy of this order shall be mailed to Movant or his Attorney...It is hereby ORDERED that Movant shall cure each aforementioned deficiency within (30) days of the date of this order , cy mailed to Sean Kennedy , cy sent to USCA5. (Ordered by Judge Terry R Means on 5/18/2009) (tle) (Entered: 05/18/2009) |
| 06/04/2009 | 2471 (p.5916) | MOTION In forma pauperis status re 2470 (p.5915) Order and Notice of Deficiency,,,, filed by Julius Omar Robinson (Attachments: # 1 Exhibit Trust Account Certification, # 2 Text of Proposed Order Order) (Kennedy, Sean) (Entered: 06/04/2009) |

| | | |
|---|---|---|
| 06/16/2009 | 2472 (p.5925) | Supplemental Document as to 2471 (p.5916) MOTION In forma pauperis status re 2470 (p.5915) Order and Notice of Deficiency,,, (Kennedy, Sean) (Entered: 06/16/2009) |
| 07/10/2009 | 2473 (p.5938) | ORDER DENYING CERTIFICATE OF APPEALABILITY AND GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS ON APPEAL denying 2467 (p.5860) Motion for Certificate of Appealability as to Julius Omar Robinson (2); granting 2471 (p.5916) Motion to proceed IFP as to Julius Omar Robinson (2). See Order for specifics. (Ordered by Judge Terry R Means on 7/10/2009) (krg) (Entered: 07/10/2009) |
| 07/30/2009 | 2474 (p.5943) | Record on Appeal as to Julius Omar Robinson Transmitted to U S Court of Appeal Fifth Circuit Death Penalty Clerk M Washington re 2466 (p.5857) Notice of Appeal,, - USCA5 Number: 09-70020...consisting of 16 volumes of ORIGINAL case papers, 2 ORIGINAL supplemental volumes of case papers, 1 ORIGINAL Appendix Exhibit #1444, 33 ORIGINAL transcripts #1669,1679,1680,1780,1896,1897,1898,1900-1917,1919,1920,1923-1927, 11 ORIGINAL ORIGINAL Sealed documents #1448,1455,1456,1469,1550,1551,1557,1559,1563,1564,2366, 3 boxes of ORIGINAL (Govt, Deft, Court) Exhibits, per request from USCA5 (ORIGINAL CASE PAPERS, EXHIBITS, TRANSCRIPTS)sent by Fed Ex tracking numbers:(tle). (Entered: 07/30/2009) |
| 07/31/2009 | | Fed ex tracking numbers as to Julius Omar Robinson re:09-70020,296929368001735,296929368001748, 296929368001731,296929368001724,296929368001717,296929368001700. (tle) (Entered: 07/31/2009) |
| 08/10/2009 | 2475 (p.5944) | NOTICE of Docketing Record on Appeal from USCA as to Julius Omar Robinson re 2466 (p.5857) Notice of Appeal,, filed by Julius Omar Robinson. USCA Case Number 09-70020, consisting of 18 vol case papers, 33 volumes of transcripts, 1 deposition #1444, 4 boxes of exhibits, 11 sealed documents, 1 PSR/SOR, received on 8/5/09. (tle) (Entered: 08/10/2009) |
| 06/15/2010 | 2477 (p.5945) | JUDGMENT/MANDATE of USCA #09-70020 as to 2466 (p.5857) Notice of Appeal,, filed by Julius Omar Robinson...The application for a COA is DENIED. (tle) (Entered: 06/16/2010) |
| 06/15/2010 | 2478 (p.5956) | Received letter from United States Court of Appeal Fifth Circuit re:No. 09-70020. We will forward the record on appeal at a later date (4:00-CR-260-2-Y). (tle) (Entered: 06/16/2010) |
| 08/27/2010 | 2482 (p.5957) | ORDER of USCA #09-70020(certified copy) as to Julius Omar Robinson re 2466 (p.5857) Notice of Appeal...Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P and 5th CIR.R. 35) the Petition for Rehearing En Banc is DENIED..ENTERED FOR THE COURT: J Smith U.S. Circuit Judge (4:05-CV-756). (tle) (Entered: 08/27/2010) |
| 09/01/2010 | 2483 (p.5960) | Appeal Record Returned as to Julius Omar Robinson:Consisting of 16 volumes of original case papers, 2 original volumes of supplemental case papers, 1 Appendix exhibit #1444, 3 boxes of exhibits (Govt & Court's), 33 original transcripts, 1 PSR (destroyed). (tle) (Entered: 09/03/2010) |
| 01/05/2018 | | |

18-70022.3171

| | 2536 (p.5961) | NOTICE OF ATTORNEY APPEARANCE by Jonathan Charles Aminoff (Clerk to Set Designation as: Federal Public Defender Appointment) appearing for Julius Omar Robinson (Filer confirms contact info in ECF is current.) (Aminoff, Jonathan) (Entered: 01/05/2018) |
|---|---|---|
| 02/09/2018 | 2537 (p.5963) | MOTION to Set Aside Judgment *Pursuant to Rule 60(b)(6)* filed by Julius Omar Robinson with Brief/Memorandum in Support. (Aminoff, Jonathan) (Entered: 02/09/2018) |
| 02/23/2018 | 2539 (p.5992) | NOTICE OF ATTORNEY APPEARANCE by Stephen P Fahey-DOJ appearing for USA . (Clerk to set designation as: Assistant US Attorney). (Fahey-DOJ, Stephen) (Entered: 02/23/2018) |
| 02/23/2018 | 2540 (p.5994) | Unopposed MOTION for Extension of Time *to Respond to Defendant's Motion for Relief from Judgment* filed by USA as to Julius Omar Robinson (Fahey-DOJ, Stephen) (Entered: 02/23/2018) |
| 02/28/2018 | 2541 (p.5996) | ORDER EXTENDING TIME TO FILE RESPONSE granting 2540 (p.5994) Motion for Extension of Time as to Julius Omar Robinson (2). The government shall therefore file its response on or before Tuesday, May 1, 2018. See Local Civil Rule 7.1 (establishing deadlines for motion practice in civil cases). The parties are instructed to file all future documents relating to the Rule 60(b) Motion under cause number 4:05-CV-0756-Y only. (Ordered by Senior Judge Terry R Means on 2/28/2018) (npk) (Entered: 02/28/2018) |

**2.**

**District Court Civil Docket - *Robinson v. United States of America*, U.S. District Court, Northern District of Texas, Fort Worth Division, Case No. 4:05-cv-00756-Y (ROA.1-5)**

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:05-cv-00756-Y

Robinson v. United States of America

Assigned to: Judge Terry R Means

Case in other court:  United States Court of Appeals Fifth Circuit,
18-70022

ND/TX, Ft Worth Division, 4:00cr260-Y(02)

Cause: 28:2255 Motion to Vacate / Correct Illegal Sentence

Date Filed: 11/29/2005

Jury Demand: None

Nature of Suit: 535 Prisoner Pet/Habeas

Corpus: Death Penalty

Jurisdiction: U.S. Government Defendant

**Petitioner**

**Julius Omar Robinson**

*DP Clerk 2 is monitoring*

represented by **Jonathan Charles Aminoff**
Office of the Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012
213-894-5374
Fax: 213-894-0310
Email: Jonathan_Aminoff@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael B Charlton**
Law Office of Michael B Charlton
PO Box 51075
Eugene, OR 97405
541/636-2793
Fax: 541/833-5013
Email: charltonlegal@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Sean Kennedy**
Federal Public Defender's Office
321 E 2nd St
Los Angeles, CA 90012-4202
213/894-5063
Fax: 213/894-0081
Email: sean_kennedy@fd.org
*Bar Status: Not Admitted*

V.

**Respondent**

**United States of America**

represented by **Timothy Wayne Funnell-DOJ**
US Attorney's Office
801 Cherry Street

Suite 1700
Fort Worth, TX 76102
817-252-5252
Email: tim.funnell@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Angie L Henson-DOJ**
US Attorney's Office
1100 Commerce St
Suite 300
Dallas, TX 75242-1027
214-659-8600
Fax: 214-659-8807
Email: usatxn.ecfbounceback@usdoj.gov
*TERMINATED: 02/13/2008*
*Bar Status: Admitted/In Good Standing*

**Marc W Barta-DOJ**
US Attorney's Office
1100 Commerce St
Third Floor
Dallas, TX 75242
214/659-8645
Fax: 214/767-2846
Email: usatxn.ecfbounceback@usdoj.gov
*Bar Status: Admitted/In Good Standing*

**Stephen P Fahey-DOJ**
US Attorney's Office
1100 Commerce
3rd Floor
Dallas, TX 75242
214-659-8600
Fax: 214-767-4104
Email: steve.p.fahey@usdoj.gov
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/29/2005 | | REFER TO CRIMINAL NO. 4-00-CR-260-Y(2) FOR ALL DOCKET ENTRIES (dld, ) (Entered: 11/30/2005) |
| 04/19/2007 | 1 | ***UNFILED PER 4/20/2007 ORDER***MOTION for Reconsideration re Notice (Other) *of Order Denying Motion for Issuance of a Subpoena to Obtain Jail Records* by Julius Omar Robinson with Brief in Support. (Attachments: # 1 Brief in Support of Motion for Reconsideration) (Kennedy, Sean) Modified on 4/20/2007 (White, Charlotte). (Entered: 04/19/2007) |
| 04/20/2007 | 2 (p.6) | Order Unfiling 1 MOTION for Reconsideration filed by Julius Omar Robinson due to the following deficiency: Document should be filed |

| | | |
|---|---|---|
| | | in criminal case 4:00-CR-260 Y 2 only, civil action is for tracking purposes only. (Signed by Judge Terry R Means on 4/20/2007) (csw) (Entered: 04/20/2007) |
| 11/07/2008 | 3 (p.7) | Memorandum Opinion and Order: Robinson's Motion to Vacate his conviction and sentence under 28 U.S.C. § 2255 is hereby DENIED. The clerk of the Court shall transmit a copy of this order to Robinson by certified mail, return receipt requested. [see order for specifics] (Ordered by Judge Terry R Means on 11/7/08) (cxb) (Entered: 11/07/2008) |
| 11/07/2008 | 4 (p.53) | FINAL JUDGMENT: The Court having entered its Memorandum Opinion and Order to deny relief in this case, all of the relief requested is hereby DENIED. The Clerk shall transmit a true copy of this judgment, together with a true copy of the Memorandum Opinion and Order, to the parties. (Ordered by Judge Terry R Means on 11/7/08) (cxb) (Entered: 11/07/2008) |
| 06/15/2010 | 5 (p.54) | JUDGMENT / MANDATE USCA5 #09-70020 United States Court of Appeal Fifth Circuit...The application for a COA is DENIED. (tle) (Entered: 06/16/2010) |
| 08/27/2010 | 6 (p.65) | ORDER of USCA #09-70020(certified copy) as to Julius Omar Robinson re 2466 Notice of Appeal...Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P and 5th CIR.R. 35) the Petition for Rehearing En Banc is DENIED (4:00-Cr-260-2-Y). (tle) (Entered: 08/27/2010) |
| 10/11/2011 | 7 (p.68) | Received letter from United States Court of Appeals For the Fifth Circuit USCA #09-70020 Enclosed is a copy of the Supreme Court order denying certiorari. (tle) (Entered: 10/11/2011) |
| 01/05/2018 | 8 (p.70) | NOTICE of Attorney Appearance by Jonathan Charles Aminoff on behalf of Julius Omar Robinson. (Filer confirms contact info in ECF is current.) (Aminoff, Jonathan) (Entered: 01/05/2018) |
| 02/28/2018 | 9 (p.72) | ORDER EXTENDING TIME TO FILE RESPONSE granting the Government's motion (Dkt. No.2540 in 4:00-CR-0260-Y-2). Robinson filed his Rule 60(b) Motion on February 9, 2018. The government shall therefore file its response on or before Tuesday, May 1, 2018. The Rule 60(b) Motion and related documents have been misfiled under the criminal cause number 4:00-CR-0260-Y-2. The following documents, which have been filed in criminal case number 4:00-CR-0260-Y-2, shall be filed by the Clerk in 4:05-CV-0756-Y.... (See order for specifics) Case Reopened. (Ordered by Senior Judge Terry R Means on 2/28/2018) (npk) (Entered: 02/28/2018) |
| 02/28/2018 | 10 (p.74) | MOTION for Relief from Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)6 filed by Julius Omar Robinson with Brief/Memorandum in Support. (npk) (Entered: 02/28/2018) |
| 02/28/2018 | 11 (p.103) | NOTICE OF ENTRY OF APPEARANCE OF COUNSEL AND REQUEST FOR NOTICES by Stephen P Fahey-DOJ on behalf of |

| | | |
|---|---|---|
| | | United States of America. (npk) (Entered: 02/28/2018) |
| 02/28/2018 | 12 (p.105) | GOVERNMENT'S UNOPPOSED MOTION for Extension of Time to Respond to Defendant's # 10 (p.74) Motion for Relief from Judgement filed by United States of America. (Motion has been granted by order # 9 (p.72) ). (npk) (Entered: 02/28/2018) |
| 04/23/2018 | 13 (p.107) | Notice of Substitution of Counsel by AUSA. Timothy Wayne Funnell-DOJ added as AUSA. (Funnell-DOJ, Timothy) (Entered: 04/23/2018) |
| 04/30/2018 | 14 (p.109) | RESPONSE filed by United States of America re: 10 (p.74) MOTION for Relief from Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)6 (Funnell-DOJ, Timothy) (Entered: 04/30/2018) |
| 05/07/2018 | 15 (p.138) | MOTION for Extension of Time to File Response/Reply to 14 (p.109) Response/Objection filed by Julius Omar Robinson (Aminoff, Jonathan) (Entered: 05/07/2018) |
| 05/08/2018 | 16 (p.140) | ORDER EXTENDING TIME TO FILE REPLY granting 15 (p.138) Motion to Extend Time to File Response. Replies due by 6/13/2018. (Ordered by Senior Judge Terry R Means on 5/8/2018) (npk) (Entered: 05/08/2018) |
| 06/13/2018 | 17 (p.141) | REPLY filed by Julius Omar Robinson re: 10 (p.74) MOTION for Relief from Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)6 (Aminoff, Jonathan) (Entered: 06/13/2018) |
| 06/20/2018 | 18 (p.153) | MEMORANDUM OPINION AND ORDER TRANSFERRING 60(b) MOTION transferring 10 (p.74) MOTION for Relief from Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)6 filed by Julius Omar Robinson. (Ordered by Senior Judge Terry R Means on 6/20/2018) (npk) (Entered: 06/20/2018) |
| 06/20/2018 | 19 (p.163) | Notification of Transfer re: 18 (p.153) Memorandum Opinion and Order, 10 (p.74) MOTION for Relief from Judgment Pursuant to Federal Rule of Civil Procedure Rule 60(b)6 to the U.S. Court of Appeals for the Fifth Circuit. [USCA 18-10732] (tle) (Entered: 06/20/2018) |
| 06/29/2018 | 20 (p.164) | NOTICE OF INTERLOCUTORY APPEAL as to 18 (p.153) Memorandum Opinion and Order, to the Fifth Circuit by Julius Omar Robinson. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Aminoff, Jonathan) (Entered: 06/29/2018) |
| 07/10/2018 | 21 (p.167) | |

| | | |
|---|---|---|
| | | ORDER of USCA No. 18-10732 as to 20 (p.164) Notice of Appeal, filed by Julius Omar Robinson. We have docketed the notice of appeal filed on June 29, 2018. The court has sua sponte consolidated the cases above. The lead case is 18-10732. A revised caption is enclosed for use on all future filings. Consolidating cases 18-10732 and 18-70022. [18-10732, 18-70022] (tle) (Entered: 07/10/2018) |
| 07/11/2018 | | USCA Case Number 18-70022 in United States Court of Appeals Fifth Circuit for 20 (p.164) Notice of Appeal, filed by Julius Omar Robinson. (tle) (Entered: 07/11/2018) |
| 07/16/2018 | 22 (p.169) | Order Denying Certificate of Appealability (Ordered by Senior Judge Terry R Means on 7/16/2018) (bcr) (Entered: 07/16/2018) |

**3.**
**Notice of Appeal, filed June 29, 2018 (ROA.164-65)**

HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
CRAIG A. HARBAUGH (No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
JONATHAN C. AMINOFF (No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Petitioner
JULIUS OMAR ROBINSON

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>Defendant/Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent. | Civil No. 4:05-CV-756-Y<br>(Criminal No. 4:00-CR-00260-2)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Terry R. Means<br>United States District Judge<br><br>**NOTICE OF APPEAL** |

TO THE HONORABLE TERRY R. MEANS, UNITED STATES DISTRICT JUDGE:

Notice is hereby given that Counsel for Petitioner JULIUS OMAR ROBINSON, pursuant to 28 U.S.C. § 1291 and F.R.A.P. 4, appeals to the United States Court of Appeals for the Fifth Circuit from the Memorandum Opinion and Order Transferring Robinson's Rule 60(b) Motion to the Fifth Circuit Court of Appeals (Dkt. No. 18), filed on June 20, 2018 by the United States District Court for the Northern District of Texas, Fort Worth Division.

1

18-70022.164

Mr. Robinson proceeds in forma pauperis pursuant to F.R.A.P. 24(a).

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

Dated: June 29, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

2

18-70022.165

**4.**
**Second Superseding Indictment, filed June 19, 2001 (ROA.3234-3271)**

**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | |
| | § | |
| NATHAN DESHAWN HENDERSON | § | |
| a.k.a. "Cash", a.k.a. "Nate" (01) | § | |
| JULIUS OMAR ROBINSON | § | |
| a.k.a. "Scarface, a.k.a. "Scar", | § | |
| a.k.a. "Face" (02) | § | |
| JASON GEHRING (03) | § | |
| VICTOR JIMENEZ, a.k.a. "Vic" (05) | § | |
| JAVIER GUADALUPE AGUILAR (06) | § | |
| MARCUS JWAIN ROBINSON (07) | § | |
| JOHN TURNER (08) | § | |
| FANISHA HILL (10) | § | CRIMINAL NO.4:00-CR-0260-Y |
| JEWELL EWING, a.k.a. "Duke" (12) | § | [Supersedes Indictments Returned Nov. 2, 2000 and |
| CANTRAL HUGGINS, | § | April 19, 2001 as to the named defendants] |
| a.k.a. "Crumb" (13) | § | |
| TERRENCE HOLIMON, | § | |
| a.k.a "Bone" (14) | § | |
| L.J. BRITT, a.k.a. "Capone" (15) | § | |
| RICHARD SMART, a.k.a "Black" (16) | § | |
| TRAVIS DIXON (21) | § | |
| STEVEN TOSTON (22) | § | |
| ANGELO HARRIS, a.k.a. "Step" (23) | § | |
| KIMBERLY JOHNSON (24) | § | |
| TAMIEKA SIBLEY (26) | § | |
| HENDRICK EZELL TUNSTALL (38) | § | |
| TYRONE BRYANT (39) | § | |
| CHRISTHIAN MORALES (40) | § | |
| EDY SONIA ZAMUDIO (41) | § | |
| DAKARI WARNER | § | |
| a.k.a. "Dakari Sells" | § | |
| a.k.a. "DK" (43) | § | |
| LEON JENKINS (44) | § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 1 9 2001

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**UNITED STATES OF AMERICA v. NATHAN DESHAWN HENDERSON, et al.**
**SUPERSEDING INDICTMENT**                                         Page 1 of 37

938

18-70022.3234

**THE GRAND JURY CHARGES:**

<u>Count One</u>

Commencing on or about January 1, 1997, the exact date being unknown, and continuing thereafter until at least November 8, 2000, in the Fort Worth Division of the Northern District of Texas, and elsewhere, including diverse locations in the states of Texas, Louisiana, Oklahoma, Arkansas, Missouri, Florida, and Kentucky, **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"; Julius Omar Robinson, a.k.a. "Scarface, a.k.a. "Scar", a.k.a. "Face"; Jason Gehring; Victor Jimenez, a.k.a. "Vic"; Javier Guadalupe Aguilar; Marcus Jwain Robinson; John Turner; Fanisha Hill; Jewell Ewing, a.k.a. "Duke"; Cantral Huggins, a.k.a. "Crumb"; Terrence Holimon, a.k.a "Bone"; L.J. Britt, a.k.a. "Capone"; Richard Smart, a.k.a "Black"; Travis Dixon; Steven Toston; Angelo Harris, a.k.a. "Step"; Kimberly Johnson; Tamieka Sibley,** defendants, and others both known and unknown to the Grand Jury, did intentionally and knowingly combine, conspire, confederate, and agree to engage in conduct in violation of Title 21, United States Code, §841(a)(1), namely to distribute  more than 100 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I, controlled substance.

*Manner and Means*

To promote, facilitate, carry on, and perpetrate the aforesaid conspiracy, the following manner and means were, from time to time, employed by one or more of the conspirators:

1. It was a part of the conspiracy that **Victor Jimenez, a.k.a. "Vic"**, defendant, and **Javier Guadalupe Aguilar**, defendant, would each provide bulk quantities - amounts in excess of 10 kilograms - of marijuana to defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar"**

UNITED STATES OF AMERICA v. NATHAN DESHAWN HENDERSON, et al.
SUPERSEDING INDICTMENT                                                      **Page 2 of 37**

18-70022.3235

a.k.a. "Face" and **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"** for distribution to others.

2. It was a part of the conspiracy that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"** and **John Turner,** defendants, would transport and cause to be transported bulk quantities of marijuana to others in the states of Texas, Louisiana, Oklahoma, Arkansas, Missouri, Florida, and Kentucky for further distribution to others.

3. It was a part of the conspiracy that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"** and **Jason Gehring, "** and **John Turner,** defendants would ship by commercial interstate carrier and the United States Mail, quantities of marijuana to others in the states of Arkansas, Missouri, and Kentucky.

4. It was a part of the conspiracy that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendants, utilized communication facilities in interstate commerce including cellular telephones and the Internet to monitor the progress of shipments of marijuana.

5. It was a part of the conspiracy that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"** and **John Turner,** defendants, would establish and operate businesses in order to disguise and conceal their income from the unlawful sale and distribution of controlled substances.

6. Throughout the course of the conspiracy and despite changes in the membership of the conspiracy from time to time, it was a part of the conspiracy that defendants **Julius Omar Robinson,**

18-70022.3236

a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face" and **Nathan Deshawn Henderson, a.k.a. "Cash",**
**a.k.a. "Nate"** would obtain bulk quantities of marijuana which they would distribute to others for
further distribution; such distributors included **Jason Gehring; Marcus Jwain Robinson; John**
**Turner; Jewell Ewing, a.k.a. "Duke"; Cantral Huggins, a.k.a. "Crumb"; Terrence Holimon,**
**a.k.a "Bone"; Travis Dixon; Steven Toston; Tamieka Sibley; L.J. Britt, a.k.a. "Capone"; and**
**Richard Smart, a.k.a "Black";** defendants, and other persons known to the Grand Jury, including
Jamila Marie Camp; Leteshia Lenore Barnett; Angela Leach; Edward Jenkins, a.k.a. "Bear"; Santana
Minor; Timothy Dewayne Caldwell, a.k.a "Timmy"; Troy Lee Simpson; Cody Elliott;  Misty
Grounds; Jeanne Denice Wilkins, Howard Edward Ringer, Stephen Williams, Dorothy Hodges, and
Reginald Kinchen;

7. It was a part of the conspiracy that Jamila Marie Camp and Leteshia Lenore Barnett, aided
and abetted by defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**
and **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate",** and **John Turner,** would open
and maintain places for the storage, processing, and distribution of bulk quantities of marijuana.

8. It was a part of the conspiracy that Jamila Marie Camp, Leteshia Lenore Barnett and
defendant **Marcus Jwain Robinson** would transport quantities of marijuana, to the facilities of
interstate commercial carriers, including United Parcel Service, for shipment to others in the states
of Arkansas and Oklahoma.

9. It was a part of the conspiracy that the conspirators, when using the services of interstate
common carriers, would employ false and fictitious names and/or addresses on shipping or mailing
labels purporting to show the identity of the person(s) sending the package.

10. It was a part of the conspiracy that the conspirators would purchase shipping boxes and

UNITED STATES OF AMERICA v. NATHAN DESHAWN HENDERSON, et al.
**SUPERSEDING INDICTMENT**                                                     **Page 4 of 37**

18-70022.3237

materials from commercial establishments to utilize in sending quantities of marijuana to other conspirators by interstate commercial carriers.

11. It was a part of the conspiracy that money derived from the sale and distribution of marijuana would be used to purchase additional quantities of marijuana.

12. It was a part of the conspiracy that **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"** would from time to time use counterfeit United States currency to pay for quantities of marijuana.

13. It was a part of the conspiracy that **Fanisha Hill,** defendant, would from time to time act as a lookout for **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate",** defendant, when **Henderson** was conducting marijuana transactions.

14. It was a part of the conspiracy that **Richard Smart, a.k.a. "Black",** defendant, would assist **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** defendant, in taking delivery of quantities of marijuana and in transporting quantities of money obtained from the sale and distribution of marijuana.

15. It was a part of the conspiracy that **Kimberly Johnson**, defendant, would assist **Jason Gehring**, defendant, in delivering monies to **Victor Jimenez, a.k.a. "Vic",** defendant.

16. It was a part of the conspiracy that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate",** and **L.J. Britt, a.k.a. "Capone",** defendants, in conjunction with others whose full identities are unknown, would contrive to obtain monies to finance their drug acquisition and distribution by robbing and/or burglarizing third persons of money and other things of value including controlled substances..

18-70022.3238

17. It was a part of the conspiracy that defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face";** would recruit defendant **L.J. Britt, a.k.a. "Capone"** to assist **Robinson** in the commission of acts of force and violence against others.

18. It was a part of the conspiracy that defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face",** would, by means of force and violence, seek retribution against others whom the defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face"** believed had cheated him in drug transactions, had failed to pay him for marijuana, or had become informers for law enforcement.

19. It was a part of the conspiracy that the conspirators would possess, carry, use, brandish, and discharge firearms.

### *Overt Acts*

In furtherance of the conspiracy and to effect and accomplish the objects thereof, one or more of the conspirators committed diverse overt acts within the Northern District of Texas, and elsewhere, among which were the following:

a. In or about March 1997, **Terrence Holimon, a.k.a. "Bone",** defendant, possessed approximately 17 pounds of marijuana in the Eastern District of Arkansas.

b. On or about September 17, 1998, approximately $14,615 in United States Currency was sent by United States Mail from Saint Louis in the Eastern District of Missouri addressed to "Platinum Sounds", 3201 East Pioneer Parkway, Arlington, Texas.

c. On or about September 18, 1998, **John Turner,** defendant, as the owner of "Platinum Sounds" disclaimed any knowledge of, or claim to, the $14,615 in United States Currency

18-70022.3239

which had been mailed to his business.

d. On or about December 3, 1998, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, and **L.J. Britt, a.k.a. "Capone"**, defendant, did possess, carry, and use firearms.

e. On or about December 3, 1998, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, and **L.J. Britt, a.k.a. "Capone"**, defendant, did intentionally cause the death of Johnny Lee Shelton, by shooting him with firearms.

f. On or about January 13, 1999, **Travis Dixon**, defendant, utilizing the services of United Parcel Service, sent $3,500.00 in U.S. currency from Conway in the Eastern District of Arkansas to "That Sounds Good, 916 East Arkansas Lane, Arlington, Texas 76014", in the Northern District of Texas.

g. On or about January 19, 1999, **Steven Toston**, defendant, utilizing the services of United Parcel Service, sent $27,400.00 in U.S. currency from Fayetteville in the Western District of Arkansas to "That Sounds Good, 916 East Arkansas Lane, Arlington, Texas 76014", in the Northern District of Texas.

h. On or about January 21, 1999, **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, utilized the name of "James Stevens" and attempted to send approximately 38 pounds of marijuana from Arlington in the Northern District of Texas to "D&D Detail" 1126 Harkrider, Conway, Arkansas in the Eastern District of Arkansas utilizing the services of United Parcel Service.

i. On or about March 2, 1999, a package containing approximately 20 pounds of marijuana was transported from the Northern District of Texas to the Eastern District of Arkansas,

18-70022.3240

addressed to "Mrs. Freeman, 2840 Dave Ward Dr., Conway, Arkansas".

j. On or about September 24, 1999, a person known to the Grand Jury utilized the name of "Teshia Barnett" and sent a 2 pound parcel from Arlington in the Northern District of Texas to Little Rock in the Eastern District of Arkansas utilizing the services of United Parcel Service.

k. On or about December 29, 1999, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** defendant, obtained cellular telephone service from Southwestern Bell Wireless, Dallas, Texas, for telephone number, 817-454-8015 bearing Electronic Serial Number 23514252463.

l. On or about January 25, 2000, a parcel containing approximately $5,500 in United States Currency was sent by Express Mail to "Platinum Sounds, 2540 East Arkansas Lane, Suite #106, Arlington, TX. 76014" in the Northern District of Texas, which parcel bore a fictitious address in Berkeley in the Eastern District of Missouri.

m. On or about February 14, 2000, **Marcus Jwain Robinson**, defendant, utilized the name of "James Lewis" and attempted to send a parcel containing approximately one pound of marijuana from the Northern District of Texas to the residence of **Terrence Holimon, a.k.a "Bone",** defendant, at 707 North Drew in Dermott in the Eastern District of Arkansas by means of United Parcel Service, a commercial interstate carrier.

n. On or about March 7, 2000, **Marcus Jwain Robinson**, defendant, utilized the name of "James Lewis" and attempted to send parcels containing approximately six pounds of marijuana from the Northern District of Texas to addresses in the Eastern District of Arkansas by means of United Parcel Service, a commercial interstate carrier.

