# 18-10732

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**IN RE: JULIUS OMAR ROBINSON,**
Movant

Consolidated with No. 18-70022

UNITED STATES OF AMERICA,
Plaintiff-Appellee

v.

JULIUS OMAR ROBINSON,
also known as Face, also known as Scar, also known as Scarface,
Defendant-Appellant

On Appeal from the United States District Court, Northern District of Texas Fort
Worth Division, No. 4:05-CV-7561-Y (No. 4:00-CR-260-Y)

**APPELLEE'S RESPONSE TO
MOTION FOR LEAVE TO FILE SUCCESSIVE SECTION 2255 MOTION**

Erin Nealy Cox
United States Attorney

Timothy W. Funnell
Assistant United States Attorney
Northern District of Texas
801 Cherry Street, Suite 1700
Fort Worth, TX 76102
Phone 817.252.5200

Attorneys for Appellee

## STATEMENT OF JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 2255(h) over Robinson's motion for leave to file a successive motion under 28 U.S.C. § 2255.

## INTRODUCTION AND SUMMARY

Robinson moves for leave to file a successive Section 2255 motion to search for potential evidence supporting a yet-to-be-asserted claim of a racially biased jury. To prevail in his request for leave, Robinson must make a prima facie showing that his claim asserts a new substantive rule of constitutional law that was made retroactive to cases on collateral review by the Supreme Court. *See* 28 U.S.C. § 2255(h). He contends that his request to interview jurors—which he raised unsuccessfully in the first Section 2255 action and, both then and now, lacks evidence that a single juror was racially biased—"fits this bill" because he is "entitled to investigate claims of *potential* racial bias among seated jurors." (Mot. at 1) (emphasis added). His motion for leave rests on the Supreme Court's 2017 ruling in *Peña-Rodriguez v. Colorado*, which recognized a limited exception to the no-impeachment rule that governs jury verdicts. It does not appear that *Peña-Rodriguez* announced a new rule of constitutional law that was made retroactively applicable. Regardless, the Court can readily deny Robinson's motion because even if *Peña-Rodriguez*'s retroactivity is assumed, his suspicionless request to interview jurors for potential evidence of

racial bias cannot meet the required prima facie showing under the decision's narrowly crafted exception.

## PROCEDURAL HISTORY

In March 2002, a jury found Robinson guilty of the murders of Johnny Lee Shelton and Juan Reyes and of complicity in a criminal enterprise resulting in the death of Rudolfo Resendez. (ROA.3410-15.) In June 2002, the district court accepted the jury's recommendation and sentenced Robinson to death for the murders of Shelton and Reyes and life in prison for the death of Resendez. (ROA.3410-15.) The Court affirmed the judgment on direct appeal. *See United States v. Robinson*, 367 F.3d 278 (5th Cir.), *cert. denied*, 543 U.S. 1005 (2004).

In November 2005, Robinson filed his first motion under Section 2255. (ROA.3565.) He claimed that he received ineffective assistance of counsel, was denied equal protection and due process, and was entitled to a new trial. (ROA.3565, 4962, 5313.) During the ensuing three years, the post-conviction filings before the district court ultimately included Robinson's motion, the government's response, his reply, his amendment to the motion, his supplemental pleading, the government's response to the supplemental pleading, and his reply in support of his supplemental pleading. (ROA.3565, 4398, 4610, 4962, 5313, 5658, 5676.)

As part of the first Section 2255 proceeding, in November 2006 Robinson moved to interview trial jurors to discover whether any juror was racially biased. (ROA.4893.) He conceded, however, that he had no evidence suggesting that any juror was biased. (ROA.4897.) The government opposed the motion. (ROA.4906.)

In a written order, the district court denied the request without a hearing. (ROA.4914.) It explained that Robinson did "not state that he ha[d] any reason to suspect that his jury was actually partial, but merely point[ed] to the importance of his right to an impartial jury under the Sixth Amendment and argue[d] that he ha[d] no other way of discovering whether this right has been violated than to interview his trial jurors." (ROA.4914-17.) It also rejected his request to interview a prospective-but-excused juror regarding a potential *Batson* violation. (ROA.4914-17.) It determined that his hypothetical *Batson* challenge was unrelated to the prosecutor's state of mind in exercising the peremptory strike, and thus, "the requested permission for a post-trial interview of this prospective juror would appear neither useful to a *Batson* analysis nor necessary to protect any of [Robinson]'s rights." (ROA.4917.)