18-70022.3241

o.  On or about March 9, 2000, **Jason Gehring**, defendant, utilized the name of James Johnson, and attempted to send a parcel containing approximately 35 pounds of marijuana to the residence of **Jewell Ewing,** defendant, at 3114 Alameda Drive in Little Rock in the Eastern District of Arkansas by means of United Parcel Service, a commercial interstate carrier.

p.  On or about May 30, 2000, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face" and Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendants, sent a parcel containing approximately 19 pounds of marijuana to an address in Louisville in the Western District of Kentucky by means of United Parcel Service, a commercial interstate carrier.

q.  On or about May 31, 2000, **Jason Gehring** and **Kimberly Johnson,** defendants, met with **Victor Jimenez, a.k.a. "Vic",** defendant, at a residence located at 823 Winston, Dallas, Texas.

r.  On or about June 2, 2000, **Victor Jimenez, a.k.a. "Vic"**, defendant, engaged in a telephone conversation with **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, concerning the purchase price for a quantity of marijuana.

s.  On or about June 2, 2000, **Victor Jimenez**, defendant, delivered approximately 104 pounds of marijuana to **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face" and Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendants, for delivery to others.

t.  On or about June 2, 2000, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar"**

18-70022.3242

a.k.a. "Face" and Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate", defendants, delivered approximately 104 pounds of marijuana to a person known to the Grand Jury, for delivery to others in the state of Arkansas.

u.  On or about June 3, 2000 **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, engaged in a telephone conversation with **Richard Smart, a.k.a. "Black"** defendant, concerning the carrying on of the business of the sale and distribution of controlled substances and the commission of acts of force and violence to obtain money to carry on such business.

v.  On or about June 11, 2000, **Terrence Holimon, a.k.a. "Bone"**, defendant, possessed approximately 4 pounds of marijuana.

w.  On or about June 22, 2000, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, and **Richard Smart, a.k.a. "Black"** defendants met with **Javier Guadalupe Aguilar**, defendant, at a residence in Dallas, Texas.

x.  On or about June 28, 2000, **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, and **Victor Jimenez**, defendants met in Arlington, Texas.

y.  On or about June 30, 2000, **Jason Gehring**, defendant, engaged in a coded telephone conversation with **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, concerning the distribution of approximately 20 pounds of marijuana.

z.  On or about June 30, 2000, **John Turner**, defendant, engaged in a coded telephone conversation with **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, concerning the distribution of approximately 10 pounds of marijuana.

18-70022.3243

aa. On or about July 2, 2000, **Jason Gehring**, defendant, engaged in a coded telephone conversation with **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, concerning the distribution of approximately 10 pounds of marijuana.

bb.  On or about July 8, 2000, **Fanisha Hill**, defendant, acted as a lookout for delivery of approximately 20 pounds of marijuana by **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, to **others**.

cc.  On or about July 12, 2000, **Javier Guadalupe Aguilar** and **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendants, met at the premises of "That Sounds Good", 2540 East Arkansas Lane, Suite 106, Arlington, Texas.

dd.  On or about July 12, 2000, **Javier Guadalupe Aguilar**, defendant, transported away from the premises of "That Sounds Good", 2540 East Arkansas Lane, Suite 106, Arlington, Texas approximately $22,546 in United States Currency.

ee. On or about July 13, 2000, in the Eastern District of Arkansas, **Jewell Ewing**, defendant, possessed $4,880 in United States Currency, one Rossi .38 caliber Revolver, serial number 805205, marijuana, and drug paraphernalia at his residence located at 3114 Alameda Drive, Little Rock, Arkansas.

ff.  On or about November 8, 2000, **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, possessed with intent to distribute 4.316 kilograms (approximately 9 pounds) of marijuana, a Schedule I controlled substance.

gg.  On or about November 8, 2000, **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, possessed two firearms, to wit: one BFI .223 caliber semi-automatic

18-70022.3244

assault rifle, serial number P05130; and one 45 caliber UZI pistol, serial number UP52637.

hh.  On or about November 8, 2000, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, possessed three firearms, to wit: one 9mm UZI pistol, serial number 18740; one Smith & Wesson .357 caliber pistol, serial number 5224575; and one SKS 7.62x39 semi-automatic assault rifle, serial number 1510198P.

ii.  On or about November 8, 2000, **John Turner,** defendant, possessed a ballistic vest at his residence located at 1010 Judy Lynn Drive, Arlington, Texas.

### *Criminal Forfeiture*

I.  Pursuant to the provisions of Title 21, United States Code, §853, **Javier Guadalupe Aguilar**, defendant, from his engagement in the aforesaid offense, shall forfeit to the United States any and all property constituting or derived from, any proceeds the defendant obtained directly or indirectly as a result of the aforesaid offense; as well as any of the property of **Javier Guadalupe Aguilar**, defendant, used or intended to be used, in any manner or part, to commit, or facilitate the commission of the offense alleged in Count 1 of this Indictment; such property including, but not limited to the following:

1.  $22,546 in United States Currency seized on July 12, 2000 from Javier Guadalupe Aguilar.

II.  Pursuant to the provisions of Title 21, United States Code, §853, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, from his engagement in the aforesaid offense, shall forfeit to the United States any and all property constituting or derived from, any proceeds the defendant obtained directly or indirectly as a result of the aforesaid offense; as well

18-70022.3245

as any of the property of **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, used or intended to be used, in any manner or part, to commit, or facilitate the commission of the offense alleged in Count 1 of this Indictment; such property including, but not limited to the following:

1.  One 1991 Nissan Infiniti sedan, VIN: JNKCP01P1MT206841, bearing Texas License MYN20B, assigned Texas Certificate of Title 22025936201103735.

2.  Cash and Money Market and Mutual Funds held under the name of **Julius Robinson**, and designated as assets of Edward Jones Account Number 491-07869-1-4

   *All in violation of Title 21, United States Code, §846, the penalty for which is found at Title 21, United States Code, §841(b)(1)(B).*

18-70022.3246

## Count Two

Commencing on or about January 1, 1997 and continuing thereafter until November 8, 2000, in the Fort Worth Division of the Northern District of Texas, and elsewhere, including diverse locations in the states of Texas, Louisiana, and Oklahoma, **Julius Omar Robinson, a.k.a. "Scarface, a.k.a. "Scar", a.k.a. "Face"; Victor Jimenez, a.k.a. "Vic"; John Turner; L.J. Britt, a.k.a. "Capone"; Angelo Harris, a.k.a. "Step"; Hendrick Ezell Tunstall; Tyrone Bryant; Christhian Morales; Edy Sonia Zamudio; Dakari Warner, a.k.a. "Dakari Sells, a.k.a. "DK"; Leon Jenkins,** defendants, and others both known and unknown to the Grand Jury, did intentionally and knowingly combine, conspire, confederate, and agree to engage in conduct in violation of Title 21, United States Code, §841(a)(1), namely to distribute  more than 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II, controlled substance.

### *Manner and Means*

To promote, facilitate, carry on, and perpetrate the aforesaid conspiracy, the following manner and means were, from time to time, employed by one or more of the conspirators:

1. Throughout the course of the conspiracy and despite changes in the membership of the conspiracy from time to time, it was a part of the conspiracy that defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** would obtain quantities of cocaine from suppliers, including **Victor Jimenez, a.k.a. "Vic", Dakari Warner, a.k.a. "Dakari Sells, a.k.a. "DK", Christhian Morales; and Edy Sonia Zamudio,** defendants, which would be distributed to others for further distribution.

2. It was a part of the conspiracy that defendant **Julius Omar Robinson, a.k.a. "Scarface",**

UNITED STATES OF AMERICA v. NATHAN DESHAWN HENDERSON, et al.
SUPERSEDING INDICTMENT                                                      **Page 14 of 37**

18-70022.3247

a.k.a. "Scar" a.k.a. "Face" would distribute quantities of cocaine to defendants **Jason Gehring; John Turner; Angelo Harris, a.k.a. "Step"; and Leon Jenkins,** and others for further distribution to others.

3. It was a part of the conspiracy that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** defendant, would establish and operate businesses in order to disguise and conceal his income from the unlawful sale and distribution of cocaine.

4. It was a part of the conspiracy that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face"; and L.J. Britt, a.k.a. "Capone" and Hendrick Ezell Tunstall; and Tyrone Bryant; and Christhian Morales; and Edy Sonia Zamudio;** defendants, in conjunction with others whose full identities are unknown, would obtain quantities of cocaine, a Schedule II controlled substance by means of force and violence against others.

5. It was a part of the conspiracy that defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face";** would recruit defendant **L.J. Britt, a.k.a. "Capone"** to assist **Robinson** in the commission of acts of force and violence against others.

6. It was a part of the conspiracy that defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face",** would, by means of force and violence, seek retribution against others whom the defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face"** believed had cheated him in drug transactions, had failed to pay him for cocaine, or had become informers for law enforcement.

7. It was a part of the conspiracy that the conspirators would possess, carry, use, brandish, and discharge firearms.

18-70022.3248

8. It was a part of the conspiracy that defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face",** would recruit others to transport quantities of cocaine in interstate commerce from the state of Texas to the state of Arkansas.

9. It was a part of the conspiracy that the defendants would utilize common carriers to transport cocaine from one state to another.

### *Overt Acts*

In furtherance of the conspiracy and to effect and accomplish the objects thereof, one or more of the conspirators committed diverse overt acts within the Northern District of Texas, and elsewhere, among which were the following:

a. On or about March 16, 1999, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** defendant, met with **Carmen Nicole Byrd**, defendant, and a person known to the Grand Jury at Robinson's residence in the Northern District of Texas.

b. On or about March 16, 1999, **Carmen Nicole Byrd,** defendant, possessed with intent to distribute approximately one kilogram of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

c. On or about May 8, 1999, defendant **Angelo Harris, a.k.a. "Step"** traveled in interstate commerce from the state of Oklahoma to the Northern District of Texas and met with defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Dakari Warner, a.k.a. "Dakari Sells, a.k.a. "DK",** for the purpose of obtaining cocaine.

d. On or about May 8, 1999, defendant **Angelo Harris, a.k.a. "Step"** and defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** obtained what they

18-70022.3249

believed to be one kilogram of cocaine from **Dakari Warner, a.k.a. "Dakari Sells, a.k.a. "DK"**, and another.

e. On or about May 8, 1999, defendant **Angelo Harris, a.k.a. "Step"** caused what he believed to be a kilogram of cocaine to be transported from the Northern District of Texas to Oklahoma City, Oklahoma.

f. On or about May 9, 1999, defendant **Angelo Harris, a.k.a. "Step"** traveled in interstate commerce from the state of Oklahoma to the Northern District of Texas and met with defendant **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, for the purpose of seeking retribution against suppliers of cocaine.

g. On or about May 9, 1999, defendants **Angelo Harris, a.k.a. "Step"** and **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** did possess, carry, and use firearms.

h. On or about May 9, 1999, defendants **Angelo Harris, a.k.a. "Step"** and **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** did intentionally cause the death of Juan Reyes, by shooting him with firearms.

i. On or about July 12, 1999, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face"; and L.J. Britt, a.k.a. "Capone"; and Hendrick Ezell Tunstall;** and **Tyrone Bryant;** and **Christhian Morales;** met in Arlington, Texas and thereafter did, by force and violence, obtain twenty kilograms of cocaine from Rudolfo Resendez.

j. On or about July 12, 1999, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar", a.k.a. "Face"; and L.J. Britt, a.k.a. "Capone"** and **Hendrick Ezell Tunstall;** and

18-70022.3250

**Tyrone Bryant;** and **Christhian Morales;** acting in concert and at the behest of **Edy Sonia Zamudio,** defendant, did intentionally cause the death of Rudolfo Resendez by shooting him with firearms.

k. On or about July 21, 1999, **Angelo Harris,** defendant, and **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** defendant, delivered approximately one kilogram of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, to a person known to the Grand Jury for delivery to others in the Western District of Oklahoma.

l. On or about September 29, 1999, **Angelo Harris, also known as "Step"** and **Brandi Scales,** defendants, transported approximately $8,000 in United States Currency from the Northern District of Texas to the Western District of Oklahoma.

m. On or about November 3, 1999, defendants **Leon Jenkins, Angelo Harris, a.k.a. "Step", and Brandi Scales** were present in Arlington, Texas.

n. On or about June 2, 2000, **L.J. Britt, a.k.a. "Capone",** defendant, engaged in a telephone conversation with **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** defendant.

o. On or about June 14, 2000, **John Turner,** defendant, engaged in a coded telephone conversation with **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** defendant, concerning the distribution of approximately 500 grams of cocaine.

p. On or about June 15, 2000, **L.J. Britt, a.k.a. "Capone",** defendant, engaged in a series of telephone conversations with **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar"**

18-70022.3251

**a.k.a. "Face"**, defendant concerning the payment of monies by **Robinson** to **Britt**.

q.  On or about November 8, 2000, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, possessed three firearms, to wit: one 9mm UZI pistol, serial number 18740; one Smith & Wesson .357 caliber pistol, serial number 5224575; and one SKS 7.62x39 semi-automatic assault rifle, serial number 1510198P.

r.  On or about November 8, 2000, **John Turner,** defendant, possessed a ballistic vest at his residence located at 1010 Judy Lynn Drive, Arlington, Texas.

*A violation of Title 21, United States Code, §846, the penalty for which is found at Title 21, United States Code, §841(b)(1)(A)*

18-70022.3252

### Count Three

1. From on or about January 1, 1997 and continuing thereafter until the date of the return of this Indictment, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, did engage in a continuing criminal enterprise, that is to say that **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, in concert with more than five other persons with respect to whom the defendant occupied a position of organizer and a supervisory position and a position of management, did, as part of a continuing series of felonious violations of subchapter I of Chapter 13 of Title 21, United States Code, intentionally and knowingly violate the provisions of such subchapter and from such continuing series of violations, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, obtained substantial income and resources.

2. The persons with respect to whom **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, occupied a position of organizer and a supervisory position and a position of management included, among others, the following:

| | |
|---|---|
| Jason Gehring, | John Turner, |
| Misty Grounds, | Leteshia Lenore Barnett, |
| Angelo Harris, a.k.a. "Step" | Reginald Kinchen, |
| Jewell Ewing, a.k.a., "Duke", | Cantral Huggins, a.k.a. "Crumb", |
| Jeanne Denise Wilkins, | Steven Toston, |
| Carmen Byrd, | Brandi Scales, |
| Edward G. Jenkins, a.k.a. "Bear", | Jamila Marie Camp, |
| Santana Minor, | Dorothy Hodges, a.k.a. "Dorry", |
| Marcus Jwain Robinson, | L.J. Britt, a.k.a. "Capone", |

18-70022.3253

Richard Smart, a.k.a. "Black",                Hendrick Ezell Tunstall,

Tyrone Bryant,                                Christhian Morales,

Dakari Warner, a.k.a. "Dakari Sells, a.k.a. "DK",  and

Leon Jenkins,.

3.   The continuing series of felonious violations of subchapter I of Title 21, United States Code, included the following:

i. Aiding, abetting, counseling, commanding, inducing, procuring, and causing the attempted distribution of approximately 38 pounds of marijuana on or about January 21, 1999;

ii.   Aiding, abetting, counseling, commanding, inducing, procuring, and causing the attempted distribution of approximately 25 pounds of marijuana on or about March 2, 1999;

iii. Aiding, abetting, counseling, commanding, inducing, procuring, and causing the attempted distribution of approximately one kilogram of cocaine on or about March 16, 1999;

iv.   Aiding, abetting, counseling, commanding, inducing, procuring, and causing the distribution of a quantity of cocaine on or about May 8, 1999

v. Aiding, abetting, counseling, commanding, inducing, procuring, and causing the distribution of approximately twenty kilogram of cocaine on or about July 12, 1999 in Fort Worth, Texas.

vi. Aiding, abetting, counseling, commanding, inducing, procuring, and causing the attempted distribution of approximately five kilograms of cocaine on or about July 22, 1999 in Little Rock, Arkansas;

18-70022.3254

vii.  Aiding, abetting, counseling, commanding, inducing, procuring, and causing the attempted distribution of approximately 10 pounds of marijuana on or about March 20, 2000;

viii.  Aiding, abetting, counseling, commanding, inducing, procuring, and causing the attempted distribution of approximately 19 pounds of marijuana on or about May 30, 2000;

ix.  Aiding, abetting, counseling, commanding, inducing, procuring, and causing the attempted distribution of approximately 104 pounds of marijuana on or about June 2, 2000;

x.  The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about May 30, 2000;

xi.  The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 1, 2000;

xii.  The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21,

18-70022.3255

United States Code, namely the distribution of approximately 104 pounds of marijuana on or about June 2, 2000;

xiii.    The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 2 pounds of marijuana on or about June 2, 2000;

xiv.    The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 4, 2000;

xv.    The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 5, 2000;

xvi.    The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 6, 2000;

18-70022.3256

xvii.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 8, 2000;

xviii.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 4 pounds of marijuana on or about June 10, 2000;

xix.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 12, 2000;

xx.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 13, 2000;

xxi.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts

18-70022.3257

constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 25 pounds of marijuana on or about June 13, 2000;

xxii.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 14, 2000;

xxiii.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 15, 2000;

xxiv.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 16, 2000;

xxv.   The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 2 pounds of marijuana

18-70022.3258

on or about June 16, 2000;

xxvi. The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 1 pound of marijuana on or about June 20, 2000;

xxvii. The knowing and intentional use of a communications facility, namely a telephone, in committing, and in causing and facilitating the commission of acts constituting a felony under the provisions of subchapter I of chapter 13 of Title 21, United States Code, namely the distribution of approximately 25 pounds of marijuana on or about June 27, 2000.

4. While engaging in, and working in furtherance of the aforesaid Continuing Criminal Enterprise, on or about December 3, 1998, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **L.J. Britt, a.k.a. "Capone** did intentionally kill Johnny Lee Shelton, by shooting him with firearms.

5. While engaging in, and working in furtherance of the aforesaid Continuing Criminal Enterprise, on or about May 9, 1999, defendants **Angelo Harris, a.k.a. "Step"** and **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** did intentionally kill, and counsel, command, induce, procure, and cause the intentional killing of Juan Reyes, by shooting him with firearms, and such killing resulted.

6. While engaging in, and working in furtherance of the aforesaid Continuing Criminal Enterprise, on or about July 12, 1999, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a.**

**UNITED STATES OF AMERICA v. NATHAN DESHAWN HENDERSON, et al.**
**SUPERSEDING INDICTMENT** Page 26 of 37

18-70022.3259

"Scar", a.k.a. "Face"; and **L.J. Britt, a.k.a. "Capone"** and **Hendrick Ezell Tunstall;** and **Tyrone Bryant;** and **Christhian Morales** and **Edy Sonia Zamudio;** acting in concert, did intentionally kill, and counsel, command, induce, procure, and cause the intentional killing of, Rudolfo Resendez by shooting him with firearms, and such killing resulted.

*A violation of Title 21, United States Code, §848.*

18-70022.3260

## Count Four

On or about December 3, 1998, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **L.J. Britt, a.k.a. "Capone** did intentionally and knowingly possess firearms in furtherance of a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 1 and Count 3 of this Indictment.

*A violation of Title 18, United States Code, §924(c)(1)(A)(i).*

## Count Five

On or about December 3, 1998, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **L.J. Britt, a.k.a. "Capone** did intentionally and knowingly carry and use firearms, and did brandish such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 1 and Count 3 of this Indictment.

*A violation of Title 18, United States Code, §924(c)(1)(A)(ii).*

18-70022.3261

## Count Six

On or about December 3, 1998, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **L.J. Britt, a.k.a. "Capone** did intentionally and knowingly carry and use firearms, and did discharge such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 1 and Count 3 of this Indictment.

*A violation of Title 18, United States Code, §924(c)(1)(A)(iii).*


## Count Seven

On or about December 3, 1998, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **L.J. Britt, a.k.a. "Capone** did intentionally and knowingly carry and use firearms, and did discharge such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 1 and Count 3 of this Indictment; and in the course of such violation did cause the death of Johnny Lee Shelton through the use of such firearms, such killing being murder as defined in Title 18, United States Code, §1111.

*A violation of Title 18, United States Code, §924(j).*

18-70022.3262

## Count Eight

On or about May 9, 1999, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Angelo Harris, a.k.a. "Step"**, did intentionally and knowingly possess firearms in furtherance of a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 2 and Count 3 of this Indictment.

*A violation of Title 18, United States Code, §924(c)(1)(A)(i).*

## Count Nine

On or about May 9, 1999, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Angelo Harris, a.k.a. "Step"**, did intentionally and knowingly carry and use firearms, and did brandish such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 2 and Count 3 of this Indictment.

*A violation of Title 18, United States Code, §924(c)(1)(A)(ii).*

18-70022.3263

## Count Ten

On or about May 9, 1999, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Angelo Harris, a.k.a. "Step",** did intentionally and knowingly carry and use firearms, and did discharge such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 2 and Count 3 of this Indictment.

*A violation of Title 18, United States Code, §924(c)(1)(A)(iii).*

## Count Eleven

On or about May 9, 1999, in the Northern District of Texas, defendants **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"** and **Angelo Harris, a.k.a. "Step",** did intentionally and knowingly carry and use firearms, and did discharge such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 2 and Count 3 of this Indictment; and in the course of such violation did cause the death of Juan Reyes through the use of such firearms, such killing being murder as defined in Title 18, United States Code, §1111.

*A violation of Title 18, United States Code, §924(j).*

18-70022.3264

## Count Twelve

1. On or about July 12, 1999, in the Fort Worth Division of the Northern District of Texas, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face", L.J. Britt, a.k.a. "Capone, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales,** and **Edy Sonia Zamudio,** defendants, aided and abetted by each other, did intentionally and knowingly possess with intent to distribute more than 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

2. While engaging in such offense, which is punishable under the provisions of Title 21, United States Code, §841(b)(1)(A), the aforesaid defendants did intentionally kill Rudolfo Resendez and did intentionally counsel, command, induce, procure, and cause the intentional killing of Rudolfo Resendez ,and such killing resulted.

*A violation of Title 21, United States Code, §841(a)(1); the penalty*

*for which is found at Title 21, United States Code, §848(e)(1)(A).*

18-70022.3265

## Count Thirteen

1. On or about July 12, 1999, in the Fort Worth Division of the Northern District of Texas, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face", L.J. Britt, a.k.a. "Capone, Hendrick Ezell Tunstall, Tyrone Bryant, Christhian Morales,** defendants, did intentionally and knowingly possess firearms in furtherance of a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 2 and Count 3 and Count 12 of this Indictment.

2. For the conduct alleged in paragraph 1 of this Count, **Edy Sonia Zamudio,** defendant, is criminally responsible as a co-conspirator of the aforesaid defendants in the conspiracy alleged in Count 2 of this Indictment, such conduct having been committed in furtherance of the such conspiracy and being reasonably foreseeable by the defendant **Edy Sonia Zamudio**.

3. For the conduct alleged in paragraph 1 of this Count, **Edy Sonia Zamudio,** defendant, is criminally responsible in that she did willfully aid, abet, counsel, command, induce and procure the commission of such conduct.

*A violation of Title 18, United States Code, §924(c)(1)(A), the penalty for which is found at Title 18, United States Code, §§ 924(c)(1)(A)(i) and 924(c)(1)(C).*

18-70022.3266

## Count Fourteen

1. On or about July 12, 1999, in the Fort Worth Division of the Northern District of Texas, **L.J. Britt, a.k.a. "Capone,** and **Hendrick Ezell Tunstall,** defendants, did intentionally and knowingly carry and use firearms, and did discharge such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 2 and Count 3 and Count 12 of this Indictment.

2. For the conduct alleged in paragraph 1 of this Count, **Edy Sonia Zamudio, Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face", Tyrone Bryant,** and **Christhian Morales,** defendants, are each criminally responsible as a co-conspirator of the aforesaid defendants in the conspiracy alleged in Count 2 of this Indictment, such conduct having been committed in furtherance of the such conspiracy and being reasonably foreseeable by the defendants **Edy Sonia Zamudio, Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face", Tyrone Bryant,** and **Christhian Morales,**.

3. For the conduct alleged in paragraph 1 of this Count,, **Edy Sonia Zamudio, Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face", Tyrone Bryant,** and **Christhian Morales,** defendants, are each criminally responsible in that she did willfully aid, abet, counsel, command, induce and procure the commission of such conduct.

*A violation of Title 18, United States Code, §924(c)(1)(A), the penalty for which is found at Title 18, United States Code, §§ 924(c)(1)(A)(iii) and 924(c)(1)(C).*

18-70022.3267

## Count Fifteen

1. On or about July 12, 1999, in the Fort Worth Division of the Northern District of Texas, **L.J. Britt, a.k.a. "Capone,** and **Hendrick Ezell Tunstall,** defendants, did intentionally and knowingly carry and use firearms, and did discharge such firearms, during and in relation to a drug trafficking crime for which the said defendants may be prosecuted in a court of the United States, namely: the offenses alleged in Count 2 and Count 3 and Count 12 of this Indictment; and in the course of such violation did cause the death of Rudolfo Resendez through the use of such firearms, such killing being murder as defined in Title 18, United States Code, §1111.

2. For the conduct alleged in paragraph 1 of this Count, **Edy Sonia Zamudio, Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** **Tyrone Bryant,** and **Christhian Morales,** defendants, are each criminally responsible as a co-conspirator of the aforesaid defendants in the conspiracy alleged in Count 2 of this Indictment, such conduct having been committed in furtherance of the such conspiracy and being reasonably foreseeable by the defendants **Edy Sonia Zamudio, Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** **Tyrone Bryant,** and **Christhian Morales,.**

3. For the conduct alleged in paragraph 1 of this Count,, **Edy Sonia Zamudio, Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face",** **Tyrone Bryant,** and **Christhian Morales,** defendants, are each criminally responsible in that she did willfully aid, abet, counsel, command, induce and procure the commission of such conduct.

*A violation of Title 18, United States Code, §924(j).*

18-70022.3268

## Count Sixteen

On or about November 8, 2000, in the Fort Worth Division of the Northern District of Texas, **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, possessed two firearms, to wit: one BFI .223 caliber semi-automatic assault rifle, serial number P05130; and one 45 caliber UZI pistol, serial number UP52637 in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, namely, the offense alleged in Count 1 of this Indictment and the possession by **Nathan Deshawn Henderson, a.k.a. "Cash", a.k.a. "Nate"**, defendant, with the intent to distribute 4.316 kilograms (approximately 9 pounds) of marijuana, a Schedule I controlled substance.

*A violation of Title 18, United States Code, §924(c)(1)(A), the penalty for which is found at Title 18, United States Code, § 924(c)(1)(A)(i).*

18-70022.3269

## Count Seventeen

On or about November 8, 2000, in the Fort Worth Division of the Northern District of Texas, **Julius Omar Robinson, a.k.a. "Scarface", a.k.a. "Scar" a.k.a. "Face"**, defendant, possessed three firearms, to wit: one 9mm UZI pistol, serial number 18740; one Smith & Wesson .357 caliber pistol, serial number 5224575; and one SKS 7.62x39 semi-automatic assault rifle, serial number 1510198P, in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, namely, the offense alleged in Counts 1, 2, and 3 of this Indictment.