In November 2008, the district court issued a 46-page memorandum opinion and written order denying Robinson's first Section 2255 motion. (ROA.5712.) It concluded that an evidentiary hearing was unnecessary

because the claims were based on legal questions and facts that it assumed to be true as Robinson alleged, and therefore, "the record . . . , including the exhibits submitted by Robinson with his motion, [did] not create any contested fact issues that [were required to] be resolved in order to decide Robinson's claims." (ROA.5756-57.)

Robinson moved for reconsideration, claiming that the district court's denial of an evidentiary hearing was a "manifest error of law." (ROA.5760, 5767.) The government opposed the motion, (ROA.5841), and in February 2009, the court issued an order denying reconsideration, (ROA.5850). It observed that because the cases cited by Robinson were inapplicable, its decision to deny relief was not manifestly wrong. (ROA.5851-53.) Next, it rejected each of Robinson's points of error, repeating its prior determination that no evidentiary hearing was needed to decide legal questions, undisputed facts, and facts that it had assumed to be true. (ROA.5853-56.)

In April 2009, Robinson moved for a certificate of appealability ("COA") from the denial of Section 2255 relief. (ROA.5860.) The district court issued a written order denying Robinson's request for a COA. (ROA.5938.) In June and August 2010, this Court denied Robinson's requests for COA, panel rehearing, and rehearing en banc. (*See* ROA.54, 65.) In October 2011, the Supreme Court denied certiorari review. (*See* ROA.68-69.)

4

On February 9, 2018, more than six years after the denial of certiorari from his first Section 2255 motion, Robinson filed a motion with the district court under Federal Rule of Civil Procedure 60(b)(6). (ROA.74.) He raised three issues, including a renewed request to interview jurors to discover whether any juror was racially biased. (ROA.89-91.) To that end, he cited the Supreme Court's then-recent holding in *Peña-Rodriguez v. Colorado*, which carved out a limited "racial-bias exception to the no-impeachment rule" that applies "[w]hen jurors disclose an instance of racial bias as serious as the one involved in [that] case[.]" 137 S. Ct. 855, 870 (2017). But just as he conceded in November 2006 when making his initial request to interview jurors, his renewed request acknowledged that he had no evidence of a Sixth Amendment violation; instead, he sought to interview jurors to discover whether evidence of racial bias existed. (ROA.91.)

After briefing, the district court issued a written order concluding that Robinson's purported Rule 60 motion was "in actuality a second or successive petition for habeas relief[.]" (ROA.153.) It transferred the motion to this Court for a determination under 28 U.S.C. § 2255(h). (ROA.161-62.)

Regarding Robinson's renewed request to interview jurors based on *Peña-Rodriguez*, the district court remarked that it previously denied a similar request in the first Section 2255 proceeding "as an improper fishing expedition

in support of a hypothetical claim." (ROA.158.) It observed that "Robinson's present request again seeks to develop evidence in support of an impartial-jury claim under the Sixth Amendment" but he had not made such a claim and provided no authority to consider the issue under Rule 60(b)(6). (ROA.158.)

Now, in this consolidated appeal, Robinson (i) challenges the district court's determination that his Rule 60 motion is actually a successive motion under Section 2255, (*see generally* Br. (filed 9/11/18)); and (ii) moves for leave to file a successive motion under Section 2255 to consider whether "barring him from interviewing the trial jurors unreasonably deprived him of the opportunity to conduct a post-conviction investigation," (Mot. at 4). This response exclusively addresses the latter; the government will file a separate brief regarding Robinson's challenge to the district court's Rule 60 ruling.

<u>**ARGUMENT AND AUTHORITIES**</u>

**1.    Robinson cannot make the required showing under Section 2255(h).**

Pursuant to 28 U.S.C. §§ 2244(b)(3)(C) and 2255(h)(2),[1] this Court may authorize the filing of a successive motion under Section 2255 "only if the movant makes a prima facie showing that his claims rely upon 'a new rule of constitutional law, made retroactive to cases on collateral review by the

---

[1] Robinson does not invoke the exception permitting a successive Section 2255 motion based on "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found movant guilty of the offense." *See* 28 U.S.C. § 2255(h)(1).

Supreme Court, that was previously unavailable.'" *In re Jackson*, 776 F.3d 292, 293-94 (5th Cir. 2015); *see also In re Fields*, 826 F.3d 785, 786 (5th Cir. 2016).