*A violation of Title 18, United States Code, §924(c)(1)(A), the penalty for which is found at Title 18, United States Code, §§ 924(c)(1)(A)(i) and 924(c)(1)(C).*

A TRUE BILL

_____
Foreman of the Grand Jury

PAUL E. COGGINS
UNITED STATES ATTORNEY

_____
FREDERICK M. SCHATTMAN
Assistant United States Attorney
State Bar of Texas No. 17728400
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone:     (817) 252-5200
Facsimile:      (817) 978-3094

**UNITED STATES OF AMERICA v. NATHAN DESHAWN HENDERSON, et al.**
**SUPERSEDING INDICTMENT**                                                                        **Page 37 of 37**

18-70022.3270

A True bill,

FORT WORTH _____ Foreman
Filed in open court this 19th day of June, 2001

_____ Clerk

WARRANT TO ISSUE FOR DEFENDANT **TAMIEKA SIBLEY (26)**
FANISHA HILL (10), RICHARD SMART (16), KIMBERLY JOHNSON (24) ON **BOND**
**ALL OTHER DEFENDANTS IN CUSTODY**

UNITED STATES MAGISTRATE JUDGE

18-70022.3271

# 5.
## Jury's Special Verdict Form, March 18, 2002 (ROA.4716-4772)

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON, | : | CAUSE NO. 4:00-CR-00260-2 |
|     aka Face, aka Scar, aka Scarface, | : | (Civil No. 4:05-CV-756-Y) |
|     Defendant/Petitioner, | : | |
| | : | **DEATH PENALTY CASE** |
| vs. | : | |
| | : | Honorable Terry Means |
| UNITED STATES OF AMERICA, | : | United States District Judge |
| | : | |
|     Plaintiff/Respondent. | : | |

---

EXHIBIT NO. 45

SUBMITTED IN SUPPORT OF DEFENDANT'S REPLY TO GOVERNMENT'S
RESPONSE TO MOTION TO VACATE CONVICTION AND SENTENCE
AND FOR NEW TRIAL PURSUANT TO 28 U.S.C. § 2255

(Filed Electronically Under the Electronic Filing System Requirements)

---

18-70022.4716

COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | ACTION NO. 4:00-CR-260-Y |
| | § | |
| JULIUS OMAR ROBINSON (2) | § | |

## SPECIAL VERDICT FORM

Question No. 1:

Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson was eighteen years of age or older at the time of the offenses alleged in the Second Superseding Indictment?

Answer "Yes" or "No."

Answer: __Y__ .

Instruction: If you answered "Yes" to Question No. 1, proceed to Question No. 2. If you answered "No" to Question No. 1, you are finished with your deliberations.

18-70022.4717

Exhibit 45 - 1

Question No. 2--Count Three--Killing of Johnny Lee Shelton While Engaging in or Working in Furtherance of a Continuing Criminal Enterprise:

2(A).   Threshold Eligibility Factors

Instruction: If you answer "Yes" to **any** of the four following questions, you may immediately proceed to Question No. 2(B) on the following page.  If you answer "No" to **all** of the four following questions, proceed to Question No. 3.

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally killed Johnny Lee Shelton?

Answer "Yes" or "No."

Answer:____Y_____ .

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally inflicted serious bodily injury that resulted in the death of Johnny Lee Shelton?

Answer "Yes" or "No."

Answer:____Y_____ .

(3) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct intending that Johnny Lee Shelton be killed or that lethal force be employed against Johnny Lee Shelton, which conduct resulted in the death of Johnny Lee Shelton?

Answer "Yes" or "No."

Answer:____Y_____ .

(4) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct that he knew would create a grave risk of death to a person, other than one of the participants in the offense, which conduct resulted in the death of Johnny Lee Shelton?

Answer "Yes" or "No."

Answer:____Y_____ .

18-70022.4718

**Exhibit 45 - 2**

2(B).  Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson knowingly created a grave risk of death to one or more persons in addition to the victim, Johnny Lee Shelton?

Answer "Yes" or "No."

Answer: ___Y_____.


(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Johnny Lee Shelton after substantial planning and premeditation to cause the death of Johnny Lee Shelton?

Answer "Yes" or "No."

Answer: ___Y_____.


Instruction: If you answered "Yes" to **either** portion of Question No. 2(B), proceed to Question No. 2(C) on the following page. If you answered "No" to **both** portions of Question No. 2(B), proceed to Question No. 3.

SPECIAL VERDICT FORM - Page 3
chr - 00cr260\robinson\vrdctpunish

18-70022.4719

**Exhibit 45 - 3**

2(C).  Non-Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson is a future danger to the lives and safety of other persons, as evidenced by a lack of remorse during or soon after the killing of Johnny Lee Shelton, poor rehabilitative potential, specific threats, or acts of violence?

Answer "Yes" or "No."

Answer:_____Y_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson engaged in a prior act of violence, namely discharging a firearm at Sara Tucker on February 7, 1995?

Answer "Yes" or "No."

Answer:___Y_____.

Instruction: Proceed to Question No. 2(D) regardless of how you answered either part of Question No. 2(C).

SPECIAL VERDICT FORM - Page 4
chr · 00cr260\robinson\vrdctpunish

18-70022.4720

**Exhibit 45 - 4**

2(D).  Statutory Mitigating Factors

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge, as to the killing of Johnny Lee Shelton?

Number of jurors who so find: _____ 0 _____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson is punishable as a principal in the killing of Johnny Lee Shelton, which killing was committed by another, but his participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge?

Number of jurors who so find: _____ 0 _____

(3) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson could not reasonably have foreseen that his conduct in the course of the killing of Johnny Lee Shelton would cause, or would create a grave risk of causing, death to any person?

Number of jurors who so find: _____ 0 _____

(4) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Johnny Lee Shelton, Julius Omar Robinson was youthful, although not under the age of eighteen?

Number of jurors who so find: _____ 1 _____

18-70022.4721

**Exhibit 45 - 5**

(5) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Johnny Lee Shelton, Julius Omar Robinson did not have a significant prior criminal record?

Number of jurors who so find: ___4___

(6) Do **any** of you find by a preponderance of the evidence that another defendant or defendants, equally culpable in the killing of Johnny Lee Shelton, will not be punished by death?

Number of jurors who so find: ___9___

(7) Do **any** of you find by a preponderance of the evidence that other factors in Julius Omar Robinson's background or character mitigate against imposition of the death penalty?

Number of jurors who so find: ___2___

Instruction: Proceed to Question No. 2(E) regardless of how you answered any part of Question No. 2(D).

18-70022.4722

**Exhibit 45 - 6**

2(E).   Non-Statutory Mitigating Factors

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson has exhibited good behavior in a jail, prison, institutional setting, or other structured environment and would adapt to prison if he were sentenced to life imprisonment without the possibility of release or parole, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: ____5____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of the parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: ____0____

(3) Do **any** of you find by a preponderance of the evidence that the fact that Julius Omar Robinson can be sentenced to life in prison without any possibility of parole or release if he is not executed mitigates against imposition of the death penalty?

Number of jurors who so find: ____4____

(4) Do **any** of you find by a preponderance of the evidence that a substantial portion of the evidence against Julius Omar Robinson regarding the killing of Johnny Lee Shelton consisted of the testimony of either accomplices in the killing and/or persons who have made agreements with the government in expectation of possible leniency for their criminal conduct, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: ____3____

18-70022.4723

**Exhibit 45 - 7**

(5) Do **any** of you find by a preponderance of the evidence that there was little or no physical evidence against Julius Omar Robinson linking him to or proving his involvement in the killing of Johnny Lee Shelton, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:  ___6___

(6) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson presents a low risk of harm to others in a prison or institutional setting, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:  ___1___

(7) Do **any** of you find by a preponderance of the evidence the existence of any other mitigating factor, outside of those provided for by statute or proposed by Julius Omar Robinson?

| Mitigating Factor | Number of Jurors Who So Find |
|---|---|
|  | 0 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Instruction: Proceed to Question No. 2(F) regardless of how you answered any part of Question No. 2(E).

2(F).   <u>Recommendation</u>

Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that Julius Omar Robinson should be sentenced as follows for the killing of Johnny Lee Shelton while engaging in or working in furtherance of a continuing criminal enterprise:

_____X\_\_\_\_Death

_____Life Imprisonment Without Possibility of Release

_____Some Other Lesser Sentence

<u>Instruction:</u> Proceed to Question No. 3 regardless of how you answered Question No. 2(F).

<u>SPECIAL VERDICT FORM - Page 9</u>
chr - 00cr260\robinson\vrdctpunish

18-70022.4725

**Exhibit 45 - 9**

Question No. 3--Count Three--Killing of Juan Reyes While Engaging in or Working in Furtherance of a Continuing Criminal Enterprise:

3(A).   Threshold Eligibility Factors

Instruction: If you answer "Yes" to **any** of the four following questions, you may immediately proceed to Question No. 3(B) on the following page. If you answer "No" to **all** of the four following questions, proceed to Question No. 4.

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally killed Juan Reyes?

Answer "Yes" or "No."

Answer:_____√_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally inflicted serious bodily injury that resulted in the death of Juan Reyes?

Answer "Yes" or "No."

Answer:_____√_____.

(3) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct intending that Juan Reyes be killed or that lethal force be employed against Juan Reyes, which conduct resulted in the death of Juan Reyes?

Answer "Yes" or "No."

Answer:_____√_____.

(4) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct that he knew would create a grave risk of death to a person, other than one of the participants in the offense, which conduct resulted in the death of Juan Reyes?

Answer "Yes" or "No."

Answer:_____√_____.

SPECIAL VERDICT FORM - Page 10
chr - 00cr260\robinson\vrdctpunish

18-70022.4726

**Exhibit 45 - 10**

3(B).   Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson knowingly created a grave risk of death to one or more persons in addition to the victim, Juan Reyes?

Answer "Yes" or "No."

Answer:_____Y_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Juan Reyes after substantial planning and premeditation to cause the death of Juan Reyes?

Answer "Yes" or "No."

Answer:_____Y_____.

(3) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Juan Reyes in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Juan Reyes?

Answer "Yes" or "No."

Answer:_____Y_____.

Instruction: If you answered "Yes" to **any** portion of Question No. 3(B), proceed to Question No. 3(C) on the following page.  If you answered "No" to **all** portions of Question No. 3(B), proceed to Question No. 4.

SPECIAL VERDICT FORM - Page 11
chr - 00cr260\robinson\vrdctpunish

18-70022.4727

**Exhibit 45 - 11**

3(C).   <u>Non-Statutory Aggravating Factors</u>

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson is a future danger to the lives and safety of other persons, as evidenced by a lack of remorse during or soon after the killing of Juan Reyes, poor rehabilitative potential, specific threats, or acts of violence?

Answer "Yes" or "No."

Answer:_____Y_____.


(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson engaged in a prior act of violence, namely discharging a firearm at Sara Tucker on February 7, 1995?

Answer "Yes" or "No."

Answer:_____Y_____.


<u>Instruction:</u> Proceed to Question No. 3(D) regardless of how you answered either part of Question No. 3(C).

18-70022.4728

**Exhibit 45 - 12**

3(D).   <u>Statutory Mitigating Factors</u>

<u>Instruction:</u> For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge, as to the killing of Juan Reyes?

Number of jurors who so find:_____*0*_____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson is punishable as a principal in the killing of Juan Reyes, which killing was committed by another, but his participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge?

Number of jurors who so find:_____*0*_____

(3) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson could not reasonably have foreseen that his conduct in the course of the killing of Juan Reyes would cause, or would create a grave risk of causing, death to any person?

Number of jurors who so find: _____*0*_____

(4) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Juan Reyes, Julius Omar Robinson was youthful, although not under the age of eighteen?

Number of jurors who so find: _____*1*_____

18-70022.4729

**Exhibit 45 - 13**

(5) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Juan Reyes, Julius Omar Robinson did not have a significant prior criminal record?

Number of jurors who so find: _____3_____

(6) Do **any** of you find by a preponderance of the evidence that another defendant or defendants, equally culpable in the killing of Juan Reyes, will not be punished by death?

Number of jurors who so find: _____12_____

(7) Do **any** of you find by a preponderance of the evidence that other factors in Julius Omar Robinson's background or character mitigate against imposition of the death penalty?

Number of jurors who so find: _____1_____

Instruction: Proceed to Question No. 3(E) regardless of how you answered any part of Question No. 3(D).

3(E).   Non-Statutory Mitigating Factors

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson has exhibited good behavior in a jail, prison, institutional setting, or other structured environment and would adapt to prison if he were sentenced to life imprisonment without the possibility of release or parole, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:_____3_____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of the parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:_____0_____

(3) Do **any** of you find by a preponderance of the evidence that the fact that Julius Omar Robinson can be sentenced to life in prison without any possibility of parole or release if he is not executed mitigates against imposition of the death penalty?

Number of jurors who so find:_____4_____

(4) Do **any** of you find by a preponderance of the evidence that a substantial portion of the evidence against Julius Omar Robinson regarding the killing of Juan Reyes consisted of the testimony of either accomplices in the killing and/or persons who have made agreements with the government in expectation of possible leniency for their criminal conduct, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:_____2_____

18-70022.4731

**Exhibit 45 - 15**

(5) Do **any** of you find by a preponderance of the evidence that there was little or no physical evidence against Julius Omar Robinson linking him to or proving his involvement in the killing of Juan Reyes, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____2_____

(6) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson presents a low risk of harm to others in a prison or institutional setting, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____3_____

(7) Do **any** of you find by a preponderance of the evidence the existence of any other mitigating factor, outside of those provided for by statute or proposed by Julius Omar Robinson?

| Mitigating Factor | Number of Jurors Who So Find |
|---|---|
| | 0 |
| | |
| | |
| | |
| | |
| | |
| | |

Instruction: Proceed to Question No. 3(F) regardless of how you answered any part of Question No. 3(E).

**Exhibit 45 - 16**

3(F).   <u>Recommendation</u>

Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that Julius Omar Robinson should be sentenced as follows for the killing of Juan Reyes while engaging in or working in furtherance of a continuing criminal enterprise:

___X___Death

_____Life Imprisonment Without Possibility of Release

_____Some Other Lesser Sentence

<u>Instruction:</u> Proceed to Question No. 4 regardless of how you answered Question No. 3(F).

18-70022.4733

**Exhibit 45 - 17**

Question No. 4--Count Three--Killing of Rudolfo Resendez While Engaging in or Working in Furtherance of a Continuing Criminal Enterprise:

4(A).   Threshold Eligibility Factors

Instruction: If you answer "Yes" to **either** of the following questions, you may immediately proceed to Question No. 4(B) on the following page.   If you answer "No" to **both** of the following questions, proceed to Question No. 5.

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct intending that Rudolfo Resendez be killed or that lethal force be employed against Rudolfo Resendez, which conduct resulted in the death of Rudolfo Resendez?

Answer "Yes" or "No."

Answer: __*NO*__.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct that he knew would create a grave risk of death to a person, other than one of the participants in the offense, which conduct resulted in the death of Rudolfo Resendez?

Answer "Yes" or "No."

Answer: __*✓*__.

SPECIAL VERDICT FORM - Page 18
chr - 00cr260\robinson\vrdctpunish

**Exhibit 45 - 18**

4(B).   <u>Statutory Aggravating Factors</u>

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson participated in the killing of Rudolfo Resendez as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value?

Answer "Yes" or "No."

Answer:_____✓_____ .

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Rudolfo Resendez after substantial planning and premeditation to cause the death of Rudolfo Resendez?

Answer "Yes" or "No."

Answer:_____✓_____ .

<u>Instruction:</u>  If you answered "Yes" to **either** portion of Question No. 4(B), proceed to Question No. 4(C) on the following page.  If you answered "No" to **both** portions of Question No. 4(B), proceed to Question No. 5.

18-70022.4735

**Exhibit 45 - 19**

4(C).  Non-Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson is a future danger to the lives and safety of other persons, as evidenced by a lack of remorse during or soon after the killing of Rudolfo Resendez, poor rehabilitative potential, specific threats, or acts of violence?

Answer "Yes" or "No."

Answer: _____√_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson engaged in a prior act of violence, namely discharging a firearm at Sara Tucker on February 7, 1995?

Answer "Yes" or "No."

Answer: _____√_____.

Instruction: Proceed to Question No. 4(D) regardless of how you answered any part of Question No. 4(C).

18-70022.4736

**Exhibit 45 - 20**

4(D).  <u>Statutory Mitigating Factors</u>

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge, as to the killing of Rudolfo Resendez?

Number of jurors who so find: _____ *0* _____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson is punishable as a principal in the killing of Rudolfo Resendez, which killing was committed by another, but his participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge?

Number of jurors who so find: _____ *6* _____

(3) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson could not reasonably have foreseen that his conduct in the course of the killing of Rudolfo Resendez would cause, or would create a grave risk of causing, death to any person?

Number of jurors who so find: _____ *1* _____

(4) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Rudolfo Resendez, Julius Omar Robinson was youthful, although not under the age of eighteen?

Number of jurors who so find: _____ *1* _____

18-70022.4737

**Exhibit 45 - 21**

(5) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Rudolfo Resendez, Julius Omar Robinson did not have a significant prior criminal record?

Number of jurors who so find: _____3_____

(6) Do **any** of you find by a preponderance of the evidence that another defendant or defendants, equally culpable in the killing of Rudolfo Resendez, will not be punished by death?

Number of jurors who so find: _____12_____

(7) Do **any** of you find by a preponderance of the evidence that other factors in Julius Omar Robinson's background or character mitigate against imposition of the death penalty?

Number of jurors who so find: _____2_____

Instruction: Proceed to Question No. 4(E) regardless of how you answered any part of Question No. 4(D).

4(E).   <u>Non-Statutory Mitigating Factors</u>

<u>Instruction:</u> For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson has exhibited good behavior in a jail, prison, institutional setting, or other structured environment and would adapt to prison if he were sentenced to life imprisonment without the possibility of release or parole, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:_____3_____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of the parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____0_____

(3) Do **any** of you find by a preponderance of the evidence that the fact that Julius Omar Robinson can be sentenced to life in prison without any possibility of parole or release if he is not executed mitigates against imposition of the death penalty?

Number of jurors who so find: ____1_____

(4) Do **any** of you find by a preponderance of the evidence that a substantial portion of the evidence against Julius Omar Robinson regarding the killing of Rudolfo Resendez consisted of the testimony of either accomplices in the killing and/or persons who have made agreements with the government in expectation of possible leniency for their criminal conduct, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: ____12_____

18-70022.4739

**Exhibit 45 - 23**

(5) Do **any** of you find by a preponderance of the evidence that there was little or no physical evidence against Julius Omar Robinson linking him to or proving his involvement in the killing of Rudolfo Resendez, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____ /2 _____

(6) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson presents a low risk of harm to others in a prison or institutional setting, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____ 3 _____

(7) Do **any** of you find by a preponderance of the evidence the existence of any other mitigating factor, outside of those provided for by statute or proposed by Julius Omar Robinson?

| Mitigating Factor | Number of Jurors Who So Find |
|---|---|
|  | 0 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Instruction: Proceed to Question No. 4(F) regardless of how you answered any part of Question No. 4(E).

SPECIAL VERDICT FORM - Page 24
chr - 00cr260\robinson\vrdctpunish

18-70022.4740

**Exhibit 45 - 24**

4(F).  Recommendation

Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that Julius Omar Robinson should be sentenced as follows for the killing of Rudolfo Resendez while engaging in or working in furtherance of a continuing criminal enterprise:

_____Death

_____X_____Life Imprisonment Without Possibility of Release

_____Some Other Lesser Sentence


Instruction:  Proceed to Question No. 5 regardless of how you answered Question No. 4(F).

SPECIAL VERDICT FORM - Page 25
chr - 00cr260\robinson\vrdct.punish

18-70022.4741

**Exhibit 45 - 25**

<u>Question No. 5</u>--Count Seven--Killing of Johnny Lee Shelton in the Course of Carrying or Using a Firearm During and in Relation to a Drug-Trafficking Crime:

5(A).   <u>Threshold Eligibility Factors</u>

<u>Instruction:</u> If you answer "Yes" to **any** of the four following questions, you may immediately proceed to Question No. 5(B) on the following page.   If you answer "No" to **all** of the four following questions, proceed to Question No. 6.

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally killed Johnny Lee Shelton?

Answer "Yes" or "No."

Answer:_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally inflicted serious bodily injury that resulted in the death of Johnny Lee Shelton?

Answer "Yes" or "No."

Answer:_____.

(3) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally participated in an act, contemplating that the life of a person would be taken, or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Johnny Lee Shelton died as a direct result of the act?

Answer "Yes" or "No."

Answer:_____.

(4) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Johnny Lee Shelton died as a direct result of the act?

Answer "Yes" or "No."

Answer:_____.

18-70022.4742

**Exhibit 45 - 26**

5(B).   Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to Johnny Lee Shelton, the victim of the offense?

Answer "Yes" or "No."

Answer: _____Y_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Johnny Lee Shelton after substantial planning and premeditation to cause the death of Johnny Lee Shelton?

Answer "Yes" or "No."

Answer: _____Y_____.

Instruction: If you answered "Yes" to **either** portion of Question No. 5(B), proceed to Question No. 5(C) on the following page. If you answered "No" to **both** portions of Question No. 5(B), proceed to Question No. 6.

18-70022.4743

**Exhibit 45 - 27**

5(C).   Non-Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson is a future danger to the lives and safety of other persons, as evidenced by a lack of remorse during or soon after the killing of Johnny Lee Shelton, poor rehabilitative potential, specific threats, or acts of violence?

Answer "Yes" or "No."

Answer: _____Y_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson engaged in a prior act of violence, namely discharging a firearm at Sara Tucker on February 7, 1995?

Answer "Yes" or "No."

Answer: _____Y_____.

Instruction: Proceed to Question No. 5(D) regardless of how you answered any part of Question No. 5(C).

18-70022.4744

**Exhibit 45 - 28**

5(D). Statutory Mitigating Factors

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Ju'ius Omar Robinson was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge, as to the killing of Johnny Lee Shelton?

Number of jurors who so find: _____0_____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson is punishable as a principal in the killing of Johnny Lee Shelton, which killing was committed by another, but his participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge?

Number of jurors who so find: _____0_____

(3) Do **any** of you find by a preponderance of the evidence that another defendant or defendants, equally culpable in the killing of Johnny Lee Shelton, will not be punished by death?

Number of jurors who so find: _____10_____

(4) Do **any** of you find by a preponderance of the evidence that other factors in Julius Omar Robinson's background or character mitigate against imposition of the death penalty?

Number of jurors who so find: _____1_____

Instruction: Proceed to Question No. 5(E) regardless of how you answered any part of Question No. 5(D).

18-70022.4745

**Exhibit 45 - 29**

5(E).  Non-Statutory Mitigating Factors

   Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

   (1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson has exhibited good behavior in a jail, prison, institutional setting, or other structured environment and would adapt to prison if he were sentenced to life imprisonment without the possibility of release or parole, and that this mitigates against imposition of the death penalty?

   Number of jurors who so find: _____3_____

   (2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of the parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

   Number of jurors who so find: _____0_____

   (3) Do **any** of you find by a preponderance of the evidence that the fact that Julius Omar Robinson can be sentenced to life in prison without any possibility of parole or release if he is not executed mitigates against imposition of the death penalty?

   Number of jurors who so find: _____3_____

   (4) Do **any** of you find by a preponderance of the evidence that a substantial portion of the evidence against Julius Omar Robinson regarding the killing of Johnny Lee Shelton consisted of the testimony of either accomplices in the killing and/or persons who have made agreements with the government in expectation of possible leniency for their criminal conduct, and that this mitigates against imposition of the death penalty?

   Number of jurors who so find: _____1_____

SPECIAL VERDICT FORM - Page 30
chr - 00cr260\robinson\vrdctpunish

18-70022.4746

**Exhibit 45 - 30**

(5) Do **any** of you find by a preponderance of the evidence that there was little or no physical evidence against Julius Omar Robinson linking him to or proving his involvement in the killing of Johnny Lee Shelton, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____ *10*_____

(6) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Johnny Lee Shelton, Julius Omar Robinson was youthful, although not under the age of eighteen?

Number of jurors who so find: _____ *1*_____

(7) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Johnny Lee Shelton, Julius Omar Robinson did not have a significant prior criminal record?

Number of jurors who so find: _____ *5*_____

(8) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson presents a low risk of harm to others in a prison or institutional setting, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____ *3*_____

(9) Do **any** of you find by a preponderance of the evidence the existence of any other mitigating factor, outside of those provided for by statute or proposed by Julius Omar Robinson?

| Mitigating Factor | Number of Jurors Who So Find |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

Instruction: Proceed to Question No. 5(F) regardless of how you answered any part of Question No. 5(E).

SPECIAL VERDICT FORM - Page 31
chr - 00cr260\robinson\vrdctpunish

18-70022.4747

**Exhibit 45 - 31**

5(F).   <u>Recommendation</u>

Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that Julius Omar Robinson should be sentenced as follows for the killing of Johnny Lee Shelton in the course of carrying or using a firearm during and in relation to a drug-trafficking crime:

_____X_____Death

_____Life Imprisonment Without Possibility of Release

_____Some Other Lesser Sentence


<u>Instruction:</u> Proceed to Question No. 6 regardless of how you answered Question No. 5(F).

SPECIAL VERDICT FORM - Page 32
chr - 00cr260\robinson\vrdctpunish

18-70022.4748

**Exhibit 45 - 32**

Question No. 6--Count Eleven--Killing of Juan Reyes in the Course of Carrying or Using a Firearm During and in Relation to a Drug-Trafficking Crime:

6(A).   Threshold Eligibility Factors

Instruction: If you answer "Yes" to **any** of the four following questions, you may immediately proceed to Question No. 6(B) on the following page.  If you answer "No" to **all** of the four following questions, proceed to Question No. 7.

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally killed Juan Reyes?

Answer "Yes" or "No."

Answer: _____√_____ .

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally inflicted serious bodily injury that resulted in the death of Juan Reyes?

Answer "Yes" or "No."

Answer: _____√_____ .

(3) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally participated in an act, contemplating that the life of a person would be taken, or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Juan Reyes died as a direct result of the act?

Answer "Yes" or "No."

Answer: _____√_____ .

(4) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Juan Reyes died as a direct result of the act?

Answer "Yes" or "No."

Answer: _____√_____ .

18-70022.4749

**Exhibit 45 - 33**

6(B).   <u>Statutory Aggravating Factors</u>

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to Juan Reyes, the victim of the offense?

Answer "Yes" or "No."

Answer:_____Y_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Juan Reyes in an especially heinous, cruel, and depraved manner in that it involved torture or serious physical abuse to Juan Reyes?

Answer "Yes" or "No."

Answer:_____Y_____.

(3) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Juan Reyes after substantial planning and premeditation to cause the death of Juan Reyes?

Answer "Yes" or "No."

Answer:_____Y_____.

(4) Do you unanimously find beyond a reasonable doubt that, during the killing of Juan Reyes, Julius Omar Robinson intentionally killed or attempted to kill more than one person in a single criminal episode?

Answer "Yes" or "No."

Answer:_____Y_____.

<u>Instruction:</u> If you answered "Yes" to **any** portion of Question No. 6(B), proceed to Question No. 6(C) on the following page. If you answered "No" to **all** portions of Question No. 6(B), proceed to Question No. 7.

18-70022.4750

**Exhibit 45 - 34**

6(C).  Non-Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson is a future danger to the lives and safety of other persons, as evidenced by a lack of remorse during or soon after the killing of Juan Reyes, poor rehabilitative potential, and specific threats, and acts of violence?

Answer "Yes" or "No."

Answer:_____Y_____.


(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson engaged in a prior act of violence, namely discharging a firearm at Sara Tucker on February 7, 1995?

Answer "Yes" or "No."

Answer:_____Y_____.


Instruction: Proceed to Question No. 6(D) regardless of how you answered any part of Question No. 6(C).

6(D). <u>Statutory Mitigating Factors</u>

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge, as to the killing of Juan Reyes?

Number of jurors who so find: _____ 0 _____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson is punishable as a principal in the killing of Juan Reyes, which killing was committed by another, but his participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge?

Number of jurors who so find: _____ 0 _____

(3) Do **any** of you find by a preponderance of the evidence that another defendant or defendants, equally culpable in the killing of Juan Reyes, will not be punished by death?

Number of jurors who so find: _____ 11 _____

(4) Do **any** of you find by a preponderance of the evidence that other factors in Julius Omar Robinson's background or character mitigate against imposition of the death penalty?

Number of jurors who so find: _____ 2 _____

Instruction: Proceed to Question No. 6(E) regardless of how you answered any part of Question No. 6(D).

18-70022.4752

**Exhibit 45 - 36**

6(E).   <u>Non-Statutory Mitigating Factors</u>

   <u>Instruction:</u> For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

   (1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson has exhibited good behavior in a jail, prison, institutional setting, or other structured environment and would adapt to prison if he were sentenced to life imprisonment without the possibility of release or parole, and that this mitigates against imposition of the death penalty?