"A 'prima facie showing' is 'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *In re Simpson*, 555 F. App'x 369, 371 (5th Cir. 2014) (quoting *Reyes-Requena v. United States*, 243 F.3d 893, 906 (5th Cir. 2001)). As Robinson acknowledges, the prima facie standard is satisfied when the movant "has put forth minimally sufficient evidence to make a prima facie case" and "there is sufficient, albeit slight, merit in [the] motion to warrant further exploration by the district court." (Mot. at 5 (quoting *In re Hearn*, 418 F. 3d 444, 447-48 (5th Cir. 2005).)

**A.    Regardless of *Peña-Rodriguez*'s retroactivity, its holding requires some evidence of juror bias, and Robinson has none.**

Robinson asserts that under *Peña-Rodriguez*, he should be permitted to file a successive Section 2255 motion to investigate his yet-to-be-asserted claim of a racially biased jury. (*See* Mot. at 6-11.) Thus, *Peña-Rodriguez* controls the prima facie analysis, both in terms of retroactivity and sufficient evidence of possible merit. Putting aside the retroactivity question for the moment, Robinson's lack of evidence regarding jury bias provides no basis for a claim under *Peña-Rodriguez* that warrants further exploration before the district court.

After Pena-Rodriguez was found guilty of unlawful sexual contact and harassment, the trial court instructed the jurors—as mandated by Colorado

law—that it was "entirely [their] own decision" to "discuss this case with the lawyers, defendant, or other persons" and they should notify the court "[i]f any person persists in discussing the case over [their] objection[.]" 137 S. Ct. at 861. Following the jury's discharge, defense counsel entered the jury room to discuss the trial with jurors and two of them privately told counsel that "another juror had expressed anti-Hispanic bias toward [Pena-Rodriguez] and [his] alibi witnesses." *Id.* Counsel reported this to the court, and with the court's supervision, obtained sworn affidavits from the two jurors that "described a number of biased statements made by . . . Juror H.C." *Id.* at 861-62. Based on the affidavits, the court "acknowledged H.C.'s apparent bias" but denied a motion for a new trial because the deliberations could not be impeached under Colorado Rule of Evidence 606(b). *Id.* at 862.

On review, the Supreme Court framed the question as "whether there is an exception to the no-impeachment rule when, after the jury is discharged, *a juror comes forward with compelling evidence* that another juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict." *Id.* at 861 (emphasis added). It recognized the respective governmental roles involved, observing: "The duty to confront racial animus in the justice system is not the legislature's alone. Time and again, this Court has been called upon to enforce the Constitution's

8

guarantee against state-sponsored racial discrimination in the jury system." *Id.* at 867.

Under these circumstances, the Court determined that the Constitution required a narrow exception to no-impeachment rules, reasoning: "This case lies at the intersection of the Court's decisions endorsing the no-impeachment rule and its decisions seeking to eliminate racial bias in the jury system. The two lines of precedent, however, need not conflict." *Id.* Having expressed its intention to reconcile rather than void no-impeachment rules, the Court held:

> *[W]here a juror makes a clear statement* that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

*Id.* at 869 (emphasis added).

In addition to requiring "a clear statement" of a juror's racial bias rather than an "offhand comment," the Court addressed the permissible manner of obtaining such evidence. *Id.* In that regard, the Court reaffirmed the viability of no-contact and no-impeachment rules, stating: "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id.* It recognized that "[t]hese limits seek to provide jurors some protection when they return to their daily affairs

after the verdict has been entered.  But while a juror can always tell counsel they do not wish to discuss the case, *jurors in some instances may come forward of their own accord.  That is what happened here*.”  *Id.* (emphasis added).

Unlike in *Peña-Rodriguez*, Robinson's post-conviction allegations of juror bias were—and still are—purely hypothetical.  Jurors in Robinson's trial did not “come forward of their own accord” with a “clear statement” of bias; indeed, they did not allege racial bias at all.  Nor did Robinson discover evidence of racial bias in another fashion.

Accordingly, in denying Robinson's post-conviction motion to interview jurors, the district court's written order correctly highlighted that Robinson did “not state that he ha[d] any reason to suspect that his jury was actually partial, but merely point[ed] to the importance of his right to an impartial jury under the Sixth Amendment and argue[d] that he ha[d] no other way of discovering whether this right has been violated than to interview his trial jurors.” (ROA.4914-17.)  It also determined that because Robinson's theoretical *Batson* challenge was unrelated to the prosecutor's state of mind in striking a particular juror, “the requested permission for a post-trial interview of this prospective juror would appear neither useful to a *Batson* analysis nor necessary to protect any of [Robinson]'s rights.”  (ROA.4917.)