   Number of jurors who so find: _____3_____

   (2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of the parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

   Number of jurors who so find: _____0_____

   (3) Do **any** of you find by a preponderance of the evidence that the fact that Julius Omar Robinson can be sentenced to life in prison without any possibility of parole or release if he is not executed mitigates against imposition of the death penalty?

   Number of jurors who so find: _____4_____

   (4) Do **any** of you find by a preponderance of the evidence that a substantial portion of the evidence against Julius Omar Robinson regarding the killing of Juan Reyes consisted of the testimony of either accomplices in the killing and/or persons who have made agreements with the government in expectation of possible leniency for their criminal conduct, and that this mitigates against imposition of the death penalty?

   Number of jurors who so find: _____2_____

18-70022.4753

**Exhibit 45 - 37**

(5) Do **any** of you find by a preponderance of the evidence that there was little or no physical evidence against Julius Omar Robinson linking him to or proving his involvement in the killing of Juan Reyes, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____0_____

(6) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Juan Reyes, Julius Omar Robinson was youthful, although not under the age of eighteen?

Number of jurors who so find: _____1_____

(7) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Juan Reyes, Julius Omar Robinson did not have a significant prior criminal record?

Number of jurors who so find: _____4_____

(8) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson presents a low risk of harm to others in a prison or institutional setting, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____3_____

(9) Do **any** of you find by a preponderance of the evidence the existence of any other mitigating factor, outside of those provided for by statute or proposed by Julius Omar Robinson?

| Mitigating Factor | Number of Jurors Who So Find |
| --- | --- |
| _____ | 0 |
| _____ | |
| _____ | |
| _____ | |
| _____ | |

Instruction: Proceed to Question No. 6(F) regardless of how you answered any part of Question No. 6(E).

**Exhibit 45 - 38**

6(F).   Recommendation

Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that Julius Omar Robinson should be sentenced as follows for the killing of Juan Reyes in the course of carrying or using a firearm during and in relation to a drug-trafficking crime:

_____X_____Death

_____Life Imprisonment Without Possibility of Release

_____Some Other Lesser Sentence


Instruction: Proceed to Question No. 7 regardless of how you answered Question No. 6(F).

**Exhibit 45 - 39**

Question 7--Count Fifteen--Killing of Rudolfo Resendez in the Course of Carrying or Using a Firearm During and in Relation to a Drug-Trafficking Crime:

7(A).   Threshold Eligibility Factor

Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally participated in an act, contemplating that the life of a person would be taken, or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Rudolfo Resendez died as a direct result of the act?

Answer "Yes" or "No."

Answer: _____✓_____ .

Instruction: If you answered "Yes" to the question above, proceed to Question No. 7(B) on the following page.   If you answered "No" to question above, proceed to Question No. 8.

SPECIAL VERDICT FORM - Page 40
chr - 00cr260\robinson\vrdctpunish

18-70022.4756

**Exhibit 45 - 40**

7(B).   Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson, participated in the killing of Rudolfo Resendez as consideration for the receipt, or in the expectation of the receipt of anything of pecuniary value?

Answer "Yes" or "No."

Answer: _____√_____ .

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Rudolfo Resendez after substantial planning and premeditation to cause the death of Rudolfo Resendez?

Answer "Yes" or "No."

Answer: _____√_____ .

Instruction: If you answered "Yes" to **either** portion of Question No. 7(B), proceed to Question No. 7(C) on the following page.  If you answered "No" to **both** portions of Question No. 7(B), proceed to Question No. 8.

SPECIAL VERDICT FORM - Page 41
chr - 00cr260\robinson\vrdctpunish

18-70022.4757

**Exhibit 45 - 41**

7(C). <u>Non-Statutory Aggravating Factors</u>

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson is a future danger to the lives and safety of other persons, as evidenced by a lack of remorse during or soon after the killing of Rudolfo Resendez, poor rehabilitative potential, and specific threats, and acts of violence?

Answer "Yes" or "No."

Answer: ___Y___.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson engaged in a prior act of violence, namely discharging a firearm at Sara Tucker on February 7, 1995?

Answer "Yes" or "No."

Answer: ___Y___.

<u>Instruction:</u> Proceed to Question No. 7(D) regardless of how you answered any part of Question No. 7(C).

18-70022.4758

**Exhibit 45 - 42**

.Case 4:00-cr-00260-Y   Document 2380-3   Filed 08/28/06   Page 44 of 57   PageID 6767

7(D). <u>Statutory Mitigating Factors</u>

<u>Instruction:</u> For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge, as to the killing of Rudolfo Resendez?

Number of jurors who so find:_____0_____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson is punishable as a principal in the killing of Rudolfo Resendez, which killing was committed by another, but his participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge?

Number of jurors who so find:_____1_____

(3) Do **any** of you find by a preponderance of the evidence that another defendant or defendants, equally culpable in the killing of Rudolfo Resendez, will not be punished by death?

Number of jurors who so find:_____12_____

(4) Do **any** of you find by a preponderance of the evidence that other factors in Julius Omar Robinson's background or character mitigate against imposition of the death penalty?

Number of jurors who so find:_____12_____

<u>Instruction:</u> Proceed to Question No. 7(E) regardless of how you answered any part of Question No. 7(D).

chr - 00cr260\robinson\vrdctpunish

18-70022.4759

**Exhibit 45 - 43**

7(E).  Non-Statutory Mitigating Factors

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do any of you find by a preponderance of the evidence that Julius Omar Robinson has exhibited good behavior in a jail, prison, institutional setting, or other structured environment and would adapt to prison if he were sentenced to life imprisonment without the possibility of release or parole, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:_____3_____

(2) Do any of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of the parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____0_____

(3) Do any of you find by a preponderance of the evidence that the fact that Julius Omar Robinson can be sentenced to life in prison without any possibility of parole or release if he is not executed mitigates against imposition of the death penalty?

Number of jurors who so find: _____4_____

(4) Do any of you find by a preponderance of the evidence that a substantial portion of the evidence against Julius Omar Robinson regarding the killing of Rudolfo Resendez consisted of the testimony of either accomplices in the killing and/or persons who have made agreements with the government in expectation of possible leniency for their criminal conduct, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____10_____

18-70022.4760

**Exhibit 45 - 44**

(5) Do **any** of you find by a preponderance of the evidence that there was little or no physical evidence against Julius Omar Robinson linking him to or proving his involvement in the killing of Rudolfo Resendez, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____ 12 _____

(6) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Rudolfo Resendez, Julius Omar Robinson was youthful, although not under the age of eighteen?

Number of jurors who so find: _____ 1 _____

(7) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Rudolfo Resendez, Julius Omar Robinson did not have a significant prior criminal record?

Number of jurors who so find: _____ 5 _____

(8) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson presents a low risk of harm to others in a prison or institutional setting, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____ 3 _____

(9) Do **any** of you find by a preponderance of the evidence the existence of any other mitigating factor, outside of those provided for by statute or proposed by Julius Omar Robinson?

| Mitigating Factor | Number of Jurors Who So Find |
|---|---|
| | 0 |
| | |
| | |
| | |
| | |

**Instruction:** Proceed to Question No. 7(F) regardless of how you answered any part of Question No. 7(E).

18-70022.4761

**Exhibit 45 - 45**

7(F).   Recommendation

Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that Julius Omar Robinson should be sentenced as follows for the killing of Rudolfo Resendez in the course of carrying or using a firearm during and in relation to a drug-trafficking crime:

_____Death

\_\_\_\_X\_\_\_\_\_Life Imprisonment Without Possibility of Release

_____Some Other Lesser Sentence

Instruction: Proceed to Question No. 8 regardless of how you answered Question No. 7(F).

SPECIAL VERDICT FORM - Page 46
chr - 00cr26C\robinson\vrdctpunish

18-70022.4762

**Exhibit 45 - 46**

Question No. 8--Count Twelve--Killing of Rudolfo Resendez While Engaging In Drug-Trafficking Crime:

8(A).  Threshold Eligibility Factors

Instruction: If you answer "Yes" to **either** of the following questions, you may immediately proceed to Question No. 8(B) on the following page.  If you answer "No" to **both** of the following questions, proceed to the next-to-last page of this Special Verdict Form.

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct intending that Rudolfo Resendez be killed or that lethal force be employed against Rudolfo Resendez, which conduct resulted in the death of Rudolfo Resendez?

Answer "Yes" or "No."

Answer:____Y____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson intentionally engaged in conduct that he knew would create a grave risk of death to a person, other than one of the participants in the offense, and that resulted in the death of Rudolfo Resendez?

Answer "Yes" or "No."

Answer:____Y____.

SPECIAL VERDICT FORM - Page 47
chr - 00cr260\robinson\vrdctpunish

18-70022.4763

**Exhibit 45 - 47**

8(B).  Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson, participated in the killing of Rudolfo Resendez as consideration for the receipt, or in the expectation of the receipt of anything of pecuniary value?

Answer "Yes" or "No."

Answer:_____Y_____.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson committed the offense against Rudolfo Resendez after substantial planning and premeditation to cause the death of Rudolfo Resendez?

Answer "Yes" or "No."

Answer:_____Y_____.

Instruction: If you answered "Yes" to **either** portion of Question No. 8(B), proceed to Question No. 8(C) on the following page. If you answered "No" to **both** portions of Question No. 8(B), proceed to the next-to-last page of this Special Verdict Form.

18-70022.4764

**Exhibit 45 - 48**

8(C).   Non-Statutory Aggravating Factors

(1) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson is a future danger to the lives and safety of other persons, as evidenced by a lack of remorse during or soon after the killing of Rudolfo Resendez, poor rehabilitative potential, specific threats, and acts of violence?

Answer "Yes" or "No."

Answer: ___√___.

(2) Do you unanimously find beyond a reasonable doubt that Julius Omar Robinson engaged in a prior act of violence, namely discharging a firearm at Sara Tucker on February 7, 1995?

Answer "Yes" or "No."

Answer: ___√___.

Instruction: Proceed to Question No. 8(D) regardless of how you answered any part of Question No. 8(C).

18-70022.4765

**Exhibit 45 - 49**

8(D).   Statutory Mitigating Factors

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge, as to the killing of Rudolfo Resendez?

Number of jurors who so find: _____0_____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson is punishable as a principal in the killing of Rudolfo Resendez, which killing was committed by another, but his participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge?

Number of jurors who so find: _____6_____

(3) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson could not reasonably have foreseen that his conduct in the course of the killing of Rudolfo Resendez would cause, or would create a grave risk of causing, death to any person?

Number of jurors who so find: _____0_____

(4) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Rudolfo Resendez, Julius Omar Robinson was youthful, although not under the age of eighteen?

Number of jurors who so find: _____1_____

18-70022.4766

**Exhibit 45 - 50**

(5) Do **any** of you find by a preponderance of the evidence that at the time of the killing of Rudolfo Resendez, Julius Omar Robinson did not have a significant prior criminal record?

Number of jurors who so find: ___4___

(6) Do **any** of you find by a preponderance of the evidence that another defendant or defendants, equally culpable in the killing of Rudolfo Resendez, will not be punished by death?

Number of jurors who so find: ___12___

(7) Do **any** of you find by a preponderance of the evidence that other factors in Julius Omar Robinson's background or character mitigate against imposition of the death penalty?

Number of jurors who so find: ___12___

Instruction: Proceed to Question No. 8(E) regardless of how you answered any part of Question No. 8(D).

SPECIAL VERDICT FORM - Page 51
chr - 00cr260\robinson\vrdctpunish

18-70022.4767

**Exhibit 45 - 51**

8(E).   Non-Statutory Mitigating Factors

Instruction: For each of the following mitigating factors, you must indicate, on the space provided, the number of jurors, if any, who have found the existence of that mitigating factor by a preponderance of the evidence. A finding of a mitigating factor by a preponderance of the evidence may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who concur that the factor has been established.

(1) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson has exhibited good behavior in a jail, prison, institutional setting, or other structured environment and would adapt to prison if he were sentenced to life imprisonment without the possibility of release or parole, and that this mitigates against imposition of the death penalty?

Number of jurors who so find:_____3_____

(2) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson was subjected to emotional abuse, abandonment, or neglect as a child and was deprived of the parental guidance and protection that he needed, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: ____0_____

(3) Do **any** of you find by a preponderance of the evidence that the fact that Julius Omar Robinson can be sentenced to life in prison without any possibility of parole or release if he is not executed mitigates against imposition of the death penalty?

Number of jurors who so find: ____1_____

(4) Do **any** of you find by a preponderance of the evidence that a substantial portion of the evidence against Julius Omar Robinson regarding the killing of Rudolfo Resendez consisted of the testimony of either accomplices in the killing and/or persons who have made agreements with the government in expectation of possible leniency for their criminal conduct, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: ____9_____

SPECIAL VERDICT FORM - Page 52
chr - 00cr260\robinson\vrdctpunish

18-70022.4768

**Exhibit 45 - 52**

(5) Do **any** of you find by a preponderance of the evidence that there was little or no physical evidence against Julius Omar Robinson linking him to or proving his involvement in the killing of Rudolfo Resendez, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____11_____

(6) Do **any** of you find by a preponderance of the evidence that Julius Omar Robinson presents a low risk of harm to others in a prison or institutional setting, and that this mitigates against imposition of the death penalty?

Number of jurors who so find: _____3_____

(7) Do **any** of you find by a preponderance of the evidence the existence of any other mitigating factor, outside of those provided for by statute or proposed by Julius Omar Robinson?

| Mitigating Factor | Number of Jurors Who So Find |
|---|---|
| | 0 |
| | |
| | |
| | |
| | |
| | |
| | |

Instruction: Proceed to Question No. 8(F) regardless of how you answered any part of Question No. 8(E).

18-70022.4769

**Exhibit 45 - 53**

8(F).  Recommendation

Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that Julius Omar Robinson should be sentenced as follows for the killing of Rudolfo Resendez while engaging in a drug-trafficking crime:

_____Death

____X____Life Imprisonment Without Possibility of Release

_____Some Other Lesser Sentence


Instruction: Proceed to the next page.

SPECIAL VERDICT FORM - Page 54
chr   00cr260\robinson\vrdctpunish

18-70022.4770

**Exhibit 45 - 54**

The answers to the preceding questions represent the verdict of the jury.

_____/s/_____          _____3-18-02_____
Presiding Juror                              Date


Instruction: Proceed to the next page.

Certification:

By signing below, each juror certifies that, in considering whether a sentence of death is justified, consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decisions, and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim.

**SIGNATURES OF ALL JURORS:**

PRESIDING JUROR

Date: 3/1-02

SPECIAL VERDICT FORM - Page 56
chr - 00cr260\robinson\vrdctpunish

18-70022.4772

**Exhibit 45 - 56**

**6.**
**Order Appealed: Memorandum Opinion and Order Transferring 60(b)
Motion, filed June 20, 2018 (ROA.153-162)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON (02), | § | |
| Petitioner, | § | |
| | § | Civil No. 4:05-CV-756-Y |
| V. | § | (Criminal No. 4:00-CR-0260-Y) |
| | § | |
| UNITED STATES OF AMERICA | § | |
| Respondent. | § | (death-penalty case) |

## **MEMORANDUM OPINION AND ORDER TRANSFERRING 60(b) MOTION**

Before the Court is Julius Omar Robinson's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6), filed on February 28, 2018.  ("Motion," CV doc. 10).[1]  Robinson moves to reopen the Court's judgment in a proceeding under 28 U.S.C. § 2255.  The Motion challenges the validity of Robinson's conviction by attacking various procedural rulings with new case law.  Because the Motion is in actuality a second or successive petition for habeas relief, the Court **TRANSFERS** the Motion to the United States Court of Appeals for the Fifth Circuit.

### **Background**

This Court sentenced Robinson to death in 2002 after a jury convicted him of murdering Johnny Lee Shelton and Juan Reyes. Robinson was also sentenced to life imprisonment for complicity in a criminal enterprise resulting in the death of Rudolfo Resendez.

---

[1] When Robinson filed his § 2255 motion, it was the Court's practice to file documents related to § 2255 motions in the criminal case.  The practice ended and such documents are now filed in the civil case. Because relevant documents are filed under both cause numbers, "CR doc." refers to the criminal docket number 4:00-CR-260-Y, and "CV doc." refers to the civil docket number 4:05-CV-756-Y.

18-70022.153

The Court assessed a second sentence of life imprisonment and a consecutive 300-month sentence on two other counts.  (CR doc. 1740.)  In 2004, the Fifth Circuit affirmed Robinson's convictions and sentences.  *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004), *cert. denied*, 543 U.S. 1005 (2004).

In 2005, Robinson moved to vacate the judgment pursuant to 28 U.S.C. § 2255.  (CR doc. 2279.)  Following three years of litigation, the Court denied the motion.  *Robinson v. United States*, No. 4:05-CV-756-Y, No. 4:00-CR-260-Y(2), 2008 WL 4906272 (N.D. Tex. Nov. 7, 2008) (CR doc. 2453.)  Robinson moved for reconsideration, which this Court denied.  (CR doc. 2456, 2465.)  The Court by separate order denied a certificate of appealability ("COA").  (CR doc. 2473.)  In 2010, the Fifth Circuit denied Robinson's request for a COA and denied rehearing.  (CR doc. 2477, 2482).  The Supreme Court denied Robinson's petition for certiorari.  (CV doc. 7.)

Robinson moves to reopen the § 2255 proceedings based on Supreme Court cases that have been decided since this Court denied relief.  Respondent contends the Motion fails to meet the standards for relief under Rule 60(b) and, to the extent it raises new claims, it should be transferred to the Court of Appeals as a second or successive petition.

## Applicable Law

Federal Rule of Civil Procedure 60(b)(6) allows a district court to grant relief from a final judgment, order, or proceeding

18-70022.154

for any reason that justifies relief.  *See* Fed. R. Civ. P. 60(b)(6).  The purpose of Rule 60(b) is to "balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts."  *Hernandez v. Thaler*, 630 F.3d 420, 429-30 (5th Cir. 2011).  To succeed under Rule 60(b)(6), the movant must show that extraordinary circumstances exist that justify the reopening of a final judgment.  *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

District courts have jurisdiction to consider Rule 60(b) motions in 28 U.S.C. § 2254 habeas proceedings so long as the motion attacks not the substance of the court's resolution of the claim on the merits, but some defect in the integrity of the habeas proceedings.  *See Gonzalez*, 545 U.S. at 532.  Because 28 U.S.C. § 2254 and § 2255 are nearly identical in substance, this Circuit applies *Gonzalez* to Rule 60(b) motions to reopen § 2255 proceedings.  *See Williams v. Thaler*, 602 F.3d 291, 302 n.5 (5th Cir. 2010); *Davis v. United States*, 417 U.S. 333, 343 (1974) (section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus").  Examples of Rule 60(b) motions that properly raise a defect in the integrity of the habeas proceedings include a claim of fraud on the court or challenges to a procedural ruling that precluded a merits determination, such as failure to exhaust, procedural default, or time bar.  *Gonzalez*, 545 U.S. at 532 nn. 4, 5.

3

18-70022.155

The law limits the defendant to one § 2255 motion unless he obtains certification for a successive motion from the Court of Appeals.  *See* 28 U.S.C. §§ 2244, 2255(e), (h); *Gonzalez*, 545 U.S. at 528 (addressing § 2254).  Because of the comparative lenience of Rule 60(b), petitioners "sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions."  *In re Edwards*, 865 F.3d 197, 203 (5th Cir.), *cert. denied sub nom. Edwards v. Davis*, 137 S. Ct. 909 (2017) (citing *Gonzalez*, 545 U.S. at 531-32).  A Rule 60(b) motion that (1) presents a new habeas claim, (2) attacks the federal court's previous resolution of a claim on the merits, or (3) presents new evidence or new law in support of a claim already litigated, should be treated as a second or successive habeas petition.  *See Gonzalez*, 545 U.S. at 531-32.  The rationale is that such motions could circumvent the strict successive-petition requirements in § 2255(h).  *See id.* (addressing similarly worded provision in § 2244(b)(2)(A)).

### Denial of COA

Robinson first contends that an erroneously high standard was used in denying a COA on his ineffective-assistance-of-counsel claim.  He cites *Buck v. Davis*, 137 S. Ct. 759 (2017) as "the Supreme Court's most recent case on the COA standard" and argues that this Court and the Court of Appeals erred under *Buck* by making a COA determination on the merits rather than simply asking whether

4

18-70022.156

the district court ruling was debatable. Motion, p. 5-9. Robinson argues that the COA is a valid subject for Rule 60(b) relief because it is by definition a "non-merits based decision." *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see* Reply, p. 1.

To the extent Robinson seeks to reopen this Court's order denying a COA, it is not a proper Rule 60(b) motion. *Gonzalez* allows the reopening of procedural decisions that precluded a merits determination. *Gonzalez*, 545 U.S. at 532, n. 4. The denial of COA did not preclude a merits determination; it followed this Court's merits-based ruling on the ineffective-trial-counsel claim. Robinson simply seeks vindication of the claim through a second round of appellate review. It is, "if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute" governing successive petitions. *See id*. at 531; § 2255(h). The Court has no jurisdiction to consider it.

### Inability to Question Jurors

Next, Robinson reasserts a request to interview jurors that this Court had denied during the § 2255 litigation. He argues that he should be permitted to "conduct an investigation no more intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences." Motion, p. 11. This request relies on *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017), which held that the "no impeachment" evidence rule for

5

18-70022.157

jurors must yield to the Sixth Amendment when a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict. *See* Fed. R. Evid. 606(b); *see also* L. Cr. R. 24.1 (N.D. Tex.); Motion, p. 9-11.

Robinson made a similar request during the § 2255 litigation "to vindicate his Sixth Amendment right to an impartial jury," but Robinson's § 2255 motion did not contain an impartial-jury claim under the Sixth Amendment. (CR doc. 2279.)  Robinson conceded he had no evidence of a Sixth Amendment violation.  (CR doc. 2385, p. 1-5.)  This Court denied the request as an improper fishing expedition in support of a hypothetical claim.  (CR doc. 2388, p. 2-3.)

Robinson's present request again seeks to develop evidence in support of an impartial-jury claim under the Sixth Amendment. Although Robinson argues in his reply that a discovery denial is not a decision on the merits, the case he relies upon is not a Rule 60(b) case.  *In re Sessions*, 672 F.2d 564 (5th Cir. 1982). Moreover, discovery in habeas cases must be tied to a showing that, if the facts are more fully developed, the petitioner may be entitled to relief.  *Bracy v. Gramley,* 520 U.S. 899, 908-09 (1997).  It follows that the only legitimate purpose for which the Court could grant the requested discovery is for Robinson to present a claim for relief.  This Court has no jurisdiction to consider it in a Rule 60(b) Motion.  *See Gonzalez*, 545 U.S. at 531.

18-70022.158

## Indictment Error

Robinson's final argument challenges a ruling by the Court of Appeals in the direct appeal. The Court of Appeals held that the government's failure to charge by indictment the aggravating factors used to justify a death sentence constituted harmless error. *See Robinson*, 367 F.3d at 287-88. During the initial § 2255 litigation, Robinson moved to amend the motion to include this indictment-error claim. (CR doc. 2422.) The Court denied the motion because the claim had already been decided on appeal and because the new Supreme Court cases he relied upon were not applicable to the indictment issue and were not retroactive. (CR doc. 2430, p. 2-3). Robinson now argues that the Supreme Court opinions in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) and *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) provide new support for his argument that the indictment error should not have been subjected to a harmless error analysis. Motion, p. 15-19; *see Robinson*, 367 F.3d at 286-89.

Robinson's argument is based solely on a purported change in substantive law regarding the definition of structural error which, he asserts, would alter the outcome of his appellate claim. It is prohibited by *Gonzalez,* 545 U.S. at 531, because it potentially circumvents the successive-petition requirements in § 2255. To avoid this conclusion, Robinson argues that the denial of leave to amend is merely a procedural denial, not a merits-based denial.

18-70022.159

But the procedural ruling is inextricably tied to the indictment-error claim offered as a ground for challenging his conviction. Because Robinson seeks vindication of a substantive claim previously denied on appeal, it is a second or successive petition.

Robinson asserts in his reply that, because the *rulings* he challenges are procedural rather than merits-based, they are all subject to being reopened under Rule 60(b), irrespective of his ultimate intent to litigate the underlying substantive claims for relief. This argument, which necessarily characterizes any allegation of procedural error as "extraordinary circumstances" under Rule 60(b)(6), would potentially swallow the general rule. At a minimum, it conflicts with the holding in *Gonzalez* that extraordinary circumstances "will rarely occur in the habeas context." *Id.* at 535. Nevertheless, Robinson cites *Gonzalez* for support, because it held that challenging a timeliness denial was a proper use of Rule 60(b), even as it would have allowed the petitioner to litigate the underlying substantive claims for relief.

Robinson's argument badly misreads *Gonzalez*. The difference between the limitations ruling challenged in *Gonzalez* and the procedural rulings challenged by Robinson is that the limitations ruling *precluded* a merits determination. Here, Robinson challenges a ruling that did not prevent any merits determination (the COA) or leverages "procedural" errors to present new claims challenging his

18-70022.160

conviction (the impartial-jury claim and indictment error).  Even though couched in terms of procedural error, these issues are, at bottom, merits-based challenges to his conviction.

*Gonzalez* defines "on the merits" as a determination that there exist or do not exist "grounds" entitling a petitioner to relief.  *Id.* at 532 n.4.  The Supreme Court clarified that a Rule 60(b) movant is making a habeas-corpus claim when he asserts one of those "grounds" *or* asserts that "a previous ruling regarding one of those grounds" was in error.  *Id.*  Robinson is doing the latter.  He asserts grounds for relief by challenging procedural rulings using new Supreme Court law which may or may not satisfy the requirements in § 2255 that such laws be retroactive rules of constitutional law.  This is the type of end-run around the successive petition rules that *Gonzalez* prohibits.

## Transfer

Because the Motion raises new claims or seeks to relitigate claims decided on the merits, it is a second or successive petition under 28 U.S.C. § 2255(h).  Before this Court may accept a second or successive petition for filing, it must be certified by the court of appeals to contain either newly discovered evidence showing a high probability of actual innocence or a new and retroactive rule of constitutional law.  *See* § 2255(h); *see also* § 2244(b)(2); *Gonzalez*, 545 U.S. at 529-30.

9

18-70022.161

This Court may either dismiss the motion for lack of jurisdiction or transfer it to the Court of Appeals for a determination under § 2255(h).  *See In re Hartzog*, 444 F. App'x 63, 65 (5th Cir. 2011) (citing *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000)).  The Court finds that it is in the interest of justice to transfer the motion to the Court of Appeals rather than dismiss. *See United States v. Fulton*, 780 F.3d 683, 688 (5th Cir. 2015) (stating that a COA requirement, necessitated by dismissal, presents a judicially inefficient procedural mechanism that would have little practical benefit as compared to transfer).

* * * * *

The Clerk of Court is directed to **TRANSFER** Robinson's Motion (CV doc. 10) to the United States Court of Appeals for the Fifth Circuit.

SIGNED June <u>20</u>, 2018.

*Terry R. Means*
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

10

18-70022.162

# 7.

**Other Order: Fifth Circuit Denial of Motion for Certificate of Appealability (Section 2255), filed June 15, 2010 (ROA.5945-55)**

ORIGINAL

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
JUN 1 5 2010

---

No. 09-70020

---

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2010

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff-Appellee,

versus

JULIUS OMAR ROBINSON, also known as Face, also known as Scar, also known as Scarface,

> Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:05-CV-756 – Y
4:00-CR-260-Y

---

Before HIGGINBOTHAM, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Julius Robinson, a federal prisoner, was convicted of two murders and conspiring in the death of a third victim. He was sentenced to death. He seeks a certificate of appealability ("COA") to appeal the denial of post-conviction relief under 28 U.S.C. § 2255, alleging that he received ineffective assistance of coun-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

18-70022.5945

sel ("IAC") at sentencing and that the district court erred by denying his IAC claim without a hearing. We deny the application.

## I.

## A.

We described the events leading to Robinson's conviction and sentence in *United States v. Robinson* ("*Robinson I*"), 367 F.3d 278 (5th Cir.), *cert. denied*, 543 U.S. 1005 (2004). In summary, Robinson was a wholesale drug dealer operating in five states. In 1998, he ambushed and killed Johnny Shelton with an assault rifle because Robinson had mistaken Shelton for another man whom Robinson blamed for an earlier hijacking. Several months later, Robinson gunned down and killed Juan Reyes because Reyes was the brother-in-law of another drug dealer who had defrauded Robinson. Robinson was also involved in a broad conspiracy that led to the murder of a third man, Rudolfo Resendez.