Even now, Robinson does not allege circumstances remotely similar to those in *Peña-Rodriguez*. Instead, he resorts to allegations "that the death penalty has a long history of racial injustice"; references to 13 other federal death-penalty cases from Texas without providing context and analysis to demonstrate their relevance; and an assertion that the jury-selection process in his case had "racial undertones." (Mot. at 10.)

In sum, Robinson's request to interview jurors still is, just as the district court previously found, a fishing expedition into the possibility of juror bias. (*See* ROA.158.) To adopt Robinson's argument and authorize him to file successive post-conviction relief under these circumstances would require this Court to extend *Peña-Rodriguez* in a manner that the Supreme Court did not sanction and carefully avoided—*i.e.*, through judicial nullification of no-contact and no-impeachment rules rather than harmonizing them with the Constitution.

In a state habeas case, this Court recently "decline[d] the invitation to extend further the reach of *Peña-Rodriguez*" beyond the racial-bias context to questions of jury unanimity. *Young v. Davis*, 860 F.3d 318, 333-34 (5th Cir. 2017). The Court in *Young* described *Peña-Rodriguez*'s holding as a "constrained relaxing" of the no-impeachment rule that applies "narrowly" because it created an exception to the "traditionally inviolate" no-

impeachment rule. *Id.* And because *Peña-Rodriguez*'s holding was "antithetical to the privacy of jury deliberations," its extension could not be justified. *Id.* at 334. The same reading of *Peña-Rodriguez* is warranted here.

Similarly, in *United States v. Baker*, the Second Circuit recognized that a juror's post-verdict email did not permit the defense to conduct juror interviews under *Peña-Rodriguez*'s "narrow exception to the no-impeachment rule." 899 F.3d 123, 133 (2d Cir. 2018). Although Baker argued that the juror's ambiguous email could be interpreted as indicative of racial bias, the Court held that "*Peña-Rodriguez*, by its terms, [was] inapposite" because it rested on a juror's "*clear statement* . . . exhibiting *overt* racial bias that casts serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict[.]" *Id.* (quoting *Peña-Rodriguez*, 137 S. Ct. at 869) (emphasis in *Baker*).

Likewise, in *United States v. Robinson*, the Sixth Circuit affirmed the district court's refusal to admit evidence of the jury foreperson's during-deliberations comment that "impugn[ed other jurors'] integrity based on their shared race with the defendants[.]" 872 F.3d 760, 764, 771 (6th Cir. 2017). The foreperson's comment, which prompted court-security intervention to keep the peace, came to light post-trial when a defense investigator violated the local no-contact rule by interviewing jurors. *Id.* In rejecting the defendants' arguments to admit the investigator's findings, the circuit court held that

"given *Peña-Rodriguez*'s reaffirmation of the validity of such local [no-contact] rules," it was not an abuse of discretion to deny the new-trial motion on that basis. *Id.* at 771. It also held that "the stated holding of *Peña-Rodriguez* would not apply even if the defendants had not violated a local court rule and their evidence was properly before the district court" because "*Peña-Rodriguez* makes clear that it does not apply to a mere 'offhand comment indicating racial bias or hostility,' but only to a 'clear statement' that 'tend[s] to show that racial animus was a significant motivating factor *in the juror's vote to convict*.'" *Id.* (emphasis in *Robinson*). The court analyzed the juror's comment under these controlling standards and concluded that it did not qualify. *See id.*

Consistent with *Young*, *Baker*, and *Robinson*, this Court should adhere to *Peña-Rodriguez*'s narrow holding by denying Robinson's motion for leave to file a successive Section 2255 motion. Put simply, *Peña-Rodriguez* provides no basis for a post-conviction movant like Robinson who wants to investigate the mere possibility of racial bias to support a yet-to-be-asserted claim. Robinson therefore fails to make the required showing of possible merit that warrants further exploration before the district court.

**B.    Alternatively, Robinson has not shown that *Peña-Rodriguez* announced a new substantive rule of constitutional law that was made retroactive to cases on collateral review.**

To permit the filing of a successive Section 2255 motion under the exception codified in Section 2255(h)(2), the Supreme Court itself must announce a new rule of constitutional law and make it retroactive to cases on collateral review.  *See In re Jackson*, 776 F.3d 292, 293 (5th Cir. 2015) (citing *Tyler v. Cain*, 533 U.S. 656, 662-63 (2001)).  In particular, the movant "must point to a Supreme Court decision that either expressly declares the collateral availability of the rule (such as by holding or stating that the particular rule upon which the petitioner seeks to rely is retroactively available on collateral review) or applies the rule in a collateral proceeding."  *Id.* (internal quotation marks and citation omitted).