## B.

For these murders and his complicity in an ongoing criminal enterprise, Robinson was convicted and sentenced to death on three separate counts, to life imprisonment on two others, and to a consecutive 300-month sentence on another. *Robinson I*, 367 F.3d at 282. During the sentencing phase, the prosecution presented evidence of Robinson's likely future dangerousness, referring to his membership in a gang and two additional incidents from his past. Sarah Tucker, Robinson's former high school classmate, testified that he had once fired several shots into her truck and her grandparents' apartment while she sat parked in the driveway, because she owed him $120 for crack cocaine. Robinson was convicted of deadly conduct in Texas state court for that episode.

The prosecution also presented evidence that, while in prison awaiting trial for murder, Robinson ordered a hit on the life of Michael "One Love" Willi-

18-70022.5946

ams, who was from Robinson's hometown of Dermott, Arkansas, and who had testified against Robinson before the grand jury. According to one of Robinson's co-defendants, Nathan Henderson, Robinson said he hoped someone would "get" Williams. At one point, Robinson participated in a three-way phone call with his brother and aunt during which he said, "That dude One Love, man that dude right there go hard, Joe." Williams (i.e., One Love) testified at trial that he was accosted in Dermott by three young men who told him they would kill him for snitching on their leader in Texas. Williams eventually escaped from the three men. Robinson later told Henderson that the "youngsters" in Dermott "got" One Love.

The defense called numerous witnesses. Several of Robinson's former coaches and one former teammate testified that Robinson was polite, well-liked, and responsible. An employee at the computer training school where Robinson took classes testified to his good attendance and successful course work. The defense also called several witnesses from the facility where Robinson was incarcerated before trial. They testified that he was a quiet, courteous, and well-behaved inmate. On cross-examination, one of the witnesses admitted that Robinson had broken a rule by participating in a three-way telephone call.

Two members of Robinson's family testified. John Hollimon, Jr., his uncle, said that Robinson had been raised by his grandparents in Dermott when he was young and that that environment, though poor, was a loving one. When Robinson and his brother grew older, his mother, Rose Hollimon, brought the boys to Arlington, Texas, to live with her. There, according to John Holimon, Robinson lived in a dangerous environment and was forced to fend for himself. Holimon also said that Robinson had supported his grandparents in the past and was excited about his computer course.

Rose Holimon then described how she had married Robinson's father when she was fifteen years old and that her husband abandoned her several years

18-70022.5947

later. She left her sons with their grandparents, believing it would be the best thing for them. She admitted abusing alcohol and drugs while her sons lived with her in Arkansas. She also described Robinson as an average student.

The government and defense called witnesses to testify as to the likelihood of prison violence. The defense witness testified that there was a 20-30% chance that a capital inmate like Robinson would be involved in serious prison violence and a 1% chance such an inmate would commit murder in prison. The government witness opined that the main predictors of prison violence were young age and past violence. He also noted that Robinson was likely to be housed in a facility where he would interact often with other inmates and have telephone access.

## C.

Robinson unsuccessfully moved for post-conviction relief under § 2255, then filed an application for COA in the district court on two questions: whether he received IAC at the sentencing phase and whether the district court was required to hold an evidentiary hearing on that issue. The district court denied the application, and Robinson petitions this court for a COA on the same two issues.

## II.

A petitioner must obtain a COA as a "jurisdictional prerequisite" to appealing the denial of relief under § 2255. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). Where the district court has rejected a petitioner's constitutional claims on the merits, he must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encour-

4

18-70022.5948

agement to proceed further." *Miller-El*, 537 U.S. at 327 (citation omitted). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that the petitioner will not prevail." *Id.* at 338. In our COA determination, we conduct a "threshold inquiry" consisting of "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. In a death penalty case, we resolve any doubt about whether a COA should issue in favor of the petitioner. *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

## A.

Robinson presents two bases for his IAC claim. First, he alleges that his trial counsel did not adequately investigate and rebut the prosecution's evidence regarding future dangerousness—Robinson's alleged gang involvement, the shooting of Tucker's truck, and the purported hit order on Williams. Second, Robinson claims his trial counsel did not adequately investigate his life history, which would have uncovered additional mitigating evidence.

Reviewing a COA petition, we do not decide the merits of Robinson's IAC claims; indeed, we lack jurisdiction to do so. *Miller-El*, 537 U.S. at 336-37. That said, our threshold inquiry of the merits necessarily involves consideration of the elements of the underlying claim for which a COA is requested. *Miller v. Dretke*, 404 F.3d 908, 916 (5th Cir. 2005). To prove IAC, Robinson must show that (1) counsel's performance was deficient, that is, below an objective standard of reasonableness; and (2) the deficient performance prejudiced his defense, that is, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 916-17 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). Under *Washington*'s first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Washington*, 466

5

18-70022.5949

U.S. at 689. Under the second prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If a court concludes that "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed" without analyzing the objective reasonableness of counsel's performance. *Id.* at 697.

We first address Robinson's contention that sentencing counsel failed adequately to investigate and rebut evidence of future dangerousness. With regard to the alleged hit order from prison, Robinson now produces declarations of those involved in accosting Williams, and Williams himself, denying that the three young men were acting under Robinson's orders. Robinson also claims his words "that dude [Williams] right there go hard" were not an instruction to kill Williams, but rather a comment that Williams would do or say anything. On the other hand, none of those declarations rebuts Henderson's testimony concerning Robinson's comments about "get[ting]" Williams before and after the incident, and, as the district court observed, the declarations themselves are contradictory in some respects.

As for the shooting of Tucker's truck, Robinson proffers evidence that he did not know Tucker was in the vehicle. Robinson's companion during the shooting now claims, in contradiction to the earlier testimony that he and Robinson were elsewhere during the shooting, that neither of them saw Tucker inside the truck. According to Robinson, that evidence suggests he was not attempting to murder Sarah Tucker but rather was spraying bullets into her truck and grandparents' apartment "in frustration." Robinson's § 2255 counsel also interviewed Robinson's defense counsel for the deadly conduct prosecution, who avers that Robinson's plea to a third-degree felony and a relatively light sentence—five years of probation and deferred adjudication—confirms the "minor nature" of the crime.

18-70022.5950

Robinson also claims that his trial counsel should have suppressed any evidence of his affiliation with the Dermott Crips gang under *Dawson v. Delaware*, 503 U.S. 159, 165-67 (1992). *Dawson* held that a stipulation to the defendant's membership in the Aryan Brotherhood prison gang was irrelevant to his sentencing and led to constitutional error, because the only information presented about the gang was its racist beliefs. *Id.* at 162, 165. But had the prosecution given some other justification for referring to the gang, such as a reputation for violence, it would have presented "a much different case." *Id.* at 165. That was precisely the reason for linking Robinson to the Dermott Crips, so references to the gang were relevant.

Alternatively, Robinson argues his lawyers should have interviewed the police chief or consulted an expert to testify that the Dermott Crips were "nothing more than a group of adolescent hoodlums" rather than a "fearsome gang." But in his own brief, Robinson cites trial testimony from Terence Holimon that already presented a similar view to the jury.

After a threshold inquiry into Robinson's complaints that his trial counsel failed adequately to investigate and rebut evidence of future dangerousness, we conclude that no reasonable jurist would find that Robinson was prejudiced by the above alleged deficiencies. Even if Robinson had been able to introduce all of his newfound rebuttal evidence, the jury would have been left with plausible evidence that Robinson ordered a hit from prison; his open admission that he fired shots into a car and apartment in anger over a $120 debt; and nothing new about the Dermott Crips.

And most importantly, Robinson's two brutal murders and complicity in a third would have remained in the fore. Though the future dangerousness evidence was a significant element in the verdict, *see Robinson I*, 367 F.3d at 283, no jurist of reason would believe that the dent in that evidence, which Robinson alleges, would have created a reasonable probability of a different verdict.

7

18-70022.5951

B.

Robinson claims he received IAC because his trial counsel failed adequately to investigate and present mitigating evidence about a rocky upbringing and childhood exposure to brain-damaging substances. We consider these claims in turn.

Robinson proffers new witness statements to show that his childhood was less structured and rougher than was indicated by John Holimon's and Rose Holimon's testimony at trial. Some of the new evidence is cumulative of what the jury heard: Rose's drug abuse, her decision to abandon Robinson to his grandparents, his grandfather's blindness, and Robinson's dangerous years as a teenager in Arlington. Some of the information is new: allegations of physical fighting between Robinson's parents (some, however, before Robinson's birth); the alleged beating Robinson suffered as part of his initiation into the Dermott Crips "pseudo-gang;"[1] the allegation that Robinson was abusing alcohol by the time he reached middle school; and a brief, uncorroborated suggestion by his father that a neighbor sexually touched Robinson when he was five years old.

Robinson also offers new evidence that brain damage caused by exposure to alcohol in the womb and to pesticides as a young child mitigates his culpability. That evidence is scant on specifics. He claims, for instance, that the effects of *in utero* alcohol exposure were apparent at his birth, but the only physical evidence he offers is that his birth weight was five pounds, six ounces. He also claims that his grandparents' home in Dermott was "very near" a farm that was crop-dusted regularly with pesticides. He suggests that as a result he was likely exposed to two common, highly-toxic pesticides used to control *mosquitoes* in Arkansas, repeated exposure to which can cause cognitive and emotional difficul-

---

[1] Robinson is careful not to acknowledge the Dermott Crips as an actual gang, perhaps because, to rebut future dangerousness evidence, he also insists that they were "nothing more than a group of adolescent hoodlums."

8

18-70022.5952

ties.

Robinson insists that his early difficulties in school and his struggle to ob-
tain a C-minus grade point average by the time he graduated high school are dir-
ect evidence of fetal alcohol and childhood pesticide exposure. He also offers the
statement of a neuropsychologist that Robinson exhibits "subtle cognitive defi-
cits" that are "consistent with"—but not indicative of—exposure to the two pesti-
cides.

Any reasonable jurist would agree with the district court's holding that
neither strand of Robinson's new mitigation evidence shows IAC. With respect
to the new evidence of a difficult childhood in Dermott, Robinson has not made
a substantial showing that the omission of that evidence was prejudicial. Robin-
son's case for a difficult childhood's mitigating his culpability is far less compell-
ing than the showing in recent cases in which the Supreme Court found the
omission of mitigation evidence prejudicial.[2]

As for Robinson's claim that childhood brain damage reduces his culpabil-
ity, the supporting evidence is, even under the most generous interpretation,
exceedingly thin. No reasonable jurist would find its omission prejudicial. Be-
cause Robinson has not shown that reasonable jurists could disagree with the
district court's denial of his IAC claims, we deny his application for a COA on
those grounds.

---

[2] *See Rompilla v. Beard*, 545 U.S. 374, 391-92 (2005) (Rompilla was repeatedly beaten
by his father, was locked with his brother in an excrement-filled dog pen, and grew up without
proper clothing or indoor plumbing); *Wiggins v. Smith*, 539 U.S. 510, 535 (2003) (Wiggins's
alcoholic mother left him alone with his siblings for extended periods to beg for food or eat
paint chips, his mother beat him when he broke into the kitchen to get food, he was hospital-
ized when his mother pressed his hand to a stove burner, and he was repeatedly raped and
sexually abused in foster care and a Jobs Corps program); *Williams v. Taylor*, 529 U.S. 362,
395-96 (2000) (Williams was repeatedly and severely beaten by his father, his parents were
imprisoned for criminal neglect, he was abused in foster care, and he was borderline mentally
retarded).

18-70022.5953

III.

Robinson claims that the district court erred by disposing of his § 2255 motion without a hearing. The court should hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The court denied a hearing because it had "decided [his] claims either by assuming that everything Robinson alleges is true or based on legal, not factual bases."

We review the denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). To prove abuse of discretion, a petitioner must "produce independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006). Contested factual issues may not be decided on the basis of affidavits alone unless the affidavits are supported by other evidence in the record. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981).

Robinson's chief complaint is that the court accepted as fact, without corroboration in the record, his trial counsel's assertion that they had strategic reasons for not presenting evidence about the Dermott Crips. Even if we assume *arguendo* that this was an improper factual determination outside of a hearing, it was harmless. The court relied on the "strategic reasons" of trial counsel at two points in its decision: in finding counsel were not ineffective for failing to *rebut* evidence about the dangerousness of the gang, and (ironically) in finding counsel were not ineffective for failing to *present* evidence about the gang's dangerous impact on Robinson's upbringing. Both of those conclusions were also supported by alternative grounds, including other evidence that counsel had not been deficient, and also—regardless of counsel's adequacy or lack thereof—the finding that any hypothetical deficiency was not prejudicial.

Robinson points to three other places in the court's opinion that, he claims, amount to improper factual determinations: (1) the court's comment that the

10

18-70022.5954

declaration of Robinson's companion during the Tucker shooting was of questionable credibility, because it contradicted his previous sworn testimony; (2) the court's agreement with the government that pleas to lesser charges, like Robinson's plea in the Tucker shooting, are common and do not necessarily indicate that the factual basis of an original greater offense is incorrect; and (3) the court's faulting of Robinson for failing to support with useful documentation his assertion that trial counsel spent inadequate time meeting with him.

The first two supposed "fact-findings" are uncontroversial and uncontroverted statements of the obvious. The third is not a fact-finding at all, nor is it, as Robinson alleges, an unfair denial of the opportunity to prove that his attorneys inadequately prepared; if Robinson wanted to support his contentions with additional documentation, he was free to do so. Because Robinson has not shown that the district court erred by denying his motion for a hearing, we deny his petition for a COA on that ground.

The application for a COA is DENIED.

A true copy
Attest:

Clerk, U.S. Court of Appeals, Fifth Circuit

By _____
                                              Deputy
New Orleans, Louisiana

JUN 0 8 2010

18-70022.5955

**8.**

**Other Order: District Court Order Denying Certificate of Appealability, filed
July 10, 2009 (ROA.5938-42)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,      §
       Plaintiff,      §
                    §
V.      §
                    §   CRIMINAL NO.  4:00-CR-0260-Y
JULIUS OMAR ROBINSON (02),      §
also known as Face, also      §
known as Scar, also known,      §
as Scarface      §
        Defendant      §

**ORDER DENYING CERTIFICATE OF APPEALABILITY AND
GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

On April 17, 2009, Julius Omar Robinson ("Robinson") filed his motion for certificate of appealability ("COA Motion")(doc. #2467) and application to proceed *in forma pauperis* ("IFP") on appeal. (Doc. #2471.)  For the reasons set out below, the motion for COA is denied and the application to proceed IFP is granted.

Robinson first requests a COA on the ground that this Court denied his request for an evidentiary hearing.  However, a COA is neither available nor necessary for this specific ground.

To obtain a COA, Robinson must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *United States v. Hall*, 455 F.3d 508, 513 (5th Cir. 2006); *United States v. Garza*, 165 F.3d 312, 314 (5th Cir. 1999).  The Court of Appeals will review the denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion in resolving the claim upon which an evidentiary hearing was sought. *See United States v. Bartholomew*,

18-70022.5938

974 F.2d 39, 41 (5th Cir.1992).  It will not find that a district court abused its discretion in refusing to conduct an evidentiary hearing unless the § 2255 movant "produce[s] independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006)(internal quotation marks and citation omitted).  Therefore, this issue will only be considered as corollary to a constitutional claim upon which a COA is granted.

Robinson also requests a COA on the related claim that he was deprived the effective assistance of counsel guaranteed by the Constitution when his trial counsel failed to present certain mitigating evidence at his trial.  To make a substantial showing of the denial of a constitutional right, Robinson must demonstrate that "jurists of reason" could either "disagree" with the prior resolution of Robinson's constitutional claims or "could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 1034, 154 L.Ed.2d 931 (2003).  In *Haynes v. Quarterman*, 526 F.3d 189, 193 (5th Cir. 2008), the Court of Appeals stated that "where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Also, "[w]hile the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case

2

18-70022.5939

any doubts as to whether a COA should issue must be resolved in the Robinson's favor." *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir.2005)(internal quotation marks and citations omitted).

Robinson contends that he is entitled to a COA because this Court misapplied the standards for evaluating prejudice and deficient performance of trial counsel. However, Robinson's motion misstates the Court's application of these standards.

Robinson characterizes this Court's standard as subscribing "to the belief that so long as trial counsel presented some mitigating evidence--no matter how superficial or harmful--prejudice cannot be shown." (COA Motion at 12.) This was not the standard employed in this Court's prior analysis. In support of this characterization, Robinson cites to the portion of the memorandum opinion and order that distinguishes this case from those that Robinson had relied upon. However, it is clear from the entire discussion that this Court had reweighed the evidence in aggravation against the totality of available mitigation evidence. (Mem. Opinion and Order at 22-32.) In fact, Robinson mischaracterizes some of this Court's efforts to reweigh such evidence as "a variation of the long-defunct 'nexus' test" (COA Motion at 22), and suggests that this Court's analysis relied upon a presumption that the jury completely abdicated its responsibility in the punishment phase. (COA Motion at 26-27.) Instead, this Court duly applied the constitutional standard, carefully considering the relevant Supreme Court cases that continue

18-70022.5940

to bind this Court even though Robinson now opines that "[i]t is not possible to extract useful information" from the facts of those cases. (COA Motion at 24 n.9.)

Robinson also contends that this Court improperly concluded that trial counsel's performance did not fall below the constitutional standard. Robinson reasserts the argument that any decision not to employ a mitigation specialist constitutes deficient performance. (COA Motion at 32.) In contrast, this Court is required to determine whether the decision not to continue a certain line of investigation is itself a reasonable one. *See Wiggins v. Smith*, 539 U.S. 510, 523, 123 S.Ct. 2527, 2536, 156 L.Ed.2d 471 (2003). Robinson did not make the required showing.

Further, this Court need not have conducted an independent analysis of both performance and prejudice, because a finding that he had not proven either one of these prongs would require the denial of his claim. Since Robinson has not produced independent indicia of the likely merit of either prong--performance or prejudice--it does not appear that reasonable jurists would disagree with the denial of this claim. Therefore, Robinson's COA Motion should be denied.

IT IS, THEREFORE, ORDERED that Robinson's motion for certificate of appealability (doc. #2467) be, and it is hereby, **DENIED.**

In response to the order and notice of deficiency issued on May 19, 2009 (doc. #2470), Robinson has tendered his application to proceed IFP on appeal with a certificate of inmate trust account and

4

18-70022.5941

further supplementation indicating a most recent balance of $0 and which did not exceed $165.65 over the last six months. (Docs. #2471 and 2472.)  Robinson supplemented this with an affidavit showing his present balance to be $0. Therefore, the application to proceed IFP is proper and should be granted.

IT IS, THEREFORE, ORDERED that Robinson's application to proceed IFP on appeal (doc. #2471) be, and it is hereby, **GRANTED**.

SIGNED July 10, 2009.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/drs

5

18-70022.5942

# 9.

**Other Order: District Court Order Denying Section 2255 Motion, filed November 7, 2008 (ROA.5712-58)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Julius Omar Robinson, | § | |
| *Petitioner,* | § | |
| | § | CIVIL NO. 4:05-CV-756-Y |
| V. | § | (Criminal No.  4:00-CR-260-Y-2) |
| | § | (death-penalty case) |
| United States of America, | § | |
| *Plaintiff-Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Julius Omar Robinson is a federal prisoner under a death sentence who, having been being convicted of capital murder in this Court, has filed a Motion to Vacate his conviction and sentence under 28 U.S.C. § 2255.  The Court denies Robinson's motion.

## I.  PROCEDURAL HISTORY

A jury convicted Robinson of the murders of Johnny Lee Shelton and Juan Reyes and of complicity in an ongoing criminal enterprise resulting in the death of a third person, Rudolfo Resendez.  After a subsequent punishment hearing, the jury, on March 28, 2002, recommended that Robinson's punishment for the murders of Shelton and Reyes be death by lethal injection, and recommended that life in prison be his punishment for the death of Resendez.  This Court imposed that sentence on June 5, 2002.  On April 14, 2004, the United States Court of Appeals for the Fifth Circuit affirmed Robinson's conviction and sentence on direct appeal.  *See U.S. v. Robinson*, 367 F.3d 278 (5th Cir. 2004).  The U.S. Supreme Court denied Robinson's petition for writ of certiorari on November 29, 2004.  *See Robinson v. U.S.*, 543 U.S. 1005 (2004).

Robinson filed the instant Motion to Vacate on November 29, 2005.  (Doc. #2279.)  The government filed its response on April 28, 2006.  (Doc. #2365.)  Robinson filed a reply on August

-1-

18-70022.5712

28, 2006.  (Doc. #2380.)  On July 2, 2007, Robinson moved to amend his motion to vacate.  (Doc.

#2422.)  This Court granted Robinson's motion in part and denied it in part, and Robinson filed a

supplemental pleading on January 17, 2008.  (Doc. #2432.)  The government filed its response to

Robinson's supplemental pleading on  March 6, 2008 (Doc. # 2439), and Robinson filed his reply

in support of his supplemental pleading on March 26, 2008 (Doc. #2443).

## II.  <u>FACTUAL BACKGROUND</u>

### A.  Guilt/Innocence Phase

The Fifth Circuit recited the following factual background in its opinion on direct appeal:

A.

Proving true to his Hollywood namesake, Robinson, also known by names such as "Scarface," entangled himself in a sadistic world of narcotics and violence in which he personally committed at least two senseless murders. In December 1998, Robinson – a wholesale drug dealer then operating in five states – killed a man he mistakenly believed responsible for an armed hijacking that cost him $30,000. In May 1999, angered by a fraudulent drug transaction in which he paid $17,000 for a block of wood covered in sheetrock, Robinson retaliated by killing a man whose only connection to the fraud was that he was the brother-in-law of the fraudulent seller.

For these murders and his complicity in an ongoing criminal enterprise resulting in the murder of a third man, Robinson was convicted and sentenced to death on three separate counts, to life imprisonment on two others, and to a consecutive 300-month sentence on another. With one limited exception, Robinson challenges neither the sufficiency nor the admissibility of the evidence.

B.

The murder of Johnny Lee Shelton is a case of mistaken identity. Shelton was similar in appearance to a man named "Big Friday," whom Robinson blamed for a hijacking in a McDonald's restaurant parking lot several months before. On the night he was murdered, Shelton and a friend, Jerell Gardner, spent the evening at a Dallas night club, where they were spotted by two of Robinson's associates who mistook Shelton for Big Friday and called Robinson to tell him what they had seen.

Robinson quickly arrived at the club, whereupon he and two other men sat in a nearby parking lot, waiting for the man they thought was Big Friday to leave. They

18-70022.5713

spotted Shelton and Gardner leaving the club in a car similar to the one Big Friday drove, and followed them onto a local highway. As they caught up to the car, Robinson yelled "that's him," leaned out the window, and opened fire with an AK-47 assault rifle. One of Robinson's companions, L.J. Britt, also known as "Capone," did the same. Although most of the bullets missed their mark, Shelton was struck in the stomach and later died.[FN1]

FN1. Those facts form part of the basis for Robinson's conviction and death sentence on counts 3 and 7, which charged violations of 21 U.S.C. § 848 and 18 U.S.C. § 924(j), respectively. The jury unanimously recommended a death sentence on both counts.

C.

Juan Reyes was shot to death at close range on the driveway in front of his home. He and two companions, Isaac Rodriguez and Nicholas Marques, arrived there on the day of the murder, not suspecting that in a car parked across the street were three men--including Robinson and Angelo Harris--who were upset that they had been sold a $17,000 block of wood instead of narcotics. Robinson and Harris approached Reyes carrying automatic weapons, said something to him--the record is unclear whether it was a demand for money--then shot him in the foot. Rodriguez, who had been standing nearby, turned to flee and was shot three times, in the back and leg.

Reyes fell to the ground and lay there as Robinson and Harris shot him at least nine times. An autopsy revealed fragments of concrete in several of Reyes wounds, suggesting he was shot from a distance of less than five feet, causing the bullets to pass through his body, ricochet off the pavement, and re-enter his back. Before leaving, Robinson and Harris also fired several shots at Marques, who was still seated behind the wheel in the car in which he, Reyes and Rodriguez had just arrived. Marques managed to drive around the corner to safety, but his car was riddled with bullets.[FN2]

FN2. Those facts form part of the basis for Robinson's conviction and death sentence on counts 3 and 11, which charged violations of 21 U.S.C. § 848 and 18 U.S.C. § 924(j), respectively. The jury unanimously recommended a death sentence on both counts.

18-70022.5714

D.

Robinson also was convicted for involvement in a broad conspiracy that led to the murder of Rudolfo Resendez at the hands of Britt and Hendrick Tunstall. While engaged in this conspiracy, Robinson and other conspirators possessed more than five kilograms of cocaine and various firearms.[FN3] Robinson was further convicted of possessing three firearms in furtherance of a drug trafficking crime: a 9mm UZI pistol, a .357 caliber Smith & Wesson pistol, and an SKS 7.62x39 semi-automatic assault rifle.[FN4] Finally, he was convicted on several other drug and weapons charges that the district court treated as lesser included offenses and for which no independent sentence was imposed.

FN3. Those facts form part of the basis for Robinson's conviction on count 3 and his conviction and life sentences on counts 12 and 15, which charged violations of 21 U.S.C. §§ 848 and 841(a)(1) and 18 U.S.C. § 924(j), respectively. The jury – having separately recommended a death sentence for the portions of count 3 relating to the Shelton and Reyes murders – unanimously recommended a life sentence on the portion of count 3 related to Resendez and two other life sentences on counts 12 and 15.

FN4. Those facts form the basis of Robinson's conviction and 300-month sentence on count 17, which charges a violation of 18 U.S.C. § 924(c)(1)(A).

*Robinson*, 367 F.3d at 282-283.

B.      Penalty Phase

In its opinion on direct appeal, the court of appeals observed the following about the penalty phase of Robinson's trial:

The jury's sentencing recommendation was based in part on (in addition to the aforementioned convictions) Robinson's criminal history. The jury learned of an incident in 1995 in which Robinson fired several shots from a handgun at a woman who had failed to pay him $120 for crack cocaine. This was used to show that Robinson had a violent record before the events charged in the indictment. The jury also was told of an incident, described in more detail in part IV, in which Robinson,

18-70022.5715

acting from his jail cell after his arrest in this case, arranged to have a government informant murdered. This was used to show that Robinson had a propensity to commit future acts of violence.

*Id.*, 367 F.3d at 283.

During the penalty phase of his trial, both sides introduced evidence from numerous witnesses regarding mitigation and future dangerousness.

### 1. Prosecution's Case

In addition to the facts of the underlying convictions introduced during the guilt/innocence phase of Robinson's trial, the government also relied on evidence introduced through witnesses during the penalty phase of trial to bolster its position regarding Robinson's likelihood of future dangerousness.

### a. Attempted Murder of Sarah Tucker

As noted by the court of appeals, part of the evidence the jury relied on in making its sentencing decision was evidence introduced by the government that Robinson had attempted to kill a former high-school classmate, Sarah Michelle Tucker, because she did not pay him $120 that she owed him for crack cocaine. (R20/14-15, 17.) Tucker testified that Robinson fired several bullets into her truck while she was sitting in it parked in front of her parents' apartment. (*Id.*/17-19, 36-37.) Tucker also testified that Robinson shot bullets "through the walls and the windows" of her parents' apartment, and that bullets were found in her parents' couch as well as in a closet and in some toys that were in the closet. (*Id.*) Robinson ultimately was convicted of the Texas offense of deadly conduct and was sentenced on March 11, 1996, to five years' probation. (GX 295.)

18-70022.5716

**b.      The "Hit" Ordered on Michael Williams, a/k/a "One Love"**

The government bolstered its position on future dangerousness by introducing evidence about a "hit" Robinson allegedly ordered on the life of Michael Williams, also known as "One Love," while in prison awaiting his murder trial because Robinson believed Williams was "snitching" on him.  Williams, like Robinson, was born and raised in Dermott, Arkansas.  (R17/183-84.)  Williams was a drug dealer who had purchased cocaine and marijuana from Robinson.  (*Id.*/186.)  During the investigation of Robinson's case, Williams testified against Robinson before the grand jury and also gave information to the Drug Enforcement Agency.  (R20/94-96.)

Nathan Henderson, one of Robinson's co-defendants, testified at Robinson's trial that while he and Robinson were in prison together, Robinson told Henderson that Williams was "arrested on another case, and he was just telling on everybody trying to get his time down."  (R20/114.)  Henderson further testified that Robinson told him that he hoped somebody would "get" Williams.  (*Id.*)  On December 28, 2000, Robinson called his brother, Marcus, who set up a three-way call with Robinson's aunt, Josephine Dotson.  During that phone call, Robinson told his aunt, "That dude One Love, man that dude right there go hard, Joe."  Robinson later told Henderson that the "youngsters" in Dermott "got" One Love, dragging him behind a car.  (*Id.*/113-16, 130; GX 929a.)