Robinson acknowledges that "[t]he Supreme Court did not expressly address retroactivity in *Peña-Rodriguez*," but he contends that its subsequent per curiam decision in *Tharpe v. Sellers*, 138 S. Ct. 545 (2018), sufficiently demonstrates the Court's intent to apply the rule retroactively on collateral review.  (Mot. at 7-8.)  The government disagrees.

Tharpe was a state prisoner who "moved to reopen his federal habeas corpus proceedings [under Fed. R. Civ. P. 60(b)(6)] regarding his claim that the Georgia jury that convicted him of murder included a white juror, Barney

Gattie, who was biased against Tharpe because he is black." 138 S. Ct. at 545. The Eleventh Circuit denied Tharpe's application for a certificate of appealability ("COA") after deciding that jurists of reason could not dispute the district court's procedural ruling that Tharpe's claim was defaulted in state court. *Id.* at 545-46.

The Supreme Court vacated the circuit court's decision and remanded the case to determine whether Tharpe was entitled to a COA. *Id.* The majority granted remand on the possibility of procedural error regarding the prejudice question and "[i]n light of the standard for relief from judgment under Rule 60(b)(6), which is available only in 'extraordinary circumstances'[.]" *Id.* at 546. Essentially, the majority determined that "on the unusual facts of this case, the Court of Appeals' review should not have rested on the ground that it was indisputable among reasonable jurists that Gattie's service on the jury did not prejudice Tharpe." *Id.*

The three-judge dissent in *Tharpe*, authored by Justice Thomas, criticized the majority's "brief" opinion for misreading the lower court's ruling and refusing "to entertain alternative grounds for affirmance." *Id.* at 547 (J. Thomas, dissent). The dissent detailed the case's procedural history and— unlike the majority, which failed to mention *Peña-Rodriguez* at all—observed that Tharpe's Rule 60 motion invoked *Peña-Rodriguez*'s holding, but the district

court determined that *Peña-Rodriguez* "announced a new procedural rule that [did] not apply retroactively on federal collateral review." *Id.* at 549. The dissent agreed, and, as an alternative ground for affirmance ignored by the majority, asserted that "no reasonable jurist could argue that *Peña-Rodriguez* applies retroactively on collateral review" because it was not a substantive rule or a watershed rule of criminal procedure. *Id.* at 551.

This Court's discussion in *In re Jackson* of the "stringent standard of § 2255(h)(2)" supports a determination of non-retroactivity in the absence of clear evidence from the Supreme Court. 776 F.3d at 293. There, the Court observed that "[t]he barriers to bringing second or successive motions are intentionally high," and "[i]n balancing concerns of finality and recognizing new rights applicable to federal prisoners, Congress thus distinguished in the habeas statutes applicable to prisoners challenging federal judgments between second or successive federal habeas motions and initial motions that are filed more than one year from the date of finality." *Id*. at 294-95. It then examined several Supreme Court decisions under the Armed Career Criminal Act before concluding that "none of the cases on which Jackson relies, including *Begay*, *Johnson*, and *Descamps*, authorizes Jackson to file his proposed successive § 2255 motion." *Id.* at 295-96.

Considering this Court's admonitions in *In re Jackson* regarding Section 2255(h)(2), that *Tharpe* involved a Rule 60 motion and resulted in a per curiam decision that failed to mention *Peña-Rodriguez* at all, and that the dissent in *Tharpe* asserted unaddressed grounds for affirmance including *Peña-Rodriguez*'s seemingly indisputable non-retroactivity, Robinson cannot reasonably "point to [*Tharpe* as] a Supreme Court decision that . . . applie[d] the [exception to the no-impeachment] rule in a collateral proceeding." *See In re Jackson*, 776 F.3d at 293.

## CONCLUSION

The Court should deny Robinson's motion for leave to file a successive motion under Section 2255.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*/s/ Timothy W. Funnell*
Timothy W. Funnell
Assistant United States Attorney
Wisconsin Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: (817) 252-5252
Tim.Funnell@usdoj.gov

Attorneys for Appellee

**CERTIFICATE OF SERVICE**

I certify that this document was served on Robinson's counsel of record, through the Court's ECF system on September 24, 2018, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ *Timothy W. Funnell*
Timothy W. Funnell
Assistant United States Attorney

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,609 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

/s/ *Timothy W. Funnell*
Timothy W. Funnell
Assistant United States Attorney
Date: September 24, 2018