Also during Robinson's trial, Williams testified that he was accosted by three men, one of whom pointed a .38 long-barrelled pistol at him and got into his car, hitting him in the jaw with the gun.  (*Id.*/138-45.)   He identified the people who accosted him as "Cracker" or Kendal Pitts, "Black" or Keith Eddington, and "Little Wayne" or Wayne Jordan.  (*Id.*/140.)  Williams testified that Pitts told Williams that they were going to kill him for snitching on Pitts's "OG" down in Texas.  Henderson had already explained to the jury that an OG is "like a leader" in a gang, and that the

18-70022.5717

young gang members in Arkansas saw Robinson as an OG, calling him "Face" or "Scar Face." (*Id.*/116.)  Williams testified that they searched him for money and that he told them that he could pay them what they were being paid to kill him.  (*Id.*/143.)  Ultimately, they went by Williams's grandparents' house, where Williams told them that only one of them could come in with him to get some money he had hidden there.  At that point, Pitts and Williams went inside together.  (*Id.*/142-43.)  Williams testified that one of the young men told him that if he was dead they needed to make a phone call to Texas "around 3 o'clock" for their money.  (*Id.*/148.)  Williams testified that after a struggle between himself and Pitts in which Williams's grandfather and another man intervened, Pitts ran off.  Thereafter, and that Williams contacted the local police and also tried to move his sentencing date forward so that he could get into police custody sooner.  (*Id.*/143, 147.)

### 2.    Robinson's Defense

On Robinson's behalf, defense counsel presented numerous fact witnesses and an expert witness during the penalty phase.  The first group of witnesses were fact witnesses who knew Robinson during his time at Arlington's Lamar High School, where he played football, and post-graduation, when he attended computer-training courses.  The defense called Eddie Peach, the head football coach and athletic coordinator at Lamar High School in Arlington, who testified that Robinson had played football at Lamar for three years, and that he was "always polite," that he was well liked, and obedient, both on the field and in the classroom.  (R21/2-6.)  The defense also called another Lamar High School coach, football assistant coach and track coach Mike Nelson, who testified that Robinson had once turned in a wallet containing $120 cash that Robinson had found in the locker room, noting that Robinson had not taken the money.  (*Id.*/43-45.)  The defense also called Lamar coach and teacher Elvin Jones, who had known Robinson since coaching him on his

18-70022.5718

son's basketball team when Julius was in approximately the sixth grade. (*Id.*/47-48.) Jones testified that Robinson was "reasonably quiet," but "very respectful" to his coaches and teammates, and noted that Robinson had never given the coaches "any problem whatsoever," and that he "was always willing and excited about working." (*Id.*/49.) Jones further testified that Robinson was self-disciplined and could stay focused and accept responsibility. (*Id.*/51-52.) Lamar assistant coach David York also testified on Robinson's behalf, stating that he had worked closely with Robinson and that Robinson played hard, "was very coachable," was easy to get along with, and did not have confrontations with other players. (*Id.*/77, 79.) The final member of this group to testify was Landry Burdine, a teammate of Robinson at Lamar, who stated that Robinson's teammates liked playing with him and got along well with him and that he was a good friend to everyone. Burdine asked the jury, based on his knowledge of Robinson, to spare Robinson's life. (*Id.*/15-18.)

In addition to testimony from witnesses associated with Robinson through his tenure at Lamar High School, the jury heard testimony from Debbie Wesson, an employee of the CCI Training Center, the computer training school Robinson attended, who testified that Robinson attended classes at the school four nights a week, missing only twelve of the 212 hours scheduled for him before he was arrested in November 2000. (*Id.*/121, 126, 130.) She testified that Robinson was succeeding at his course work which was intended to lead to certification as a Microsoft Certified Systems Engineer. (*Id.*/123-24.)

The defense also called numerous witnesses from the Federal Medical Center ("FMC") in Fort Worth, Texas, where Robinson was incarcerated before and during his trial, to testify on his behalf. The first to testify was FMC employee Stanley Gibson, who explained the prison structure to the jury and also testified that Robinson was "one of the better inmates [he had] seen in

-8-

18-70022.5719

administrative detention or in the housing units. . . . "  (*Id.*/29.)  Gibson stated that Robinson was courteous and respectful toward officers, counselors and inmates alike.  (*Id.*/28-29.)  Gibson also testified that Robinson was earnest and knowledgeable about the Bible, a topic that Gibson and Robinson had discussed.  (*Id.*, 24-25, 28-31.)

The jury also heard testimony from Frederick Wagner, another FMC employee, who testified similarly about Robinson's behavior there, noting that Robinson was "respectful and quiet" and that he did "a lot of reading." (*Id./*57-58, 64.)  Another FMC employee, Stephen Sabolchick, testified that Robinson was a "cooperative inmate," and that he "followed the rules" of the prison.  (*Id.*/71.)  Frank Logan,  leader of the FMC special housing unit day shift, testified that Robinson had "adjusted quite well" to life at FMC and stated that Robinson's behavior was "above average."  (*Id.*/85.)  Finally, Dan McCauley, the FMC jail-unit manager, testified on Robinson's behalf.  McCauley had worked for the Federal Bureau of Prisons for 21 years and had been manager of the jail unit of the FMC since 1999.   (R32/87-92.)  McCauley explained the prison security measures as well as the type of work convicts are required to perform while incarcerated.  (R21/119-20.)  While McCauley testified on direct that Robinson had not had any disciplinary problems during his time at FMC, he admitted on cross-examination that Robinson had broken the prison's rules by participating in a three-way telephone call.  (*Id.*/107-109.)

The defense also called two members of Robinson's family to testify on his behalf:  his uncle, John Hollimon Jr., and his mother, Rose Hollimon.   Robinson's uncle testified that Robinson's grandparents, although poor, had raised Robinson in a loving environment during his younger years and had made sure he and his brother went to school and church.  (*Id.*/134-35, 138-39, 142, 151.)  He further testified that his sister, Rose, had left her children with his parents when they

18-70022.5720

were young, but took them back to live with her in Arlington, Texas, during the boys' adolescent years.  (*Id.*/140-42.)  Hollimon also told the jury that while in Arlington, the boys lived in a dangerous environment and that Robinson was basically on his own and was forced to act as the man of the house.  (*Id.*/ 142-44.)  He also testified that Robinson was excited about the computer course he was taking and how he had explained to Hollimon that he wanted to open his own marketing business.  (*Id.*/144-45.)   Hollimon further testified that Robinson was respectful to his family and grandparents and mentioned that Robinson had sent his grandparents money when they needed it.  (*Id.*/146-47.)  Robinson's uncle also asked the jury to spare his nephew's life.  (*Id.*/148-49.)

Next, Robinson's mother, Rose Hollimon, testified on her son's behalf, stating that she had married his father when she was only 15 and that she was forced to take care of her two children when her husband left her, which occurred when the brothers were four and five years old.  (*Id./*156, 159, 160, 162.)  She testified that she thought she was doing the best thing for her children by leaving them with their grandparents to raise them when they were young.  (*Id.*/156, 160, 162.) She swore that after she moved the boys with her to Texas, she continued to drink too much alcohol and smoke crack-laced marijuana joints.  (*Id.*/167-68.)  She described Robinson as an average student who made Bs and some Cs in high school and said he attended Tyler Junior College for a short time on a football scholarship.  (*Id.*/164-65.)

Finally, the defense called expert witness Dr. Mark Cunningham, a board-certified forensic psychologist, who testified as a 'teaching witness' rather than a witness specifically evaluating Robinson as an individual, regarding risk assessment of future dangerousness.  (R22/22, 26-30.) Cunningham testified about the likelihood of violence in a prison setting because Robinson would not be released with the sentencing options he had.  (*Id.*/41.)  According to Cunningham, research

-10-

18-70022.5721

indicates that violence in the community, severity of current offenses and severity of prior offenses are not good predictors of violence in prison. (*Id.*/41-42, 66.) He testified that, based on a study of 533 inmates commuted from death sentences that had been imposed before the decision in *Furman v. Georgia*, 408 U.S. 238 (1972), there were low rates of serious violence. (R22/50-52, 56-57.) Cunningham attributed the low rates to the structure of the prison community, including such factors as less access to weapons and drugs, intensive supervision, and inmates' informing on one another, as well as the fact that inmates knew that losing privileges because of bad behavior would make their prison time less bearable. (*Id.*/53, 60-62.)

Cunningham also reviewed other studies demonstrating low rates of violent behavior by those with death sentences commuted to life in prison and by those who had been convicted of capital sentences but not sentenced to death, noting that in one study only 1% of inmates in each group killed another inmate. (R22/62-64.) Ultimately, Cunningham concluded that there is a 20-30% chance that a capital inmate will be involved in serious violence in prison, a 70-80% chance he will not, a 10% chance of repetitive violence, and about a 1% chance that he will commit murder in prison. (*Id./*64.) Cunningham concluded by describing the Bureau of Prisons's classification system, and explaining the arrangements made for the safety of inmates and staff. (*Id.*/70-72, 75-79.) The defense also submitted an exhibit from the Bureau of Prisons reflecting the judgment of psychologists there that Robinson presented a low risk of causing harm to others. (*Id.*/10-11; DX 2.)

The government called another witness, Peter M. Carlson, who provided further description of the various security levels in prison. (*Id.*/108-11.) Carlson, an associate professor at Christopher Newport University, spent 32 years in corrections, thirty of which were spent with the Federal

18-70022.5722

Bureau of Prisons. (*Id.*/106.)  Carlson opined that the two main predictors of prison violence were past violence and young age (*Id.*/108-112.)  Finally, he noted that, in the type of facility in which Robinson would likely be housed, he would spend a lot of time interacting with the other inmates and staff and would have access to telephones. (*Id.*/115-17.)

Finally, the parties introduced a stipulation stating that there were a number of people involved in the conspiracy as to whom the government did not intend to seek the death penalty, including Nathan Henderson, Jason Gehring, Angelo Harris, and several persons involved in the Resendez murder.

### III.  <u>STANDARD OF REVIEW</u>

Title 28, United States Code section 2255 provides that a federal prisoner may move the convicting court to vacate, set aside, or correct a conviction or sentence based on its being imposed in violation of the Constitution or the laws of the United States. *See* 28 U.S.C. § 2255.  A petition under § 2255 "may not do service for an appeal," and it is presumed that a defendant stands fairly and finally convicted. *United States v. Shaid,* 937 F.2d 228, 231-32 (5th Cir.1991) (en banc), *citing United States v. Frady,* 456 U.S. 152, 164 (1982).  Therefore a defendant may not raise even constitutional or jurisdictional issues for the first time on collateral appeal without establishing both cause for failing to raise the issue on direct appeal and actual prejudice resulting from the failure. *Id.*  A defendant must meet this cause-and-prejudice standard even where he alleges a fundamental constitutional error. *Id., citing Murray v. Carrier,* 477 U.S. 478, 493 (1986). Other types of error may be raised for the first time under § 2255 only if the defendant establishes that the error could not have been raised on direct appeal *and,* if the error were condoned, it would result in a complete miscarriage of justice. *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.1992).

18-70022.5723

Moreover, claims that were also raised, and rejected, on direct appeal are also barred from federal habeas review. *United States v. Rocha,* 109 F.3d 225, 229 (5th Cir. 1997). A federal habeas petitioner cannot, however, be expected to have raised a claim based on a Supreme Court case before that case was handed down. *Id.* Furthermore, suffering ineffective assistance of counsel on appeal does satisfy the cause-and-prejudice standard. *Id.* And, finally, the Supreme Court has recently held that claims that counsel was ineffective at trial can be raised on habeas review under § 2255 regardless of whether or not the claims were previously raised on direct appeal. *See United States v. Massaro,* 538 U.S. 500 (2003).

## IV.  **ISSUES PRESENTED**

In his motion to vacate, Robinson raises a number of issues in various claims for relief. The Court construes those claims as follows:

A.    The Court should vacate the death sentence based his having received ineffective assistance of counsel  ("Ground I").

B.    The Court should vacate Robinson's convictions because they were obtained in violation of Robinson's equal-protection rights ("Ground II").

C.    The Court should vacate Robinson's convictions because the federal death-penalty act, as applied in Texas, violates Robinson's equal-protection rights ("Ground III").

D.    The Court should vacate Robinson's convictions because Robinson received ineffective assistance of appellate counsel  ("Ground IV").

E.    The Court should vacate Robinson's convictions because the prosecution pursued fundamentally inconsistent theories at seriatim capital trials ("Ground V").

F.    The Court should vacate Robinson's convictions because the prosecution knowingly used false and misleading testimony to secure Robinson's death sentence ("Ground VI").

See Mot. to Vacate (Doc. #2279.)  Each of these grounds will be discussed separately below.

18-70022.5724

### A.    Ineffective-Assistance-of-Counsel Claims – Ground I.

Robinson claims that his trial counsel were ineffective in several respects.  (Mot. to Vacate (Doc. #2279) at 17-53.)  The Court will address each allegation of deficiency on the part of Robinson's trial counsel separately, but first the Court addresses Robinson's cursory assertion that the district court failed to adopt a plan that would insure high-quality representation, thereby prejudicing Robinson.  (*Id.* at 11, 28.)  Robinson alleges that "the Northern District of Texas has no plan that achieves the standards of the ABA; it requires only that counsel be qualified."  The government argues that this claim, if indeed it is properly plead as such, is procedurally barred because Robinson did not raise it on direct appeal, thus barring the claim from collateral review.  (Resp. Br. (Doc. #2365) at 27 (citing *Massaro*, *supra* at 504).)  The Court agrees with the government. Robinson does not seek to establish that he raised such a claim on appeal, nor does he claim that his counsel should have raised such a claim on appeal and were ineffective for failing to do so.  Robinson's claim therefore fails as a matter of law.  *See Massaro*, 538 U.S. at 504.[1]

The Sixth Amendment to the United States Constitution provides criminal defendants a right to effective assistance of counsel during trial.  *See* U.S. Const., art. VI.  To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his

---

[1] The Court notes that the district's CJA plan, contained in Misc. Order No. 3, states that a capital defendant is entitled to two lawyers, at least one of whom must be knowledgeable in the law applicable to death-penalty cases. Additionally, the plan allows for appointment of additional counsel as "necessary for adequate representation." *Id.* at II.C.2.a. The plan also provides that the Court may appoint other professionals whose services are reasonably necessary to a defense, including investigators, technicians and paralegals. *See* http://www.txnd.uscourts.gov/publications/CJA-Dallas/Chapter7.html at § B.3. The district's plan also adopts the law set forth in 21 U.S.C. § 848(q)(4)(A) and (5), requiring, *inter alia*, that capital defense counsel have at least five years since being admitted to practice and three years' experience trying federal felonies. *Id.* at III.C.3. Moreover, the attorneys must have "demonstrated experience in, and knowledge of, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the Sentencing Guidelines, the Bail Reform Act, and local criminal rules." *Id.*  at Appendix I, Section III.A.2.

-14-

18-70022.5725

defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Robinson alleges several deficiencies on his trial counsel's part, including (1) failure to hire a skilled investigator, (2) failure to adequately investigate and rebut the government's evidence of the penalty-phase aggravating factor of future dangerousness; (3) failure to adequately investigate and present evidence of mitigation at the penalty phase, and (4) failure to properly make a Batson challenge to certain peremptory strikes made by the government during jury selection.

### 1. Failure to Hire a Skilled Investigator

Robinson begins by making the unsupported assertion that his trial counsel did not employ the services of a skilled investigator.  See Mot. to Vacate (Doc. #2279) at 28-29.  Robinson's trial counsel employed the services of someone with whom they had worked on several previous occasions, David Bruce Cummings. (Resp. Br., (Doc. #2365), GX B, Affidavit of Jack B. Strickland ("Strickland Aff.").)  According to the affidavit of Robinson's lead trial counsel, Jack Strickland, Cummings's work was known to them to be "first rate," and Strickland states that he has always been satisfied with his work.  (*Id.*)  In Cummings's own affidavit, the investigator explains that he has worked as a licensed investigator since 1989 and has been involved in "hundreds" of criminal-defense investigations, including numerous violent felonies and several capital-murder cases.  (*Id.*,

18-70022.5726

GX C, Affidavit of David Bruce Cummings ("Cummings Aff.").)[2]  According to Cummings, during the course of his investigation, he spoke directly with Robinson in order to help determine persons "who might make good fact witnesses for him."  (*Id.*)  Cummings then followed up the leads developed with Robinson by contacting those persons, including his football coaches at Arlington's Lamar High School, Dermott football coach Willie Parker, Robinson's computer course instructor at CCI, a number of prison guards who had supervised Robinson during his pretrial incarceration, and members of Robinson's family.  (*Id.*)  As set forth in the Court's discussion of the penalty phase, *supra*, Robinson's counsel subsequently presented testimony during the penalty phase from many of the individuals Robinson identified at his trial.  In the face of the extensive investigation engaged in by Cummings on Robinson's behalf and the number of witnesses that that investigation produced at his trial, the Court concludes that Robinson has failed to demonstrate that his counsel's choice of investigator fell below an objectively reasonable professional standard.  Moreover, Robinson has made no attempt to demonstrate that his counsel's choice of investigator prejudiced his case. Therefore, Robinson's claim that his counsel's choice of investigator deprived him of his right to effective counsel fails as a matter of law.

---

[2]  The Court notes that while Robinson also asserts that investigator Cummings has a criminal history, this assertion is directly repudiated by a report filed as an exhibit to the government's pleading denoting the criminal history of another David Bruce Cummings, not the person employed by Robinson's trial counsel to investigate his case. (Resp. Brief (Doc. #2365), GX G, NCIC report on another David Bruce Cummings, filed under seal.)

18-70022.5727

### 2.   Failure to Adequately Investigate and Rebut the Government's Evidence of the Aggravating Factor of Future Dangerousness.

Robinson next alleges insufficiency of counsel based on his trial counsel's failure to sufficiently investigate or present evidence or to adequately investigate and rebut the government's aggravating evidence regarding future dangerousness.  (Mot. to Vacate (Doc. # 2279) at 18-24.) Robinson analogizes the facts of his case to those in *Rompilla v. Beard*, 545 U.S. 374, 377 (2005). (Mot. to Vacate (Doc. #2279) at 17.)  In *Rompilla*, the Supreme Court held that a "lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial."  The defense counsel in *Rompilla* failed to examine the police file on their client's prior conviction for rape and assault, which they knew the prosecution would use against their client in seeking the death penalty.  The Court held that counsel's failure to review the file "fell below the line of reasonable practice" and also prejudiced their client because it was "uncontested they would have found . . . a range of mitigation leads that no other source had opened up," including information about Rompilla's childhood living in the slums, early incarcerations, dropping out of school, problems with alcohol, a likely mental-health disorder, and test scores demonstrating that Rompilla had "a third grade level of cognition after nine years of schooling."  *Id.* at 390-91.  The Court held that the "accumulated entries" in the prison records "would have destroyed the benign conception of Rompilla's upbringing and mental capacity defense" that his counsel had acquired after conferring with some of his family members and from mental-health expert reports.  The Court held that an investigation stemming from the file would likely have uncovered much of the information discovered post-conviction, including evidence that both of Rompilla's parents were alcoholics and that he was severely abused as a child, including being beaten and contained in a dog pen filled with

-17-

18-70022.5728

excrement." The Court concluded that the evidence taken as a whole bore no relation to the evidence presented by Rompilla's counsel at trial, which was made up of a "few naked pleas for mercy," and that Rompilla was prejudiced by its omission. *Id.* at 393.

### a. Failure to Adequately Investigate and Rebut Evidence Regarding the Attempt on Michael "One Love" Williams's Life

Robinson first alleges that his trial counsel failed to investigate and properly rebut the government's evidence that Robinson was responsible for the attempted "hit" on Michael "One Love" Williams. (Mot. to Vacate (Doc. # 2279) at 18-24); cf Resp. Br. (Doc. #2365) at 49.) While Robinson acknowledges that his trial counsel moved *in limine* to exclude evidence that Robinson had "orchestrated" Williams's abduction, he claims that his trial counsel did not investigate the incident and thus had no means of rebutting the prosecution's claim that it would "link the kidnaping of Michael Williams to Robinson by virtue of Williams himself together with the testimony of investigating agents." (Mot. to Vacate (Doc. #2279) at 21; R20/10.) According to Robinson, because of his trial counsel's failure to investigate, his attorneys were unaware that, according to Robinson, "everybody involved in the incident, the victim and the perpetrators, denied any connection to a hit ordered by Julius Robinson." (*Id.*) Robinson relies now on the declaration of Michael Williams as well as the persons responsible for his attack, but Robinson does not address the trial testimony of Nathan Henderson that Henderson was told by Robinson that Robinson wanted someone to "get" Williams and that Robinson told Henderson about the attack after it occurred. Moreover, Williams's declaration does not totally contradict his trial court testimony, and each of his assailants has credibility issues as a result of their own criminal histories. (DX 34.)

Williams's own declaration states merely that he personally does not believe that Robinson ordered the assault, but he has not recanted his testimony that his attackers called him a snitch and

-18-

18-70022.5729

said they ought to kill him. (*Id.*) Next, Robinson relies on the declaration of Alquantis Pitts, the attacker Williams identified as calling him a snitch. (DX 28.) Pitts denies making the statement and states that it was instead Keith Edington who called Williams a snitch and said that Williams ought to be killed for it. Pitts claims that he only meant to steal from Williams and reclaim a shotgun he lost to Williams while gambling. Edington's declaration, on the other hand, states that Pitts had a different motive for the attack, claiming that Pitts had purchased some bad drugs from Williams and wanted a refund. (DX 8.) He does not mention the shotgun at all, even though according to Pitts the gun was handed to Edington and Jordan in the back of the car. (*Id.*.) Edington also denies Pitts's claim that they went to a bank and attempted to withdraw money from Williams's account. (*Id.*) Finally, Edington denies making any comment about killing Williams. But Edington states that he did not take any orders from Robinson. (*Id.*) Third, Wayne Jordan's declaration likewise corroborates Edington's story that the reason for going after Williams was because of the bad drugs he allegedly sold to Pitts. (DX 21.) In fact, Jordan goes so far as to state that having worked for Williams in the past, he knows that Williams sometimes would cheat buyers by selling them bad drugs. (*Id.*) Jordan includes a fact that no one else discussed in his declaration: that Williams and Pitts went off alone for some time after Williams offered to make good with new drugs or a refund. (*Id.*) Jordan denies hearing anyone discuss killing Williams and denies hearing any comment regarding Williams's snitching on Robinson. Jordan claims that he agreed to plead guilty because "it wasn't worth it to try to fight the case."

Robinson also provides a declaration from Louis Johnson, who claims that he was with Williams the day he was kidnaped and that Williams had sold bad cocaine the day before the assault to Pitts, Edington and Jordan. (DX 19.) Johnson states that the three assailants approached Johnson

-19-

18-70022.5730

and asked for their money back, which he relayed to Williams, who laughed. Johnson states that he and Williams were together later in the day when they were flagged down by Pitts, Edington, and Jordan, at which time Williams said to him, "Watch me sell them more cocaine." (*Id*.)  At that point, Jordan claims that Pitts approached the car with a gun and demanded the assailants' money back. Johnson then got out of the car and did not hear any more. (*Id*.)  He now admits that he told the FBI that he had not been in the car with Williams, but still claims he would have told everything to Robinson's trial counsel had they questioned him. (*Id*.)

The Court agrees with the government that these varying versions of events contained in the new declarations Robinson now relies upon do not mesh well, and certainly do not establish the falsity of corroborating versions of events Williams and Henderson gave at Robinson's trial.  Nor do they establish that Robinson's trial counsel acted unreasonably in the way that they handled the prosecution's evidence at trial.  Additionally, the jury's answers to the special verdict questions make it unlikely that the punishment assessed would have been different if the jury had been presented with these varied and contradicting new versions of events.  While the facts supporting future dangerousness applied to all offenses for which Robinson was tried, the jury did not impose the death penalty for the Resendez murder, an indication that they did not believe the future-dangerousness factor was sufficient to justify a sentence of death for that crime.   The Court concludes that Robinson has failed to establish that his trial counsel's performance was insufficient for failing to uncover and present the proffered evidence to the jury. Nor has Robinson established that he was prejudiced by any deficiency on the part of his counsel.  Robinson's claim of insufficiency of counsel on this basis is therefore denied. *Cf. Rompilla*, 545 U.S. at 392-93.

   **b.**  **Failure to Adequately Investigate and Rebut the Government's Evidence Regarding the Alleged Attempted Murder of Sarah**

18-70022.5731

**Tucker.**

Robinson also claims that his trial counsel failed to adequately investigate and rebut the government's allegations that Robinson attempted to murder Sarah Tucker. (Supp. Pleading (Doc. #2432) at 9-11.) Although Robinson does not deny that he was convicted for his involvement in the shooting of Sarah Tucker's truck and her parents' apartment, Robinson claims that his actions were unfairly characterized by the government as attempted murder and that his trial counsel failed to adequately investigate and rebut the government's evidence. (*Id*.) According to Robinson, the court records pertaining to the offense establish that Tucker's truck had been parked for ten minutes and thus her vehicle would not have been in motion. (*Id.*) (citing DX 79, Tarrant County, Texas, court records re: Sarah Tucker incident, *State of Texas v. Julius O. Robinson*, Case No. 0574361D.) Robinson also points to the fact that the case was initially disposed of by accepting a plea to deadly conduct and ordering Robinson to supervised release. (*Id.*) Finally, Robinson criticizes his defense counsel for failing to investigate the driver of the car Robinson was in during the shooting, who is reflected in the police report as Richard Smart. (*Id.*) (citing DX 78 at 22.) Along with his supplemental pleading, Robinson includes a declaration from Smart explaining that he did not see anyone in Tucker's truck and, attempting to speak on behalf of himself and Robinson, states that "[w]e both believed the truck was empty." (*Id.*, DX 74, Decl. of Richard Smart at ¶3.)

The Court agrees, however, that Robinson's plea to "deadly conduct" is not persuasive, as pleas to lesser offenses are commonplace and do not indicate that the factual basis of the original offense is incorrect. See (Supp. Resp. (Doc. # 2439) at 2.) Additionally, the police reports corroborate the pre-plea charge of attempted murder. (DX 78.) Moreover, Tucker's testimony at trial was that she did not duck down into her vehicle until after Robinson began shooting. Finally,

18-70022.5732

Smart's credibility is questionable, since he has changed his statement from his original statement to police that he and Robinson were elsewhere when the shooting occurred. (*Id.* at 26.) In sum, the Court concludes that Robinson has failed to establish that his trial counsel's performance was insufficient for failing to uncover and present the proffered evidence to the jury. Nor has Robinson established that he was prejudiced by any deficiency on the part of his counsel. Thus, Robinson's claim of insufficiency of counsel on this basis is denied. *Cf. Rompilla*, 545 U.S. at 392-93.

### 3. Failure to Hire a Mitigation Expert or to Sufficiently Investigate Mitigation Factors.

Robinson next claims that his trial counsel was constitutionally deficient for failure to conduct an adequate investigation of mitigation factors affecting the punishment phase of Robinson's trial, including failure to hire a mitigation expert. (Motion to Vacate (Doc. #2279) at 24-53.)

The Court will first address Robinson's claim that his trial counsel were deficient for failure to employ a mitigation expert. The Constitution does not provide Robinson with an absolute right to the services of a mitigation specialist. As the Fifth Circuit held in *Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993), an indigent defendant is only entitled to non-psychiatric experts if he has proven that the evidence is "both 'critical' to the conviction and subject to varying expert opinion." *Id.* At 227 (quoting *Scott v. Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991) (citations omitted). The court agreed with the analysis of the Eleventh Circuit, concluding that "[a]n indigent defendant requesting non-psychiatric experts must demonstrate something more than a mere possibility of assistance from a requested expert." *Id.* (citing *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir. 1987)). According to the affidavits provided by Robinson's trial counsel, Wessley Ball and Jack Strickland, counsel made a strategic decision not to obtain a mitigation specialist given the information they knew about their

18-70022.5733

client and the evidence against him.  (Resp. Br. (Doc. #2365), GX A-B, Aff. of Wessley T. Ball ("Ball Aff.") and Jack Strickland ("Strickland Aff.")  Robinson has not demonstrated that his counsel's decision was anything but a reasonable strategy, and Robinson's supplemental pleading does not add any weight as he fails to cite any case law to support his argument.  Nor has the Court discovered any in its own research.

In addition to their failure to hire a mitigation expert, Robinson claims that his trial counsel were insufficient for failing to adequately investigate or present evidence of several mitigation factors.  He argues that his counsel were unreasonable in failing to discover and present to the jury evidence at the sentencing phase that would have caused the jury to return a verdict of life rather than death.  See generally, (Mot. to Vacate (Doc. #2279) at 24-53.)

Under Fifth Circuit precedent, Robinson "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial" to prove that his counsel failed to conduct an adequate investigation.  *See Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).  Trial counsel's decisions "are even less susceptible to judicial second-guessing" in cases such as Robinson's, where a defendant is not alleging a complete failure to present mitigating evidence, but rather a failure to present sufficient mitigating evidence.  *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999).

It is clear from the trial record that Robinson's counsel introduced mitigation evidence from numerous witnesses.  Essentially, Robinson faults his trial counsel on this point primarily for not presenting additional evidence at the punishment phase, including additional evidence of mental-health issues and additional evidence of negative childhood circumstances.  In an effort to identify what an adequate investigation would have revealed, Robinson alleges that his counsel failed to

-23-

18-70022.5734

adequately investigate Robinson's mental state as well as his social history, including Robinson's life as a young child and teenager as well as alleged pesticide exposure and *in utero* exposure to dangerous substances.  (Mot. to Vacate (Doc. #2279) at 28-87.)[3]

### a.   Failure to Adequately Investigate Mental State

In support of his claim that his counsel failed to adequately investigate his mental state, Robinson cites his trial counsel's failure to obtain his academic records and their failure to hire a mental-health expert to evaluate him.  The record demonstrates, however, that Robinson's trial counsel reviewed his high-school records from Lamar High School in Arlington as well as his academic records from Tyler Junior College.  Additionally, the record demonstrates that Robinson's trial counsel reviewed records from the computer school Robinson was attending at the time of his arrest.  Finally, Robinson's mother testified that Robinson was an average student, earning Bs and some Cs.  (R21/164-65.)  All of this evidence demonstrates that Robinson was an average to above-average student in the years preceding the offenses for which he was convicted.  (Resp. Br. (Doc. #2365), DX 37.)

Robinson criticizes his trial counsel's failure to review his lower-school records from Arkansas. Robinson has not demonstrated, however, that there was reason for them to do so given the information contained in his high-school and college records as well as the information provided

---

[3] Robinson also claims that his counsel was deficient for failing to communicate regularly with him prior to his trial.  (Supp. Pleading (Doc. #2432) at 14.)  Without citing any case law in support of his position, Robinson points to the jail visitation logs maintained by the FMC to demonstrate that his counsel was deficient because the logs show that Robinson's counsel met with him two times following their initial meeting and the investigator, Cummings, met with him once.  (*Id.* at 15; DX 80, Bureau of Prison Records, at 2, 8.)  The visitation logs, however, do not contain information regarding time spent between counsel and client at the courthouse for hearings or trial, nor do they contain any information about telephone calls between Robinson and his counsel; Robinson has not made any attempt to quantify the amount of time he spent talking with his attorneys over the telephone.  The mere accusation of failure to communicate alone without sufficient documentation and a demonstrated effect of prejudice to Robinson's case is insufficient to establish a constitutional violation. *See Strickland*,  466 U.S. 668.

18-70022.5735

by his educators and coaches. Attempting to liken his case to *Rompilla* and *Wiggins v. Smith*, 539 U.S. 510 (2003), Robinson points to two facts his counsel were aware of which, according to him, should have indicated to them that there were "red flags" in his mental history that they should have explored further. First, Robinson points out that he was held back and had to repeat the third grade. Second, he says he was transferred to an alternative high school.

In its response brief, the government points to the declaration from Robinson's alternative-school teacher stating that Robinson had an excellent attitude and was open to learning. (Resp. Br. (Doc. # 2365), DX 11.) Robinson also graduated from high school and attended college for a period of time. As the Supreme Court explained in *Wiggins*, "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." 539 U.S. at 533. In analyzing whether a strategic decision is reasonable, the Court must ask whether "'reasonable professional judgments support the limitations on investigation.'" *Id.* (citations omitted). "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances." The Court concludes that Robinson has failed to demonstrate that his counsel's decisions were unreasonable. *Id.* (citations omitted).

Next, the Court will address Robinson's assertion that his trial counsel failed to adequately assess the effect on Robinson's mental state of childhood pesticide exposure and exposure to drugs and alcohol *in utero*. Post trial, Robinson was examined by Dr. Stephen Martin. (DX 2 at 1.) The results of Martin's testing establish, *inter alia*, that Robinson has an average-level verbal IQ of 102, a high-average performance IQ of 113, and a full-scale IQ of 107. (*Id.*) Robinson also demonstrated low-average to very superior skills in the remainder of the tests administered to him by Martin. (*Id.*) The only areas in which he had relatively low scores were reading, spelling, and arithmetic, which

18-70022.5736

were possibly indicative of learning disabilities. (*Id.*) Despite evaluating most of Robinson's skills and abilities as either low average to above average or within normal limits and adequate – with some skills described as mildly impaired – Martin concludes that Robinson's mental profile was "consistent with *subtle* cognitive deficits associated with chronic exposure to organophosphate pesticides combined with general learning disabilities." (Resp. Br. (Doc. # 2365) at 38 (citing DX 2 at page 3) (emphasis added).) Martin does not opine on the likelihood that these subtle cognitive defects would affect Robinson's ability to plan and implement the murder of three individuals.

Robinson further claims that his counsel was insufficient for failing to hire a mental-health expert and discover evidence of Robinson's *in utero* exposure to drugs and alcohol during his mother's pregnancy. (Supp. Pleading (Doc. #2432 ) at 22-23.) Robinson cites to the report of Dr. Kate Allen, who opines that Robinson's mental and social history made him more vulnerable to psychological and emotional problems throughout his life. (*Id.* at 22-23 (DX 77).) But the Court is not persuaded that presentation of such an opinion from Allen or a similar expert would have persuaded the jury, in light of all evidence to the contrary, that Robinson suffered so much and was so damaged by his mother's conduct that he is less culpable for the murder of three people.

Moreover, as the record demonstrates, numerous witnesses testified that Robinson's words and actions demonstrated that he was a person of normal intelligence. Thus, his attorneys' strategic decision not to attempt to portray him as a person with mental deficiencies sufficient to mitigate the murderous behavior he engaged in was a reasonable one. (*Id.*, GX A-C (Ball, Strickland and Cummings Affs.)) Again, the Court concludes that Robinson has failed to demonstrate that his counsel's failure to investigate was unreasonable and in violation of *Strickland*. *See* 466 U.S. at 668.

18-70022.5737

### b.      Failure to Adequately Investigate Social History

Robinson also criticizes his trial counsel for failing to sufficiently look for mitigating evidence in Robinson's social history.  The evidence Robinson proffers includes, *inter alia*, declarations from his relatives and neighbors during the time he lived in Dermott, Arkansas. Notably, however, much of the substance of these declarations covers periods before Robinson's birth, including much of the declaration of his sister, Josephine Dotson, and the declarations of Mildred Hollimon, Milton Hollimon, John Hollimon Jr., Robert Hollimon, Beotha Moore, and Willie White.  (DX 12-15, 24, 33.)   Much of the evidence contained in the declarations is cumulative, including evidence cited in these affidavits as well as evidence contained in the affidavit of Robinson's father, Jimmie Lee, who reiterates the testimony given at trial by Robinson's uncle and mother.  (DX. 30 at ¶¶ 2-3, 6, 15-16, 18.)   Jimmie Lee's declaration briefly suggests that Robinson was touched sexually by a neighborhood boy when he was about five years old and that Robinson was upset by that experience, but, notably, there is no corroborating affidavit from Robinson.  (DX 29 at ¶ 36; DX 30 at ¶¶ 9-10.)   As to the declarations regarding Robinson's involvement with gangs during his youth in Arkansas, these merely confirm evidence that his trial counsel were already aware of but strategically chose not to emphasize at trial because they feared that  evidence would harm Robinson's case more than it would help.  (GX A, Ball Aff. at 6.)  Ball states in his affidavit that, in his experience, "gang evidence is almost always detrimental to a defendant as jurors are very frightened of gangs," and that Robinson's trial counsel specifically chose "to depict Mr. Robinson's upbringing in Arkansas as largely positive and concentrate on the changes that began to occur when he was living with his drug-abusing mother in Arlington."  (*Id*.) As the government correctly argues, trial counsel's informed choice on a strategic matter is entitled

18-70022.5738

to deference, even more so in a situation such as this where the evidence in question is "double-edged." (Resp. Br. (Doc. #2365) at 43 (citing *Boyle v. Johnson*, 93 F.3d 180, 187-88) (5th Cir. 1996); *Mann v. Scott*, 41 F.3d 968, 984 (5th. Cir. 1994); *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999). Notably, Robinson presents the Court with a schizophrenic view of his involvement with the Dermott Crips, simultaneously characterizing his experience as running with a bunch of youngsters who were merely portraying what they saw on television, (Supp. Pleading (Doc. #2432) at 6, DX 59), but also, according to Allen, being a part of his "highly toxic social environment." (DX 77 at 18.)

Robinson analogizes his claim of ineffective assistance of counsel to that of the defendants in three United States Supreme Court decisions holding that defense counsel had unreasonably failed to investigate mitigating circumstances: *Williams v. Taylor*, 529 U.S. 362 (2000), *Wiggins* and *Rompilla*. The Court has already analyzed Robinson's claims with regard to the decision in *Rompilla* and will now examine *Williams* and *Wiggins*.

In *Williams*, the Supreme Court, reviewing a petition for certiorari, concluded that the defendant's trial counsel failed to investigate and present mitigating evidence during the sentencing phase of his capital murder trial. 529 U.S. 362. The Court found that the record established that Williams' trial counsel had (1) not begun preparation for sentencing until a week beforehand, (2) failed to "uncover extensive records graphically describing Williams' nightmarish childhood," (3) failed to introduce evidence available to them that Williams did not attend school beyond the sixth grade and was found to be "'borderline mentally retarded,'" (4) failed to examine prison records demonstrating Williams's commendations and positive actions in prison, including assistance breaking a prison drug ring and returning a stolen wallet, and (5) failed to elicit testimony from

-28-

18-70022.5739

prison officials who "described Williams as among the inmates least likely to act violently, dangerously, or provocatively, and from a prison minister that Williams seemed to thrive in a more regimented environment." *Id.* at 364-65. The Court concluded that Williams's trial counsel's omissions "clearly demonstrate[d] that trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background." *Id.* at 396. The Court held that these omissions had prejudiced Williams, concluding that "the graphic description of Williams's childhood, filled with abuse and privation, or the reality that he was 'borderline mentally retarded,' might well have influenced the jury's appraisal of his moral culpability." *Id.* at 398 (citing *Boyde v. Cal.*, 494 U.S. 370 (1990)). Based on the entire post-conviction record, the Court concluded that the state trial judge was correct in holding that there was "'a reasonable probability that the result of the sentencing proceeding would have been different' if competent counsel had presented and explained the significance of all of the available evidence." *Id.* at 399. (quoting trial court record.)

In *Wiggins*, before the Supreme Court on a writ of certiorari, the Court held that trial counsel's decision not to expand their investigation of their client's life history beyond the presentencing report and records of the department of social services was unreasonable and that counsel's inadequate investigation prejudiced the defendant. 539 U.S. 510. The Court focused on whether counsel's investigation supporting their decision not to introduce mitigating evidence in their client's background "*was itself reasonable*." *Id.* at 523. The Court held that the scope of Wiggins's counsel's investigation was unreasonable in light of what the department of social services's records revealed, including Wiggins's mother's chronic alcoholism and abuse of her children, as well as the fact that Wiggins was "shuttled from foster home to foster home," and had "lengthy absences from school." *Id.* at 526. During his post-conviction appeal, Wiggins's new

-29-

18-70022.5740

counsel hired a social worker who testified regarding a social-history report he prepared based on evidence of "severe physical and sexual abuse" Wiggins suffered throughout his childhood. *Id.* at 516. Wiggins was raised by an abusive alcoholic mother until the age of six, and was both severely abused and neglected as demonstrated by her leaving him and his siblings by themselves for days at a time, forcing them to beg for food and to eat garbage. *Id.* at 517. There was evidence that Wiggins's mother beat her children for breaking into the locked kitchen, that she once burned Wiggins's hand on a hot stove so badly he had to be hospitalized, and that she had sex in the same bed in which her children were sleeping. *Id.* There was also evidence that, following his removal from his mother's custody, Wiggins was physically and sexually abused and raped while in foster care and that he ran away at age sixteen and was homeless. He was later placed back into foster care where he was gang-raped by his foster brothers. Finally, he also allegedly was sexually abused by his supervisor in a Job Corp program. *Id.* The Court found that Wiggins's trial counsel were aware of some, but not all, of his history, and that they chose not to present all of the mitigating evidence they had in favor of trying to persuade the jury that Wiggins did not kill the victim by his own hand. The Court found this decision unreasonable and, comparing the case with *Williams*, noted that the mitigating evidence was stronger and the state's evidence in support of the death penalty was "far weaker" than in *Williams*, thus concluding that "the available mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of Wiggins' moral culpability." *Id.* at 537-38 (quoting *Williams*, 529 U.S. at 398).

As is the case with the facts in *Rompilla*, there are a number of important differences between Robinson's case and those of the defendants in *Williams* and *Wiggins*. First, there is no evidence in the record that Robinson suffered the same sort of physical and sexual abuse as Williams

18-70022.5741

and Wiggins. Nor does the evidence demonstrate that Robinson, who graduated from high school and attended some college, suffered from the same sort of mental impairment as Williams, who was identified as borderline mentally retarded. Robinson's counsel employed an experienced investigator and conducted a thorough investigation. And, far from the choice made by Williams's trial counsel not to examine prison records, Robinson's trial counsel presented evidence from no fewer than five prison officials who testified about Robinson's good behavior and positive adjustment to life in prison. Additionally, unlike defense counsel in *Williams* and *Wiggins*, Robinson's trial counsel presented numerous positive character witnesses for Robinson, including Robinson's high-school football coaches and teachers as well as one of his teammates.

Even if the Court assumes, *arguendo*, that Robinson's attorneys failed to adequately investigate factors affecting mitigation, his case is not aligned with *Williams* or *Wiggins* on the prejudice prong of the *Strickland* inquiry. In *Strickland*, the Supreme Court noted that a court should dismiss a claim of ineffective assistance of counsel under the prejudice prong of *Strickland* where it is easier to do so, and such is certainly the case here. *See Strickland*, 466 U.S. at 670. Evidence presented at trial demonstrated that Robinson was raised by his grandparents for much of his youth in a decent home and that he loved and respected them. Even if the new declarations provide evidence that his home life may have been less positive than was portrayed at trial and that he had some difficulty with school, that evidence does not demonstrate prejudice. It is clearly established that in order to prevail on his claim of insufficiency of counsel based on failure to investigate, Robinson "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986) (same); *Berry v. King*,

18-70022.5742

765 F.2d 451, 454 (5th Cir. 1985). Robinson must demonstrate that "it is reasonably likely that the jury would have reached a different conclusion absent counsel's unprofessional errors." *See Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000), quoting *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). As the Court in *Wiggins* held, "[i]n assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigation evidence." *See* 539 U.S. at 534. When the Court examines all of Robinson's mitigation evidence, including the evidence that was gathered post-conviction, the Court cannon conclude that it is reasonably likely a jury would have reached a different conclusion had the evidence that was discovered post-trial been admitted.

### 4. Failure to Make a *Batson* Challenge.

Finally, in his last claim for relief based on the alleged insufficiency of his trial counsel, Robinson alleges that he was denied his constitutional rights by his counsel's failure to raise a *Batson* challenge on direct appeal in light of racial discrimination that Robinson alleges took place in the selection of his jury. (Mot. to Vacate (Doc. #2279) at 99 (citing *Batson v. Kentucky*, 476 U.S. 79 (1986).) A criminal defendant is constitutionally entitled to effective assistance of counsel on appeal. *Smith v. Robbins*, 528 U.S. 259 (2000) (applying the same standard to a claim of ineffective assistance of counsel on appeal as to such a claim against trial counsel); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). In order to establish his claim of insufficiency, Robinson must demonstrate that his counsel's failure to appeal the *Batson* issue fell below an objectively reasonable standard of professionalism, and he must also demonstrate that if his counsel had raised the issue, the appellate court would have granted a new trial. *See Miller-El v. Dretke*, 142 Fed. Appx. 802 (5th Cir. 2002).

Robinson alleges that racial discrimination "permeated" his entire trial, and that the government exercised peremptory challenges during jury selection in a racially discriminatory

18-70022.5743

manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  (Mot. to Vacate (Doc. #2279) at 88-99.)  Specifically, Robinson asserts that he was denied equal protection under the law in violation of the Fourteenth Amendment when the government used peremptory challenges to prevent three African-American females, Charline Boulet, Dorothy Jean DeBose, and Marchesia Amarh from sitting on the jury and failed to articulate a credible race-neutral explanation for the challenges.

In *Strauder v. West Virginia*, 100 U.S. 303 (1880), the United States Supreme Court held that when a black defendant has been tried by a jury from which members of his own race have been purposely excluded, he has been denied equal protection of the law.  In *Batson*, the Court reaffirmed this holding and further held that the Equal Protection Clause forbids a prosecutor from using his peremptory challenges to challenge potential jurors solely on account of their race.  *See* 476 U.S. at 88.  The Court also held that, in order to establish a claim of purposeful racial discrimination in the jury- selection process by the prosecutor's use of peremptory challenges, a criminal defendant must first make out a prima-facie case of purposeful discrimination by first showing that he is a member of a racial group capable of being singled out for differential treatment and that the prosecutor has exercised peremptory challenges to remove from the jury panel members of his race. A defendant must then show that these facts and other circumstances would support an inference that the prosecutor used the practice to exclude venire members based on their race.  Once this showing has been made, the burden then shifts to the government to provide a race-neutral explanation for challenging the jurors. *Id.* at 96.  If the government presents a racially neutral explanation for a strike, the trial court must decide whether the defendant has carried his burden of proving purposeful racial discrimination. *Id*. at 98; *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995).

In making the decision as to whether the defendant has met his burden of proof, the

18-70022.5744

truthfulness of the prosecutor's explanation must be determined by assessing the credibility and demeanor of the government's attorney. *Hernandez v. New York*, 500 U.S. 352, 365 (1991). This judgment is one that lies "peculiarly within a trial judge's province." *Id*. The standard of review is "clear error," and a trial court's ruling should not be considered clearly erroneous unless a reviewing court has the firm conviction that a mistake has been committed. *United States v. Cobb*, 975 F.2d 152, 154-56 (5th Cir. 1992), *citing Hernandez*, 500 U.S. at 369.

### a. Charline Boulet

First, it is important to note that both the government and Robinson's own counsel exercised a peremptory challenge against venire member Charline Boulet. (RIII/155.) Having struck venire member Boulet on their own, it is not surprising that Robinson's trial counsel did not raise a *Batson* challenge at the trial-court level. Because they did not, however, any claim based on the government's choice to strike her is waived on appellate review. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 561-62 (5th Cir. 2001). Moreover, in his affidavit, prosecutor Fred Schattman also points to the fact that counsel learned from her answers during voir dire that her son frequented the CD shop "That Sounds Good," which the prosecution "knew to be the place where Nathan Henderson, Julius Robinson, John Turner and others gathered and was a front for the drug business they conducted." (Resp. Br. (Doc. #2365), GX D at 2.)

### b. Dorothy Jean DeBose

The next venire member at issue is Dorothy Jean DeBose. The prosecutor indicated that he intended to peremptorily strike DuBose, and defense counsel made a *Batson* objection because DuBose is African American. (RIV/ 163-64.) Defense counsel argued that DuBose had not stated any unwillingness to apply the law properly and that there was nothing in her background that would

18-70022.5745

reasonably give rise to the government's motion to strike, so the strike must be racially motivated. (*Id.*)  This Court, not yet deciding the question of whether defense counsel had established a prima-facie case of racial motivation, asked the prosecutor to respond.  (*Id.*)  Prosecutor Fred Schattman informed the Court that, as indicated in DuBose's questionnaire answers, she was known to members of Schattman's family and that he had gained "reputation information" about her.  (*Id.,* GX D, Schattman Aff.)  In his affidavit, Schattman explains that he had spoken with his sister-in-law, who had worked with DeBose at John Peter Smith Hospital, and with his brother, a state district judge, about DuBose, and that his brother said she "made snap judgments and would disregard all evidence to the contrary of that snap judgment." *Id.*  Schattman also recalled during his discussion with the Court, that he had reviewed drug cases against DuBose's brother and spouse and that she was perhaps the same age as Robinson's mother and thus would not be a juror acceptable to the state under the circumstances.  (*Id.*)  DuBose had acknowledged the cases in her questionnaire answers numbered 73 and 80. (*Id.*) After conferring with another prosecutor, Schattman also added that DeBose had an apparent reluctance about the death penalty to a degree that made him uncomfortable.  (RIV/167.)

Defense counsel responded that it wasn't established that relatives of DeBose had been the subjects of the federal cases Schattman recalled, and the court responded that it did not have to be established so long as the prosecutor believed it to be true.  (*Id.*/167-68.)  Moreover, defense counsel Ball recalled that he might have represented DeBose's husband before a grand jury, adding credence to Schattman's recollection.  (*Id.*/168.)

This Court concluded that Robinson had failed to establish a *Batson* violation because the explanations for the peremptory strike given by the prosecution were race-neutral and because

-35-

18-70022.5746

Petitioner had failed to meet his burden of establishing that the government's reasons for the strike were pretextual in nature. (*Id.*/169) (noting that DuBose's husband's conviction for drug trafficking was "certainly sufficient" for the prosecution to exercise a peremptory challenge).)

The Court agrees with the government that, in light of the facts surrounding the government's decision to peremptorily strike DuBose, it would not have benefitted defense counsel to appeal the government's choice to strike DuBose on *Batson* grounds.  Additionally, as this Court noted at the time, there was no similarly situated non-black venire member whom the government chose not to strike.  Thus, Robinson has not demonstrated that his counsel committed error in choosing not to raise this issue on appeal.  *See United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000), quoting *United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993)) (noting that deference to the trial court is highly warranted where the government's reasons are plausible and not fantastic or inconsistent with its treatment of non-minority jurors).

### c.      Marchesia Amarh

The third peremptory strike at issue was against venire member Marchesia Amarh.  Upon questioning during voir dire, Amarh indicated that she was generally not in favor of the death penalty, commenting that she just did not "agree with it." (R7/87.)  Her questionnaire also indicated that she had mixed feelings about the death penalty.  (Questions 45, 46, 47, 49, 52, and 52a.)  But she indicated when questioned that she believed that there are some circumstances that warrant the death penalty.  (*Id.*/88.)  When asked by the prosecutor if she likened her position to that of a conscientious objector who sees the need for war but chooses not to participate in a way that would result in killing (*Id.*/88-89), Amarh responded:

> It's kind of hard to say.  If I have to do it, you know, as a duty, I will do it.
> But I just don't like, you know, the death penalty.  I don't know exactly how

-36-

18-70022.5747

to say it, but I feel strongly against the death penalty. But if for some – it depends on the circumstances. The circumstances would have to be very strong if I have to do jury duty.

(R7/89).

Although the prosecution did not believe that Amarh's answers gave rise to a reason to strike Amarh for cause, they chose to exercise a peremptory strike against her, and defense counsel objected under *Batson*. (*Id.*/101.) Defense counsel Strickland argued that the government's choice to strike Amarh was racially motivated because her answers indicated that she could vote for the death penalty in the right circumstances. The Court did not decide whether a prima-facie case of discrimination had been established, but asked the prosecutor to provide a race-neutral reason for striking her, and the prosecutor responded that she had "expressed great reluctance concerning the death penalty" and pointed out that the prosecution had earlier struck a white venire member with similar views on the death penalty (venire member Broadwell.) (*Id.*/103.) Accepting the prosecutor's explanation as valid, the Court overruled the *Batson* challenge. A later review of the questions posed to Broadwell reveals that she did not have similar views to Amarh, but Schattman was apparently reviewing the wrong questionnaire when interviewing her. (*Id.*/70-72.) Regardless of that mistake, however, this Court accepted Schattman's race-neutral explanation for striking Amarh based on her answers in her questionnaire and voir dire regarding the death penalty.

Robinson has not demonstrated that his counsel would have had a reasonable likelihood of success in raising a *Batson* claim before the Fifth Circuit. Robinson likens his case to *Miller-El II*, but the two cases have very little in common. First, the Court in *Miller-El II* found that the state prosecutor's office had an institutional policy of trying to keep

-37-

18-70022.5748

African Americans from serving on juries. *Miller-El II*, 125 S.Ct. at 2338-39. Robinson does not even suggest that such a policy existed in the United States attorney's office. Second, the inconsistencies present in *Miller-El II* do not exist in Robinson's case. As the Court discussed previously, the prosecution's decision to strike DeBose was based on her husband's conviction for federal drug trafficking in a case in which the prosecuting attorney had some involvement. As for Amarh, the Court does not accept Robinson's argument that white jurors with similar backgrounds were not struck. The prosecution struck a number of white venire members with similar views. First, the prosecution struck William Watson (RII/6-26) who, like Amarh, varied on his opposition to the death penalty. The prosecution also struck Martinets, a white juror who indicated on her questionnaire that she was strongly against the death penalty, but who revealed in her answers that she could follow the law. (RIII/27-39.) Robinson charges that the government chose to keep venireman Broome, a white juror whom Robinson claims shared Amarh's views. Broome's questionnaire and answers in court, however, revealed that he was consistently in favor of the death penalty in spite of the fact that he would have difficulty making the decision. (RII/75-80, 91.) Likewise, white venirewoman Mills stated that she could impose the death penalty, but noted that it would be a hard decision. (RIII/136-39, 145-46, 148.) And, unlike Amarh, she did not provide any answers in her questionnaire indicating that she opposed the death penalty. Robinson also points to the answers in questionnaires submitted by venire members Tribout and Banser. Tribout, however, both in his questionnaire and in his voir-dire answers, indicated that he was not opposed to the death penalty and that he could impose it, albeit with extreme care. (RIV/5, 7-8, 13-14.) Banser's questionnaire answers likewise revealed

-38-

that she was in favor of the death penalty.  She did state, however, that if a sentence of life without release was available, she could not recommend a death sentence, but she wrote a note on her questionnaire explaining that "It would be a very hard decision.  Not truely [sic] certain about this."  (*Id.*/109-11 (Question 52a).)  When asked about her answer during voir dire, she clarified that if the facts justified a sentence of death that she could impose it.  (*Id.*/111-14, 117.)  Thus, none of the jurors Robinson points to have views similar to Amarh's.  Nor does Robinson's suggestion that the government questioned Amarh more aggressively have merit.  *Cf. Miller-El II*, 125 S.Ct. at 2333-37.  Robinson points specifically to the prosecutor's question to Amarh regarding whether she felt like a conscientious objector regarding the death penalty.  But the prosecution also questioned venire member Watson, a white venire member, about whether he would personally be able to participate in a decision leading to Robinson's death.  (*Cf.* RII/13-14 with R7/88-91.)  Similarly, the prosecutor asked the same of venire member James, also white.  The Court finds no merit to Robinson's claim that the government chose to ask difficult questions only of black venire members.

In sum, the Court concludes that Robinson has failed to demonstrate that his counsel performed below a reasonable professional standard in choosing not to raise *Batson* as a ground in Robinson's appeal.  His claim of ineffective assistance of counsel on this basis is therefore denied.

The Court notes that Robinson also attempts to make a collateral *Batson* challenge, but this claim is procedurally barred because it was not raised on direct appeal but could have been.  *See Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Shaid*, 937

18-70022.5750

F.2d 228 (5th Cir. 1992). The Court agrees with the government that the alleged ineffectiveness of Robinson's counsel cannot serve as the requisite cause for his failure to raise the *Batson* issue on direct appeal as there was no meritorious *Batson* issue to be raised. Moreover, Robinson has not demonstrated the requisite prejudice. His claim is therefore denied.

### B.   Equal Protection Violations--Grounds II and III.

In addition to claims regarding the sufficiency of his counsel, Robinson alleges violations of his equal-protection rights. The first of these alleged violations is essentially a selective-prosecution claim. (Mot. to Vacate (Doc. #2279) at 97-99.) Specifically, Robinson contends that the government violated his constitutional rights because it used ethnicity as a basis for seeking the death penalty against African-Americans like himself. Robinson bases his claim on statistics that purport to show that the government has sought the death penalty against African-American defendants with disproportionate frequency as compared to defendants of other races. Robinson also claims that his equal-protection rights were violated by the discriminatory application of the Federal Death Penalty Act ("FDPA").

Robinson claims, pursuant to the Supreme Court's opinion in *McClesky v. Kemp*, 481 U.S. 279 (1987), that he was purposefully discriminated against in the manner in which the FDPA was applied to him. (Mot. to Vacate (Doc. #2279) at 97-99.) Robinson made a pretrial motion to dismiss the government's notice of its intent to seek the death penalty on the ground of racial discrimination. *See* (Mot. to Dismiss (Doc. #1404), filed December 21, 2001). He also filed a subsequent motion partially on this same topic, along with a survey purporting to demonstrate racial discrimination by the Department of Justice. See (Mot.

18-70022.5751

Regarding Government's Intent to Seek the Death Penalty and Special App. (Docs. #1443 and 1444), filed January 10, 2002).)  The Court denied relief.  (Order Denying Mot. Regarding Government's Intent to Seek the Death Penalty (Doc. #1575), filed February 19, 2002).)  Robinson did not pursue the claim on appeal, although he could have, and therefore may not now raise the claim collaterally because it is procedurally barred.  *See, e.g.*, *Massaro,* 538 U.S. at 504; *Shaid*, 937 F.2d at 231-32 .

Even assuming that Robinson's selective-prosecution claims are not procedurally barred, they nevertheless fail on the merits.  In *United States v. Armstrong*, 517 U.S. 456 (1996), the Supreme Court addressed the appropriate standard for establishing a selective-prosecution claim.  In *Armstrong*, the Court first noted that, absent clear evidence to the contrary, there is a presumption that prosecutors have properly discharged their duties.  The Court then stated that, in order to dispel this presumption and establish that a criminal defendant has been selectively prosecuted on the basis of his race, he must show that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose.  And, in order to establish a discriminatory effect, the defendant must show that similarly situated individuals of a different race were not prosecuted. *Id.* at 464-65.

Robinson argues that the statistical evidence he has produced in the form of the department-of-justice survey, combined with his *Batson* challenges, is sufficient to establish a prima-facie selective-prosecution case.  As previously mentioned, however, without meritorious *Batson* challenges to rely upon, Robinson is left only with statistics to support his argument.  In *United States v. Jones*, 287 F.3d 325, 333-35 (5th Cir.), *cert. denied*, 537

18-70022.5752

U.S. 1018 (2002), the Fifth Circuit was presented with a Department of Justice Report, titled "Department of Justice, The Federal Death Penalty System: A Statistical Survey (1988-2000)," as support for a selective-prosecution claim and ruled that this evidence was not sufficient to establish a prima-facie case.  Robinson simply presents similar and no more compelling statistical evidence – notably without any further citation – to the statistical evidence that the Fifth Circuit has previously held to be insufficient to support a claim of selective prosecution.  Thus, Robinson's claim for relief on selective-prosecution grounds is denied.

### C.    Robinson's Claim that the Prosecution Pursued Fundamentally Inconsistent Theories at Seriatim Capital Trials – Ground IV.

Robinson next claims that his due-process rights have been violated by the prosecution's alleged pursuit of fundamentally inconsistent theories at seriatim capital trials. (Mot. to Vacate (Doc. #2279) at 102.)  According to Robinson, the prosecution claimed that Robinson was the leader and the most culpable of the co-defendants during Robinson's trial, but did the opposite at L.J. Britt's trial, which took place after Robinson's.  Like Robinson's previous claim, this claim is procedurally defaulted as a result of Robinson's failure to raise it on appeal.  L.J. Britt's trial was concluded long before Robinson's appellate brief was filed in July 2003.  Thus, Robinson's counsel could have raised the issue on direct appeal but chose not to, and Robinson may not now raise it on collateral review.  *Massaro*, 538 U.S. at 504.

Moreover, Robinson's claim, which is without any citation to the record, lacks merit. The author of this opinion, Terry R. Means, presided over both trials and is well aware that Robinson was consistently portrayed as the leader of the group, and that L.J. Britt was not.

18-70022.5753

**D.      Robinson's Claim that the Prosecution Knowingly Presented False Evidence Regarding the Penalty Phase Aggravating Factor of Future Dangerousness – Ground V.**

Robinson also claims that the prosecution knowingly presented false evidence regarding the penalty-phase aggravating factor of future dangerousness – specifically regarding the alleged "hit" on Michael "One Love" Williams. According to Robinson, the government was aware, because of the FBI's interview with Louis Johnson, that the group attacked Williams due to the alleged bad-drug sale, but nevertheless "made no effort to either correct the misapprehension in front of the jury or to tell defense counsel about Johnson's *perspective*." (Mot. to Vacate (Doc. #2279) at 105.) It should be noted that Robinson has not presented any evidence to this Court that either Williams or Henderson ever stated that they lied at Robinson's trial. Even if Robinson's allegations are true, however, Robinson has shown no due-process violation.

In *Giglio v. U.S.* , 405 U.S. 150 (1972), the United States Supreme Court addressed due process in the context of a claim that the government knowingly used or failed to correct false testimony. *Id.* In order to prove such a violation, Robinson must first demonstrate that there was false testimony. *See United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio*, 405 U.S. at 153 and *Napue*, 360 U.S. 264, 271 (1959)). Second, he must show that the government knew the testimony was false. And lastly, Robinson must demonstrate that the false testimony was material to the outcome of his trial. *See id*. "This rule also applies to false statements made during the prosecutor's rebuttal closing." *United States v. Gonzales*, 436 F.3d 560, 580 (5th Cir. 2006); *United States v. Williams*, 343 F.3d 423, 439 (5th Cir. 2003). Robinson has failed even to allege that the government knew that

18-70022.5754

any testimony given by Henderson or Williams was false. The fact that the testimony was challenged by another witness or was inconsistent with prior statements is not sufficient for Robinson to meet his burden. *Id.* Based on the evidence presented, the Court concludes that Robinson has not met his burden.

Robinson has also failed to demonstrate that the allegedly false testimony was material to the outcome of his trial. In order to demonstrate materiality, Robinson must show that there was a reasonable likelihood that the false testimony would have affected the judgment of the jury. *Giglio*, 405 U.S. at 153-54 (quoting *Napue*, 360 U.S. at 271). In addition to the Williams and Tucker incidents, the prosecution presented evidence of Robinson's wanton murders, the facts of which were largely undisputed, as well as voluminous evidence of his drug-dealing activities. In light of all of the evidence in the record, the Court concludes that Robinson has failed to meet his burden of establishing materiality, and his claim is denied.

### E. Robinson's Motion for New Trial.

Finally, Robinson's motion is couched, in the alternative, as one for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. This Court, however, is without jurisdiction to entertain such a motion. Federal Rule of Criminal Procedure 33 provides that a motion for new trial based on any ground other than newly discovered evidence must be filed within seven days of the guilty verdict. After that the district court is without authority to act. *See* Fed. R. Crim. P. 33; *Herrera v. Collins*, 506 U.S. 390, 409 (1993) (Rule 33 time limits are strictly construed); *United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982); *United States v. Granza*, 427 F.2d 184, 186 (5th Cir. 1970). Moreover,

18-70022.5755

under the law of the Fifth Circuit, a motion for new trial cannot be based on "newly discovered evidence" that trial counsel was ineffective. *United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997); *United States v. Ugalde*, 861 F.2d 802, 807-809 (5th Cir. 1988).

## F.       Motion for Evidentiary Hearing.

Robinson also requests that this Court conduct an evidentiary hearing on the claims he raised in his motion. (Mot. to Vacate (Doc. #2279)at 99, 106.)  Section 2255 does not automatically require a hearing to dispose of every motion made under its authority. *Coco v. United States*, 569 F.2d 367, 369 (5th Cir.1976).  But § 2255 does require a hearing unless the motion, files, and record of the case conclusively show that no relief is appropriate. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).  Conclusive, rather than direct evidence, is required in order to deny relief without a hearing. *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990). Bona fide or contested fact issues must be resolved on the basis of an evidentiary hearing. *Booth v. United States*, 507 F.2d 243 (5th Cir. 1975); *Reagor v. United States*, 488 F.2d 515 (5th Cir. 1973).

Although the government has stated that it would agree to a limited evidentiary hearing on contested issues of fact pertaining to Robinson's claims of insufficiency of counsel (Supp. Resp. (Doc. #2439) at 10), the record before this Court, including the exhibits submitted by Robinson with his motion, do not create any contested fact issues that must be resolved in order to decide Robinson's claims.  With regard to the claims for which Robinson has submitted additional evidence, the Court has decided these claims either by assuming that everything Robinson alleges is true or based on legal, not factual, bases. Accordingly, because the record before this Court shows conclusively that Robinson is not

18-70022.5756

entitled to relief, his request for an evidentiary hearing is denied.

Robinson's Motion to Vacate his conviction and sentence under 28 U.S.C. § 2255

is hereby DENIED.

The clerk of the Court shall transmit a copy of this order to Robinson by certified

mail, return receipt requested.

SIGNED November 7, 2008.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

-46-

18-70022.5757

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Julius Omar Robinson, | § | |
| *Petitioner,* | § | |
| | § | CIVIL NO. 4:05-CV-756-Y |
| V. | § | (Criminal No.  4:00-CR-260-Y-2) |
| | § | (death-penalty case) |
| United States of America, | § | |
| *Plaintiff-Respondent.* | § | |

## FINAL JUDGMENT

The Court having entered its Memorandum Opinion and Order to deny relief in this case, all

of the relief requested is hereby **DENIED**.

The Clerk shall transmit a true copy of this judgment, together with a true copy of the

Memorandum Opinion and Order, to the parties.

**SIGNED**: November 7, 2008.


_Terry R. Means_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

18-70022.5758

**10.**
**Other Order: District Court Order Granting in Part and Denying in Part Motion to Amend, filed January 7, 2008 (ROA.5303-07)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON (2), | § | |
|     Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:00-CR-260-Y |
| | § | |
| UNITED STATES OF AMERICA, | § | <u>DEATH-PENALTY CASE</u> |
|     Plaintiff-Respondent. | § | |

**ORDER GRANTING IN PART PETITIONER'S MOTION TO FILE**
**FIRST AMENDMENT TO HIS PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner's Amended Motion for Leave to Amend Motion to Vacate Conviction and Sentence and For New Trial (Doc. 2422), which was filed with the Court on July 2, 2007. Petitioner requests, in part, that he be allowed to file this amendment to add documentary evidence and corresponding argument relating back to his original petition. Additionally, Petitioner seeks to add a new seventh ground to his original petition based on two recent cases handed down by the Supreme Court, *United States v. Gonzalez-Lopez*, 126 S.Ct 2557 (2006) and *United States v. Resendiz-Ponce*, 127 S.Ct 782 (2007). (*Id.* at 15-17). Finally, Petitioner seeks to amend his entire petition stylistically and structurally. (*Id.* at 2, fn. 1).

The original petition in this case was filed on November 29, 2005, over a year and a half prior to the filing of the first motion to amend, and was comprised of over 113 pages, not including

18-70022.5303

exhibits. (Doc. 2279).  The government filed its 91-page response to the original petition on April 28, 2006.  (Doc. 2365).

The government does not oppose Petitioner's request to amend his Petition to include additional alleged factual support or argument relating back to his original claims filed in November 2005.  (*Id.* at 2).  The government does, however, oppose Petitioner's request to add a new seventh ground and further objects to the numerous stylistic and structural changes proposed by Petitioner. (*Id.* at 1-2).

The Court will first address Petitioner's request to amend his petition to add a new seventh ground.  Petitioner previously claimed, both at his trial on the merits before this Court and on direct appeal before the Court of Appeals for the Fifth Circuit, that the government's failure to submit the death penalty aggravating factors to the grand jury violated the Indictment Clause of the Fifth Amendment.  (Doc. 2422, Motion for Leave at 15).  On appeal, the Fifth Circuit held that "the failure to charge those factors in an indictment did not contribute to Robinson's conviction or death sentence" and found that the error was harmless.  *United States v. Robinson*, 367 F.3d 278, 289 (5th Cir. (Tex.) 2004).  It is well-established that a petitioner may not raise an issue in his motion to vacate that has already been decided adversely to him on direct appeal.  *See, e.g., United*

-2-

18-70022.5304

*States v. Hoenig*, 2006 WL 2993262, *1 (N.D. Tex. Oct. 18, 2006) (citing *Ordonez v. United States,* 588 F.2d 448 at 448-49 (5th Cir. 1979)).

Petitioner claims, however, that two recent United States Supreme Court decisions "cast serious doubt on the viability of the Fifth Circuit's decision."  (Doc. 2422, Motion for Leave at 15). In the first case cited by Petitioner, *Gonzalez-Lopez*, the Supreme Court held that the trial court's erroneous deprivation of a Defendant's right to counsel qualified as a structural error not subject to a review for harmlessness.  *Id.* at 2563-2564. Petitioner's reliance on *Gonzalez-Lopez* is misplaced, however, as the case did not pertain to any type of indictment error.

In the second case, *Resendiz-Ponce*, the Supreme Court granted certiorari to consider whether the omission of an element of a criminal offense--specifically omission of an overt act from an indictment charging attempted illegal reentry--can constitute harmless error.  *Id.* at 785.  Finding that the indictment was not in fact defective, the Court never reached the harmless-error issue.  *Id.* at 785-86.

Finally, even if the cases relied upon by Petitioner were on point, because they speak to procedural error they would not become retroactively applicable to cases that, like Petitioner's, became final on direct review before the decisions were announced. *See,*

-3-

18-70022.5305

*e.g.*, *Schriro v. Summerlin*, 542 U.S. 348, 355 (2004).  Petitioner has not addressed this issue in his motion to amend and, for the reasons set forth, Petitioner's motion to amend his Petition to add a new seventh ground is DENIED.

As for the remainder of Petitioner's proposed amendments to his claim, the Court notes that the proposed changes are both substantive, including new evidentiary support and argument, and stylistic.  As mentioned previously, the government opposes Petitioner's proposed "stylistic and structural" changes to the petition as a whole, stating that such changes would "impose an undue hardship on the government in terms of the efforts that would become necessary to respond to the amended petition as a unified document."  (Doc.  2365, Response at 3).  The Court agrees.

The Court recognizes that Petitioner's petition for writ of habeas corpus is his sole opportunity to raise all constitutional challenges to his conviction and sentence.  Therefore, Petitioner's motion to file an amended petition is GRANTED in part but DENIED in part. Petitioner's request to amend his Petition to include a new seventh claim is DENIED.  As for the remainder of Petitioner's proposed amendment, the Court orders Petitioner to segregate his new material (with the exception of Ground Seven) and file it as a supplement to his original petition with the new exhibits attached, within ten (10) days of this Order.  The Government is directed to

18-70022.5306

file a response to Petitioner's supplementary material within thirty (30) days of Petitioner's filing.

SIGNED January 7, 2008.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

18-70022.5307

**11.**

**Other Order: District Court Order Denying Juror Interviews, filed November 28, 2006 (ROA.4914-17)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JULIUS OMAR ROBINSON (02),      §
AKA Face, AKA Scar,             §
AKA Scarface,                   §
    Defendant-Petitioner      §     CRIMINAL NO. 4:00-CR-260-Y (2)
V.                              §     (Civil No. 4:05-CV-756-Y)
                              §     **Death-Penalty Case**
UNITED STATES OF AMERICA        §
    Plaintiff-Respondent      §

## ORDER DENYING MOTION TO INTERVIEW JURORS

On November 1, 2006, Julius Omar Robinson filed a Motion Seeking Permission to Interview Jurors (doc. #2385). The Government has filed a response in opposition to the motion (doc. #2387).

Having reviewed the motion and pleadings on file, the Court concludes that the request is without merit and should be denied. In requesting permission to interview jurors, Petitioner does not state that he has any reason to suspect that his jury was actually partial, but merely points to the importance of his right to an impartial jury under the Sixth Amendment and argues that he has no other way of discovering whether this right has been violated than to interview his trial jurors. (Motion at 5-10.) In the alternative, Petitioner argues that he should be allowed to interview a prospective juror who was excused upon the exercise of a peremptory strike by the government in order to investigate her testimony during voir dire that her husband had been prosecuted for drug possession so that Petitioner may investigate whether the rule

18-70022.4914

announced in *Batson v. Kentucky,* 476 U.S. 79 (1986), may have been violated. (Motion at 11-12.)  Neither reason justifies subjecting these jurors or prospective jurors to interviews by petitioner.

Local Criminal Rule 24.1 states,

> A party, attorney, or representative of a party or attorney, shall not, before or after trial, contact any juror, prospective juror, or the relatives, friends, or associates of a juror or prospective juror, unless explicitly permitted to do so by the presiding judge.

This type of rule protects the jury "from an effort to find grounds for post-verdict charges of misconduct, reduces the 'chances and temptations' for tampering with the jury, increases the certainty of [jury] trials, and spares the district courts time-consuming and futile proceedings." *United States v. Skilling*, No. CRIM H-04-025, 2006 WL 3030662 (S. D. Tex. Oct. 23, 2006)(construing a similar local criminal rule).

In construing this Court's local criminal rule 24.1, both parties have cited to *United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976), which observed that "[h]istorically, interrogations of jurors have not been favored by federal courts except where there is some showing of illegal or prejudicial intrusion into the jury process."  Clearly, Robinson has not made any such showing, and admits that he cannot. (Motion at 5.) Robinson's request appears to be nothing more than a fishing expedition.  To grant it would be to ignore the clear caution stated by the Fifth Circuit Court of Appeals in *Riley* that,

18-70022.4915

"[c]ourts simply will not denigrate jury trials by afterwards ransacking the jurors in search of some ground, not previously supported by evidence, for a new trial." *Id*.

Although Robinson's alternative request does not come squarely within the caution contained in *Riley*, it also fails.  In it, Robinson requests permission to interview an excluded juror in order to investigate whether the race-neutral reasons given by the prosecution for exercising its peremptory challenge were merely pretextual, masking purposeful discrimination against the prospective juror on the basis of her race.  The prosecutor provided race-neutral reasons, including reputation information on the juror, that the prospective juror's husband and brother had been involved to some degree with federal drug cases, and that the prospective juror had an apparent reluctance about the death penalty. (*See* Motion to Vacate under 28 U.S.C. § 2255 at 95; Response to 28 U.S.C. § 2255 Motion at 60.)

Robinson seeks to investigate whether a portion of the juror's explanation, that her husband was prosecuted for drug possession, was more accurate and whether her understanding would conflict with that of the prosecution. (*See* Motion at 11.)  However, the critical inquiry in *Batson* does not focus on the mind of prospective jurors but, rather, on the intent of prosecutors. *See Hernandez v. New York*, 500 U.S. 352, 365 (1991).  Since the prosecution has tendered to this court criminal history records to support this reason for

3

18-70022.4916

the strike, an interview further examining the prospective juror's understanding of her husband's prosecution would not appear to be helpful. (*See* Exhibit K attached to Response to 28 U.S.C. § 2255 motion.)

Robinson has not provided any examples of post-trial interviews of prospective jurors that have ever been used by the courts in considering *Batson* challenges. Typically, such challenges focus on the record of jury selection in light of the policies and practices of the prosecutors involved. *See, e.g., Miller-El v. Dretke*, 545 U.S. 231, 240-66 (2005). Therefore, the requested permission for a post-trial interview of this prospective juror would appear neither useful to a *Batson* analysis nor necessary to protect any of Petitioner's rights.

In sum, Robinson has not shown that granting permission for any of the requested interviews would be appropriate or necessary to protect his rights in this proceeding. Accordingly, the motion should be, and it is hereby, DENIED in all respects.

SIGNED November 28, 2006.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

4

18-70022.4917

**12.**
**Other Order: District Court Order Entering Judgment, filed June 5, 2002**
**(ROA.3410-12)**

ORIGINAL **United States District Court**

## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

**JULIUS OMAR ROBINSON (02)**
  **also known as "Scarface"**
  **also known as "Scar"**
  **also known as "Face"**

JUDGMENT IN A CRIMINAL CASE

Case Number: 4:00-CR-0260-Y (02)
Fred Schattman, Assistant U.S. Attorney
Reed C. O'Connor, Assistant U.S. Attorney
Wes Ball, Attorney for Defendant
Jack V. Strickland, Attorney for Defendant

*Filed stamp:* U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS FILED JUN – 5 2002 CLERK, U.S. DISTRICT COURT By _____ Deputy

On March 11, 2002, the defendant, JULIUS OMAR ROBINSON, was found guilty on each of counts one through fifteen and count 17 of the Second Superseding Indictment filed on June 19, 2001. Accordingly, the defendant is adjudged guilty of such counts, which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. §§ 846 and 841(b)(1)(B) | Conspiracy to Distribute More than 100 Kilograms of Marijuana, a Class B Felony | November 8, 2000 | 1 |
| 21 U.S.C. §§ 846 and 841(b)(1)(A) | Conspiracy to Distribute More than 5 Kilograms of Cocaine, a Class A Felony | November 8, 2000 | 2 |
| 21 U.S.C. § 848(e) | Murder While Engaging in a Continuing Criminal Enterprise, a Class A Felony | November 8, 2000 | 3 |
| 18 U.S.C. § 924(c)(1)(A)(i) and 924(c)(1)(C)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime, a Class A Felony | December 3, 1998 May 9, 1999 November 8, 2000 | 4, 8, and 17 |
| 18 U.S.C. § 924(c)(1)(A)(ii) | Carry/Use a Firearm During a Drug Trafficking Crime, a Class A Felony | December 3, 1998 May 9, 1999 July 12, 1999 | 5, 9, and 13 |
| 18 U.S.C. § 924(c)(1)(C)(iii) | Carry/Use and Discharge a Firearm During a Drug Trafficking Crime, a Class A Felony | December 3, 1998 May 9, 1999 July 12, 1999 | 6, 10, and 14 |
| 18 U.S.C. § 924(j) | Murder in Course of Carrying/Using a Firearm During a Drug Trafficking Crime, a Class A Felony | December 3, 1998 May 9, 1999 July 12, 1999 | 7, 11, and 15 |
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 848(e) | Murder while Engaged in Possession of More than 5 Kilograms of Cocaine with Intent to Distribute, a Class A Felony | July 12, 1999 | 12 |

The defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Defendant's Mailing Address:  Federal Medical Center-Jail Unit
3150 Horton Road
Fort Worth, Texas 76119

Defendant's Residence Address:  same

June 5, 2002
Date of Imposition of Sentence

*(signature)* Terry R. Means

TERRY R. MEANS
U.S. DISTRICT JUDGE

SIGNED June **5** , 2002

1740



18-70022.3410

**Judgment in a Criminal Case**
**Defendant: JULIUS OMAR ROBINSON** page 2 of 3
**Case Number: Criminal No. 4:00-CR-0260-Y (02)**

It is ordered that the defendant pay a special assessment of $100.00 on each of counts 3, 7, 11, 12, 15, and 17 of the Second Superseding Indictment, for a total assessment of $600.00 which shall be due immediately.

## EXECUTION

It is the judgment of the Court that the defendant, JULIUS OMAR ROBINSON, is sentenced to death on each of counts 3, 7, and 11 of the Second Superseding Indictment. The sentence of death on these counts shall be executed by a United States Marshal designated by the Director of the United States Marshals Service. The sentence of death on each of these counts shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause the death of JULIUS OMAR ROBINSON. The defendant, JULIUS OMAR ROBINSON, pending execution of the sentences of death, is committed to the custody of the Attorney General or his authorized representative for appropriate detention until exhaustion of the procedures for appeal of the judgment of conviction and review of the sentences.

## IMPRISONMENT

The defendant, JULIUS OMAR ROBINSON, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of LIFE on each of counts 12 and 15 of the Second Superseding Indictment, each such sentence of imprisonment to run concurrently with the other. The defendant, JULIUS OMAR ROBINSON, is hereby committed to the custody of the United States Bureau of Prisons for a term of three hundred (300) months on count 17 of the Second Superseding Indictment. The sentence on count 17 shall run consecutively to the sentences imposed on counts 12 and 15.

## SUPERVISED RELEASE

Should the defendant ever be released from imprisonment, he shall be placed on supervised release for a term of five (5) years on each of counts 12, 15, and 17 of the Second Superseding Indictment, which terms shall run concurrently each with the other.

While on supervised release, in compliance with the standard conditions of supervision adopted by this Court, the defendant shall:

( 1) not leave the judicial district without the permission of the Court or probation officer;
( 2) report to the probation officer as directed by the Court or probation officer and submit a truthful and complete written report within the first five (5) days of each month;
( 3) answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
( 4) support the defendant's dependents and meet other family responsibilities;
( 5) work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
( 6) notify the probation officer within seventy-two (72) hours of any change in residence or employment;
( 7) refrain from excessive use of alcohol and not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
( 8) not frequent places where controlled substances are illegally sold, used, distributed, or administered;
( 9) not associate with any persons engaged in criminal activity and not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
(10) permit a probation officer to visit the defendant at any time at home or elsewhere and permit confiscation of any contraband observed in plain view by the probation officer;
(11) notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer;
(12) not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court; and

18-70022.3411

**Judgment in a Criminal Case**
**Defendant: JULIUS OMAR ROBINSON**                                                      page 2 of 3
**Case Number:  Criminal No. 4:00-CR-0260-Y  (02)**

(13)  notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement, as directed by the probation officer.

In addition the defendant shall:

not commit another federal, state, or local crime;

not possess illegal controlled substances;

not possess a firearm, destructive device, or other dangerous weapon; and

report in person to the probation office in the district to which the defendant is released within seventy-two (72) hours of release from the custody of the Bureau of Prisons.

## FINE/RESTITUTION

The Court does not order a fine or costs of incarceration because the defendant does not have the financial resources or future earning capacity to pay a fine or costs of incarceration and make restitution.

The defendant is ordered to make restitution in the amount of $22,768.  Of that sum, $22,220 shall be made jointly and severally with Angelo Harris.  The remaining $548 in restitution shall be made jointly and severally with Nathan Deshawn Henderson, Jason Gehring, and L.J. Britt.  All restitution shall be paid to the U.S. District Clerk, 501 West 10th Street, Room 310, Fort Worth, Texas 76102, for disbursement to Maria Reyes in the amount of $11,220; to Isaac Rodriguez in the amount of $11,000; and to Sheila Shelton in the amount of $548.  If, upon commencement of the term of supervised release, any part of the $22,768 restitution ordered by this judgment remains unpaid, the defendant shall make payments on such unpaid balance at the rate of at least $200 per month, the first such payment to be made no later than 60 days after the defendant's release from confinement and another payment to be made on the same day of each month thereafter until the restitution is paid in full.

No restitution is ordered in relation to the death of Rudolfo Resendez because after reasonable effort no family members of Mr. Resendez could be located.

## DISPOSITION OF OTHER COUNTS OF CONVICTION

The Court does not impose sentence on counts 1 and 2 because they are lesser included offenses of count 3.  The Court does not impose sentence on counts 4, 5, and 6 because they are lesser included offenses of count 7.  The Court does not impose sentence on counts 8, 9, and 10 because they are lesser included offenses of count 11.  The Court does not impose sentence on counts 13 and 14 because they are lesser included offenses of count 15.

18-70022.3412

**13.**

**Other Order: Excerpt from District Court Order Denying Pretrial Motion re Aggravating Factors, filed February 19, 2002 (ROA.3357)**

it demonstrates that since the implementation of the Attorney General's Protocol in 1995, the death-penalty has been sought against more white defendants than black defendants.

(2) Point Two is denied because Defendant has failed to demonstrate that, before he may be subjected to capital proceedings, he is entitled to grand-jury findings in the indictment that particular aggravating factors exist or that he acted with a particular mental state that would justify the imposition of the death penalty.  As noted in *Jones v. United States*, 526 U.S. 227, 251 (1999), the Supreme Court has "characterized the finding of aggravating facts falling within the traditional scope of capital sentencing as a choice between a greater and lesser penalty, not as a process of raising the ceiling of the sentencing range available." Here, the grand jury's indictment charges Robinson with all of the elements of each capital offense, including the fact that death resulted from Robinson's actions.  The death penalty is thus a punishment authorized by the charges in the grand jury's indictment, and the intent and aggravating factors about which Defendant complains are merely sentencing factors, rather than facts that would enhance his punishment beyond that contemplated by the grand jury.  *See Apprendi v. New Jersey*, 530 U.S. 466, 494 & n. 19 (2000) (discussing difference between a sentencing factor and a sentencing enhancement that increases the sentence beyond the maximum authorized statutory sentence).  As a result, the Court concludes that the indictment in this cause is constitutionally sufficient.

(3) Point Three is denied for the reasons articulated in *United*

18-70022.3357

## CERTIFICATE OF SERVICE

I certify that, on September 14, 2018, I electronically filed the foregoing Record Excerpts in the Fifth Circuit Court of Appeals using the Court's electronic case filing system.

/s/ Jonathan C. Aminoff
Jonathan C. Aminoff